# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>TIM LEISSNER,<br><br>　　　　　Defendant.<br><br>KEN SIAZON,<br><br>　　　　　Third-Party Petitioner. | Criminal Docket No. 18-CR-439(MKB)<br><br>**VERIFIED PETITION OF KEN SIAZON FOR DETERMINATION OF THIRD-PARTY INTEREST IN PROPERTY SUBJECT TO FORFEITURE** |

I.      **INTRODUCTION**

Third-Party Petitioner Ken Siazon hereby petitions this Court under 21 U.S.C. § 853(n)(2) for a hearing and adjudication of his interest in the assets subject to this Court's Preliminary Order of Forfeiture entered on November 1, 2018 (ECF No. 21), as amended by this Court's Amended Preliminary Order dated March 3, 2023 (ECF No. 68) (collectively, "Forfeiture Order"). The Seized Assets constitute 3,325,942 shares of stock in Celsius Holdings, Inc. held in J.P. Morgan Chase Bank brokerage account number ending in "7002" (hereinafter, "Celsius shares").

Petitioner Siazon has a superior interest to the government in regard to 561,798 shares of the Celsius shares subject to the Forfeiture Order. Accordingly, Petitioner Siazon requests that the Court schedule a hearing under 21 U.S.C. § 853(n)(2) to adjudicate his interest in the shares, and that the Preliminary Order of Forfeiture be amended to recognize Petitioner Siazon's interest in 561,798 of the Celsius shares.

II.     **FACTUAL BACKGROUND**

   A. **Siazon Invests in Celsius Holdings**

Ken Siazon and defendant Tim Leissner had been friends since they worked together as junior investment bankers at J.P. Morgan and Lehman Brothers Hong Kong from 1995 to 1998. In 1996, Leissner became the godfather to Siazon's firstborn child. Notwithstanding their friendship, from 1998 through 2016, Siazon had no working relationship with Leissner, with the exception of the single investment described below. Consequently, Siazon did not have visibility into Leissner's day-to-day conduct in his job at Goldman Sachs. In addition, Siazon left the investment banking industry in 2006. Siazon did not have any knowledge, until after Leissner's guilty plea in August 2018, about Leissner's and Goldman Sachs' criminal roles in the 1MDB bribery scandal.

Two years before Leissner's arrest, around July 2016, Leissner approached Siazon with an offer to buy shares in Celsius Holdings ("Celsius"), a public company known for its popular energy drinks. Leissner represented to Siazon that a friend of Leissner's needed liquidity, and the friend was willing to sell $500,000 worth of his Celsius shares (*i.e.,* 561,798 shares) to Leissner at the

1

price he had acquired the shares a year earlier, in a private placement at $0.89 per share. Leissner would, in turn, sell the shares to Siazon at the same price. To further convince Siazon of the desirability of the investment, Leissner represented that Li Ka-Shing, a well-known businessman in Asia, had purchased Celsius shares at the same price.

As part of his due diligence, Siazon checked Celsius's public U.S. Securities and Exchange Commission ("SEC") filings and confirmed that Leissner was the beneficial owner of 3,539,326 shares in Celsius as of July 15, 2016, and that Li Ka-Shing owned shares in the company as well. Siazon also knew that Leissner was Co-Chairman of the Celsius Board of Directors, as well as co-chair of the Nominating and Corporate Governance Committee. Leissner had served on the Celsius Board of Directors, as an independent director, since April 2015. *See* Ex. A at 2 (Common Stock Purchase Agreement, Apr. 20, 2015); Ex. B at 25 (Investors' Rights Agreement, Apr. 20, 2015); *see also* Ex. C at 25 (2016 10-K filing, designating Leissner as an "independent" director).

In mid-August 2016, Leissner and Siazon exchanged a series of emails in which they negotiated the terms of the written agreement for Siazon's purchase of the Celsius shares. *See* Ex. D (Aug. 2016 E-Mails between Siazon and Leissner). During this negotiation, Leissner informed Siazon that his shares in Celsius were held by Cuscaden Capital Limited ("Cuscaden"), a special purpose vehicle registered in the British Virgin Islands. The terms of the agreement were structured such that Siazon would purchase a stake in Cuscaden; Cuscaden, in turn, would "transfer all economic rights" in the Celsius shares it held "in proportion" to Siazon's newly acquired stake. Ex. E at 2 (Cuscaden Agreement). In the final agreement between Cuscaden and Siazon (*i.e.*, the "Cuscaden Agreement"), which was executed on August 25, 2016, Cuscaden represented that it held 4,101,624 shares of Celsius. *Id.* Per that agreement, Siazon agreed to purchase a 13.7% stake in Cuscaden, amounting to approximately 561,798 shares of Celsius, at the cost of $500,000.[1]

---

[1] At the trial of Roger Ng, Leissner testified that he "borrowed money" from Siazon but had "paid him back." Ex. F (Tr. Excerpt, Mar. 8, 2022). Siazon does not recall making any loan to Leissner. In any event, Siazon's $500,000 investment involved no loans—it followed the terms of the Cuscaden Agreement.

That agreement was signed by Leissner's ex-wife Judy Chan, who Siazon understood to be an officer of Cuscaden, and sent from Leissner's personal email account to Siazon. *See id.* at 1.

On August 26, 2016, after signing the Cuscaden Agreement, Siazon wired $500,000 to Cuscaden's bank account pursuant to instructions he had received from Leissner. *See* Ex. G (Aug. 26, 2016 wire); *see also* Ex. H (July 21, 2016 email from Leissner to Siazon providing wire instructions). Later, Leissner acquired more shares in Celsius, and as of March 30, 2017, the SEC filings confirmed that he was the beneficial owner of 4,162,659 shares in Celsius. Ex. C at 31.

Throughout this period, Siazon understood that Leissner, his friend of over 20 years, was overseeing the handling of his Celsius shares on Siazon's behalf and would act pursuant to his requests. Based on Leissner's representations and the terms of the Cuscaden Agreement, Siazon further understood that he was the beneficial, sole and absolute owner of all rights and benefits in and to the 561,798 Celsius shares that were held by Cuscaden, as of August 2016, for his sole benefit. Given this relationship of trust, Siazon did not specifically request the stock certificates, based on the understanding that Leissner would act in his best interest and pursuant to his direction, and understood that Leissner would hold Siazon's Celsius shares for Siazon's benefit.

### B. Siazon's Celsius Shares Are Seized by the Government

In or about November 2018, Siazon learned that Leissner had pleaded guilty pursuant to FCPA bribery and money laundering charges filed in the Eastern District of New York. Unbeknownst to Siazon, Leissner had secured his bond using 3,325,942 shares of Celsius which the government had seized (the "Seized Celsius Shares"). Prior to his arrest, and unbeknownst to Siazon, Leissner had consented to and authorized placement of more than 3.9 million shares of Celsius stock into a J.P. Morgan Chase Bank brokerage account in the name of Kimora Lee Simmons, Leissner's wife at the time. On August 28, 2018, Leissner pled guilty to an information and consented to a forfeiture money judgment in the amount of $43,700,000. *See* Limited Unsealing Order as to Tim Leissner (ECF Dkt. No. 18). On August 17, 2022, again, unbeknownst to Siazon, Leissner consented to the forfeiture of the Seized Celsius Shares. *See* Preliminary Order of Forfeiture (ECF Dkt. No. 21).

Prior to August 2022, Leissner had consistently represented to Siazon that Siazon's Celsius shares were part of the shares that the government had seized from Ms. Simmons' account (*i.e.*, the Seized Celsius Shares). For example, in an exchange of WhatsApp messages in early 2022, Siazon asked about the status of his Celsius shares, and Leissner repeatedly indicated that Siazon's shares were part of the Seized Celsius Shares:

- On February 19, 2022, Leissner stated that Siazon's shares were "stuck in Kimora's account," and that Leissner had asked the government to "separate [Siazon's] portion from the rest of the shares" so that the government could "register the shares for [Siazon] directly." Ex. I at 1.
- On May 12, 2022, when Siazon asked about his Celsius shares, Leissner informed Siazon that he had a hearing the following Monday "to request to have all shares in excess of $45 million released to us." *Id.* at 2.
- On June 22, 2022, Siazon again pressed Leissner about the status of his Celsius shares, and asked whether the shares had been forfeited. In response, Leissner replied: "Your interest is still there and I am very sure [you] will get it after my sentencing." *Id.* at 3.

Several months later, in an attempt to gain further clarity about which shares belonged to him, Siazon asked Leissner about the balance of 646,000 shares held by Ms. Simmons that the government did not seize. In a WhatsApp exchange dated October 23, 2022, Siazon inquired, "is that balance my shares? If so, is it free for Kimora to grab?" In response, Leissner stated: "Not at all. This is only my own personal interest. [Kimora] and you have still [sic] your interest." *Id.* at 4.

### C. Siazon Learns of Nu Horizon's Purported Interest in Leissner's Celsius Shares

In May 2021, Siazon learned that Ms. Simmons' ex-husband, Russell Simmons, had filed a lawsuit regarding Celsius shares. Upon further review of the allegations in July 2022, Siazon understood that Mr. Simmons alleged that a company called Nu Horizons held an ownership interest in Leissner's Celsius shares. Through a series of court filings, Siazon learned that

4

Cuscaden—the company of which Siazon held a 13.7% interest—was, allegedly, a majority shareholder of 51% of Nu Horizons. Through conversations with Leissner, Siazon further learned that, prior to the execution of the Cuscaden Agreement on August 25, 2016, Leissner was a managing member of Nu Horizons and was authorized to act on its behalf. *See* Ex. J at 25 (Nu Horizons Operating Agreement). Leissner also corroborated Russell Simmons' claim that, in August 2016, Cuscaden held a majority share of Nu Horizons.

After learning of this information and learning of an additional lawsuit filed by Roger Ng in November 2022, Siazon again sought reassurance from Leissner that he had ownership rights with regard to the Seized Celsius Shares. For example:

- On November 12, 2022, Siazon asked Leissner "Please tell me that my shares are intact?" Leissner replied, "Yes you are fine." *See* Ex. I at 5.
- On February 24, 2023, Leissner agreed that (1) he bought approximately 561,000 shares after his initial investment in Celsius, which confirmed Siazon's understanding of what Leissner intended to do with Siazon's $500,000 investment and (2) that "the whole basis" for putting the share count in their 2016 agreement was to memorialize the fact that Siazon was buying $500,000 worth of Celsius shares, which Leissner would hold for Siazon's benefit. *See* Ex. I at 6.

Leissner has since reaffirmed Siazon's understanding of the foregoing facts, including most importantly, that Siazon has an interest in the Seized Celsius Shares.[2]

## III.  ARGUMENT

As detailed below, Siazon is an innocent third party who has superior claims to a portion of the 3,325,942 Celsius shares the government seized from Leissner. Under 21 U.S.C. § 853(n)(2), an innocent third party may petition this Court "for a hearing to adjudicate the validity of his alleged interest" in forfeited property. To be entitled to a hearing, a "petitioner must first establish his standing to challenge the forfeiture order by demonstrating a 'legal interest' in the forfeited

---

[2] Leissner informed Siazon that he was prepared to sign a declaration affirming that he sold Siazon $500,000 worth of Celsius shares at a price of $0.89 per share. On March 23, 2023, Leissner stated that he was prepared to sign a declaration and have it filed in court. Ex. I at 7.

5

property." *United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015) (citation omitted).  To obtain relief, he must then establish, by a preponderance of the evidence, one of two "superior claims" to the property under § 853(n)(6).  *Id.*

A petitioner can prevail by showing that he (1) has a legal right, title, or interest in the property, and "such right, title, or interest was vested in the petitioner rather than the defendant," or (2) was a bona fide purchaser for value of the property and 'was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture.'"  21 U.S.C. § 853(n)(6)(A); *United States v. Chowaiki*, 369 F. Supp. 3d 565, 572 (S.D.N.Y. 2019) (citing §§ 853(n)(6)(A), (B)).

For the reasons set forth below, Siazon has a superior interest in a portion of the Seized Celsius Shares—561,768 Celsius shares—under each of the statutory provisions.  Specifically, he has standing to challenge the preliminary forfeiture order because, *first*, he is a bona fide purchaser for value of a portion of the Seized Celsius Shares, and *second*, because he holds an interest in the same portion of the Celsius Shares via a constructive trust.  Under federal law, either interest is superior to the government's own interest in 561,768 of the Celsius shares.

### A. Siazon is a Bona Fide Purchaser for Value of the Shares

Siazon has standing to challenge the preliminary order of forfeiture because, as explained below, he is a bona fide purchaser for value of a percentage of the Celsius shares Cuscaden held.  In light of his status, Siazon has a superior interest in 561,768 of the Seized Celsius Shares, to that of Leissner—and by extension, the government—under Section 853(n)(6)(B).

#### 1. Nevada Law Governs Siazon's Claim

At every stage in a criminal forfeiture proceeding, the petitioner's interest in property "is determined in accordance with state law."  *Watts*, 786 F.3d at 161.  In ancillary forfeiture proceedings, when determining whether a claimant has a legal interest, courts look to "the law of the of the state giving rise to the property interest asserted."  *United States v. Egan*, 811 F. Supp. 2d 829, 838 (S.D.N.Y. 2011).  As explained below, Nevada law applies to Siazon's claim.

6

To determine the state law applicable to Siazon's claim, this Court should apply New York choice-of-law rules. Courts in this Circuit apply New York choice-of-law rules while sitting in federal jurisdiction when, as here, the federal statute granting jurisdiction defines federal rights by reference to state law. *E.g.*, *Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 590 n.7 (S.D.N.Y. 2001), *aff'd* 306 F.3d 17 (2d Cir. 2002). This is in contrast to the general rule that courts sitting in federal jurisdiction apply federal common law choice-of-law rules.[3] *Id.* Siazon's status as a bona fide purchaser is determined by reference to state law. *See Pacheco v. Serendensky*, 393 F.3d 348, 353 (2d Cir. 2004); *e.g.*, *Chowaiki*, 369 F. Supp. 3d at 572-73. Across jurisdictions, the "validity and effect" of a transfer of interest in corporate shares is governed by the law of the state of incorporation.[4] FLETCHER CYCLOPEDIA OF LAW OF CORPORATIONS § 5473.

New York courts have long recognized "the settled rule that problems related to the status of shareholders . . . are to be determined by the law of the state of incorporation." *Bankers Nat'l Corp. v. Barr*, 7 F.R.D. 305, 307 (S.D.N.Y. 1945); *e.g.*, *Direction der Disconto-Gesellschaft v. U.S. Steel Corp.*, 300 F. 741, 744 (S.DN.Y. 1924) (Hand, J.) (applying law of state of incorporation to dispute over purchase of stock). Celsius Holdings is incorporated in Nevada. Accordingly, Nevada law applies to Siazon's claim.

---

[3] But this "may be a distinction without a difference," and this Court may find it unnecessary to decide whether federal or New York choice-of-law rules apply. *Specht*, 150 F. Supp. 2d at 590 n.7. The two doctrines "invoke[] similar considerations," and the choice between them is rarely, if ever, outcome determinative. *See*, *e.g.*, *Wells Fargo Asia, Ltd. v. Citibank, N.A.*, 936 F.2d 723, 726 (2d Cir. 1991) ("Regardless of whether the New York or federal test is used, application of these standards leads us to the [same] conclusion . . . ."); *In re Koreag, Conrole et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992) (discerning "no significant difference" between the two doctrines and, thus, finding no "need" to "untangle the[ir] interwoven features"); *In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9, 31 (S.D.N.Y. 2012) ("I need not determine whether [to apply] federal or New York choice-of-law rules because both apply 'the law of the jurisdiction having the greatest interest in the litigation.'") (quoting *In re Koreag*, 961 F.3d at 340) (collecting cases).

[4] Even if this Court chooses to apply federal choice of law principles, it would reach the same result. When there is an absence of federal case law on point, the Restatement (Second) of Conflict of Laws supplements and informs federal common law choice-of-law rules. *See Eli Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78, 80 (2d Cir. 2007). Here, the Restatement instructs that "local law of the state of incorporation" should determine who holds title to corporate shares. Restatement (Second) of Conflict of Laws § 303 & cmt. b (Am. L. Inst. 1971); *see also* Restatement (First) of Conflict of Laws § 182 (Am. L. Inst. 1934) (same).

### 2. Siazon Has a Superior Interest As a Bona Fide Purchaser for Value of the 561,768 Celsius Shares

A bona fide purchaser for value takes property "for a valuable consideration" and without notice of any prior conveyance or equitable interest. *Bailey v. Butner*, 176 P.2d 226, 228 (Nev. 1947). On August 26, 2016, when Siazon wired $500,000 to Leissner pursuant to the Cuscaden Agreement, Siazon acquired full "economic interest" in 561,768 Celsius shares.

In July 2016, when Leissner first approached Siazon and offered to purchase shares on his behalf in a private placement, Siazon understood Leissner to have the ability to acquire Celsius shares at the offering price ($0.89 per share).[5] Indeed, Leissner further enticed Siazon by informing him that another high-profile investor—Li Ka-Shing—had purchased shares at the same price. *See supra* 2. Siazon further understood, at Leissner's suggestion, that he would take title to those shares via Cuscaden, a special purpose vehicle under Leissner's control. With this understanding, Siazon wired to Leissner $500,000 to buy a 13.7% stake in Cuscaden; in return, Cuscaden agreed to "transfer all economic rights of any shares" it held to Siazon "in proportion" to Siazon's newly acquired stake. Siazon wired the $500,000 to Leissner on August 26, 2016.

As part of the Cuscaden Agreement, Leissner represented that, as of August 25, 2016, he held over four million Celsius shares, and it was Siazon's understanding that he had acquired "economic rights" in 561,768 Celsius shares (*i.e.*, 0.137 x 4,101,124 shares) when he wired $500,000 to Leissner, providing "valuable consideration." *See Bailey*, 176 P.2d at 228. Importantly, at that time, Siazon was "reasonably without cause to believe that the [Celsius shares were] subject to forfeiture.'" *Chowaiki*, 369 F. Supp. 3d at 572 (citing §§ 853(n)(6)(A), (B)). Siazon neither worked with Leissner at Goldman Sachs, nor did he have the type of personal or business relationship that would have given him visibility into Leissner's day-to-day activities as an investment banker with Goldman Sachs. In fact, he had no knowledge that Leissner and

---

[5] That the shares were acquired at a below market rate does not affect Siazon's status as a bona fide purchaser for value. *Shadow Wood HOA v. N.Y. Cmty. Bancorp*, 366 P.3d 1105, 1115 (Nev. 2016). Even if Siazon bought the shares "for an amount lower than [their] actual worth," that he paid valuable consideration "cannot be contested." *See id.*; *accord Fair v. Howard*, 6 Nev. 304, 308 (1871) ("The question is not whether the consideration is adequate, but whether it is valuable.")

8

Goldman Sachs played a criminal role with regard to 1MDB until November 2018, months after Leissner had pled guilty to a two-count criminal information charging him with conspiring to launder money and conspiring to violate the FCPA. The fact that Leissner had the funds to purchase more than three million shares of Celsius did not raise any suspicions for Siazon because Leissner had told him he was making millions of dollars as a result of what Siazon understood to be Leissner's legitimate activity working at Goldman Sachs. As a result, at the time that Siazon consummated his bona fide purchase of the Celsius Shares by paying Leissner $500,000 on August 26, 2016, he had no knowledge of the facts or circumstances that ultimately gave rise to Leissner's arrest and the seizure of the Celsius Shares. *See Chowaiki*, 369 F. Supp. 3d at 572 (citing §§ 853(n)(6)(B)).

Notably, since that time, Leissner has repeatedly assured Siazon that his 561,768 Celsius shares have been subsumed in the 3,325,942 shares that were seized by the government to satisfy Leissner's forfeiture. *See*, *e.g.*, Ex. I at 4 ("you have still [sic] your interest"); *id.* at 1 (stating Leissner asked to "separate [Siazon's] portion from the rest of the shares" so government could "register the shares for [Siazon] directly).""

As noted above, in July 2022, as a result of a lawsuit filed by Russell Simmons, Siazon learned for the first time that another company, Nu Horizons, was alleged to have held title to the Celsius shares. In addition, Leissner is alleged to have been a managing member of Nu Horizons, in addition to Cuscaden. Simmons further alleges that Cuscaden owned a 51% stake in Nu Horizons, the entity that allegedly held Celsius shares in the first instance. *See supra* 4-5. If the Court accepts these allegations to be true, Siazon would still be a bona fide purchaser for value in a portion of the Seized Celsius Shares. Specifically, pursuant to the Cuscaden Agreement and the purported ownership relationship between Cuscaden and Nu Horizons, Siazon would hold "economic rights" in the shares by virtue of his ownership stake in Cuscaden. *See* Ex. E at 2 (Cuscaden Agreement).

### B. Siazon Has a Superior Interest in the Shares Via a Constructive Trust

Siazon also has standing to challenge the preliminary order of forfeiture because, as explained below, he is the beneficiary of a constructive trust that was established at the time Leissner agreed to purchase Celsius shares on Siazon's behalf in August 2016. In light of that constructive trust, Siazon has a superior interest to that of Leissner—and by extension, the government—in 561,768 of the Seized Celsius Shares, under Section 853(n)(6)(A) ("the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant").

#### 1. Nevada Law Governs Siazon's Claim

As noted above, New York choice-of-law principles apply here. *See supra* at 7. Under New York choice of law rules, this Court must apply the laws of the jurisdiction with the "greatest interest" in a dispute. *DarkPulse, Inc. v. EMA Fin., LLC*, 2023 WL 2307386, at *7 (S.D.N.Y. Mar 1, 2023). In evaluating a constructive trust claim, the state with the greatest interest in applying its laws to a constructive trust is the state where the property, and thus the trust, is located. *Id.*; *accord In re Howard's Appliance Corp.*, 874 F.2d 88, 93-94 (2d Cir. 1989) (reaching the same result by applying federal choice-of-law rules). "The situs of stock for purposes of a constructive trust is the state of incorporation." *DarkPulse*, 2023 WL 2307386, at *7 (applying New York choice-of-law rules to find that laws of state of incorporation governed plaintiff's constructive trust claim rather than laws of state where acts allegedly justifying constructive trust occurred).

Because Siazon has an interest in shares of Celsius Holdings, an entity incorporated in Nevada, Nevada law must govern Siazon's interest in Celsius shares via a constructive trust. *See Watts*, 786 F.3d at 161 (holding that petitioner's interest "is determined in accordance with state law"); *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011) (applying law of Vermont, the situs of property, to determine petitioner's interest via constructive trust).

### 2. Siazon Has A Superior Interest In the Celsius Shares Via a Constructive Trust

The beneficiary of a constructive trust has standing to challenge a preliminary forfeiture order. *Willis Mgmt.*, 652 F.3d at 242. Under Nevada law, such a trust arises where there is (1) a confidential relationship between the parties; (2) the retention of title by one party against the other would be inequitable; and (3) "a trust is essential to the effectuation of justice." *Locken v. Locken*, 650 P.2d 803, 805 (Nev. 1982) (citing *Schmidt v. Merriweather*, 418 P.2d 991, 993 (Nev. 1966)).

Where a constructive trust has arisen, "the government seeks forfeiture of property that from the moment of its existence belonged to a third party rather than to" the criminal defendant. *Watts*, 786 F.3d at 168. Accordingly, Siazon has a superior interest to Leissner—and thus, the government—in 561,768 of the Celsius shares.

a. *Siazon and Leissner had a Confidential Relationship*

Siazon and Leissner had a confidential relationship at the time Siazon agreed to have Leissner purchase the Celsius shares on his behalf, in August 2016. Confidential relationships arise where a party, gaining another's confidence, "purports to act [with the other's] interest in mind." *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995). Such a relationship may arise by virtue of a single business relationship between the parties. *See Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*, 935 P.2d 1154, 1160 (Nev. 1997) (confidential relationship between seller and lender of residential property); *Landow v. Bartlett*, 2019 WL 1027994, at *3 (D. Nev. Mar. 4, 2019) (agreement by one party to provide investment advice to another sufficient to allege confidential relationship under Nevada law).

Courts have also found that a confidential relationship that forms the basis of a constructive trust is "particularly likely" to arise among friends. *Perry*, 900 P.2d at 338 (quoting *Kudokas v. Balkus* 26 Cal. App. 3d 744, 750 (1972)). For instance, in *Randono v. Turk*, the parties became "good friends socially and developed a close relationship" over several years. 466 P.2d 218, 220 (Nev. 1970). This "merely informal" relationship was, nonetheless, confidential, and formed the basis of a constructive trust regarding the invested funds at issue. *Id.* at 222 (cleaned up).

11

Both Siazon's friendship with Leissner and the Celsius shares transaction they agreed to formed the confidential relationship required for a constructive trust. When Leissner proposed the Celsius investment in August 2016, Siazon and Leissner had been friends for over two decades, and Leissner was then godfather to Siazon's first born child. The long-term friendship between Siazon and Leissner established a confidential relationship. *See id.* At the same time, Leissner's status as an Independent Director and Co-Chairman of Celsius, as well as his reputation as a highly successful investment banker at Goldman Sachs, further encouraged Siazon to place in Leissner "special trust" and confidence. *Cf. Perry*, 900 P.2d at 338 (finding "ample evidence" of a confidential relationship between friends, one of whom had significant business experience).

### b. *Retention of Title by Leissner Is Inequitable*

To establish a constructive trust, the petitioner must also demonstrate that retention of title by one party is inequitable. Retention of title by one party is inequitable when the promising party has committed a "breach of trust." The civil wrong of "breach of trust" is considered "as reprehensible as the criminal act of embezzlement, from the point of view of equity." *Randono*, 466 P.2d at 222 (quotation marks and citation omitted). Accordingly, a constructive trust will arise where there is a "breach of trust" between parties in a confidential relationship. *See id.*; *e.g.*, *Bemis v. Est. of Bemis*, 967 P.2d 437, 441-42 (Nev. 1998). Here, Leissner breached Siazon's trust when, after using Siazon's money to procure the shares at issue, he failed to segregate them from his personally held shares. As a result of this breach of trust, Leissner was able to perform further inequitable acts, *inter alia*, transferring the shares to Kimora Lee Simmons' personal J.P. Morgan account and providing the shares to secure his bond, all without Siazon's knowledge, permission or consent.

A "breach of trust" occurs whenever one party retains property that he has pledged or promised to another. For instance, in *Bemis*, a father represented in his divorce decree that he would establish a trust of $250,000 for his sons. 967 P.2d at 439. The court held that "the father inequitably failed to create the trust he had promised to create, and his estate would unjustly benefit from that inequitable act." *Waldman v. Maini*, 195 P.3d 850, 857-58 (Nev. 2008) (citing *Bemis*,

12

967 P.2d at 441-42 (finding a constructive trust established where brothers were unaware of their father's pledge for decades)). Even where a claimant is unaware that a promise has been made, as was the case in *Bemis*, or where the promise is potentially unenforceable as a matter of law, that promise will be effectuated through a constructive trust. *See Locken*, 650 P.2d at 804-05.

In proposing the Celsius investment in 2016, Mr. Leissner represented that he would purchase Celsius shares and hold them on Siazon's behalf through the Cuscaden special purpose vehicle. Leissner not only approached Siazon and solicited his investment but "purport[ed] to act" with Siazon's "interests in mind." *See Perry*, 900 P.2d. at 338. Having gained the "special trust" of Siazon, Leissner treated the shares as his own and failed to segregate 561,768 Celsius shares that belonged to Siazon, and it would be inequitable for Leissner—and now the government—to retain title to the 561,768 Celsius shares promised to Siazon. *See Bemis*, 967 P.2d at 442 ("Jack's retention of legal title of the funds that he promised to his sons in the divorce agreement was inequitable."). Whether the shares were procured in late-2016 or thereafter, a constructive trust over the 561,768 Celsius shares arose "at the time of the transaction at issue." *See In re Lemons & Assoc., Inc.*, 67 B.R. 198, 212 (D. Nev. 1986) (applying Nevada law) ("a constructive trust reverts back in time"); *cf. infra* 14 (discussing traceability).

### c. *A Constructive Trust Effectuates Justice*

For the foregoing reasons, a constructive trust is "essential to the effectuation of justice" to prevent Leissner, or the government, which now stands in Leissner's shoes, "from benefiting from [his] inequitable act—the wrongful retention of" Siazon's Celsius shares for purposes of satisfying his forfeiture obligations. *See Bemis*, 967 P.2d at 442; *see also Locken*, 650 P.2d at 805 (holding that it would be a "continuing injustice" to allow one party to retain property which was acquired through the abuse of a confidential relationship).

### d. *Siazon's Interest Is "Superior" to the Government's Interest*

Siazon has an equitable interest in the 561,768 Celsius shares via a constructive trust. Accordingly, his interest in those shares is superior to the government's interest in the Seized Celsius Shares.

13

Under § 853(c), the government's interest in seized assets ordinarily "vests" at the time of the criminal offense. Nonetheless, even where a petitioner "could certainly claim no" legal interest "at the time of the defendant's offense," the Second Circuit has recognized that he may hold a superior claim to seized property under § 853(n)(6)(A) where the criminal defendant's conduct "gave rise to a constructive trust". *Watts*, 786 F.3d at 168 (citing *Willis Mgmt.*, 652 F.3d at 245). As a matter of law, "a constructive trust reverts back in time" and is "declaratory of the rights of the injured party at the time of the transaction at issue." *In re Lemons & Assoc.*, 67 B.R. at 212 (applying Nevada law). "While it is true that a court evaluates the equities after the fact, if the circumstances are such that a constructive trust should be recognized, the defendant never truly acquired an interest in the property at issue and only held it as a trustee for the beneficiaries." *Willis Mgmt.*, 652 F.3d at 244.

In other words, "if a constructive trust properly should be imposed on particular property that was in the possession of the defendant, ***it was never truly the defendants' property and is not subject to forfeiture*** to the United States in the first instance." *Id.* at 245 (emphasis added). Thus, while petitioners ordinarily contend with the "relation-back" doctrine, it is settled in this Circuit that a constructive trust confers "an equitable interest in the property superior to . . . the government under § 853(c)." *Watts*, 786 F.3d at 168 (cleaned up). That is the case here.

For all these reasons, as a matter of law, the 561,768 Celsius shares vested to Siazon the moment they were procured and they are not subject to forfeiture under 21 U.S.C. § 853. *See id.*; *Williams Mgmt.*, 652 F.3d at 242; *e.g.*, *United States v. Vilar*, 2021 WL 4504699, at *4 (S.D.N.Y. Sept. 30, 2021). The fact that those shares may have been comingled with other shares does not defeat Siazon's claim. Courts in this Circuit recognize third-party interests via constructive trust claims in ancillary proceedings even where the commingling of funds "complicates the tracing analysis." *See*, *e.g.*, *id.* at *5-6. It may be "difficult, if not impossible, . . . to draw a straight line from specific investment money to particular assets." *Id.* But for Siazon's claim, "the law does not require such rigorous tracing." *See id.*; *see also United States v. Ovid*, 2012 WL 2087084, *7-

14

9 (E.D.N.Y. June 8, 2012) (denying motion to dismiss petition asserting interest via constructive trust, notwithstanding difficulties tracing funds and existence of multiple victims).

### C. It Would Be Inequitable to Deny Siazon's Claim

"The purposes of the forfeiture penalty are to punish, deter and disempower criminals, aims which are not furthered by taking an innocent owner's share." *Pacheco*, 393 F.3d at 355 (internal citations omitted). As the Second Circuit has stressed, the forfeiture penalty does not sanction "undeserved windfall[s]" of any kind. *Id.* Over the government's objection, the Second Circuit has held that partial forfeitures, where appropriate, are required by law, to protect an innocent third party's interest. *Id.*; *see also Egan*, 811 F. Sup. 2d at 840 (rejecting the government's argument that it should allow for the seizure of property belonging to third parties "in order to aid in the compensation of . . . victims because to do so would be more 'fair' in the Government's eyes"). Simply put, a criminal defendant may not forfeit property "if the property is not [his] own." *United States v. Schwimmer*, 968 F.2d 1570, 1580-81 (2d Cir. 1992); *accord United States v. Nolasco,* 354 F. Appx. 676, 680 (3d Cir. 2009) (citing *United States v. Soreide,* 461 F.3d 1351, 1354 (11th Cir.2006)) ("Ownership is the only relevant issue in a[n] ancillary proceeding."); *see also Egan*, 811 F. Supp. 2d at 840 (same).

Under the plain language of the criminal forfeiture statute, "any third party with a legal interest in property superior to the defendant's may recover that property." *Id.* Therefore, as a matter of law, this Court must recognize Siazon's legal interest in the 561,768 Celsius shares and modify the Preliminary Order of Forfeiture accordingly, so that his rights may be restored.

### IV. CONCLUSION

Wherefore, Petitioner Siazon respectfully requests that the Court set this matter for hearing and adjudication, and find as follows:

1. That Petitioner Siazon owns 561,768 of the Seized Celsius Shares by virtue of his status as a bona fide purchaser for value or, in the alternative via a constructive trust in his favor;

15

2. That the Court shall amend the Preliminary Order of Forfeiture as entered on March 3, 2023, to exclude 561,768 of the Seized Celsius Shares which belong to Petitioner Siazon by virtue of his status as a bona fide purchaser for value or, in the alternative, via a constructive trust.

Dated: May 22, 2023

Respectfully submitted,

MAYER BROWN LLP

By: */s/ Gina M. Parlovecchio*

Gina M. Parlovecchio
Max Ian Fiest
*Attorneys for Third-Party Petitioner Ken Siazon*

## **VERIFICATION**

I, Ken Siazon, have read the foregoing Petition of Third Party Ken Siazon for a Hearing to Adjudicates Its Interest in Forfeited Property Under 21 U.S.C. § 853 and know the contents thereof; I certify that the same is true and of my own knowledge.

I declare under the penalty of perjury, the foregoing is true and correct.

Executed on May 22, 2023, in Singapore.

_____
Ken Siazon