DGR:DAS/BDM/TRP
F. #2016R00467

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In Re Forfeiture Order of Tim Leissner, et al. 23-mc-1505 (MKB)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PETITION FOR HEARING TO ADJUDICATE
THIRD PARTY CLAIM OF RUSSELL SIMMONS ON BEHALF OF HIMSELF AND
DERIVATIVELY ON BEHALF OF NU HORIZONS INVESTMENT GROUP

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Drew G. Rolle
Dylan A. Stern
Brian D. Morris
Tanisha R. Payne
Assistant U.S. Attorneys
(718) 254-7000

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... ii

**PRELIMINARY STATEMENT** .......... 1

**FACTUAL BACKGROUND** .......... 2

**PROCEDURAL HISTORY** .......... 6

**LEGAL STANDARDS** .......... 9

**ARGUMENT** .......... 13

- **I. The Petition Should Be Dismissed Because It Fails to Assert a Legal Interest in the Celsius Shares Sufficient to Confer Standing on the Petitioner.......... 13**
  - ***A. Petitioner Lacks a Legal Interest in the Celsius Shares Because Members of a Limited Liability Company Have No Property Interest in Assets Held by the Entity .......... 13***
  - ***B. The Petitioner Lacks a Legal Interest in Nu Horizons Because, Under the Documentation Relied Upon by the Petitioner, Any Interest Was Conveyed Away..........16***
  - ***C. Petitioner's Attempt to Assert a Legal Interest in the Celsius Shares Derivatively on Behalf of New Horizons Is Improper and Deficient..... 17***
- **II. The Petition Should Be Dismissed Because Petitioner Cannot Demonstrate a Superior Legal Interest in the Celsius Shares Under Section 853(n)(6) ........ 18**
  - ***A. The Petitioner Cannot Demonstrate Priority of Ownership Over the Celsius Shares at the Time of the Criminal Offenses Under Section 853(n)(6)(A)*** .......... *19*
  - ***B. The Petitioner Cannot Demonstrate that He Is a Bona Fide Purchaser for Value Under Section 853(n)(6)(B)*** .......... *20*
    1. Neither Petitioner Nor Nu Horizons Qualify as a "Purchaser" of the Celsius Shares Within the Meaning of Section 853(n)(6)(B). 20
    2. Nu Horizons Had Reasonable Cause To Believe The Celsius Shares Were Forfeitable.......... 21

**CONCLUSION** .......... 22

# TABLE OF AUTHORITIES

## Cases

*Bird v. Wilmington Soc. of Fine Arts*,
43 A.2d 476 (1945) .......... 14

*Ciminelli v. United States*,
598 U.S. 306 (2023) .......... 14

*Conley v. Gibson*,
355 U.S. 41 (1957) .......... 13

*Design Strategies Inc. v. Davis*,
355 F. Supp. 2d 715 (S.D.N.Y. 2005) .......... 14

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) .......... 13

*DSI Assoc. LLC v. United States*,
496 F.3d 175 (2d Cir. 2007) .......... 10

*Pacheco v. Serendensky*,
393 F.3d 348 (2d Cir. 2004) .......... 12, 20

*Rhode Island Hosp. Trust Co. v. Doughton*,
270 U.S. 69 (1926) .......... 14

*Scalisi v. Fund Asset Mgmt., L.P.*,
380 F.3d 133 (2d Cir. 2004) .......... 18

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) .......... 13

*Swartz Family Trust*,
57 F.4th .......... 16

*United States v. 101 Houseco, LLC*,
22 F.4th 843 (9th Cir. 2022) .......... 21, 22

*United States v. 479 Tamarind,
Dr.*, 2011 WL 1045095 (S.D.N.Y. Mar. 11, 2011) .......... 14, 15

*United States v. Ackerman*,
2023 WL 3568654 (S.D.N.Y. May 18, 2023) .......... 21

*United States v. Amiel*,
995 F.2d 367 (2d Cir. 1993) .......... 10

*United States v. BCCI Holdings (Lux.), S.A.*,
69 F. Supp. 36 (D.D.C. 1999) .......... 11

*United States v. BCCI Holdings (Lux.), S.A.*,
980 F. Supp. 16 (D.D.C. 1997) .......... 12

*United States v. BCCI Holdings (Luxembourg), S.A.*,
916 F. Supp. 1276 (D.D.C.1996) .......... 13

*United States v. Davis*,
2022 WL 313437 (N.D. Tex. Feb. 2, 2022) .......... 15, 16, 17

*United States v. Dreier*,
952 F. Supp.2d 582 (S.D.N.Y. 2013) .......... 21

*United States v. Dupree*,
781 F. Supp.2d 115 (E.D.N.Y. 2011) .......... 14

*United States v. Eldick*,
223 Fed. App'x 837 (11th Cir. 2007) .............................................................................. 20
*United States v. Gilbert*,
244 F.3d 888 (11th Cir. 2001) ....................................................................................... 10
*United States v. Harris*,
246 F.3d 566 (6th Cir. 2001) ......................................................................................... 20
*United States v. Hooper*,
229 F.3d 818 (9th Cir. 2000) ......................................................................................... 19
*United States v. Huntington National Bank*,
682 F.3d 429 (6th Cir. 2012) ......................................................................................... 20
*United States v. Lavin*,
942 F.2d 177 (3d Cir. 1991)........................................................................................... 20
*United States v. Madoff*,
2012 WL 1142292 (S.D.N.Y. Apr. 3, 2012).................................................................. 13
*United States v. Magness*,
125 F. Supp. 3d 447 (W.D.N.Y. 2015)................................................................... 15, 16
*United States v. McHan*,
345 F.3d 262 (4th Cir. 2003) ......................................................................................... 10
*United States v. New Silver Palace Restaurant*,
810 F. Supp. 440 (E.D.N.Y. 1992) ................................................................................ 14
*United States v. Porchay*,
533 F.3d 704 (8th Cir. 2008) ......................................................................................... 10
*United States v. Puig*,
419 F.3d 700 (8th Cir. 2005) ......................................................................................... 10
*United States v. Real Property Associated with First Beneficial Mortgage Co.*,
3:08-cv-00285, 2009 WL 1035233 (W.D.N.C. Apr. 16, 2009)..................................... 15
*United States v. Ribadeniera*,
105 F.3d 833 (2d Cir. 1997)..................................................................................... 11, 12
*United States v. Salti*,
579 F.3d 656 (6th Cir. 2009) ......................................................................................... 12
*United States v. Soreide*,
461 F.3d 1351 (11th Cir. 2006) ..................................................................................... 11
*United States v. Strube*,
58 F. Supp. 2d 576 (M.D. Pa. 1999) .............................................................................. 11
*United States v. Swartz Family Trust*,
57 F.4th 505 (2d Cir. 2023) ........................................................................................... 15
*United States v. Timley*,
507 F.3d 1125 (8th Cir. 2007) ................................................................................ 11, 12, 19
*United States v. Two Bank Accounts*,
Nos. 1:06-cv-04016 & 1:06-cv-04005, 2008 WL 5431199 (D.S.D. Dec. 31, 2008)................ 15
*United States v. Wallach*,
935 F.2d 445 (2d Cir. 1991)........................................................................................... 14
*United States v. Warshak*,
2011 WL 2450991 (6th Cir. Mar. 30, 2011)................................................................... 20
*United States v. White*,
306 Fed. App'x 838 (5th Cir. 2007) ............................................................................... 21

*Willis Mgmt., Ltd. v. United States*,
652 F.3d 236 (2d Cir. 2011)........................................................................................ 13

**Statutes**

15 U.S.C. §§ 78dd-1 ........................................................................................................ 7
18 U.S.C. § 371 ............................................................................................................ 6, 7
18 U.S.C. § 981(a)(1)(C) ................................................................................................ 6
18 U.S.C. § 982(a)(1)...................................................................................................... 6
18 U.S.C. § 982(b)(1) ..................................................................................................... 6
18 U.S.C. § 1956(h) .................................................................................................... 6, 7
18 U.S.C. § 1963(l)....................................................................................................... 10
18 U.S.C. §§ 981(a)(1)(A) .............................................................................................. 7
18 U.S.C. §§ 1956........................................................................................................... 7
21 U.S.C. 853(n) ........................................................................................................... 17
21 U.S.C. § 853(c) ........................................................................................................ 19
21 U.S.C. § 853(n)(2) ........................................................................... 9, 10, 11, 18
21 U.S.C. § 853(n)(3) ................................................................................................... 11
21 U.S.C. § 853(n)(6) ............................................................................................. 10, 12
21 U.S.C. § 853(p) .......................................................................................................... 6
28 U.S.C. § 2461(c) ..................................................................................................... 6, 9
Section 853(n)(6)(B)...................................................................................................... 18

**Rules**

Fed. R. Civ. P. 23.1(b) ................................................................................................. 18
Fed. R. Civ. P. 32.2(c)(1)(A) ........................................................................................ 12
Fed. R. Crim. P. 32.2 .................................................................................................... 10
Fed. R. Crim. P. 32.2(c).............................................................................................. 9, 17
Fed. R. Crim. P. 32.2(c)(1)(B) ...................................................................................... 12

## PRELIMINARY STATEMENT

The United States of America, by and through its undersigned counsel, respectfully submits this memorandum in support of its motion, pursuant to Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure, to dismiss the third-party petition filed by Russell Simmons (the "Petitioner") on behalf of himself and derivatively on behalf of Nu Horizons Investment Group LLC (the "Petition"). The Petition seeks to challenge the forfeiture of 3,325,942 shares of stock in Celsius Holdings, Inc. (the "Celsius Shares"), which are the subject of a Preliminary Order of Forfeiture entered against defendant Tim Leissner in the underlying criminal case pending before the Court, captioned *United States v. Tim Leissner*, 18-CR-439 (MKB).

The Petition should be dismissed because it fails to assert a "legal interest" in the Celsius Shares sufficient to confer standing on the Petitioner, as required by Title 21, United States Code, Section 853(n)(2). In particular, the Petitioner lacks a legal interest in the Celsius Shares that he alleges were acquired by Nu Horizons Investment Group LLC ("Nu Horizons"), because, under basic tenets of corporate law, the shareholders of a corporation or members of a limited liability company have no property interest in assets held by the entity. In addition, as reflected in documentation relied upon by the Petitioner, the Petitioner conveyed away any interest that he allegedly held in Nu Horizons. Further, the Petitioner's attempt to assert a legal interest in the Celsius Shares derivatively on behalf of New Horizons is without any statutory or other basis in the context of a criminal forfeiture ancillary proceeding and further fails to meet the heightened pleading standards required of corporate shareholders to commence a derivative suit.

Aside from the Petitioner's lack of standing, the Petition also fails to state a claim on the merits because the Petitioner cannot demonstrate a superior interest in the Celsius Shares under Section 853(n)(6). To demonstrate such an interest, the Petitioner would have to establish that he had priority of ownership over the Celsius Shares at the time of the offenses that gave rise to their forfeitability under Section 853(n)(6)(A) or that he subsequently acquired the Celsius Shares as a bona fide purchaser for value under Section 853(n)(6)(B). But the Petitioner cannot prove either. The Petitioner cannot prove priority of ownership because the criminal conspiracy of conviction concluded well before the Petitioner's alleged interest in the Celsius Shares arose. And the Petitioner cannot prove that he was a bona fide purchaser for value because neither he, nor Nu Horizons for that matter, qualify as a "purchaser" that gave "value" in exchange for the Celsius Shares. The Petition only alleges an acquisition of the Celsius Shares by Nu Horizons—not by the Petitioner—with payment from another entity arranged by defendant Leissner. Nor can the Petitioner establish, as he must under Section 853(n)(6)(B), that Nu Horizons was reasonably without cause to believe the Celsius Shares were forfeitable. Since the Petition alleges defendant Leissner was a manager of Nu Horizons and the 51% percent member of the entity, Leissner's knowledge as to the forfeitability of the Celsius Shares, which arose from the criminal offenses to which he pleaded guilty, is imputed to Nu Horizons.

Accordingly, the Petition should be dismissed for lack of standing and failure to state a claim.

## FACTUAL BACKGROUND

### A. The Criminal Scheme

1Malaysia Development Berhad ("1MDB") was a strategic investment and development company wholly owned and controlled by the government of Malaysia. The

International Petroleum Investment Company ("IPIC") was a sovereign wealth fund wholly owned by the government of Abu Dhabi.

In 2012 and 2013, 1MDB engaged in three bond transactions, Project Magnolia, Project Maximus and Project Catalyze (the "1MDB Bond Transactions"), which collectively raised more than $6 billion for 1MDB. The 1MDB Bond Transactions were either directly or indirectly guaranteed by IPIC. The purpose of the funds raised by the 1MDB Bond Transactions was to support energy- and infrastructure-related projects that would benefit the Malaysian people.

The Goldman Sachs Group, Inc. ("Goldman Sachs"), together with its subsidiaries and affiliates (collectively, "Goldman"), facilitated the 1MDB Bond Transactions. During this period, defendant Tim Leissner was a partner at Goldman who worked on the bond deals. Leissner agreed with others, including Ng Chong Hwa, also known as "Roger Ng" ("Ng"), another Goldman employee, and Low Taek Jho, also known as "Jho Low" ("Low"), a Malaysian financier, to pay bribes to foreign officials in Malaysia and Abu Dhabi, including officials at 1MDB and IPIC. In exchange for these corrupt payments, the 1MDB officials agreed to hire Goldman to orchestrate the 1MDB Bond Transactions. For its work on the 1MDB Bond Transactions, Goldman ultimately earned more than $600 million in fees and revenue.

Ng, Leissner, Low and other co-conspirators engaged in a money laundering conspiracy in connection with the 1MDB Bond Transactions. The co-conspirators concealed the source of the criminal proceeds that were used to make bribe and kickback payments, including through the use of shell companies and shell bank accounts in the names of relatives and associates, and through false statements to banks; promoted the bribery conspiracy by

transferring large sums of money abroad; and engaged in transactions using criminal proceeds in excess of $10,000 in the United States. (GX[1]-151 to GX-159).

In total, Ng, Leissner and Low conspired for billions of dollars that were raised through the 1MDB Bond Transactions to be laundered into accounts that Low personally controlled. From there, the government traced approximately $1.6 billion in bribes that were paid to officials at 1MDB and IPIC, and other governments officials in Malaysia and Abu Dhabi, and has traced more than $1 billion in kickbacks paid to Ng, Leissner, Low and others involved in the scheme. For their roles in the conspiracies, Low and his associates received more than $1.42 billion, Leissner received approximately $73.4 million and Ng received $35.1 million.

B. Criminal Proceeds Used to Purchase the Celsius Shares

Leissner used his profits from the scheme to fund investments and purchases, including the purchase of the Celsius Shares, as further detailed below.

First, in anticipation of receiving millions of dollars in kickbacks from the 1MDB Bond Transactions, the co-conspirators formed a network of bank accounts designed to conceal their connection to the funds, including an account held in the name of "Blackstone Asia Real Estate Partners" (the "Blackstone Account"), a bank account controlled by one of Low's associates, (GX 151); and an account held in the name of "Capital Place Holdings" (the "Capital Place Account") which listed Leissner's wife, Judy Chan Leissner, as the authorized user. The Blackstone Account was used to make several corrupt payments to government officials involved in the 1MDB Bond Transactions and to pay kickbacks to the co-conspirators, including Leissner. On or about and between approximately 2012 and 2013, payments of over $137,500,000 were made from the Blackstone Account to the Capital Place Account, which

---

[1] "GX" denotes government exhibits admitted at trial in the case captioned *United States v. Ng Chong Hwa*, 18-CR-538 (MKB).

Leissner subsequently used to distribute bribe payment and kickback payments, and to receive his share of the illegal proceeds. Specifically, the following transfers took place: approximately $35,000,000 on or about June 11, 2012; approximately $16,960,000 on or about July 9, 2012; approximately $10,500,000 on or about December 6, 2012; approximately $5,000,000 on or about December 19, 2012; approximately $5,000,000 on or about January 21, 2013; and approximately $65,075,000 on or about July 3, 2013.

Following these transfers into the Capital Place Account of illegal proceeds, on or about June 5, 2014, a transfer in the amount of approximately $6,818,975 in United States currency was made from the Capital Place Account to an account held in the name of a professional sports team. The investigation revealed that these funds represented a purported "loan" in the amount of five million Euros from Leissner to one of his business associates ("Individual-1"). The source of the loan to Individual-1 was therefore illegal proceeds from the above-described bribery and money laundering scheme.

The investigation further revealed that in or about April 2015, Individual-1 repaid the aforementioned loan to Leissner by remitting the owed funds to various bank accounts designated by Leissner. One of the payments included a wire transfer on or about April 21, 2015 in the amount of approximately $3,000,000 from "Asian Sports Ventures HK" to Celsius Holdings, Inc., a company engaged in the development and sale of an energy drink. Leissner sat on the Board of Directors of Celsius, and Ng was an officer of the company. The investigation further revealed that the aforementioned wire transfer was used as payment for 3,370,787 shares of Celsius stock, which were issued to Nu Horizons. Accordingly, the Celsius stock that was issued to Nu Horizons was obtained using proceeds from the 1MDB bond scheme.

## PROCEDURAL HISTORY

A. The Criminal Case and Forfeiture Proceeding

Leissner was arrested and arraigned on a Complaint filed in United States District Court for the Eastern District of New York in the case captioned *United States v. Tim Leissner*, 18-CR-439 (MKB) (the "Leissner Criminal Case"). On or about June 14, 2018, the Honorable Steven M. Tiscione, United States Magistrate Judge for the Eastern District of New York, entered an Order setting a pretrial release bond for Leissner (the "June 14, 2018 Bond") in the amount of $20,000,000, secured by shares of Celsius stock held at JP Morgan Chase Bank account in the name of Leissner's wife, Kimora Lee Simmons-Leissner ("Lee") (the "JPMC Account"), which account, at that time, held 3,972,659 shares of Celsius stock.

On or about August 28, 2018, Leissner pleaded guilty to an Information charging him with conspiracy to violate the Foreign Corrupt Practices Act ("FCPA"), in violation of 18 U.S.C. § 371 (Count One); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Two). The Information provided notice of the government's intent to seek forfeiture of: (i) any property real or personal, constituting or derived from, proceeds obtained directly or indirectly as a result of the conspiracy to violate the FCPA, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and (ii) any and all property, real or personal involved in the money laundering conspiracy, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

On November 1, 2018, the Court entered a Preliminary Order of Forfeiture against Leissner that provided for a forfeiture money judgment in the amount of forty-three million seven hundred thousand dollars and zero cents ($43,700,000.00) (the "Forfeiture Money Judgment"), pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b)(1). See Leissner Criminal Case, ECF No. 21.

On or about March 5, 2021, the Honorable Peggy Kuo, United States Magistrate Judge for the Eastern District of New York, issued a warrant authorizing the seizure of 3,370,787 shares of Celsius stock from the JPMC Account, finding probable cause to believe that the shares were subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 982(a)(1), as: (i) property constituting or derived from proceeds traceable to violations of the FCPA, codified at 15 U.S.C. §§ 78dd-1, et seq., and a conspiracy to violate the FCPA, in violation of 18 U.S.C. § 371; and (ii) property involved in money laundering, in violation of 18 U.S.C. §§ 1956 and 1957.

On or about March 3, 2023, the Court entered an Amended Preliminary Order of Forfeiture against Leissner imposing the Forfeiture Money Judgment, in addition to directing the forfeiture of all right, title and interest in the Celsius Shares as: (a) property, real or personal, involved in the violation of 18 U.S.C. § 1956(h), or property traceable to such property; and (b) property, real or personal, constituting or derived from proceeds traceable to a violation of 18 U.S.C. § 371. See Leissner Criminal Case, ECF No. 68.

Following the entry of the Amended Preliminary Order, the government took steps to commence the ancillary proceeding by beginning publication of notice of the forfeiture and sending notice to known potential claimants with an interest in the Celsius Shares. Notice of the forfeiture was posted on an official government website (www.forfeiture.gov) for a 30-day period that began on May 2, 2023. On May 5, 2023, a petition was filed on behalf of claimant Lee seeking to contest the forfeiture of certain of the Celsius Shares. See ECF No. 3. In addition, on the same date, a petition was filed on behalf of claimant Ng seeking to contest the forfeiture of the certain of the Celsius Shares. See ECF No. 4. Further, on the same date, the instant Petition was filed by Petitioner on behalf of himself and derivatively on behalf of Nu Horizons seeking to contest the forfeiture of the Celsius Shares. See ECF No. 5. On May 22,

2023, a petition was filed on behalf of claimant Ken Siazon seeking to contest the forfeiture of certain of the Celsius Shares. See ECF No. 8.

B. The Instant Petition

The Petitioner contends that his interest in the Celsius Shares stems from his 49% ownership interest in Nu Horizons, the entity to which the Celsius Shares were issued. According to the Petitioner, he formed Nu Horizons, an LLC, under the laws of the state of Delaware in or about 2011. *See* Petition ¶¶ 16, 34. As alleged in the Petition, on April 20, 2015, Nu Horizons and other investors entered into a Common Stock Purchase Agreement for 3,370,787 shares of stock in Celsius Holdings, Inc. for a purchase price of $3,000,000. *See* Petition ¶ 22. In addition, Leissner allegedly arranged to have the $3 million paid via a wire payment from an account of "Asian Sports Ventures HK" in exchange for which 3,370,787 shares of stock in Celsius Holdings, Inc., including the Celsius Shares, were issued to Nu Horizons. *See* Petition ¶ 23.

According to the Petition, the ownership structure of Nu Horizons was set forth in the LLC Operating Agreement of Nu Horizons entered into by the Petitioner, Lee and Leissner. *See* Petition ¶ 35. The Petition further alleges that, under the Nu Horizons Operating Agreement, the Petitioner and Simmons were managers of Nu Horizons, with Leissner owning a 51% share of the LLC through his entity, Cuscaden Capital Limited, and the Petitioner owning a 49% share of the LLC. *See* Petition ¶ 35.

As alleged in the Petition, on or about April 26, 2018, the Petitioner and Lee signed a letter of intent (the "LOI") memorializing the Petitioner's intent to sell all of his interests in Nu Horizons to Keyway Pride, a company owned by Lee.[2] *See* Petition ¶ 42. As

---

[2] As explained at the criminal trial of Petitioner Ng, Keyway Pride was one of several shell companies owned on paper by Lee but controlled by Leissner. Ng Tr. 2290-91. Leissner used

further alleged in the Petition, on or about May 25, 2018, the Petitioner, Keyway Pride, Rush Digital Media, LLC (a company founded by the Petitioner), and Nu Horizons entered into a Stock Transfer Agreement (the "Stock Transfer Agreement"), which directed the transfer of the Petitioner's "entire Ownership Percentage . . . in Nu Horizons," as well as his Class A Common Units of Rush Digital Media, LLC, to Keyway Pride "at an aggregate purchase price of $14,250,000" *See* Petition ¶¶ 49, 51. Finally, the Petition alleges that in or about 2018, the Petitioner, Lee, Keyway Pride, and Erok Ventures LLC (another company controlled by Lee) entered into a superseding Member Interest Transfer Agreement that nullified and voided the LOI and Stock Transfer Agreement, thus preserving the Petitioner's interest in Nu Horizons and entitling him to certain of the Celsius Shares. *See* Petition ¶ 61.

## LEGAL STANDARDS

### A. Statutory Framework of the Ancillary Proceeding

Title 21, United States Code, Section 853(n) governs third-party claims to property forfeited in a criminal case. Pursuant to Section 853(n), "[a]ny person, other than the defendant, asserting a *legal interest* in property which has been ordered forfeited" may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2) (emphasis added). Any timely challenges by a third party to an order of forfeiture are resolved in a post-trial ancillary proceeding. *See* 28 U.S.C. § 2461(c) (incorporating procedures set forth in 21 U.S.C. § 853 into criminal forfeiture proceedings); Fed. R. Crim. P. 32.2(c).

---

those shell companies to hide assets from law enforcement investigating the 1MDB crimes, in Leissner's words, "to protect those assets from investigations that were happening around the world." Id. at 2290-91, 2296-97.

The sole purpose of the ancillary proceeding is to determine ownership of a forfeited asset. *See DSI Assoc. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (holding that general unsecured creditor could not collect debt by asserting claim in ancillary proceeding); *United States v. Porchay*, 533 F.3d 704, 710 (8th Cir. 2008) ("Section 853(n) does not give a third party the right to challenge the legality of the seizure . . . ."); *United States v. McHan*, 345 F.3d 262, 275-76 (4th Cir. 2003) (holding that petitioner in ancillary proceeding, which is akin to equitable quiet title proceeding, has no Seventh Amendment right to jury trial); *United States v. Gilbert*, 244 F.3d 888, 909 (11th Cir. 2001) (characterizing ancillary proceeding conducted pursuant to analogous RICO forfeiture provision, 18 U.S.C. § 1963(l), as quiet title proceeding that enables third parties to file claims to establish their ownership interest in property forfeited to government). The ancillary proceeding does not concern the forfeitability of property; its only purpose is to determine whether any third party has a legal interest in the forfeited property. Fed. R. Crim. P. 32.2, Notes of Advisory Committee on 2000 Amendments.

If the forfeited property belongs to the third party, then the property must be stricken from the order of forfeiture; however, if the property does not belong to the third party, then the preliminary order of forfeiture becomes final and the United States becomes the exclusive titleholder to the property. *See* 21 U.S.C. § 853(n)(6) and (7); *United States v. Puig*, 419 F.3d 700, 703 (8th Cir. 2005).

Courts generally require "strict compliance" with the rules and deadlines governing forfeiture proceedings. *See United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993) (collecting cases applying "strict compliance" standard). A third-party petition must be filed within 30 days of final publication or the claimant's receipt of notice of the order of forfeiture, whichever is earlier. 21 U.S.C. § 853(n)(2). The petition must set forth the legal basis for the

claimed interest in property subject to forfeiture. 21 U.S.C. § 853(n)(3); *see also United States v. BCCI Holdings (Lux.), S.A.*, 69 F. Supp. 36, 55 (D.D.C. 1999) (collecting cases in which petitions filed under Section 1963(l) were dismissed for failure to identify nature of interest claimed). All grounds for recovery must be set forth within the petition, and a claimant may not later amend the petition to assert additional grounds for relief. *See, e.g.*, *United States v. Soreide*, 461 F.3d 1351, 1355 (11th Cir. 2006) (holding that claims not asserted in petition were statutorily time-barred); *United States v. Strube*, 58 F. Supp. 2d 576, 585 (M.D. Pa. 1999) (rejecting third-party claims as untimely because they were not raised in petition but first asserted in response to government's motion to dismiss).

In order to advance a claim in the ancillary proceeding, a third-party petitioner must first establish a "legal interest" in a particular asset within the meaning of 21 U.S.C. § 853(n)(2). *United States v. Ribadeniera*, 105 F.3d 833, 834-35 (2d Cir. 1997); *see also United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007) ("[A] party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate a legal interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture.") (citation omitted). Only after a claimant makes a threshold showing of standing under Section 853(n)(2) may a court reach the merits of a claim. *Timley*, 507 F.3d at 1130 n.2. If the claimant possesses no interest, the inquiry ends and the claim must be dismissed for lack of standing. *Id.* at 1130.

If a claimant demonstrates that he has standing, he must then prove the merits of his claim by demonstrating that he falls within one of two narrow categories of individuals for whom the governing forfeiture statute affords relief: (1) those who have priority of ownership over the forfeited property at the time of the offense under Section 853(n)(6)(A); or (2) those

who acquired the property subsequently as a bona fide purchaser for value under Section 853(n)(6)(B).[3] *Ribadeniera*, 105 F.3d at 834-35; *Timley*, 507 F.3d at 1130.

Rule 32.2(c) of the Federal Rules of Criminal Procedure provides that "in the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Civ. P. 32.2(c)(1)(A)*; see also* Fed. R. Crim. P. 32.2(c)(1)(B) (providing that court may permit discovery only "[a]fter disposing of any motion filed under Rule 32.2(c)(1)(A))"). Accordingly, the Court must address any motion challenging the sufficiency of the asserted "legal interest" before allowing discovery or conducting a hearing on the merits of the third-party claim. *United States v. Salti*, 579 F.3d 656, 664 (6th Cir. 2009).

B. Standard of Review

The ancillary proceeding, which closely resembles a civil action, is generally governed by the same procedures as those set forth in Federal Rules of Civil Procedure. *See, e.g.*, *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004) (commenting that civil procedures aid efficient resolution of claims in ancillary proceedings). In the context of an ancillary proceeding, a motion to dismiss a third-party petition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure may be granted if it appears that the claimant can prove no facts that would entitle the claimant to relief. *United States v. BCCI Holdings (Lux.), S.A.*, 980

---

[3] To prevail at this step, the petitioner must prove that: (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property. . . . ; or (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture. 21 U.S.C. § 853(n)(6).

F. Supp. 16, 20 (D.D.C. 1997) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also United States v. BCCI Holdings (Luxembourg), S.A.*, 916 F. Supp. 1276, 1282 (D.D.C.1996) ("If a third party fails to allege in [its] petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing . . . .") (citations omitted); *Willis Mgmt., Ltd. v. United States*, 652 F.3d 236, 241-42 (2d Cir. 2011) (to withstand motion to dismiss, petition must set forth "enough facts to state a claim to relief that is plausible on its face"). The Court must accept well-pleaded facts as true and construe the complaint liberally, granting a claimant the benefit of any reasonable inferences that can be derived from the facts alleged. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are pleaded as factual allegations. *Id.* (citation omitted); *United States v. Madoff*, 2012 WL 1142292, at *3 (S.D.N.Y. Apr. 3, 2012); *Willis Mgmt., Ltd.*, 652 F.3d at 242.

## ARGUMENT

### I. The Petition Should Be Dismissed Because It Fails to Assert a Legal Interest in the Celsius Shares Sufficient to Confer Standing on the Petitioner

The Petition fails to assert a "legal interest" in the Celsius Shares sufficient to confer standing on the Petitioner as required by Title 21, United States Code, Section 853(n)(2). Because the Petitioner has failed to make this necessary threshold showing, the Petition should be dismissed in its entirety.

#### A. Petitioner Lacks a Legal Interest in the Celsius Shares Because Members of a Limited Liability Company Have No Property Interest in Assets Held by the Entity

It is well established that shareholders of a corporate entity lack a legal interest in assets held by the entity. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities.

An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets . . . .") (citations omitted); *United States v. Wallach*, 935 F.2d 445, 462 (2d Cir. 1991) ("[S]hareholders do not hold legal title to any of the corporation's assets. Instead, the corporation—the entity itself—is vested with title."), *abrogated on other grounds by Ciminelli v. United States*, 598 U.S. 306 (2023); *United States v. Dupree*, 781 F. Supp.2d 115, 140 (E.D.N.Y. 2011); *see also Design Strategies Inc. v. Davis*, 355 F. Supp. 2d 715, 717 (S.D.N.Y. 2005) ("It is axiomatic that a corporation . . . is separate and distinct . . . from its owners and that a shareholder is not the corporation either in law or fact . . . ." (citations and quotations omitted); *United States v. 479 Tamarind Dr.*, 2011 WL 1045095, at *2 (S.D.N.Y. Mar. 11, 2011) ("[S]hareholders do not have an ownership interest in any specific property owned by th[e] corporation."); *United States v. New Silver Palace Restaurant*, 810 F. Supp. 440, 443 (E.D.N.Y. 1992) ("[S]hareholders are not legal owners or lienholders of the corporation's assets . . . .").[4]

The principle that shareholders do not have an interest in a corporation's assets applies equally to closely held companies and even extends to companies with a single shareholder. *Dupree*, 781 F. Supp. 2d at 140 (owner of limited liability company lacked

---

[4] The law of the State of Delaware, where Nu Horizons was incorporated, is no different:

> The owner of the shares of stock in a company is not the owner of the corporation's property. He has a right to his share in the earnings of the corporation, as they may be declared in dividends, arising from the use of all its property. In the dissolution of the corporation he may take his proportionate share in what is left, after the debts of the corporation have been paid and the assets are divided in accordance with the law of its creation. But he does not own the corporate property.

*Bird v. Wilmington Soc. of Fine Arts*, 43 A.2d 476, 483 (1945) (quoting *Rhode Island Hosp. Trust Co. v. Doughton*, 270 U.S. 69 (1926)).

property interest in funds seized from company's bank account); *United States v. Two Bank Accounts*, Nos. 1:06-cv-04016 & 1:06-cv-04005, 2008 WL 5431199, at *5 (D.S.D. Dec. 31, 2008) (one hundred percent shareholder "failed to demonstrate a sufficient interest in the bank accounts to create a case or controversy"); *United States v. Real Property Associated with First Beneficial Mortgage Co.*, No. 3:08-cv-00285, 2009 WL 1035233, at *4 (W.D.N.C. Apr. 16, 2009) ("The law cannot allow a sole corporate shareholder to disregard the corporate entity when it suits him and allow him the benefit of the corporate entity when he desires.").

The same rule holds true for members of a limited liability company, who lack a legal interest in assets held by the LLC. *United States v. Swartz Family Trust*, 57 F.4th 505, 516-17 (2d Cir. 2023) (member with interest in LLC that owned forfeited asset had no legal interest in asset itself) (citing *Asset Forfeiture Law in the United States* (3d ed. 2022), § 23-13(h)); *United States v. Magness*, 125 F. Supp. 3d 447, 449 (W.D.N.Y. 2015) (holder of one-half interest in limited liability company does not have one-half—or any—legal interest in company's assets); *United States v. Davis*, 2022 WL 313437, at *3 (N.D. Tex. Feb. 2, 2022) (managing member of limited liability company has no legal interest in the company's property, and a member's contribution of capital used to purchase property makes no difference).

Here, the Petitioner fails to assert a legal interest in the Celsius Shares. Taking the assertions in the Petition as true, Petitioner's alleged interest in the Celsius Shares stems from his claim to a 49% ownership interest in Nu Horizons, which Petitioner contends acquired title to the Celsius Shares in exchange for a $3 million payment wired from another entity that Leissner had arranged. *See* Petition ¶¶ 22-23, 36, 47, 64. As an LLC, Nu Horizons is an entity separate and distinct from its members; Petitioner has therefore failed to allege a legal interest in assets, such as the Celsius Shares, held by Nu Horizons. Accordingly, on this ground alone, the Petition

should be dismissed for lack of standing. *Swartz Family Trust*, 57 F.4th at 516-17 (holding that member holding interest in LLC that owned forfeited asset lacked standing to contest forfeiture of asset itself); *Magness*, 125 F. Supp. 3d at 449 (holder of interest in limited liability company lacked standing to contest forfeiture of assets owned by company); *Davis*, 2022 WL 313437, at *3 ("[M]embers of LLCs do not have standing to challenge the forfeiture of the LLC's assets.") (collecting cases);

B. <u>The Petitioner Lacks a Legal Interest in Nu Horizons Because, Under the Documentation Relied Upon by the Petitioner, Any Interest Was Conveyed Away</u>

As alleged in the Petition, on or about May 25, 2018, the Petitioner, Keyway Pride, Rush Digital Media, LLC, and Nu Horizons entered into the Stock Transfer Agreement, which directed the transfer of, among other assets, the Petitioner's entire ownership interest in Nu Horizons to Keyway Pride. *See* Petition ¶¶ 49, 51. On the same date, the Petitioner conveyed all of his interest in Nu Horizons as reflected in the assignment instrument executed by the Petitioner set forth in an exhibit to the Stock Transfer Agreement, which the Petitioner includes as part of his Petition (the "Assignment"). *See* Ex. A to Stock Transfer Agreement, ECF Dkt. #5-20. Specifically, the Assignment provides that "Transferor [defined as the Petitioner] hereby sells, assigns and transfers unto Transferee [defined as Keyway Pride] his entire Ownership Percentage . . . of Nu Horizons . . . ." *Id.*

The Petition alleges that the MITA, entered into by the Petitioner, Lee, Keyway Pride, and Erok Ventures LLC seven months later on December 17, 2018, included a provision that voided the Stock Purchase Agreement. *See* Petition, at ¶ 61; MITA, ECF Dkt. #5-22. The Petitioner contends that the legal effect of this provision in the MITA is to nullify the transactions contemplated by the Stock Transfer Agreement including the Petitioner's conveyance, pursuant to the Assignment, of all of his interest in Nu Horizons to Keyway Pride.

*Id.* The Petitioner is wrong. While the provision of the MITA relied upon by the Petitioner may have voided the covenants, including payment obligations, and warranties set forth in the Stock Transfer Agreement, the conveyance of all of Petitioner's interest in Nu Horizons to Keyway Pride under the Assignment was left undisturbed in the absence, for example, of another assignment instrument executed on behalf of Keyway Pride that reconveyed the Petitioner's prior interest in Nu Horizons back to the Petitioner. The Petition is devoid of any allegations that Keyway Pride reconveyed the Petitioner's prior interest in Nu Horizons back to him, which is fatal to the Petitioner's attempt to assert a legal interest in Nu Horizons.

C. Petitioner's Attempt to Assert a Legal Interest in the Celsius Shares Derivatively on Behalf of New Horizons Is Improper and Deficient

Perhaps recognizing his lack of standing, Petitioner also attempts to assert a legal interest in the Celsius Shares derivatively on behalf of New Horizons. *See* Petition at 1. As a threshold matter, there is no statutory or other basis to assert a legal interest in forfeited property on a derivative basis in the context of a criminal forfeiture ancillary proceeding. Petitioner's attempt to assert a legal interest in the Celsius Shares derivatively fails on this basis alone. However, even if there were a legal basis for the assertion of an interest in the ancillary proceeding on a derivative basis, the Petition would fail to meet the heightened pleading standards required to maintain a derivative action.

As an initial matter, neither the statute nor the rule that governs the conduct of criminal forfeiture ancillary proceedings authorize the assertion of a legal interest in forfeited property derivatively on behalf of another. 21 U.S.C. 853(n); Fed. R. Crim. P. 32.2(c). The Petition cites to no authority for the assertion of such an interest, and the government is not aware of any court that has granted a third-party petition asserting an interest derivatively. The Court should therefore reject the Petitioner's attempt to assert an interest in the Celsius Shares

derivatively, which would dispense of the long-standing threshold requirement for third parties to establish standing in the ancillary proceeding by asserting a legal interest in property subject to forfeiture. See 21 U.S.C. § 853(n)(2).

Even if the Court was inclined to allow the Petitioner to assert an interest in the Celsius Shares derivatively on behalf of Nu Horizons, the Petition would still fail to meet the heightened pleading standards required to maintain a derivative action. Rule 23.1 of the Federal Rules of Civil Procedure, which governs derivative actions in the context of civil suits commenced by corporate shareholders, requires that a shareholder "state, *with particularity*: (A) any effort . . . to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or making the effort." Fed. R. Civ. P. 23.1(b) (emphasis added). Accordingly, "in the usual case, a shareholder seeking to assert a claim on behalf of the corporation must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired." *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004). The Petition is devoid of any such showing here. Accordingly, the Petitioner's attempt to assert a legal interest in the Celsius Shares derivatively fails on this basis as well.

II. The Petition Should Be Dismissed Because Petitioner Cannot Demonstrate a Superior Legal Interest in the Celsius Shares Under Section 853(n)(6)

Aside from the Petitioner's lack of standing, the Petition also fails on the merits because it fails to state a claim for which relief may be granted under Title 21, United States Code, Section 853(n)(6). Although the Petition does not specify whether the Petitioner seeks to assert an interest in the Celsius Shares under Section (n)(6)(A) or Section 853(n)(6)(B), it fails to state a claim under either provision, as the Petitioner cannot demonstrate priority of ownership over the Celsius Shares at the time of the offenses that gave rise to their forfeitability under

Section 853(n)(6)(A) and cannot demonstrate that the Celsius Shares were subsequently acquired as a bona fide purchaser for value under Section 853(n)(6)(B).

A. The Petitioner Cannot Demonstrate Priority of Ownership Over the Celsius Shares at the Time of the Criminal Offenses Under Section 853(n)(6)(A)

Under the "relation back doctrine" the government's interest in forfeited property "vests . . . upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c); *see also* *Timley*, 507 F.3d at 1130 ("Under the relation-back doctrine, title to the forfeited property vests in the United States at the time of the defendant's criminal act"). As set forth in the Information charging Leissner with FCPA and money laundering violations, the criminal conduct underlying the offenses for which he stands convicted, and that gave rise to the forfeiture of the Celsius Shares, occurred in or about and between January 2009 and October 2014. *See* Leissner Criminal Case, ECF No. 16. Thus, the government's interest in the Celsius Shares vested, at the very latest, by October 2014. Based on the facts set forth in the Petition, the Petitioner's alleged interest in the Celsius Shares arose, at the earliest, when the shares were acquired by Nu Horizons on or about April 21, 2015. *See* Petition ¶ 23. This date falls well *after* the period of Leissner's charged criminal activity, the point at which the government's interest in the Celsius Shares vested.

Moreover, a third-party petitioner like Russell Simmons can *never* establish a pre-existing interest under Section 853(n)(6)(A) in property, such as the Celsius Shares, that represents proceeds of crime because criminal proceeds come into existence only when a crime occurs. *See United States v. Hooper*, 229 F.3d 818, 821-22 (9th Cir. 2000) (holding that Section 853(n)(6)(A) can never be used to successfully challenge forfeiture of criminal proceeds, which by their very nature do not exist before commission of offense); *Timley*, 507 F.3d at 1130 ("As the court in *Hooper* explained, the proceeds of an offense do not exist before the offense is

committed, and when they come into existence, the government's interest under the relation-back doctrine immediately vests."); *United States v. Eldick*, 223 Fed. App'x 837, 840 (11th Cir. 2007) (following *Hooper*); *United States v. Warshak*, 2011 WL 2450991, at *2 (6th Cir. Mar. 30, 2011) (following *Hooper*). Accordingly, the Petitioner cannot show that he has priority of ownership over the Celsius Shares required for recovery under Section 853(n)(6)(A).

B. The Petitioner Cannot Demonstrate that He Is a Bona Fide Purchaser for Value Under Section 853(n)(6)(B)

Section 853(n)(6)(B), which creates a narrow exception to the relation-back doctrine, is derived from commercial law to protect innocent purchasers of forfeited property. *United States v. Huntington National Bank*, 682 F.3d 429, 434 (6th Cir. 2012); *see also United States v. Harris*, 246 F.3d 566, 575 (6th Cir. 2001) (bona fide purchaser provision comes from "hornbook commercial law"); *United States v. Lavin*, 942 F.2d 177, 185-86 (3d Cir. 1991) (same). In order to assert a valid claim to forfeited property under Section 853(n)(6)(B), a petitioner must (i) "be a 'bona fide purchaser for value' of the property who (ii) was 'reasonably without cause to believe the property was subject to forfeiture' at the time of purchase." *Pacheco*, 393 F.3d at 353 (quoting 21 U.S.C. § 853(n)(6)(B)). For the reasons discussed below, the Petitioner cannot satisfy either prong of the statute.

1. Neither Petitioner Nor Nu Horizons Qualify as a "Purchaser" of the Celsius Shares Within the Meaning of Section 853(n)(6)(B)

As set forth in the Petition, the only alleged acquisition of the Celsius Shares was by Nu Horizons—not by Petitioner Russell Simmons, who asserts only that he had previously obtained an interest in Nu Horizons. *See* Petition ¶¶ 16, 23, 25, 47, 66-67. As a result, the Petitioner is unable to establish that he qualifies as a "purchaser" of the Celsius Shares under Section 853(n)(6)(B). In other words, even crediting the Petitioner's assertion that he had a pre-

existing interest in Nu Horizons, the entity to which the Celsius Shares were subsequently issued, Petitioner still cannot be considered a purchaser of the shares within the meaning of the statute.

It is also well established that to qualify as a "purchaser" of forfeited property within the meaning of Section 853(n)(6)(B), a petitioner must give something of value in exchange for the property. *United States v. Dreier*, 952 F. Supp.2d 582, 590-91 (S.D.N.Y. 2013); *United States v. White*, 306 Fed. App'x 838, 840-41 (5th Cir. 2007) (charity that paid nothing for forfeitable property was not "purchaser" under Section 853(n)(6)(B)); *United States v. Ackerman*, 2023 WL 3568654 (S.D.N.Y. May 18, 2023) (petitioner who only paid for maintenance of property purchased with criminal proceeds failed to state claim under Section 853(n)(6)(B). As alleged in the Petition, the only payment towards the purchase of the Celsius Shares was a wire transfer from an account held by another entity, Asian Sports Ventures HK, which was personally arranged by defendant Leissner. *See* Petition ¶ 23. Thus, it is evident that neither Nu Horizons nor Petitioner gave anything of value in exchange for the Celsius Shares necessary to qualify as a purchaser under Section 853(n)(6)(B).

2. Nu Horizons Had Reasonable Cause To Believe The Celsius Shares Were Forfeitable

Even if Nu Horizons could qualify as a "purchaser" of the Celsius Shares within the meaning of Section 853(n)(6)(B), which it cannot, the Petitioner is unable to demonstrate that Nu Horizons was reasonably without cause to believe the Celsius Shares were forfeitable, as is required. As alleged in the Petition, defendant Leissner was a manager of Nu Horizons and, through his alter-ego vehicle Cuscaden Capital Limited, was the 51% member of the entity. *See* Petition ¶ 35. As a result of Leissner's role at Nu Horizons and his central role in the underlying the FCPA and money laundering offenses to which he pleaded guilty, his knowledge as to the forfeitability of the Celsius Shares arising from those crimes is imputed to Nu Horizons. *United*

*States v. 101 Houseco, LLC*, 22 F.4th 843, 850 (9th Cir. 2022) (holding that knowledge by defendant, who served as officer of LLC, is imputed to company). This prevents the Petitioner from demonstrating that Nu Horizons was reasonably without cause to believe the Celsius Shares were forfeitable. *Id.*

**CONCLUSION**

For the reasons stated above, the Court should dismiss the Petition in its entirety, pursuant to Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure.

Dated: Brooklyn, New York
November 16, 2023

BREON PEACE
United States Attorney

By: /s *Tanisha R. Payne*
Drew G. Rolle
Dylan A. Stern
Brian D. Morris
Tanisha R. Payne
Assistant U.S. Attorneys
(718) 254-7000