**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

In Re Forfeiture Order of Tim Leissner, et al.

23-MC-01505 (MKB)

PETITIONER SIMMONS'S MEMORANDUM OF LAW IN OPPOSITION TO THE
GOVERNMENT'S MOTION TO DISMISS THE PETITION OF RUSSELL SIMMONS
<u>ON BEHALF OF HIMSELF AND DERIVATIVELY ON BEHALF OF NU HORIZONS</u>

PRYOR CASHMAN LLP
7 Times Square, Suite Level 40
New York, NY 10036
Tel: (212) 421-4100

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

   A.  Creation of Nu Horizons ........................................................................................ 4

   B.  Defendant Leissner's Interest in Nu Horizons ....................................................... 4

   C.  Nu Horizons Purchases the Celsius Shares ............................................................ 4

   D.  Defendant Leissner is Arrested, Pleads Guilty and Agrees to Pay $43.7 Million in
       Forfeiture .................................................................................................................. 5

   E.  Government Cuts a Deal with Defendant Leissner Under Which He Will Say The Celsius
       Shares Belong to Him and Are Subject to Forfeiture if the Government Agrees to Use
       Proceeds to Pay Off His $43.7 Million Obligation .................................................. 5

   F.  Government Obtains a Preliminary Order of Forfeiture Without Making Any Showing
       That the Celsius Shares Are Traceable to Proceeds of the Crime .......................... 6

LEGAL STANDARDS ........................................................................................................ 6

   A.  Criminal Forfeiture is Limited to the Defendant's Property ................................... 6

   B.  The Two Possible Claims Under 21 U.S.C. § 853(n)(6) ......................................... 7

   C.  Motion to Dismiss Standard .................................................................................... 7

ARGUMENT ....................................................................................................................... 8

   I.    PETITIONER HAS STANDING ........................................................................... 8

       A.  Because Nu Horizons is the Owner of the Celsius Shares, It Has Standing ............ 8

       B.  Petitioner's Pleading On Behalf of Nu Horizons is Proper ............................... 9

          1.  Preventing Petitioner from Asserting the Interests of Nu Horizons
             Would Violate Due Process ............................................................................ 10

          2.  The Government Has Failed to Establish That Rule 23.1 of the Federal
             Rules of Civil Procedure Prevents Russell Simmons from Filing a
             Petition on Behalf of Nu Horizons .................................................................. 11

C.  Because the Interests of Simmons and Leissner in the Celsius Shares Were the
     Same in Form, the Court Cannot Dismiss Simmons's Petition For Failure to
     Allege a Legal Interest Without Vacating the Preliminary Order of Forfeiture ..........13

D.  The Government's Argument That Simmons Conveyed Away His Interest
     in the Celsius Shares Improperly Assumes Petitioner's Allegations Are False .........15

II.  ASSUMING ALLEGED FACTS TO BE TRUE, PETITIONER HAS A LEGAL
      INTEREST IN THE CELSIUS SHARES THAT RENDERS THE ORDER OF
      FORFEITURE INVALID UNDER SECTION 853(n)(6)(A) ............................................17

III. ASSUMING ALLEGED FACTS TO BE TRUE, PETITIONER IS A BONA FIDE
      PURCHASER FOR VALUE UNDER SECTION 853(n)(6)(B) ......................................20

A.  The Verified Petition Alleges Nu Horizons Purchased the
     Celsius Shares For Value ..............................................................................................20

B.  No Alleged Facts Suggest Defendant Leissner's Knowledge Can Be
     Ascribed to Nu Horizons ...............................................................................................22

C.  Allowing the Government to Impute a Defendant's Knowledge to an Entity
     Whose Members Contributed Value Without Knowledge of the Crime Would
     Violate Due Process.......................................................................................................23

D.  The Petition Alleges Simmons Contributed Value to Nu Horizons ............................24

E.  The Petition Alleges Simmons Was Without Reason to Know the
     Celsius Shares Was Forfeitable ....................................................................................24

CONCLUSION...............................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                    **<u>PAGE(s)</u>**

*Allied Home Mortg. Cap. Corp. v. Mark*,
   No. CIV.A. 12-10158-GAO, 2014 WL 4964728 (D. Mass. Sept. 30, 2014) .........................21

*Aquino by Convergent Distributors of Texas, LLC v. Alexander Cap., LP*,
   632 B.R. 7 (S.D.N.Y. 2021)...............................................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................7

*Bennis v. Michigan*,
   516 U.S. 442 (U.S. 1996) (Thomas, J., concurring) ..............................................23

*Hayden v. Paterson*,
   594 F.3d 150 (2d Cir. 2010).............................................................................................7

*Loop Prod. v. Cap. Connections LLC*,
   797 F. Supp. 2d 338 (S.D.N.Y. 2011).........................................................................16

*In re Lyman-Cutler, LLC*,
   632 B.R. 355 (Bankr. D. Mass. 2021) ........................................................................21

*Pacheco v. Serendensky*,
   393 F.3d 348 (2d Cir. 2004)...........................................................................7, 10, 14, 15

*Patoma Partners LLC v. MB1 Cap. Partners, LLC*,
   No. 14-CV-2529 JMA, 2014 WL 4075938 (E.D.N.Y. Aug. 15, 2014)..................................21

*Schoon v. Smith*,
   953 A.2d 196 (Del. 2008) ...............................................................................................11

*Shenk v. Karmazin*,
   867 F. Supp. 2d 379 (S.D.N.Y. 2011)..............................................................................12

*United States v. 101 Houseco*,
   LLC, 22 F.4th 843 (9th Cir. 2022).....................................................................................22

*United States v. Daugerdas*,
   892 F.3d 545 (2d Cir. 2018)................................................................................ *passim*

*United States v. Egan*,
   811 F. Supp. 2d 829 ..............................................................................................6, 14

*United States v. Lester*,
   85 F.3d 1409 (9th Cir. 1996) ...............................................................................6, 13, 14, 23

iii

*United States v. Madoff*,
No. 09-CR-213-DC, 2012 WL 1142292 (S.D.N.Y. Apr. 3, 2012)..........................................18

*United States v. Nektalov*,
440 F. Supp. 2d 287 (S.D.N.Y.2006)...................................................................................6, 14

*United States v. Schwimmer*,
968 F.2d 1570 (2d Cir. 1992).....................................................................................................14

*United States v. Stern*,
No.16-cv-525(JGK), 2021 WL 3474040 (S.D.N.Y. 2021) ......................................................7

*United States v. Totaro*,
345 F.3d 989 (8th Cir.2003) .....................................................................................................10

*Weber v. King*,
110 F. Supp. 2d 124 (E.D.N.Y. 2000) ......................................................................................11

**STATUTES AND RULES**

Fed. R. Civ. P. 23(b)(2)..............................................................................................................12

Fed. R. Civ. P. 23.1(b)(1)............................................................................................................12

Fed. R. Civ. P. 23.1(b)(3)............................................................................................................13

Fed. R. Crim. P. 32.2(b)..........................................................................................................6 , 13

Limited Liability Company Law Section § 501 ........................................................................21

21 U.S.C. § 853(c)..................................................................................................................18, 19

21 U.S.C. § 853(n)..................................................................................................................12, 14

21 U.S.C. § 853(n)(2)....................................................................................................................8

21 U.S.C. § 853(n)(6)....................................................................................................................7

21 U.S.C. § 853(n)(6)(A)......................................................................................................7, 17, 20

21 U.S.C. § 853(n)(6)(B)............................................................................................................7, 20

**<u>TREATISE</u>**

J. William Callison & Maureen A. Sullivan, *Limited Liability Companies: A State by State Guide to Law and Practice* (West 1994)      11

**PRELIMINARY STATEMENT**

The motion to dismiss the Verified Petition is a shocking attempt by the government to take property worth over $500 million from an innocent person while denying that person the ability to challenge the government's wrongful taking.  As set forth in the Verified Petition, Russell Simmons, together with Defendant Leissner, invested millions of dollars through a company known as Nu Horizons.  Derivative Petitioner Nu Horizons purchased various assets with this money, including the Celsius Shares that the government seeks to forfeit as part of Defendant Leissner's criminal sentence.  Defendant Leissner, however, *never owned the Celsius Shares*.  Like Russell Simmons, what he owned was a membership interest in Derivative Petitioner Nu Horizons.  Because criminal forfeiture is an *in personam* action, the government cannot forfeit property that Defendant Leissner never owned.

Because the government could not possibly prove that the Celsius Shares belonged to Defendant Leissner, rather than Nu Horizons, the government seeks to defeat the Verified Petition with two strained procedural arguments that are both based on a deal the government cut with a criminal: Defendant Leissner.  The deal was that Defendant Leissner would agree to say that he owned the Celsius Shares and that they were subject to forfeiture as proceeds of his crime, if the government would agree to apply the proceeds it got from the sale of the Celsius Shares to the $43.7 million that Defendant Leissner was obligated to pay as part of his sentencing.  This was a great deal for Defendant Leissner, because he got to use shares beneficially owned by Russell Simmons to pay an obligation that was supposed to be punishment for his crime.  Due to an increase in the value of the Celsius Shares, this has become an even better deal for the government, who would get to keep over $460 million of proceeds from the sale of the shares.  It is a rotten deal for Petitioner Simmons, an innocent owner whose membership interest in Nu

Horizons is rendered worthless, and Derivative Petitioner Nu Horizons, who receives no compensations for the shares taken from it.

The government's first argument based on its deal with Defendant Leissner is that it can work with Defendant Leissner to bar Petitioner from gaining standing to contest its illegitimate forfeiture. The government argues that it can prevent Derivative Petitioner Nu Horizons from contesting the forfeiture of shares it owns by using Defendant Leissner's status at Nu Horizons to prevent Nu Horizons from contesting the claim. The government offers the absurd suggestion that Petitioner Simmons was required to ask Defendant Leissner to litigate Nu Horizons' forfeiture claim. This position both violates due process and relies on a nonsensical misapplication of civil procedure to criminal forfeiture. There is no legal basis for using the government's leverage over one member of an LLC, who is awaiting criminal sentencing, to prevent the other member from asserting the LLC's legal interest.

Similarly, the government argues that it can prevent Russell Simmons from asserting a petition as a member of Nu Horizons because a member of an LLC does not have a legal interest in the assets of the LLC. The irony of this argument is staggering. The government's entire claim to the Celsius Share is based on forfeiting the interest that Defendant Leissner had in the Celsius Shares. *Yet Defendant Leissner has the exact same form of legal interest in the Celsius Shares as Russell Simmons—a beneficial ownership interest as a member of an LLC.* It strains credulity to assert that stepping into the shoes of the criminal member of an LLC somehow allows the government to take all the interest of the other, innocent member of the LLC, and the innocent member is then not allowed to contest this injustice. Moreover, if the government's argument were correct that Defendant Leissner and Russell Simmons had no legal right to the Celsius Shares, then the Court would be obliged to vacate the portion of the Amended Preliminary Order

2

of Forfeiture forfeiting Defendant Leissner's legal interest in the Celsius Shares, because he had no such interest.

The government's second argument based on its deal with Defendant Leissner is that it can rely on its agreement with Defendant Leissner to generate a legal fiction that the government always owned the shares because they are traceable to proceeds of a crime. However, the government has never offered a shred of proof that the Celsius Shares are traceable to proceeds of Defendant Leissner's crime. Moreover, even if the Court were to assume this unproven and contested fact to be true, there still would be no basis for dismissing the Verified Petition, because Petitioner is a bona fide purchaser for value. Petitioner Simmons paid money and contributed valuable promotional efforts for his membership interest in Nu Horizons. Nu Horizons paid money for the Celsius Shares. The only person at Nu Horizons who was aware of Defendant Leissner's crime was Leissner himself, and his knowledge cannot be imputed to Nu Horizons, or to Russell Simmons, because his crimes were far outside the scope of his duties at Nu Horizons.

Because the claims in the Verified Petition are plausibly pled, the Court should deny the government's motion to dismiss in its entirety. If the government wants to take the Petitioner's property, it should be required to prove its case with evidence, not a deal it cut with a criminal.

## FACTUAL BACKGROUND

Petitioner relies on, and incorporates by reference, the facts alleged in the Verified Petition, which are assumed to be true for the purpose of this motion. The following facts are of particular relevance to the government's motion.

3

### A.  Creation of Nu Horizons

Petitioner Russell Simmons formed Nu Horizons in 2011.  The operations of Nu Horizons at that time had nothing to do with Defendant Leissner, who was neither a member nor an executive of Nu Horizons. (Verified Petition ¶16.)

### B.  Defendant Leissner's Interest in Nu Horizons

When Nu Horizons purchased the Celsius Shares that are the subject of this proceeding, Defendant Leissner was a member of Nu Horizons.  The ownership structure of Nu Horizons was set forth in the LLC Operating Agreement of Nu Horizons (the "Nu Horizons Operating Agreement").  Defendant Leissner's alter-ego vehicle, Cuscaden Capital Limited, was a 51% member of Nu Horizons.  Petitioner Simmons owned a 49% interest in all the assets of Nu Horizons.  (Verified Petition ¶¶34-39 & Exh. 14.)

Nu Horizons made various investments, including millions of dollars of investments in All Def Digital and shares of Celsius Holdings, Inc. stock.  The investments were funded by the members of Nu Horizons -- Defendant Leissner and Petitioner Simmons -- as capital contributions to Nu Horizons.  Under the Nu Horizons Operating Agreement, when Nu Horizons made distributions to its members, each member would be compensated for the capital contributions that member had made.  (*See* Verified Petition ¶67 & Exh. 14 § 7.5.)

### C.  Nu Horizons Purchases the Celsius Shares

In April 2015, Nu Horizons purchased the Celsius Shares pursuant to agreements that explicitly listed Nu Horizons, not Defendant Leissner, as the purchaser.  (*See* Verified Petition at ¶22-24).  Under the Nu Horizons Operating Agreement, the interest that both Petitioner Simmons and Defendant Leissner had in the Celsius Shares was beneficial ownership by virtue of their membership interest in Nu Horizons.  Defendant Leissner funded the purchase of the Celsius

4

Shares as a capital contribution to Nu Horizons.  Under the Nu Horizons Operating Agreement, this caused Defendant Leissner's capital account at Nu Horizons to increase.  He was then entitled to be repaid for this capital contribution under the Nu Horizons Operating Agreement when Nu Horizons made distributions to its members.  In exchange for the payment that Nu Horizons made for the Celsius Shares, which Defendant Leissner had agreed to fund as a member of Nu Horizons, Nu Horizon received the Celsius Shares.  (Verified Petition ¶66 & Exh. 14.)

**D. Defendant Leissner is Arrested, Pleads Guilty and Agrees to Pay $43.7 Million in Forfeiture.**

In or about June 2018, Defendant Tim Leissner was arrested.  On August 28, 2018, Defendant Leissner pled guilty pursuant to an agreement under which he agreed to forfeit $43.7 million to the government.  (Verified Petition ¶¶1-4.)

**E. Government Cuts a Deal with Defendant Leissner Under Which He Will Say The Celsius Shares Belong to Him and Are Subject to Forfeiture if the Government Agrees to Use Proceeds to Pay Off His $43.7 Million Obligation.**

In an effort to pay down the $43.7 million that Defendant Leissner was required to pay under his plea agreement, he agreed to say the Celsius Shares belonged to him and are subject to forfeiture.  In exchange, the government agreed to apply all the proceeds of the sale of the Celsius Shares to pay down the $43.7 million owed by Defendant Leissner.  At the time Defendant Leissner cut this deal, the Celsius Shares were worth $13,968,956.40, so the parties anticipated that all the proceeds would go toward paying off the $43.7 million.  (Verified Petition ¶5.)  The Celsius Shares currently are worth over $500 million.[1]

---

[1] There was a three-for-one split of Celsius Holdings Inc. stock on Nov. 15, 2023, so the closing price of $50.60 on Nov. 29, 2023 should be multiplied by three to calculate the value of the Celsius Shares.

Under the deal that the government cut with Defendant Leissner to say the Celsius Shares were owned by him and to agree to forfeit them, Defendant Leissner would receive $43.7 million, the government would receive over $456 million, Nu Horizons would receive $0 and Russell Simmons would receive $0.

### F. Government Obtains a Preliminary Order of Forfeiture Without Making Any Showing That the Celsius Shares Are Traceable to Proceeds of the Crime.

The government applied for a preliminary order of forfeiture forfeiting Defendant Leissner's interest in the Celsius Shares on August 17, 2022. Notably, the government offered no evidentiary showing in support of this application that the Celsius Shares were purchased with funds traceable to proceeds of the crime for which Defendant Leissner was convicted or that Defendant Leissner was the owner of the Celsius Shares, which he was not.

## LEGAL STANDARDS

### A. Criminal Forfeiture is Limited to the Defendant's Property.

"Unlike civil forfeiture, which is an *in rem* action, 'criminal forfeiture is an *in personam* action in which only the defendant's interest in the property may be forfeited.'" *United States v. Daugerdas*, 892 F.3d 545, 548 (2d Cir. 2018) (quoting Fed. R. Crim. P. 32.2(b) advisory comm. notes (2000)); *see also United States v. Lester*, 85 F.3d 1409, 1413 (9th Cir. 1996) ("[A] criminal forfeiture is an *in personam* judgment against a person convicted of a crime.") (emphasis in original). In criminal forfeiture proceedings, "the government 'stands in the defendant's shoes,' and a petitioner who establishes a legal interest in property superior to the defendant is entitled to recovery of its property." *United States v. Egan,* 811 F. Supp. 2d 829, 838 (S.D.N.Y. 2011) (quoting *United States v. Nektalov*, 440 F. Supp. 2d 287, 294–95 (S.D.N.Y.2006)).

**B.  The Two Possible Claims Under 21 U.S.C. § 853(n)(6).**

To survive a motion to dismiss a forfeiture petition, the petitioner must plead a claim under one of the two subsections of 21 U.S.C. § 853(n)(6).  To state a plausible claim under § 853(n)(6)(A), a third party must allege that he "has a legal right, title, or interest in the property" that "was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property."  21 U.S.C. § 853(n)(6)(A).  To state a plausible claim under § 853(n)(6)(B), a third party must allege that he "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section."  21 U.S.C. § 853(n)(6)(B).

**C.  Motion to Dismiss Standard**

Courts consider a motion to dismiss a forfeiture petition under the familiar standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Daugerdas*, 892 F.3d at 552.  To survive a motion to dismiss, a petition "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  In deciding a motion to dismiss a forfeiture petition, a court "will accept all factual allegations in the [third-party petition] as true and draw all reasonable inferences in [the third-party petitioner's] favor."  *United States v. Stern*, No.16-cv-525(JGK), 2021 WL 3474040, at*3 (S.D.N.Y. 2021) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  "Only after some discovery has taken place may a party move for summary judgment; at that point the petitioner would be required to produce evidence supporting a prima facie case of entitlement, but not before."  *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004).

7

<u>**ARGUMENT**</u>

I.   <u>**PETITIONER HAS STANDING.**</u>

A petitioner has standing if the petitioner alleges "a legal interest in property." 21 U.S.C. §853(n)(2). Derivative petitioner Nu Horizons has a legal interest in the Celsius Shares because it purchased the Celsius Shares directly from Celsius Holdings, Inc. and has owned them since that time. Defendant Leissner and Russell Simmons had a right and interest to the Celsius Shares by virtue of being members of Nu Horizons. The government's position is that Defendant Leissner had a legal interest in the Celsius Shares and that when the Court entered the Amended Preliminary Order of Forfeiture, the government stepped into Defendant Leissner's shoes and acquired that interest. The nature of Petitioner Russell Simmons's interest in the Celsius Shares, however, is *the same* as that of Defendant Leissner, and now the government. Accordingly, either Petitioner Russell Simmons and the government now have a legal interest in the Celsius Shares or neither Russell Simmons nor the government have a legal interest in the Celsius Shares, in which case the Preliminary Order of Forfeiture must be amended to remove the Celsius Shares because they were not property of the defendant and therefore cannot be forfeited in an *in personam* action.

A.   **Because Nu Horizons is the Owner of the Celsius Shares, It Has Standing.**

The Verified Petition alleges that Nu Horizons purchased shares of Celsius Holdings, Inc. stock, including the Celsius Shares, on or about April 21, 2015 pursuant to a Common Stock Purchase Agreement and a Secondary Convertible Promissory Note Purchase Agreement. (Verified Petition ¶22-24.) These agreements were attached to the Verified Petition as Exhibits 6 and 7. The Verified Petition further alleges that Nu Horizons still owns the Celsius Shares. While the government has neither alleged facts nor offered evidence suggesting that anyone other than Nu Horizons ever owned the Celsius Shares, even if it were to proffer such speculative

8

allegations, they would be irrelevant, because on a motion to dismiss the facts alleged in the Verified Petition must be assumed to be true.  Because owning the Celsius Shares gives Nu Horizons "right, title, and interest" in the Celsius Shares, Nu Horizons clearly has standing to file a petition.

Notably, the Verified Petition also clearly alleges that "Defendant Leissner never owned the Celsius Shares." (Verified Petition ¶64.)  The purchases of stock shares that included the Celsius Shares were made pursuant to agreements, the Common Stock Purchase Agreement and the Secondary Convertible Promissory Note Purchase Agreement, that explicitly identified the purchaser as Nu Horizons, not Defendant Leissner.  Similarly, Celsius Holdings Inc., who sold the shares to Nu Horizons, filed statements with the U.S. Securities and Exchange Commission stating that the Celsius Shares were part of "shares of common stock held by Nu Horizons Investment Group, LLC over which Mesrs. Leissner and Simmons share voting and dispositive power." (Verified Petition ¶38 & Exh. 15.)  Defendant Leissner himself signed a document dated February 5, 2020 in which had acknowledged that Nu Horizons "acquired" the Celsius Shares. (Verified Petition ¶62 & Exh. 22.)

### B.   Petitioner's Pleading On Behalf of Nu Horizons is Proper.

The government's argument that Petitioner Simmons cannot assert Nu Horizons' interest in the Celsius Shares by filing a derivative forfeiture petition fails on multiple grounds.  As a threshold matter, it would violate the requirements of due process to allow the government to use the power it has over a criminal defendant who is one of two members of a company to prevent the company from asserting its rights against the government through the other member of the company.  In addition, the government's attempt to use a technical pleading requirement from the Federal Rules of Civil Procedure to prevent Petitioner Simmons from filing a criminal forfeiture petition asserting the rights of Nu Horizons fails because that requirement applies only to the

filing of a civil complaint.  It makes no sense to apply this requirement to a forfeiture petition in a criminal action, and there is no legal basis for doing so.

      1.      **Preventing Petitioner from Asserting the Interests of Nu Horizons Would Violate Due Process.**

Federal courts have repeatedly admonished the government from trying to use forfeiture law to take property from persons who were not convicted of a crime without permitting them assert their claims.  Thus, in *Pacheco*, the Second Circuit explained that the reason why the government must be limited to "partial forfeitures" of property in which a defendant had only a partial interest is that "[i]f partial forfeitures are forbidden, then a criminal's activity may result in the forfeiture of an innocent third party's interest in property.  The government's acquisition of an entire tract of real property in forfeiture proceedings may thus constitute an unconstitutional taking of a third party's interest or a deprivation of that party's property without due process, in violation of the Fifth Amendment."  393 F.3d at 354 (citing *United States v. Totaro*, 345 F.3d 989, 999 (8th Cir.2003) ("If this court were to deem forfeited the entire estate despite a valid claim of partial ownership by a third party, ... [i]t would ... punish the third party, against whom no jury has returned a verdict of guilt, and may therefore raise constitutional questions of a whole different order.")).

The government is seeking to take the property of Nu Horizons, in which Russell Simmons has at least a 49% interest, without permitting Mr. Simmons to file a claim on behalf of Nu Horizons.  As the government well knows, Nu Horizons is not going to assert its interest through Defendant Leissner, because (a) Defendant Leissner was happy to bargain away all the property of Nu Horizons, including the property beneficially owned by Russell Simmons, after the government agreed to apply the value of that property to Defendant Leissner's criminal money judgment and (b) the government has incredible leverage over Defendant Leissner who

has not yet been sentenced and undoubtedly hopes the government will file a motion under Section 5k1.1 of the United States Sentencing Guidelines requesting a sentence below the guidelines based on substantial assistance he provided.  Moreover, the government knows that Defendant Leissner in fact did not file a forfeiture petition on behalf of Nu Horizons, despite being well-aware of the deadline for doing so.  Preventing Mr. Simmons from filing the petition derivatively on behalf of Nu Horizons, which is the only way to assert the interest of Nu Horizons in the Celsius Shares, would result in a taking of the Celsius Shares without due process.  For this reason, the requirements of due process dictate that Mr. Simmons be permitted to file a derivative petition asserting the interest of Nu Horizons.

>    **2.    The Government Has Failed to Establish That Rule 23.1 of the Federal Rules of Civil Procedure Prevents Russell Simmons from Filing a Petition on Behalf of Nu Horizons.**

The government's attempt to use a technical pleading requirement in Rule 23.1 of the Federal Rules of Civil Procedure to deny Nu Horizons the ability to assert its interest in the Celsius Shares would not only violate due process, it also fails on its own technical grounds.  The ability of members of a company to take legal action necessary to protect their interest was not created by the Federal Rules of Civil Procedure; they originated at common law enabling shareholders to assert the rights of a corporation where equity required.  *See Weber v. King*, 110 F. Supp. 2d 124, 131 (E.D.N.Y. 2000) (citing J. William Callison & Maureen A. Sullivan, *Limited Liability Companies: A State by State Guide to Law and Practice* at § 4.7 (West 1994) ("courts may recognize a common law right for members [of LLCs] to sue derivatively")); *Schoon v. Smith*, 953 A.2d 196, 202 (Del. 2008) ("As 'a creature of equity,' the derivative action has generally served as a vehicle to enforce a corporate right.") (internal citation omitted).

Rule 23.1, on which the government relies, applies only to the initiation of a new derivative civil action through the filing of a complaint.  The government cites no law supporting

the inference that Rule 23.1 applies to a forfeiture petition filed in an ongoing criminal proceeding.  Nor would it make sense to do so.  Forfeiture petitions are not new actions; they are part of an ongoing criminal process subject to its own timing requirements.  Forfeiture petitions generally must be filed within thirty days of receiving notice of a preliminary order of forfeiture. *See* 21 U.S.C. §853(n).  This does not leave time for the demand and response process referenced in Rule 23.1.  It also does not make sense to extend the rule to criminal forfeiture proceedings because derivative petitions are only likely to be relevant where, as here, a derivative filing is made because the criminal action itself created an obstacle to action by the company.  Requiring members or shareholders to ask a convicted criminal defendant to act on their behalf is absurd.

Moreover, were the Court to try to apply Rule 23.1 to the Petition, it would find allegations that comply with that Rule.  The Petition alleges that Simmons was a member of Nu Horizons at the time the Celsius Shares were purchased.  (Verified Petition ¶¶ 16, 34-36); *see* Rule 23.1(b)(1).  The Petition could not possibly have been "a collusive one to confer jurisdiction that the court would otherwise lack," as set forth in Rule 23(b)(2), because this is an ongoing criminal proceeding where the Court's jurisdiction already is established.  (This is, of course, further evidence that Rule 23 was never intended to apply to criminal forfeiture petitions.) Finally, the futility of demanding action by other members is amply pled because, as discussed above, it would be pointless and utterly counterproductive to ask Defendant Leissner to file a petition accusing himself of wrongdoing and seeking to challenge to government's effort to use the Celsius Shares to pay Leissner's money judgment while allowing him to keep his extensive personal assets.  *See Shenk v. Karmazin*, 867 F. Supp. 2d 379, 384–85 (S.D.N.Y. 2011) (finding demand action futile where defendants are "the principal wrongdoers" and "have long failed to

12

investigate and prosecute the wrongdoing [at issue], and they will not do so because it would ruin

their reputations and finances."); *see also* Rule 23.1(b)(3).

> ### C. Because the Interests of Simmons and Leissner in the Celsius Shares Were the Same in Form, the Court Cannot Dismiss Simmons's Petition For Failure to Allege a Legal Interest Without Vacating the Preliminary Order of Forfeiture.

As a final step in the government's effort to prevent Petitioner Simmons from using his

due process right to challenge the forfeiture of the Celsius Shares, the government argues that, in

addition to being unable to file a petition on behalf of Nu Horizons, Petitioner Simmons also

cannot file a petition on his own behalf.  The problem with this argument is that it is flatly

inconsistent with the legal basis for the government's forfeiture of the Celsius Shares.  The

government can *only* forfeit the Celsius Shares if Defendant Leissner has a legal interest in the

Celsius Shares (or had a legal interest and subsequently transferred the Celsius Shares under the

conditions set forth in §853(c)).  However, allegations in the Petition, which are assumed to be

true for purposes of this motion, establish that Defendant Leissner had the *exact same* form of

interest in the Celsius Shares as Russell Simmons.  Accordingly, if Petitioner Simmons did not

have a legal interest in the Celsius Shares, then neither did the Defendant, which means that the

Amended Preliminary Order of Forfeiture should be immediately vacated and the Celsius Shares

returned to Nu Horizons.

To understand the predicament in which the government has put itself, one should start

from the foundational principal that, unlike civil forfeiture, which is an *in rem* action, "criminal

forfeiture is an in personam action in which only the defendant's interest in the property may be

forfeited."  Fed. R. Crim. P. 32.2(b) advisory comm. notes (2000); *see also Lester*, 85 F.3d at

1413 ("[A] criminal forfeiture is an in personam judgment against a person convicted of a

crime.") (emphasis in original).  "The purposes of the forfeiture penalty are to punish, deter and

disempower criminals, aims which are not furthered by taking an innocent owner's share."

*Pacheco*, 393 F.3d at 55.  The reason there is no "innocent owner" defense to criminal forfeiture

is not that it is permissible to forfeit property from innocent owners.  Rather, "it is clear that

because a criminal forfeiture is an action against the convicted defendant, who by definition is not

'innocent,' there simply was no need to have an innocent-owner exception."  *Lester*, 85 F.3d at

1414 n.8(citation omitted).

Because "criminal forfeiture proceedings are *in personam* actions against the assets of

defendants," in criminal forfeiture proceedings "conducted pursuant to 21 U.S.C. § 853(n), the

Government 'stands in the defendant's shoes,' and a petitioner who establishes a legal interest in

property superior to the defendant is entitled to recovery of its property."  *Egan* 811 F. Supp. 2d at

838  (quoting *United States v. Nektalov*, 440 F. Supp. 2d 287, 294–95 (S.D.N.Y.2006)).

Similarly, because criminal forfeiture is *in personam*, "a defendant's consent to forfeit

property does not expand the Court's power over that property if the property is not the

defendant's own."  *United States v. Schwimmer*, 968 F.2d 1570, 1580–81 (2d Cir. 1992).  Not

only is the consent of a defendant, such as Leissner, ineffective to render property he never owned

subject to forfeiture, there are sound reasons for a court not to rely on a defendant's consent.  As

the Second Circuit has explained, a "criminal defendant generally will not have the same

incentive as a third-party claimant to argue that property subject to forfeiture is not his."

*Daugerdas*, 892 F.3d at 557.  That certainly applies here, where the government has agreed to let

Defendant Leissner use property beneficially owned by Petitioner Simmons to pay off his

sentencing obligations.

Accordingly, because criminal forfeiture is *in personam*, the only way that the government

can forfeit any of the Celsius Shares is if Defendant Leissner actually had a personal legal interest

14

in the Celsius Shares.  The fact that Defendant Leissner agreed to forfeit the Celsius Shares cannot "expand the Court's power over that property," if the property was not Defendant Leissner's own.  However, the allegations in the Verified Petition, which must be assumed to be true (and stand uncontradicted by any evidence from the government), show that the only interest Defendant Leissner ever had in the Celsius Shares was as a member of Nu Horizons.  *This is the exact same interest that Petitioner Simmons has in the Celsius Shares.*  Petitioner Simmons's standing rests upon the same legal interest as the government's right to the Celsius Shares now that it stands in Defendant Leissner's shoes, namely membership in Nu Horizons.  Because Petitioner Simmons has the same interest in the Celsius Shares as the government, so long as the Court does not remove the Celsius Shares from the Amended Preliminary Order of Forfeiture, it should not dismiss the petition of Russell Simmons.

It should be noted that the government has made a strategic decision not to pursue forfeiture of Defendant Leissner's interest in Nu Horizons.  While forfeiture of Defendant Leissner's membership interest in Nu Horizons might have been an example of how "partial forfeitures may occasionally make for strange bedfellows," the government's reluctance to limit itself to this membership interest does not allow it to take more interest in Nu Horizons than Defendant Leissner had.  *Pacheco*, 393 F.3d at 355  (noting that while it may seem strange to make "the government co-owners of real property with the spouse of a criminal defendant—the alternative could give the government an undeserved windfall and deny an innocent third party her valid property interest").

> **D.    The Government's Argument That Simmons Conveyed Away His Interest in the Celsius Shares Improperly Assumes Petitioner's Allegations Are False.**

The government's argument that Russell Simmons has no legal interest in the Celsius Shares because he conveyed his interest in Nu Horizons to Keyway Pride is flatly contradicted by

several allegations in the Verified Petition, which must be assumed to be true for purposes of this motion.  First, the purported transfer was part of a fraud and therefore ineffective and unenforceable.  *See Loop Prod. v. Cap. Connections LLC*, 797 F. Supp. 2d 338, 347 (S.D.N.Y. 2011) ("Under New York law, fraud will invalidate a contract… where the fraudulent conduct was 'part of a grand scheme that permeated the entire contract.'").  Second the purported transfer was expressly nullified and voided, *ab initio*.  (Verified Petition ¶¶60-61.)  The government's assertion that voiding "the agreements" meant voiding only the covenants and warranties in the agreements simply ignores the language of the contract that voided the prior agreements and pretends it says something it does not.[2]  The government cites no contractual language supporting its position or case law that justifies willfully ignoring the wording of the contract.  Third, after the purported transfer was nullified and voided, Defendant Leissner confirmed that Russell Simmons was still the "beneficial owner of 49% of the 3.9 million shares that Nu Horizons acquired in 2015."  (Verified Petition ¶62 & Exhibit 22.)[3]

---

[2] The language that expressly nullifies and voids the Stock Transfer Agreement reads as follows:

> This Agreement contains the entire understanding among the Parties and supersedes any prior written or oral agreements between them respecting the subject matter of this Agreement **including, without limitation, that certain Letter Agreement, dated April 26, 2018, between the Withdrawing Member and the Continuing Member and that certain Stock Transfer Agreement, dated May 25, 2018, among the Withdrawing Member, the Continuing Member, Nu Horizons Investment Group, LLC and Rush Digital Media, LLC, each of which agreements are hereby deemed null and void ab initio**.

(Verified Petition ¶61.)

[3] Presumably the government does not believe that Defendant Leissner was lying, because the government did not inform the jury that this was a lie when it put Defendant Leissner on the stand to testify against Roger Ng.

II.   **ASSUMING ALLEGED FACTS TO BE TRUE, PETITIONER HAS A LEGAL INTEREST IN THE CELSIUS SHARES THAT RENDERS THE ORDER OF FORFEITURE INVALID UNDER SECTION 853(n)(6)(A).**

There are two ways to state a plausible claim under § 853(n)(6)(A).  A third party can either allege that his legal right, title, or interest in the property "was vested in the petitioner rather than the defendant" or that it "was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property." 21 U.S.C. § 853(n)(6)(A).  The legal interest of Nu Horizons in the Celsius Shares was always both vested in Nu Horizons, rather than Defendant Leissner, and was superior to any right, title or interest of Defendant Leissner at all times.  The legal right, title or interest of Russell Simmons was superior to any right, title or interest of Defendant Leissner with respect to the Celsius Shares beneficially owned by Russell Simmons.  The government cannot avoid these legal interests by invoking the "relation-back doctrine" at this stage of the litigation, because the government has not yet proven that Defendant Leissner ever acquired the Celsius Shares or that such acquisition was made with proceeds of the crime for which Defendant Leissner was convicted.

In its discussion of Section 853(n)(6)(A) the government offers no argument that the legal right, title or interest in the Celsius Shares was vested in Defendant Leissner, rather than Nu Horizons.  Nor could it.  As discussed above, the agreements under which the shares were purchased expressly stated that Nu Horizons, not Leissner, purchased and owned the Celsius Shares, and this was confirmed by Celsius Holdings, Inc. *See supra* at 4, 8-9.

The government's suggestion that Simmons did not beneficially own at least 49% of the Celsius Shares is similarly ineffectual.  This is set forth in the LLC Operating Agreement of Nu Horizons, (see Verified Petition ¶34-36 & Exh. 14.), and was subsequently confirmed by Defendant Leissner himself.  *See supra* at 9.  Moreover, this factual allegation is plausible and must be assumed to be true for purposes of this motion.  At the hearing, Defendant Simmons will

17

provide additional evidence that his beneficial ownership was acknowledged by Nu Horizons and Defendant Leissner.

The government argues that even if Petitioner Simmons and Derivative Petitioner Nu Horizons have an interest in some or all Celsius Shares that is superior to Defendant Leissner, the government still can forfeit the shares under the "relation-back" doctrine.  "The relation back doctrine serves the important purpose of preventing defendants from circumventing forfeiture by transferring property prior to their convictions;" it is not for the purpose of allowing the government to forfeit property that never belonged to the defendant.  *United States v. Madoff*, No. 09-CR-213-DC, 2012 WL 1142292, at *4 (S.D.N.Y. Apr. 3, 2012).  The government's rights under the relation-back doctrine are set forth in Section 853(c).  This section, described as "Third Party Transfers," reads as follows:

> All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(c).

While Section 853(c) allows the government to forfeit third-party transfers from the defendant, it does *not* give the government the right to forfeit property that *never* belonged to the defendant, because criminal forfeiture is an *in personam* action.  Petitioner has plausibly alleged that Nu Horizons bought the Celsius shares through a capital contribution made by Defendant Leissner.  That capital contribution gave Defendant Leissner rights under the LLC Operating Agreement of Nu Horizons.  It did not make him the owner of the Celsius Shares.  While Section

18

853(c) hypothetically could be used to forfeit Defendant Leissner's *membership interest* from a third-party to whom he subsequently transferred that interest, it cannot be used to forfeit property that Defendant Leissner never owned, such as the Celsius Shares.

Moreover, the government can only avail itself of the relation-back doctrine if it establishes that the property in question is traceable to proceeds of the crime of conviction.  If the property was purchased with money that the government cannot prove to be proceeds of a crime, then the relation-back doctrine does not apply.  Thus, the relation-back doctrine does not apply to substitute assets.  *See Daugerdas*, 892 F.3d at 557 (vacating dismissal of petition and finding it was error for the district court to deny petitioner the ability to contest whether the proceeds were traceable to proceeds of the crime and thus forfeitable only as substitute assets).

The government has made no showing that the Celsius Shares were purchased with proceeds of the crime of conviction.  Evidently realizing that it could not rely on the relation-back doctrine without offering evidence that the Celsius Shares are traceable to proceeds of Defendant Leissner's crime, the government made several paragraphs of new factual allegations in support of its motion to dismiss the Verified Petition.  (*See* Gov't Mem. at 4-5.)  Not only would it be improper to permit the government to rely on new evidence to support a motion to dismiss, which is properly based on the pleadings alone, but the government still has failed to offer such evidence.  The government presumably knows how to offer evidence that funds are traceable to a crime.  This would involve, for example, attaching bank records showing the movement of funds from the account into which proceeds of the crime were deposited into the account from which $3 million wire transfer to Celsius Holdings, Inc. was made on April 21, 2015.  Instead, the government merely alleges that its investigation "revealed" various movements of money and transactions without offering any evidence substantiating those revelations other than citing a

19

single trial exhibit that the government failed to attach.  The Court should disregard these unsupported and improper allegations, which are irrelevant to the pending motion, and should be raised after discovery is complete.

### III.   ASSUMING ALLEGED FACTS TO BE TRUE, PETITIONER IS A BONA FIDE PURCHASER FOR VALUE UNDER SECTION 853(n)(6)(B).

In addition to plausibly alleging a claim under Section 853(n)(6)(A), the Verified Petition plausibly alleges a claim under Section 853(n)(6)(B), which provides an independent and alternative basis for a valid forfeiture petition.  To state a plausible claim under § 853(n)(6)(B), a third party must state that it "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section."  21 U.S.C. § 853(n)(6)(B).  The Verified Petition establishes all of these elements.

#### A.   The Verified Petition Alleges Nu Horizons Purchased the Celsius Shares For Value.

The Verified Petition alleges that Nu Horizons purchased shares of Celsius Holdings, Inc. stock, including the Celsius Shares, on or about April 21, 2015 pursuant to a Common Stock Purchase Agreement for $3 million and a Secondary Convertible Promissory Note Purchase Agreement for $150,000.  (Verified Petition ¶22-24.)  It is beyond any reasonable dispute that a purchase for $3,150,000 is a purchase for value.  The government suggests that the Court should ignore these payments by Nu Horizons because one of Nu Horizons' members, Defendant Leissner, made payments, or arranged for the payments to be made, on behalf of Nu Horizons. The government cites no law suggesting that payments made by a limited liability company are invalid or improper if the payments do not come directly from the limited liability company's bank account.  A capital contribution is merely a contribution of value to the LLC.  LLC members make capital contributions in many different ways, which can include, for example, making

payments on behalf of the LLC from a member's personal bank account, contributing personal property or even services. *See, e.g., Patoma Partners LLC v. MB1 Cap. Partners, LLC,* No. 14-CV-2529 JMA, 2014 WL 4075938, at *2 (E.D.N.Y. Aug. 15, 2014) ("[t]he contribution of a member to the capital of a limited liability company may be in cash, property or services rendered or a promissory note or other obligation to contribute cash or property or to render services, or any combination of the foregoing" (quoting NYLLCL§ 501)).[4]   The government's suggestion that an LLC funding a purchase through a third-party transfer arranged by a member of the LLC is not a contribution of value merely reflects a lack of knowledge concerning the operation of LLCs.  It is not a basis for dismissing a claim, particularly prior to discovery.

In addition, it is worth noting that, although he was not the person from whom Nu Horizons purchased the Celsius Shares, Defendant Leissner also received value for the capital contribution that he made through the payments.  The LLC Operating Agreement defines that value.  The government has made no showing that that value was not provided.  The government's suggestion that Nu Horizons did not really provide value (to Celsius Holdings, Inc. through a wire payment and to Defendant Leissner by crediting his capital account) despite documentation reflecting that it did simply ignores the legal agreements that define the transaction and are completely improper as a basis for arguing that a petition is improperly pled.

---

[4]*See also, e.g., In re Lyman-Cutler, LLC*, 632 B.R. 355, 443–44 (Bankr. D. Mass. 2021) ("Filippov made contributions for payment of carrying costs in three ways: by direct payments from his personal checking account; by use of his personal credit card; and by deposits into the LLC account"); *Allied Home Mortg. Cap. Corp. v. Mark*, No. CIV.A. 12-10158-GAO, 2014 WL 4964728, at *6 (D. Mass. Sept. 30, 2014)("a reasonable factfinder could conclude that Belli made a capital contribution of furniture and equipment" including "cubicles, a copier, a telephone system, conference room desks, file cabinets and shredders").

**B.      No Alleged Facts Suggest Defendant Leissner's Knowledge Can be Ascribed to Nu Horizons.**

The government cannot establish on a motion to dismiss that Nu Horizons had reason to know that the Celsius Shares were subject to forfeiture.  The Verified Petition alleges that "Nu Horizons also was without reason to know that the payments of $3,150,000 were subject to forfeiture."  (Verified Petition ¶73.)  Rather than assume this allegation to be true, as it must, the government speculates without evidence that it is false.

First, the government assumes that Defendant Leissner had reason to know that the Celsius Shares were subject to forfeiture.  While Defendant Leissner was convicted of a crime, this did not involve a finding by the jury that the Celsius Shares were proceeds of that crime or that Defendant Leissner knew this.  Indeed, as set forth above, the government has not established that the funds used to pay for the Celsius Shares were traceable to the crime.  *See supra* at 17, 19-20.  Defendant Leissner may well have known that the Celsius Shares were *not* proceeds of his crime and therefore were not subject to forfeiture.

Second, the government speculates that Defendant Leissner's knowledge can be imputed to Nu Horizons.  While the government may seek to prove these facts at a forfeiture hearing if it has such evidence, it cannot obtain dismissal of a valid petition before discovery has taken place by assuming pled facts to be false.  The alleged facts show that Defendant Leissner's criminal activities were outside the scope of his duties at Nu Horizons and therefore cannot be imputed to Nu Horizons.  *See Aquino by Convergent Distributors of Texas, LLC v. Alexander Cap., LP*, 632 B.R. 7, 24 (S.D.N.Y. 2021) (denying motion to dismiss because executive was acting outside the scope of employment, which prevented imputation of that executive's knowledge to plaintiff company).  The one case the government cites in support of its argument is readily distinguishable.  In that case, the court noted that the company "'does not contest' that it 'was

22

created to perpetrate the fraud in this case.'" *United States v. 101 Houseco*, LLC, 22 F.4th 843 (9th Cir. 2022) (quoting record).  Not only does Petitioner contest any suggestion that Nu Horizons was created to perpetrate Leissner's fraud, but it has alleged facts showing this suggestion to be manifestly false.  Petitioner Simmons, who had no knowledge of the fraud, created Nu Horizons in 2011, which was years before Defendant Leissner became a member of Nu Horizons.  Moreover, Nu Horizons made significant investments unrelated to the Celsius Shares, such as its investments in All Def Digital.  If the Court accepts Petitioner's allegations to be true and draws all reasonable inferences in its favor, as it must on a motion to dismiss, it cannot impute Defendant Leissner's knowledge to Nu Horizons.

### C.   Allowing the Government to Impute a Defendant's Knowledge to an Entity Whose Members Contributed Value Without Knowledge of the Crime Would Violate Due Process.

Not only has the government failed to identify a basis for imputing Defendant Leissner's knowledge to Nu Horizons based on the pleadings, but this would clearly violate its right to due process of law.  Were the government allowed to take an LLC's assets whenever a defendant was both an executive of the LLC and agreed that the assets were subject to forfeiture, then the government could take assets from innocent companies at will, while denying these companies the ability to challenge the forfeiture.  In deciding a motion to dismiss a petition, a court should "heed[] the Supreme Court's … admonition that '[i]mproperly used, forfeiture could become more like a roulette wheel employed to raise revenues from innocent but hapless owners ..., or a tool wielded to punish those who associate with criminals, [rather] than a component of a system of justice.'" *Lester*, 85 F.3d at 1413 (quoting *Bennis v. Michigan*, 516 U.S. 442, 456 (U.S. 1996) (Thomas, J., concurring).  This would be a Kafkaesque system of injustice in which a defendant is incentivized to "get a windfall if the money he owes is paid off with someone else's property" and the government is allowed to rely on the defendant's self-serving allegations to prevent the LLC

and other members from getting a day in court to defend themselves against the government. *Daugerdas*, 892 F.3d at 557.

      **D.**      **The Petition Alleges Simmons Contributed Value to Nu Horizons.**

Simmons, like Defendant Leissner, contributed value to Nu Horizons in exchange for his membership interest. These contributions included significant financial investments, such as those identified in paragraph 67 of the Verified Petition. Some portion of these financial investments are reflected in the LLC Operating Agreement of Nu Horizons. (*See* Verified Petition Exh. 14 at 27 (noting a capital contribution by Russell Simmons of $1,145,000). Similarly, Russell Simmons has alleged a variety of valuable promotional contributions he made to Nu Horizons. (*See* Verified Petition ¶¶25-33, 68).

      **E.**      **The Petition Alleges Simmons Was Without Reason to Know the Celsius Shares Was Forfeitable.**

The Verified Petition plausibly alleges that Russell Simmons was without reason to know the Celsius Shares was subject to forfeiture. (Verified Petition ¶¶69-72.) The government has not contested these allegations.

**<u>CONCLUSION</u>**

For the reasons stated above, the Court should deny the government's motion to dismiss the Verified Petition. In the alternative, Petitioner requests leave to re-plead the Verified Petition.

Dated:  November 30, 2023            Respectfully submitted,

                                      PRYOR CASHMAN LLP

                                      By:      */s/ Jeffrey Alberts*
                                              Jeffrey Alberts
                                              7 Times Square, Suite Level 40
                                              New York, NY 10036
                                              Tel: 212-326-0800
                                              Email: jalberts@pryorcashman.com
                                        *Attorneys for Petitioner Russell Simmons*

24
