DGR:DAS/BDM/TRP
F. #2016R00467

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In Re Forfeiture Order of Tim Leissner, et al.        23-mc-1505 (MKB)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

GOVERNMENT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PETITION FOR HEARING TO ADJUDICATE
THIRD PARTY CLAIM OF RUSSELL SIMMONS ON BEHALF OF HIMSELF AND
<u>DERIVATIVELY ON BEHALF OF NU HORIZONS INVESTMENT GROUP</u>

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Drew G. Rolle
Dylan A. Stern
Brian D. Morris
Tanisha R. Payne
Assistant U.S. Attorneys
(718) 254-7000

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................ ii

**PRELIMINARY STATEMENT** ........................................................................................ 1

**ARGUMENT** ........................................................................................................................ 2

    I.    **The Petition Should Be Dismissed Because It Fails to Assert a Legal Interest in the Celsius Shares Sufficient to Confer Standing on the Petitioner**............ 2

        A.    *Petitioner Lacks a Legal Interest in the Celsius Shares Because Members of a Limited Liability Company Have No Property Interest in Assets Held by the Entity* ........................................................................ 2

        B.    *The Petitioner Lacks a Legal Interest in Nu Horizons Because, Under the Documentation Relied Upon by the Petitioner, Any Interest Was Conveyed Away* ................................................................................... 4

        C.    *Petitioner's Attempt to Assert a Legal Interest in the Celsius Shares Derivatively on Behalf of Nu Horizons Is Improper and Deficient*......... 7

    II.    **The Petition Should Be Dismissed Because the Petitioner Cannot Demonstrate a Superior Legal Interest in the Celsius Shares Under Section 853(n)(6)** ................................................................................................... 9

        A.    *The Petitioner Cannot Demonstrate Priority of Ownership Over the Celsius Shares at the Time of the Criminal Offenses Under Section 853(n)(6)(A)* ...................................................................................... 9

        B.    *The Petitioner Cannot Demonstrate that He Is a Bona Fide Purchaser for Value Under Section 853(n)(6)(B)* .................................................. 13

            1.    Neither Petitioner Nor Nu Horizons Qualify as a "Purchaser" of the Celsius Shares Within the Meaning of Section 853(n)(6)(B) . 13

            2.    Nu Horizons Had Reasonable Cause To Believe The Celsius Shares Were Forfeitable............................................................... 14

    III.    **The Petitioner Should Not Be Permitted To Amend His Petition** .................. 15

**CONCLUSION** ................................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Colton v. New York Hosp.*,
 414 N.Y.S.2d 866 (Sup. Ct. 1979) ................................................................................. 6
*DC3 Entm't, LLC v. John Galt Entm't Inc.*,
 412 F. Supp. 2d 1125 (W.D. Wash. 2006) ................................................................ 5, 6
*De Almeida v. United States*,
 459 F.3d 377 (2d Cir. 2006) ........................................................................................ 3
*Minn. Mut. Life Ins. Co. v. Anderson*,
 504 N.W.2d 284 (Minn. 1993) .................................................................................... 6
*Pacheco v. Serendensky*,
 393 F.3d 348 (2d Cir. 2004) .................................................................................. 8, 10
*Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*,
 302 B.R. 760 (E.D.N.Y. 2003) .................................................................................... 6
*United States v. 101 Houseco, LLC*,
 22 F.4th 843 (9th Cir. 2022) ...................................................................................... 12
*United States v. Amiel*,
 995 F.2d 367 (2d Cir. 1993) ...................................................................................... 15
*United States v. Andrews*,
 530 F.3d 1232 (10th Cir. 2008) ............................................................................ 4, 12
*United States v. BCCI Holdings (Luxembourg) S.A. (Petition of American Express Bank II)*,
 961 F. Supp. 287 (D.D.C. 1997) ........................................................................... 8, 15
*United States v. Berg*,
 2023 WL 121235 n.31 (D. Utah Jan. 6, 2023) .......................................................... 14
*United States v. Cox*,
 575 F.3d 352 (4th Cir. 2009) .................................................................................... 13
*United States v. De La Mata*,
 535 F.3d 1267 (11th Cir. 2008) ................................................................................ 11
*United States v. Evanson*,
 2008 WL 3107332 (D. Utah Aug. 4, 2008) .............................................................. 11
*United States v. Guerrero*,
 37 F.4th 1215 (7th Cir. 2022) ................................................................................... 11
*United States v. Hallinan*,
 75 F.4th 148 (3rd Cir. 2023) ..................................................................................... 11
*United States v. Lanvin*,
 942 F.2d 177 (3rd Cir. 1991) .................................................................................... 16
*United States v. Lazarenko*,
 575 F. Supp. 2d 1139 (N.D. Cal. 2008) .................................................................... 13
*United States v. Lazarenko*,
 2008 WL 4858151 (N.D. Cal. Nov. 10, 2008) ......................................................... 11
*United States v. Liquidators of European Fed. Credit Bank*,
 630 F.3d 1139 (9th Cir. 2011) .................................................................................. 14

*United States v. McCorkle*,
   321 F.3d 1292 (11th Cir. 2003) .................................................................................. 3
*United States v. Nava*,
   404 F.3d 1119 (9th Cir. 2005) .................................................................................. 10
*United States v. Porchay*,
   533 F.3d 704 (8th Cir. 2008) .................................................................................... 10
*United States v. Rosga*,
   864 F. Supp. 2d 439 (E.D. Va. 2012) .................................................................. 3, 11
*United States v. Salti*,
   579 F.3d 656 (6th Cir. 2009) .................................................................................... 10
*United States v. Soreide*,
   461 F.3d 1351 (11th Cir. 2006) ................................................................................ 15
*United States v. Strube*,
   58 F. Supp. 2d 576 (M.D. Pa. 1999) ........................................................................ 16
*United States v. Taylor*,
   2000 WL 715916 (D. Or. June 5, 2000) .................................................................. 15
*United States v. Watts*,
   477 F. App'x 816 (2d Cir. 2012) ................................................................................ 3
*United States v. Watts*,
   786 F.3d 152 (2d Cir. 2015) .................................................................................. 3, 4
*Willis Mgmt., Ltd. v. United States*,
   652 F.3d 236 (2d Cir. 2011) .............................................................................. 12, 14

**Statutes**

21 U.S.C. § 853(n)(6) ...................................................................................... 4, 10, 12
21 U.S.C. § 853(n)(6)(A) ........................................................................................ 9, 10
21 U.S.C. § 853(n)(6)(B) ...................................................................................... 13, 14

**Rules**

Fed. R. Civ. P. 23.1(b)(1) .............................................................................................. 9
Fed. R. Crim. P. 32.2(b)(2) ........................................................................................... 4
Fed. R. Crim. P. 32.2(c)(2) ......................................................................................... 10

**Secondary Authority**

Scott L. Hoffman, *A Practice Guide to Transactional Project Finance: Basic Concepts, Risk
   Identification, and Contractual Consideration*,
   45 Bus. Law 18 .......................................................................................................... 6

## PRELIMINARY STATEMENT

The government has moved to dismiss the third-party petition filed by Russell Simmons (the "Petitioner") on behalf of himself and derivatively on behalf of Nu Horizons Investment Group LLC (the "Petition"), which seeks to challenge the forfeiture of 3,325,942 shares of stock in Celsius Holdings, Inc. (the "Celsius Shares"). Petitioner lacks standing to contest the forfeiture of the Celsius Shares in the first instance and further has no cognizable claim to any of the shares.

The Petitioner claims his legal interest in the Celsius Shares arises out of his alleged ownership stake in Nu Horizons Investment Group LLC ("Nu Horizons"), which he claims acquired title to the shares in exchange for payment by another entity that defendant Tim Leissner had arranged. But the Petitioner glosses over the corporate law that applies here, which makes clear the members of a limited liability company have no legal interest in assets held by the entity. In addition, the Petitioner's assertion that this Court's order of forfeiture must be limited to property that belongs to defendant Leissner is wrong under Second Circuit precedent and the Federal Rules of Criminal Procedure. The Petitioner's individual claim fails as a result.

So, too, does his derivative claim on behalf of Nu Horizons. The Petitioner fails to cite a single decision by any court that has granted such a claim, nor has the Petitioner complied with the procedures required to commence a shareholder derivative suit or asserted a valid basis for excusing him from such compliance. Accordingly, the Petitioner's derivative claim fails at the threshold.

Even if the Petitioner could assert a valid legal interest in the Celsius Shares or a valid derivative claim—neither of which is the case—the Petitioner cannot establish that his alleged interest in the shares predated defendant Leissner's criminal conduct. Thus, he cannot

establish that his asserted interest trumps that of the government, which "relates back" to the inception of Leissner's crimes. The Petitioner also fails to show that he is a bona fide purchaser of the shares—a status reserved for those who acquire their interests through an exchange of value. The Petitioner all but concedes that he does not qualify as "purchaser" of the shares within the meaning of Section 853(n)(6)(B). Given that the Petition alleges the funds for the purchase of the Celsius Shares came from another entity entirely, Nu Horizons cannot qualify as a purchaser either. And even if Nu Horizons qualified as a purchaser of the Celsius Shares Leissner's knowledge as to their forfeitability would still be imputed to the entity.

Finally, the Petitioner's last-ditch argument that the government has not made an evidentiary showing sufficient to avoid due process concerns should be rejected. The burden of demonstrating ownership in the ancillary proceeding always rests with the Petitioner, and he has failed to satisfy that burden. The forum for these complaints is not the ancillary proceeding, it is in the civil litigation that he has already commenced against Leissner and his wife. Accordingly, the petition should be dismissed for lack of standing and failure to state a claim.

## ARGUMENT

I. The Petition Should Be Dismissed Because It Fails to Assert a Legal Interest in the Celsius Shares Sufficient to Confer Standing on the Petitioner

    A. Petitioner Lacks a Legal Interest in the Celsius Shares Because Members of a Limited Liability Company Have No Property Interest in Assets Held by the Entity

Petitioner's alleged interest in the Celsius Shares stems from his claim to a 49% ownership interest in Nu Horizons, which Petitioner contends acquired title to the Celsius Shares in exchange for a $3 million payment wired from another entity that Tim Leissner had arranged. *See* Petition ¶¶ 22-23, 36, 47, 64. In its opening submission, the government cited authority holding that corporate shareholders—and, by extension, the members of a limited liability

company—lack a legal interest in assets held by the corporate entity. *See* Gov't Mem. at 13-15. This clear precedent, which the Petitioner does not bother to address, is fatal to his claim.

> a. *Under Second Circuit Caselaw, Forfeiture Is Not Limited to Property Owned by Defendant Leissner But Extends to All Property Involved in Leissner's Criminal Offenses*

The Petitioner contends that he must be permitted to proceed on his own behalf because his interest in the Celsius Shares, which stems from his membership interest in Nu Horizons, is coextensive with that of defendant Leissner. *See* Pet. Mem. at 13-15. According to the Petitioner, if he had no legal interest in the Celsius Shares, then neither did Leissner, and the Amended Preliminary Order of Forfeiture would have to be vacated. *Id*.

The Petitioner is wrong. As the Second Circuit has recognized, "[C]riminal forfeiture is not a measure restricted to property owned by the criminal defendant." *United States v. Watts*, 477 F. App'x 816, 818 (2d Cir. 2012) (quoting *De Almeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006) ("[C]riminal forfeiture . . . reaches *any* property that is 'involved' in the offense.") (emphasis in original)); *see also United States v. Watts*, 786 F.3d 152, 174-75 (2d Cir. 2015) (holding that analogous criminal forfeiture provision, Section 982(a)(2), "authoriz[es] forfeiture of *any* property that is 'derived' from proceeds obtained through a defendant's offense, whether or not that property was ever owned by the criminal defendant.") (emphasis in original); *United States v. McCorkle*, 321 F.3d 1292, 1294 n.2 (11th Cir. 2003) (noting that special verdict of forfeiture may reach property held by third party); *United States v. Rosga*, 864 F. Supp. 2d 439, 450-51 (E.D. Va. 2012) (rejecting petitioners' argument that order of forfeiture was invalid because criminal defendants lacked power to consent to forfeit property that they did not own).

The government properly sought forfeiture of the Celsius Shares without regard to defendant Leissner's interest in the shares. That is because, as required by the procedures for

addressing third-party claims set forth in Rule 32.2, the Court must include property subject to forfeiture in a preliminary order without regard to any third party's interest in it; issues concerning ownership are deferred to the ancillary proceeding, where the burden falls to the Petitioner to establish a superior interest in the property under the standards set forth in Section 853(n)(6). Fed. R. Crim. P. 32.2(b)(2) and (c)(1); *see also United States v. Andrews*, 530 F.3d 1232, 1236 (10th Cir. 2008) (holding that in determining forfeitability of property under Rule 32.2(b)(2), court does not and indeed may not determine rights of any third parties who assert interest in property, which is deferred to ancillary proceeding). The Petitioner therefore lacks standing to challenge the inclusion of the Celsius Shares in the Amended Preliminary Order of Forfeiture entered in defendant Leissner's criminal case. *Watts*, 786 F.3d at 174-76 (rejecting petitioner's argument that, because criminal forfeiture is *in personam* sanction that only reaches property owned by defendant, funds deposited into account held by third-party entity were improperly included in forfeiture order; challenges to forfeiture order may be made by criminal defendant but not by third-party, who may only assert claims in ancillary proceeding based on only two grounds identified in Section 853(n)(6)).[1]

   B. <u>The Petitioner Lacks a Legal Interest in Nu Horizons Because, Under the Documentation Relied Upon by the Petitioner, Any Interest Was Conveyed Away</u>

As alleged in the Petition, on or about May 25, 2018, the Petitioner, Keyway Pride LLC ("Keyway Pride"), Rush Digital Media, LLC, and Nu Horizons entered into a stock transfer agreement (the "Stock Transfer Agreement"), which directed the transfer of, among

---

[1] The Petitioner also suggests that the government's forfeiture of the shares must be limited to those shares that the government would have been able to recover, albeit indirectly, if it had instead sought to forfeit defendant Leissner's membership interest in Nu Horizons. *See* Pet. Mem. at 15. Since the government elected to seek forfeiture of the Celsius Shares directly, limiting the government's forfeiture to the shares that it would have been able to recover had the government decided to pursue Leissner's interest in Nu Horizons is nonsensical.

other assets, the Petitioner's entire ownership interest in Nu Horizons to Keyway Pride. *See* Petition ¶¶ 49, 51. On the same date, the Petitioner conveyed all of his interest in Nu Horizons to Keyway Pride as reflected in the assignment instrument executed by the Petitioner set forth in an exhibit to the Stock Transfer Agreement (the "Assignment"). *See* Ex. A to Stock Transfer Agreement, ECF Dkt. No. 5-20. However, the Petition alleges that a Membership Interest Transfer Agreement (the "MITA") entered into by the Petitioner, Lee, Keyway Pride, and Erok Ventures LLC approximately seven months later (on December 17, 2018) included a provision that voided the Stock Transfer Agreement. *See* Petition ¶ 61; MITA, ECF Dkt. No. 5-22.

The Petitioner therefore contends that his alleged interest in Nu Horizons was not conveyed away for three reasons: (i) the Stock Transfer Agreement is unenforceable because of fraud, (ii) the MITA included an integration provision that voided the Stock Transfer Agreement, and (iii) defendant Leissner confirmed, after the MITA was signed, that the Petitioner held a beneficial ownership interest in the Celsius Shares. *See* Pet. Mem. at 15-16. As discussed below, none of these arguments have merit.

First, the Petitioner's argument that the Stock Transfer Agreement is unenforceable due to fraud fails. Even assuming that the Stock Transfer Agreement is an unenforceable contract as alleged by the Petitioner, the Assignment constitutes a conveyance that is a separate and independent legal instrument. *See DC3 Entm't, LLC v. John Galt Entm't Inc.*, 412 F. Supp. 2d 1125, 1141 (W.D. Wash. 2006). As a result, in order for the Assignment to be set aside, the Petitioner would need to establish that the Assignment constitutes a fraudulent conveyance. To strike down a conveyance as fraudulent, the person making the transfer (the transferor) must have at least one of the following financial problems:

> 1) the transferor is insolvent or will be rendered insolvent by the transfer in question; 2) the transferor making the conveyance is a

>  defendant in an action for money damages who fails to satisfy a judgment entered against him; 3) the transferor is engaged or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital; or 4) the transferor believes that it will incur debts beyond its ability to pay.

*Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 302 B.R. 760, 778 (E.D.N.Y. 2003) (citing N.Y. Debt. & Cred. Law §§ 273, 274 and 275), *aff'd* 403 F.3d 43 (2d Cir. 2005).  The Petition is devoid of any allegations that the Petitioner suffered from any of the above problems that would be required to set aside the Assignment as a fraudulent conveyance.  Accordingly, the Petitioner's argument as to the Stock Transfer Agreement's enforceability fails.

The Petitioner is also wrong with respect to the legal effect of the MITA.  *See* Pet. Mem. at 16.  His argument rests on a misapprehension of the difference between a contract and an assignment.  Contracts differ from executed agreements in that a contract is executory in nature and prescribes what will occur in the future while an executed agreement has already been performed. *See* Joseph M. Perillo, *Contracts* § 1.2, at 3 (7th ed. 2014) (observing that agreement to sell parcel of land is contract, while actual sale of parcel is not); *see also Colton v. New York Hosp.*, 414 N.Y.S.2d 866, 873 (Sup. Ct. 1979) (contrasting contractual covenant not to sue, which is executory in nature, with executed release not requiring further performance).  It is hornbook law that a present transfer, such as the conveyance of the Petitioner's purported interest in Nu Horizons to Keyway Pride by virtue of the executed Assignment, does not constitute a contract.  Perillo, *Contracts* § 18.3, at 641 ("[A]n assignment is a present transfer — an executed transaction . . . ."); *DC3 Entm't, LLC,* 412 F. Supp. 2d at 1141 ("It is important not to confuse an assignment, which is a present transfer, with a contract, which is a promise of future performance.") (quoting E. Allen Farnsworth, *Contracts* § 11.3 at 710 (3d ed. 1999)); *Minn. Mut. Life Ins. Co. v. Anderson,* 504 N.W.2d 284, 286 (Minn. 1993) (same); *see also* Scott

L. Hoffman, *A Practice Guide to Transactional Project Finance: Basic Concepts, Risk Identification, and Contractual Consideration*, 45 Bus. Law 18 n. 66 (1989) (noting that although topic of assignments is included in contract law casebooks, assignments do not constitute contracts).

The Assignment does not constitute a contractual agreement; rather, it amounts to a separate instrument that conveyed Petitioner's purported present interest in Nu Horizons to Keyway Pride. As a result, the MITA's integration provision that may have set aside the Stock Transfer Agreement had no legal effect on the conveyance of the Petitioner's purported interest in Nu Horizons, which occurred at the time Petitioner executed the Assignment. Thus, the only way in which the Petitioner could regain his alleged prior interest in Nu Horizons would be through another assignment instrument executed on behalf of Keyway Pride that reconveyed the Petitioner's alleged interest back to the Petitioner. There is no allegation that any such reconveyance occurred, which is fatal to the Petitioner's attempt to assert a legal interest in Nu Horizons.

Finally, any alleged confirmation by defendant Leissner of Petitioner's purported interest in Nu Horizon has no bearing on the legal effect of the Assignment instrument. As established above, the Petitioner conveyed away any alleged interest in Nu Horizons by virtue of the Assignment. This conveyance is unaltered by any purported *ex post facto* statements by Leissner or others, and the Petitioner's argument should therefore be rejected.

C. <u>Petitioner's Attempt to Assert a Legal Interest in the Celsius Shares Derivatively on Behalf of Nu Horizons Is Improper and Deficient</u>

In its opening submission, the government explained how there is no statutory or other basis for the Petitioner to assert a legal interest in the Celsius Shares derivatively on behalf of Nu Horizons and, even if such a basis existed, the Petition would fail to meet the heightened

pleading standards required for shareholder derivative suits. *See* Gov't Mem. at 17-18. In his opposition brief, the Petitioner fails to cite a single decision by any court that has granted a third-party petition asserting a property interest derivatively on behalf of a corporate entity. Instead, the Petitioner argues that prohibiting him from asserting the interests of Nu Horizons would violate his due process rights and that he either satisfies or should be excused from the heightened pleading standards imposed upon corporate shareholders in commencing derivative suits. *See* Pet. Mem. at 9-13. The Petitioner is mistaken on both points.

In support of his due process argument, the Petitioner relies upon the Second Circuit's decision in *Pacheco v. Serendensky*, 393 F.3d 348 (2d Cir. 2004). *See* Pet. Mem. at 10-11. This reliance is misplaced. In *Pacheco*, the Second Circuit recognized that, to avoid due process concerns, the forfeiture laws must be construed to permit the partial forfeiture of a single tract of real property in which a third party has asserted a valid interest in an ancillary proceeding. 393 F.3d at 354-55. Those due process concerns are not implicated here, however, because, as set out above, the Petitioner lacks a legal interest in the Celsius Shares. Moreover, the ancillary proceeding itself provides the required due process. *See United States v. BCCI Holdings (Luxembourg) S.A. (Petition of American Express Bank II)*, 961 F. Supp. 287, 302-303 (D.D.C. 1997) ("[T]he mere fact that a third party . . . cannot satisfy the criteria that Congress established to determine whether a court must amend an order of forfeiture does not mean that the statute offends the constitutional provisions guaranteeing due process . . . .").

The Petitioner also has not satisfied the heightened pleading standards required for corporate shareholders to advance a derivative suit. The Petitioner contends that he satisfies the pleading requirements by alleging that he was "a member at the time the transaction complained of" because he was "a member of Nu Horizons at the time the Celsius Shares were

purchased." Fed. R. Civ. P. 23.1(b)(1); Pet. Mem. at 12 (citing Petition ¶¶ 16, 34-36). Under the pleading requirements set forth in Rule 23.1(b), however, the "transaction complained of" is not Nu Horizon's purported acquisition of the Celsius Shares, but rather Nu Horizon's failure to file a third-party petition in the ancillary proceeding. The Petition has not—and could not—allege that the Petitioner was a member of Nu Horizons at the time that Nu Horizons failed to file a petition asserting an interest in the Celsius Shares because, by that time, the Petitioner had already conveyed away his purported interest in Nu Horizons.

Nor has the Petitioner offered a valid basis for excusing him from the particularized pleading requirements imposed upon shareholders as a prerequisite to commencing a derivative action. The Petitioner contends that demanding defendant Leissner take steps to assert a claim to the Celsius Shares on behalf of Nu Horizons as its manager, as contemplated by Rule 23.1(b)(3), would be futile. But the Petitioner does not explain his failure to make the same demand of Lee, which is also contemplated by Rule 23.1(b)(3) by virtue of her alleged membership interest in Nu Horizons.[2] The Petitioner's failure in this regard is even more surprising given that Lee has also filed a third-party petition in the ancillary proceeding to contest forfeiture of certain of the Celsius Shares. These deficiencies are fatal to the Petition.

II.     **The Petition Should Be Dismissed Because the Petitioner Cannot Demonstrate a Superior Legal Interest in the Celsius Shares Under Section 853(n)(6)**

   A.   **The Petitioner Cannot Demonstrate Priority of Ownership Over the Celsius Shares at the Time of the Criminal Offenses Under Section 853(n)(6)(A)**

In its opening brief, the government established that, under the relation-back doctrine, title to the Celsius Shares vested in the United States at the time of defendant Leissner's

---

[2] In addition, the Nu Horizons Operating Agreement provides for members, such as Lee, to appoint new managers responsible for conducting the affairs and taking all acts on behalf of the company. *See* Petition, Exh. 14 at Section 8.1 (entitled "Management") and Section 8.2 (entitled "Designation of Managers").

criminal conduct, which predated the Petitioner's alleged acquisition of the Celsius Shares. *See* Gov't Mem. at 19. The government also explained why, under well-established caselaw, a third-party, such as the Petitioner, cannot establish a pre-existing interest under Section 853(n)(6)(A) in fraud proceeds, which come into existence only when a crime occurs. *See* Gov't Mem. at 19-20. The Petitioner ignores this authority, instead arguing that the relation back doctrine is inapplicable here because the government has not established in the ancillary proceeding that the Celsius Shares belong to defendant Leissner or represent criminal proceeds. The Petitioner fails to cite any authority in support of his attempt to saddle the government with this burden, which is not contemplated by any forfeiture law.[3] There is no requirement that property must belong to the criminal defendant to be forfeiture; Rule 32.2(c)(2) requires the district court to find that the defendant has some "interest" in forfeitable property *only* where no claim is filed in the ancillary proceeding. Fed. R. Crim. P. 32.2(c)(2) ("*If no third party files a timely petition*, the preliminary order becomes the final order of forfeiture if the court finds that the defendant (or any combination of defendants convicted in the case) had an interest in the property that is forfeitable under the applicable statute.") (emphasis added); Advisory Committee Notes to Fed. R. Crim. P. 32.2(c)(2) (explaining that "if no one files a claim in the ancillary proceeding, the preliminary order would become the final order of forfeiture, but the court would first have to make an

---

[3] The burden of demonstrating ownership of property included in a preliminary order of forfeiture, such as the funds at issue, rests not with the government, but rather with the third-party claimant. *See Pacheco*, 393 F.3d at 351 ("burden [falls] ultimately on the petitioner to prove her claim by a preponderance of the evidence"); *United States v. Porchay*, 533 F.3d 704, 709 (8th Cir. 2008) ("To prevail in a § 853(n) claim, [claimant] had to demonstrate by a preponderance of the evidence that she had a superior right, title, or interest in the seized property . . . ."); *United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir. 2005) ("[T]he petitioner bears the burden of proving his right, title, or interest under Section 853(n)(6)."). The same burden rests with the third party to establish standing in the ancillary proceeding. *United States v. Salti*, 579 F.3d 656, 667 n.11 (6th Cir. 2009) (holding that standing must be supported in same way as any other matter on which claimant bears burden of proof).

independent finding that at least one of the defendants had an interest in the property"). Because the Petitioner, Lee, and Ken Siazon have all filed third-party petitions in the ancillary proceeding, the Court need not find that defendant Leissner had any interest in the Celsius Shares. *See United States v. Lazarenko*, 2008 WL 4858151, at *1 (N.D. Cal. Nov. 10, 2008) (holding that there is no need for court to make any finding regarding defendant's forfeitable interest in property where third parties have had fair opportunity to litigate their claims in the ancillary proceeding); *United States v. De La Mata*, 535 F.3d 1267, 1273 (11th Cir. 2008) (noting that there is no need for district court to even enter final order of forfeiture if there are no third-party claims or claims are settled without ancillary proceeding); *United States v. Evanson*, 2008 WL 3107332, at *3 (D. Utah Aug. 4, 2008) ("The proceeds of the crime are always forfeitable in a criminal case; it is not necessary to show that the money ever legally belonged to the defendant."); *United States v. Rosga*, 864 F. Supp. 2d 450-51, at n. 12 (E.D. Va. May 21, 2012) ("[T]he factual question of whether the defendants had sufficient property interests to justify their respective forfeitures is largely irrelevant to the threshold inquiry regarding Petitioners' standing to assert ancillary claims.").

Nor is there any requirement, as the Petitioner suggests, for the government to make a factual showing that the Celsius Shares represent criminal proceeds, since the sole purpose of the ancillary proceeding is to determine *ownership* of forfeited asset.[4]  *United States v. Hallinan*, 75 F.4th 148 (3rd Cir. 2023) (third party cannot use ancillary proceeding to litigate whether property was "rightly forfeited" as traceable to crime; only defendant can do that) (citing Advisory Committee Note to Fed. R. Crim. P. 32.2); *United States v. Guerrero,* 37 F.4th 1215

---

[4]  While no showing is required in the ancillary proceeding, it should be noted that on March 5, 2021, United States Magistrate Judge Peggy Kuo found the existence of probable cause to believe the Celsius Shares were subject to forfeiture.

(7th Cir. 2022) (since only issue in ancillary proceeding is ownership, third party cannot relitigate finding of forfeitability; but even if he could, property that was not traceable to defendant's fraud would nevertheless be forfeitable as property involved in money laundering); *United States v. 101 Houseco, LLC*, 22 F.4th 843 (9th Cir. 2022) (following all other circuits holding that third party is limited to contesting forfeiture two grounds set forth in Section 853(n)(6) and thus lacks standing to litigate antecedent question of forfeitability) (collecting cases); *United States v. Andrew*, 530 F.3d 1232, 1237 (10th Cir. 2008) (third party has no right to challenge preliminary order since only issue in ancillary proceeding is ownership, which is complete defense to forfeiture; "if the property really belongs to the third party, he will prevail and recover his property whether there were defects in . . . the forfeiture process or not; and if the property does not belong to the third party, such defects in the finding of forfeitability are no concern of his").

To address his lack of any legal interest in the Celsius Shares, the Petitioner relies on the allegation in the Petition that, "Pursuant to the 2016 Nu Horizon Operating Agreement, Petitioner Simmons owned a 49% interest in all the assets of Nu Horizons." Pet. Mem. at 17 (citing Petition ¶ 36). This is precisely the type of legal conclusion that the Court is not required to accept. *Willis Mgmt., Ltd. v. United States*, 652 F.3d 236, 241-42 (2d Cir. 2011). The Nu Horizons Operating Agreement, which is attached as an exhibit to the Petition, does provide for member distributions—but neither that distribution mechanism nor any other provision of the agreement provides a basis for disregarding the separate existence of Nu Horizons as a corporate entity distinct from its members. *See* Petition, Ex. 14 at Section 7.5; Section I.A, *supra*. Accordingly, the Petitioner's conclusory allegation that he holds an ownership interest in the assets of Nu Horizons falls well short of curing the deficiency in his claim.

B.     The Petitioner Cannot Demonstrate that He Is a Bona Fide Purchaser for Value Under Section 853(n)(6)(B)

        1.     Neither Petitioner Nor Nu Horizons Qualify as a "Purchaser" of the Celsius Shares Within the Meaning of Section 853(n)(6)(B)

As the government explained in its opening submission, since the only acquisition of the Celsius Shares alleged in the Petition was by Nu Horizons, the Petitioner cannot establish that he qualifies as a "purchaser" within the meaning of Section 853(n)(6)(B). *See* Gov't Mem. at 20-21 (citing Petition ¶¶ 16, 23, 25, 47, 66-67). In his opposition, the Petitioner does not contest this point, which is fatal to his claim under Section 853(n)(6)(B).[5] *See* Pet. Mem. at 20-24. Instead, the Petitioner disputes the government's argument that Nu Horizons cannot be considered a "purchaser" of the Celsius Shares because the only payment towards the purchase of shares was a wire transfer from an account held by another entity, Asian Sports Ventures HK, which was personally arranged by defendant Leissner. *See* Gov't Mem. at 21 (citing Petition ¶ 23); Pet. Mem. at 20-21. Specifically, the Petitioner suggests that the alleged payment for the Celsius Shares arranged by defendant Leissner represents a routine in kind capital contribution that Leissner made to Nu Horizons for which defendant Leissner received value. But the relevant inquiry under Section 853(n)(6)(B) is not whether defendant Leissner gave value to, or received value from, Nu Horizons, but rather whether *Nu Horizons* gave value in exchange for the Celsius Shares. Since it is clear, based on the facts alleged in the Petition, that Nu Horizons gave nothing of value in exchange for the Celsius Shares, Nu Horizons can at best be considered a gratuitous transferee of the shares—not a purchaser. *See United States v. Lazarenko*, 575 F.

---

     [5]     Because the Amended Preliminary Order is directed to the Celsius Shares, the Petitioner's argument that he contributed value to Nu Horizons is not relevant. *See* Pet. Mem. at 24 (citing Petition ¶¶ 25-33, 67-68, Ex. 14 at p. 27); *United States v. Cox*, 575 F.3d 352, 356-57 (4th Cir. 2009) (to qualify as bona fide purchaser under Section 853(n)(6)(B), value given must be in exchange for particular asset that is subject to forfeiture).

Supp. 2d 1139, 1151-52 (N.D. Cal. 2008) (bank in which defendant gratuitously deposited funds gave nothing of value), *rev'd on other grounds sub nom. United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139 (9th Cir. 2011). Accordingly, Nu Horizons cannot qualify as a purchaser of the Celsius Shares within the meaning of Section 853(n)(6)(B).

### 2. Nu Horizons Had Reasonable Cause To Believe The Celsius Shares Were Forfeitable

The Petitioner submits that, on a motion to dismiss, the Court must accept as true the allegation in the Petition that Nu Horizons was without reason to know that the funds used to purchase the Celsius Shares were subject to forfeiture. *See* Pet. Mem. at 22. The Petitioner is wrong again, since this is a legal conclusion that the Court is not required to accept as true. *Willis Mgmt., Ltd.*, 652 F.3d at 241-42. The Petitioner also suggests that defendant Leissner may not have been aware that the Celsius Shares represented criminal proceeds. This suggestion is nonsensical. Mere awareness of a defendant's criminal conduct in relation to property subject to forfeiture is sufficient to provide notice that the property is forfeitable. *See, e.g.*, *United States v. Berg*, 2023 WL 121235, at *2 n.31 (D. Utah Jan. 6, 2023) (inquiry under Section 853(n)(6)(B) is not government's intent to forfeit property, but awareness of conduct giving rise to forfeiture).

The Petitioner further contends that Leissner's knowledge as to the forfeitability of the Celsius Shares could not be imputed to Nu Horizons, based upon his role as a manger and majority member of Nu Horizons, because his conduct fell outside the scope of his authority. As an initial matter, this argument should be rejected as inconsistent with Petitioner's earlier contention that the alleged payment for the Celsius Shares arranged by defendant Leissner was part of a routine capital contribution that Leissner made to Nu Horizons. *See* Pet. Mem. at 20-21. This argument also raises significant legal and policy concerns. If the knowledge of corporate officer was not imputed to the entity, defendants would be able to shield criminal

proceeds and other assets tainted by crime from forfeiture through the use of corporate entities. *United States v. Taylor*, 2000 WL 715916, at *5 (D. Or. June 5, 2000) (individual defendant who is corporate president can agree to criminal forfeiture of property held by corporation, which can be forfeited in criminal case even though corporation is not charged; dismissing third-party petition of shareholders for lack of standing). The Court should therefore reject the Petitioner's argument that defendant Leissner's knowledge as to the forfeitability of the Celsius Shares should not be imputed to Nu Horizons.

Finally, the Petitioner maintains that imputing defendant Leissner's knowledge as to the forfeitability of the Celsius Shares to Nu Horizons would violate the due process rights of Nu Horizons—and other similarly situated entities—by denying them the opportunity to contest the forfeiture of an asset held by the entity, where one of its officers consented to forfeiture of the asset. *See* Pet. Mem. at 23-24. However, the fact that an entity like Nu Horizons "cannot satisfy the criteria that Congress established to determine whether a court must amend an order of forfeiture" does not run afoul of due process rights guaranteed by the Fifth Amendment, which are protected by the ancillary proceeding itself. *BCCI Holdings (Luxembourg) S.A. (Petition of American Express Bank II)*, 961 F. Supp. at 302-303. The Court should therefore reject the Petitioner's due process argument.

III.    The Petitioner Should Not Be Permitted To Amend His Petition

In the alternative, the Petitioner seeks permission to amend his Petition. *See* Pet. Mem. at 24. This should not be granted. Court generally require "strict compliance" with the rules and deadlines governing forfeiture proceedings is required. *See United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993) (collecting cases applying "strict compliance" standard). As a result, all grounds for recovery must be set forth within the petition, and a claimant may not later amend the petition to assert additional grounds for relief. *See, e.g., United States v. Soreide*, 461

F.3d 1351, 1355 (11th Cir. 2006) (holding that claims not asserted in petition were statutorily time-barred); *United States v. Strube*, 58 F. Supp. 2d 576, 585 (M.D. Pa. 1999) (rejecting third-party claims as untimely because they were not raised in petition but first asserted in response to government's motion to dismiss). Since a petition must therefore succeed or fail in its original and unamended form, the Court should deny the Petitioner's request to amend his Petition.

Despite his lack of standing and failure to state a claim under either prong of Section 853(n)(6), the Petitioner is not without a remedy for the fraud he claims to have suffered. In fact, Petitioner has commenced suit asserting fraud and breach of contract claims against Lee, Leissner, and others in a case currently pending in Superior Court of the State of California, County of Los Angeles. *See* Civil Case No. 21STCV18852. It is that action—not the ancillary proceeding—that provides the appropriate forum for the Petitioner to seek relief. *Cf. United States v. Lanvin,* 942 F.2d 177, 187 (3rd Cir. 1991) (victim of embezzlement unrelated to offense giving rise to forfeiture could not seek redress against defendant in ancillary proceeding).

## CONCLUSION

For the reasons stated above, the Court should deny the Petitioner's request to amend his Petition and dismiss the Petition in its entirety, pursuant to Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure.

Dated: Brooklyn, New York
      December 7, 2023

                                        BREON PEACE
                                        United States Attorney

                   By:    /s *Tanisha R. Payne*
                              Drew G. Rolle
                              Dylan A. Stern
                              Brian D. Morris
                              Tanisha R. Payne
                              Assistant U.S. Attorneys
                              (718) 254-7000