UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

In Re Forfeiture Order of Tim Leissner

**MEMORANDUM & ORDER**
23-MC-1505 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Tim Leissner pleaded guilty in 2018 to one count of conspiracy to violate the Foreign Corrupt Practices Act ("FCPA") in violation of 18 U.S.C. § 371 and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). (Verified Pet. of Russell Simmons & Nu Horizons ("Pet.") ¶ 4, Docket Entry No. 5-1; Am. Prelim. Order of Forfeiture ("Am. Forfeiture Order") 1, Docket Entry No. 1.) Leissner consented to the entry of a $43.7 million money judgment against him, and the government seeks forfeiture of shares of stock in Celsius Holdings, Inc. (Am. Forfeiture Order 1.) Petitioner Russell Simmons filed a petition pursuant to 21 U.S.C. § 853(n) asserting a direct claim on behalf of himself and a derivative claim on behalf of Nu Horizons Investment Group, LLC ("Nu Horizons"), an LLC co-managed by Leissner and Petitioner (the "Petition"). (Pet.)

The government has moved to dismiss the Petition under Federal Rule of Criminal Procedure 32.2(c). (Gov't Mem. in Supp. of Mot. to Dismiss Pet. ("Gov't Mem."), Docket Entry No. 21.) For the reasons discussed below, the Court grants the government's motion to dismiss Petitioner's direct claim and denies the government's motion to dismiss Petitioner's derivative claim on behalf of Nu Horizons.

I. **Background**

a. **Factual background**

On August 28, 2018, Leissner pleaded guilty to one count of conspiracy to violate the

FCPA, in violation of 18 U.S.C. § 371, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), arising out of bond transactions that took place during 2012 and 2013.[1]  (Pet. ¶ 4; Information 7, *United States v. Leissner*, No. 18-CR-439, Docket Entry No. 16.)  The government subsequently traced the payments resulting from these crimes to a $3 million wire transfer made on or about April 21, 2015, from "Asian Sports Ventures HK" to Celsius Holdings, Inc., a company engaged in the development and sale of an energy drink.  (Pet. ¶ 23.)  The wire transfer was used as payment for 3,370,787 shares of Celsius stock (the "Celsius Shares"), which were issued to Nu Horizons.  (*Id.* ¶¶ 22–23; Pet. Ex. 6 ("Stock Purchase Agmt.") Schedule 1.2, Docket Entry No. 5-7.)

Petitioner formed Nu Horizons in 2011.  (Pet. ¶¶ 16, 34.)  The Nu Horizons LLC Operating Agreement sets forth the ownership structure of the LLC, and states that Leissner and Petitioner are managers of Nu Horizons, with Petitioner owning a 49% share of the LLC.  (*Id.* ¶ 35; Pet. Ex. 14 ("Nu Horizons Operating Agmt.") 7,[2] Docket Entry No. 5-15.)

On or about April 26, 2018, Petitioner and Kimora Lee Simmons-Leissner, Leissner's wife, signed a letter of intent (the "LOI") memorializing Petitioner's intent to sell all of his interests in Nu Horizons to Keyway Pride Limited, LLC ("Keyway Pride"), a company owned by Lee Simmons-Leissner.  (Pet. ¶ 42.)  On May 25, 2018, Petitioner, Keyway Pride, Rush Digital Media, LLC (a company founded by Petitioner), and Nu Horizons entered into a Stock Transfer Agreement (the "Stock Transfer Agreement"), which directed the transfer of the Petitioner's "entire Ownership Percentage . . . in Nu Horizons," as well as his Class A Common

---

[1]  The Court assumes the truth of the factual allegations in the Petition for the purposes of this Order.

[2]  Because the internal pagination of the Nu Horizons Operating Agreement differs depending on the referenced section, the Court refers to the page numbers assigned by the electronic case filing system.

Units of Rush Digital Media, LLC, to Keyway Pride at an aggregate purchase price of $14,250,000. (*Id.* ¶¶ 49, 51.) Keyway Pride did not pay what it was required to under the Stock Transfer agreement. (*Id.* ¶ 52.) In December of 2018, Petitioner, Lee Simmons-Leissner, Keyway Pride, and Erok Ventures LLC entered into a Member Interest Transfer Agreement ("MITA") that transferred Petitioner's interests in Erok Ventures LLC to Keyway Pride. (*Id.* ¶ 61; Pet. Ex. 21 ("MITA"), Docket Entry No. 5-22.) The MITA "supersede[d] any prior written or oral agreements" between the parties including the Stock Transfer Agreement, which it "deemed null and void ab initio." (*Id.* ¶ 61; *see also* MITA § 7.8).

### b. Procedural background

On November 1, 2018, the Court entered a Preliminary Order of Forfeiture against Leissner that provided for a forfeiture money judgment in the amount of $43.7 million, pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b)(1). (*See Leissner*, No. 18-CR-439, Docket Entry No. 21; Pet. ¶ 7.) On March 3, 2023, the Court entered an Amended Preliminary Order of Forfeiture against Leissner, directing the forfeiture of all right, title and interest in the Celsius Shares as: (a) property, real or personal, involved in the violation of 18 U.S.C. § 1956(h), or property traceable to such property; and (b) property, real or personal, constituting or derived from proceeds traceable to a violation of 18 U.S.C. § 371, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 982(b)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).[3] (*See* Am. Forfeiture Order; Pet. ¶ 12.)

On May 5, 2023, Petitioner filed a petition on behalf of himself and derivatively on

---

[3] 18 U.S.C. § 981(a)(1)(C) provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" an enumerated violation, or conspiracy to commit such offense. 18 U.S.C. § 982(a)(1) provides for the forfeiture of "any property, real or personal, involved in" an offense in violation of 18 U.S.C. § 1956, "or any property traceable to such property." 18 U.S.C. § 982(b)(1) states that any property forfeited under Section 982 "shall be governed by the provisions of" 21 U.S.C. § 853.

3

behalf of Nu Horizons seeking to contest the forfeiture of the Celsius Shares. (Pet.) On November 16, 2023, the government moved to dismiss the Petition pursuant to Federal Rule of Criminal Procedure 32.2(c). (Gov't Mem.) On November 30, 2023, Petitioner responded to the government's motion, and on December 7, 2023, the government filed a reply brief. (Pet'r's Mem. in Opp'n to Gov't Mot. to Dismiss Pet. ("Pet'r's Mem."), Docket Entry No. 22; Gov't Reply Mem. in Supp. of Mot. to Dismiss Pet. ("Gov't Reply Mem."), Docket Entry No. 23.)

## II. Discussion

### a. Standard of review

Under 18 U.S.C. § 982(b)(1), any property forfeited under Section 982 "shall be governed by the provisions of" 21 U.S.C. § 853. *See United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015). "Among other things, [Section] 853 establishes the procedures by which a third party may claim an interest in funds ordered forfeited to the United States." *Id*. Should a third party claim a legal interest in the forfeited property, 21 U.S.C. § 853(n) "allows him to recover his interest through an ancillary proceeding following the preliminary forfeiture order." *Id*.; *see also United States v. Rodriguez-Perez*, No. 10-CR-905, 2019 WL 188400, at *3 (S.D.N.Y. Jan. 11, 2019) ("An ancillary proceeding provides a procedural mechanism for a third party to assert, through the filing of a petition, its interest in the property of a criminal defendant that is subject to a preliminary order of forfeiture."). The procedures laid out in Section 853(n) are "further elaborated" in Federal Rule of Criminal Procedure 32.2(c), which states that the "court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." *Watts*, 786 F.3d at 161 (quoting Fed. R. Crim. P. 32.2(c)(1)); *see also United States v. Sharma*, No. 18-CR-340, 2023 WL 1365138, at *2 (S.D.N.Y. Jan. 31, 2023) ("A motion to dismiss a [Section 853(n)] petition may be granted 'for lack of standing, for failure to state a claim, or for any other lawful reason.'" (quoting Fed. R. Crim. P. 32.2(c))).

4

"A motion to dismiss a third-party petition 'should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b).'" *Watts*, 786 F.3d at 161 (quoting *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 241 (2d Cir. 2011)).  Therefore, "[t]o survive a motion to dismiss, the petition need only 'state [] enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Willis*, 652 F.3d at 241–42) (second alteration in the original); *see also United States v. Hiller*, No. 07-CR-568, 2023 WL 7924180, at *2 (E.D.N.Y. Nov. 16, 2023) ("To survive a dismissal motion, the petitioner need only state enough facts to state a claim to relief that is plausible on its face." (alterations and internal quotation marks omitted)).  The court "must assume all facts alleged in the petition to be true." *Watts*, 786 F.3d at 161; *see also* Fed. R. Crim. P. 32.2(c)(1)(A) ("For purposes of the motion [to dismiss], the facts set forth in the petition are assumed to be true."); *Hiller*, 2023 WL 7924180, at *2 ("For purposes of the motion, the facts set forth in the petition are assumed to be true." (quotation omitted)).  However, the court is "not required to accept any legal conclusions included in the petition." *Willis*, 652 F.3d at 242.

b.  **Petitioner's standing to assert a claim under 21 U.S.C. § 853(n)**

The government argues that the Petition should be dismissed because it does not assert a legal interest in the Celsius Shares sufficient to confer standing on Petitioner where (1) members of a Limited Liability Company have no property interest in assets held by the entity; (2) regardless, the Stock Transfer Agreement conveyed away any interest Petitioner held in Nu Horizons, and the MITA did not reconvey that interest back to him; and (3) Petitioner's attempt to assert a legal interest in the Celsius Shares derivatively on behalf of Nu Horizons is improper, as there is no legal basis to assert a legal interest in forfeited property on a derivative basis in the context of a criminal forfeiture ancillary proceeding, and even if there were, Petitioner has failed

5

to meet the heightened pleading standard required by Federal Rule of Civil Procedure 23.1. (Gov't Mem. 13–18.)

Petitioner argues that he, and derivatively Nu Horizons, have standing because (1) Petitioner and Leissner had the same right and interest to the Celsius Shares by virtue of being members of Nu Horizons, and therefore preventing Petitioner from asserting the interests of Nu Horizons would violate due process as well as require vacatur of the preliminary order of forfeiture, (2) the government's argument that Petitioner conveyed away his interest in the Celsius Shares improperly assumes that the allegations in the Petition are false, (3) Nu Horizons has a legal interest in the Celsius Shares because it purchased them directly from Celsius Holdings, Inc., and has owned them since that time, and (4) Federal Rule of Civil Procedure 23.1 does not foreclose a derivative action. (Pet'r's Mem. 8–16.)

"To establish standing to challenge an order of forfeiture under [Section] 853(n), a petitioner must demonstrate that he has a 'legal interest in [the forfeited] property.'" *Watts*, 786 F.3d at 161 (quoting *United States v. Ribadeneira*, 105 F.3d 833, 835 (2d Cir. 1997)) (second alteration in the original); *see also United States v. Swartz Fam. Tr.*, 67 F.4th 505, 516 (2d Cir. 2023) ("In order to have standing to bring a claim under Section 853(n)(2), a petitioner must demonstrate a 'legal interest' in the property at issue."). Whether a petitioner has an interest in the forfeited property "is determined in accordance with state law," and "[w]here the petitioner has no valid interest in the property under state law, 'the inquiry ends, and the claim fails for lack of standing.'" *Watts*, 786 F.3d at 161 (quoting *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007)); *Swartz*, 67 F.4th at 516 ("Where the petitioner has no valid interest in the property under state law, the inquiry ends, and the claim fails for lack of standing." (quoting *Watts*, 786 F.3d at 161)).

### i. Petitioner does not have standing to assert a direct claim

Under Delaware law,[4] "a member of an LLC has no legal interest in the assets that belong to the LLC." *Swartz Fam. Tr.*, 67 F.4th at 516; *see also* 6 Del. Code § 18-701 ("A member has no interest in specific limited liability company property."); *In re Reifler*, No. 22-CV-10201, 2023 WL 5510233, at *6 (S.D.N.Y. Aug. 25, 2023) ("[T]he members of a Delaware LLC do not possess any legal interest in the assets of the LLC."); *Poore v. Fox Hollow Enterps.*, No. 93A-09-005, 1994 WL 150872, at *2 (Del. Super. Ct. Mar. 29, 1994) ("A member [of an LLC] usually contributes personal property and has no interest in specific assets owned by the LLC.").

The Stock Purchase Agreement identifies Nu Horizons as the purchaser of the Celsius Shares. (Stock Purchase Agmt. Schedule 1.2.) Petitioner, as a manager of the LLC, therefore has no legal interest in the Celsius Shares, as they are assets of the LLC. Petitioner thus has no standing to assert a direct claim to the Celsius Shares under Section 853(n).[5] *Cf. United States v. Ovid*, No. 09-CR-216, 2012 WL 2087084, at *4 (E.D.N.Y. June 8, 2012) (concluding that a partner in a Limited Partnership did not have individual standing to assert an interest in forfeited property because "[u]nder Delaware law, property of a limited partnership belongs to the partnership as an entity, not to its individual partners" (internal quotation marks omitted)).

---

[4] The Nu Horizons Operating Agreement states that it "shall be governed by and construed under the laws of the State of Delaware." (Nu Horizons Operating Agmt. 19.)

[5] Because the Court concludes that Petitioner does not have standing for a direct claim, the Court declines to consider whether the MITA, in nullifying the Stock Transfer Agreement, re-established Petitioner's interest in Nu Horizons. In addition, as discussed *infra*, whether the MITA re-established Petitioner's interest in Nu Horizons is also not relevant to the determination of whether he has standing to assert a derivative claim, as the pertinent question under Federal Rule of Civil Procedure 23.1 is whether Petitioner held the relevant interest in Nu Horizons at the time the Celsius Shares were purchased.

7

### ii. Petitioner has standing to assert a derivative claim on behalf of Nu Horizons

Petitioner does, however, have standing to assert a derivative claim on behalf of Nu Horizons. Federal Rule of Civil Procedure 23.1[6] requires that an individual initiating a derivative action: (1) allege that the individual "was a . . . member [of the LLC] at the time of the transaction complained of"; (2) "allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack"; and (3) "state with particularity . . . any effort by the [individual] to obtain the desired action from the directors or comparable authority . . . and . . . the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b).

Petitioner satisfies the pleading requirements. First, the Petition alleges that Petitioner was a member and manager of Nu Horizons at the time of the purchase of the Celsius Shares —

---

[6] The Court has found no authority, nor does Petitioner offer any, to support Petitioner's assertion that Federal Rule of Civil Procedure 23.1 "applies only to the initiation of a new derivative civil action through the filing of a complaint." (Pet'r's Mem. 11.) Rather, Rule 23.1(a) states that it applies "when one or more . . . members of . . . an unincorporated association bring a derivative action to enforce a right that the . . . association may properly assert but has failed to enforce." In addition, the Second Circuit has directed that "[a] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *Willis*, 652 F.3d at 241 (quoting *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004)). The Court sees no reason that Rule 23.1's requirements for the pleading of a derivative claim would not therefore apply as well. *See, e.g.*, *Hiller*, 2023 WL 7924180, at *2 ("An ancillary proceeding closely resembles a civil action and, as such, is generally governed by the same procedures as those set forth in the Federal Rules of Civil Procedure."). Finally, although the issue has been raised rarely, at least one other court in this Circuit has applied Rule 23.1's heightened pleading standard to determine whether a petitioner has pleaded a derivative claim sufficient to confer standing under Section 834(n). *See Ovid*, 2012 WL 2087084, at *4 (applying Federal Rule of Civil Procedure 23.1 to a partner's assertion of a derivative claim on behalf of the Limited Partnership).
  Rule 23.1 "has long been understood to apply . . . to those actions in which the right claimed by the shareholder is one the corporation could itself have enforced in court." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 529 (1984). Therefore, given that Nu Horizons would be capable of asserting an interest under Section 853(n), *see, e.g.*, *Watts*, 786 F.3d at 162 (concluding that an LLC had standing under Section 853(n)), the Court applies Rule 23.1's heightened pleading standard to Petitioner's derivative claim.

8

the transaction complained of.⁷ (*See* Pet. ¶ 16 (stating that Petition formed Nu Horizons and was the sole member and manager as of August of 2011), ¶ 23 (stating the date of the purchase of the Celsius Shares as April 21, 2015).); *see also* Fed. R. Civ. P. 23.1(b)(1). Second, the Petition explicitly references Petitioner's assertion of his third-party interest pursuant to 21 U.S.C. § 853(n), therefore establishing that the action does not aim to "confer jurisdiction that the [C]ourt would otherwise lack." Fed. R. Civ. P. 23.1(b)(2).

Third, Petitioner has adequately pleaded facts to support the conclusion that a demand to Leissner, the other manager of Nu Horizons, to bring the Petition would have been futile. "Although Rule 23.1 sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law[.]" *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 234 (2d Cir. 2015); *In re Pfizer, Inc. Derivative Securities Litig.*, 307 F. App'x 590, 592 (2d Cir. 2009) (concluding that because the derivative plaintiff was incorporated in Delaware, "whether the demand requirement ha[d] been met [was] a question of Delaware law" (citing *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004)). Delaware law

---

⁷ The government asserts that the "transaction complained of" is "not Nu Horizon's purported acquisition of the Celsius Shares, but rather Nu Horizon's failure to file a third-party petition in the ancillary proceeding." (Gov't Reply Mem. 9.) The government argues that Petitioner has therefore failed to adequately plead a derivative claim under Rule 23.1 because the Stock Transfer Agreement conveyed away his interest in Nu Horizons, and he had no interest at the time he filed the Petition on behalf of Nu Horizon. (*Id.*) The relevant consideration, however, is not whether the member had interest in the LLC at the time of the filing of the action, but rather "throughout the course of the activities that constitute the primary basis of the complaint." *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 160 (2d Cir. 2015) (quoting *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 298 (2d Cir. 2003)); *see also, e.g.*, *Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, No. 18-CV-11642, 2021 WL 2137613, at *6 (S.D.N.Y. May 26, 2021) ("[A] plaintiff asserting shareholder derivative claims must be able to demonstrate that he or she was a qualified shareholder at the time of the allegedly wrongful conduct, not thereafter."); *Ovid*, 2012 WL 2087084, at *4 (concluding that the petitioner "was a limited partner at all relevant times" despite the fact that the limited partnership in question was "defunct" and "ha[d] been dissolved" at the time of the petition). Thus, the relevant question is whether Petitioner had an interest in the LLC at the time the Celsius Shares were purchased, and the parties do not dispute that he did.

9

allows a member of an LLC to bring an action on behalf of the LLC "if the managers or members with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed." *CML V, LLC v. Bax*, 28 A.3d 1037, 1042 (Del. Sup. Ct. 2011) (quoting 6 Del. Code § 18-1001); *In re Reifler*, 2023 WL 5510233, at *6 n.12 (noting that the Delaware "LLC Act allows LLC members to bring a derivative action on behalf of an LLC only 'if [the] managers or members with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed.'" (quoting 6 Del. Code § 18-1001) (alteration in the original)); *Schiff v. ZM Equity Partners, LLC*, No. 19-CV-4735, 2020 WL 5077712, at *11 (S.D.N.Y. Aug. 27, 2020) (same).

When challenging an action taken by the management or board that would consider a pre-suit demand, "to successfully plead demand futility a plaintiff must allege particularized facts sufficient to raise a reasonable doubt that '(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'" *Stone & Paper Investors, LLC v. Blanch*, No. 2018-394, 2019 WL 2374005, at *5 (Del. Ch. May 31, 2019) (quoting *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984) (alteration in the original)); *see also In re Pfizer*, 307 F. App'x at 592 (applying Delaware law and noting that "[i]n order to successfully plead demand futility, the plaintiffs must plead facts that, if proved, would demonstrate that a majority of board members . . . were either not disinterested or lacked independence"). The Nu Horizons Operating Agreement indicates that the managers of the company have the "sole and exclusive right to manage, control, and conduct the affairs of the Company and to do any and all acts on behalf of the Company permitted by applicable law." (Nu Horizons Operating Agmt. 8.) Petitioner must therefore allege facts sufficient to raise a

10

reasonable doubt that Leissner[8] would be disinterested in whether Nu Horizons had a superior interest in the Celsius Shares.

Petitioner alleges that Leissner, as part of his plea agreement, "had an agreement with the government to forfeit $43.7 million," and that "[t]he government agreed to apply the full value of the Celsius Shares to Defendant Leissner's $43.7 million obligation if the government was able to successfully forfeit the Celsius Shares." (Pet. ¶¶ 4–5; *see also, e.g., id.* ¶ 65 ("Leissner will effectively receive $43.7 million (credited against his forfeiture money judgment) if the government succeeds in forfeiting the Celsius Shares.").) Petitioner has thus alleged facts sufficient to raise doubt as to Leissner's independence in the matter, as Leissner would be unlikely to bring an action to jeopardize the government's ability to successfully forfeit the Celsius Shares and thus endanger his other assets, particularly given that the Amended Preliminary Order of Forfeiture precludes him from doing so in his individual capacity. (*See* Am. Forfeiture Order ¶ 7 (noting that "[t]he defendant shall not file or interpose any claim or petition seeking remission or contesting the forfeiture of the Celsius Shares . . . in any administrative or judicial (civil or criminal) proceeding" and that he "shall take whatever steps are necessary to ensure that clear title to the Celsius Shares passes to the United States," and will "assist the government in defending" against any third-party claims to the Celsius Shares)); *cf. Shenk v. Karmazin*, 867 F. Supp. 2d 379, 385 (S.D.N.Y. Oct. 2011) (concluding that the plaintiff adequately pleaded demand futility under Delaware law by alleging that the defendant directors faced a "substantial threat" of liability because they acted in bad faith).

---

[8] Despite the government's assertion that Petitioner would be required to make the demand of Lee Simmons-Leissner, the Nu Horizons Operating Agreement lists only Petitioner and Leissner as "Managers." (Nu Horizons Operating Agmt. 25–27.) In addition, even assuming the MITA did not nullify the Stock Transfer Agreement, that agreement transferred only Petitioner's "ownership percentage" and makes no reference to Lee Simmons-Leissner or Keyway Pride obtaining manager rights and responsibilities. (Stock Transfer Agreement Ex. A, Docket Entry No. 5-20.)

The Court therefore finds that Petitioner has sufficiently alleged standing to pursue a derivative claim on behalf of Nu Horizons.

### c. Petitioner has sufficiently pleaded that Nu Horizons was a bona fide purchaser for value of the Celsius Shares under 21 U.S.C. § 853(n)(6)(B)

The government also argues that Petitioner cannot demonstrate a superior legal interest in the Celsius Shares because he cannot (1) demonstrate priority of ownership over the Celsius Shares at the time of the criminal offenses where the government's interest in the Celsius Shares vested at the latest six months before Petitioner's interest did, or (2) show that he is a bona fide purchaser for value where the only alleged acquisition of the Celsius Shares was by Nu Horizons, neither Nu Horizons nor Petitioner gave anything of value in exchange for the Celsius Shares, and Nu Horizons had reasonable cause to believe the Celsius Shares were forfeitable because Leissner's knowledge as to the forfeitability of the Celsius Shares arising from his crimes is imputed to Nu Horizons. (Gov't Mem. 20–22.)

Petitioner argues that he has a legal interest in the Celsius Shares that renders the order of forfeiture invalid under Section 853(n)(6)(A) because (1) the legal interest was always vested in Nu Horizons, and was superior to any right, title or interest of Leissner at all times, (2) Petitioner's right, title or interest with respect to the Celsius Shares beneficially owned by him was always superior to any right, title or interest held by Leissner, and (3) the government has made no showing that the Celsius Shares were purchased with proceeds of the crime of conviction. (Pet'r's Mem. 17–20.) Finally, Petitioner also argues that Nu Horizons was a bona fide purchaser because (1) Leissner's funding of the Celsius Shares purchase was a capital contribution to Nu Horizons, (2) the government cannot establish on a motion to dismiss that Nu Horizons had reason to know that the Celsius Shares were subject to forfeiture, and (3) allowing the government to impute a defendant's knowledge to an entity whose members contributed value without knowledge of the crime would violate due process. (Pet'r's Mem. 20–24.)

12

To assert a claim under Section 853(n), a petitioner must also show that it has "one of two superior claims to the property under [Section] 853(n)(6)." *Watts*, 786 F.3d at 160; *see also United States v. Portillo*, No. 09-CR-1142, 2022 WL 624580, at *3 (S.D.N.Y. Mar. 3, 2022) (same). The first way a petitioner can assert a superior claim is provided for in Section 853(n)(6)(A), which requires the petitioner to "demonstrate that he 'has a legal right, title, or interest in the property, . . . [that] was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property.'" *Watts*, 786 F.3d at 160 (quoting 21 U.S.C. § 853(n)(6)(A)).

The second way a petitioner can assert a superior claim is provided for in Section 853(n)(6)(B), which provides that a petitioner may also assert its interest in property to be forfeited by establishing that it was "a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." *Watts*, 786 F.3d at 169 (quoting 21 U.S.C. § 853(n)(6)(B)); *see also Rodriguez-Perez*, 2019 WL 188400, at *6 (noting that to assert a claim under Section 853(n)(6)(B), "a petitioner must establish that he had no 'cause to believe that the property was subject to forfeiture' and that he qualifies as a bona fide purchaser under state law" (quoting 21 U.S.C. § 853(n)(6)(B))). Section 853(n)(6)(B) thus "allow[s] a limited category of petitioners who 'acquired an interest in the forfeited property after the government's interest vested' to prevail at an ancillary hearing." *Watts*, 786 F.3d at 169 (quoting *Timely*, 507 F.3d at 1130) (emphasis omitted). Where the petitioner has not paid anything of value to purchase the property at issue, however, it cannot establish a claim under Section 853(n)(6)(B). *See, e.g.*, *United States v. Ackerman*, No. 20-CR-93, 2023 WL 3568654, at *4 (S.D.N.Y. May 18, 2023) (concluding that the petitioner was not a bona fide purchaser for value "for the simple reason that

13

she has not alleged that she paid anything to purchase the [p]roperty" (emphasis omitted) (citing, *inter alia*, *United States v. Kennedy*, 201 F.3d 1324, 1335 (11th Cir. 2000)); *United States v. Jimenez*, No. 18-CR-879, 2023 WL 6882408, at *2 (S.D.N.Y. Oct. 18, 2023) (concluding that petitioner was not a bona fide purchaser of value where the property was not purchased "for valuable consideration").

Petitioner has adequately pleaded that Nu Horizons was a bona fide purchaser of value of the Celsius Shares. Delaware Law provides that an individual is a bona fide purchaser where they have "acquire[d] a security entitlement . . . for value and without notice of [an] adverse claim." 6 Del. Code § 8-502; *see also Wells Fargo Bank, N.A. v. Estate of Malkin*, 278 A.3d 53, 63 (Del. 2022) (noting that 6 Del. Code § 8-502 provides a "bona fide purchaser defense" to an adverse action). The Petition alleges that "in exchange for" the $3 million wire payment, Nu Horizons acquired title to the Celsius Shares, and that "Leissner arranged to have [the] wire payment . . . made on behalf of Nu Horizons." (Pet. ¶ 23.) The Petition also alleges that "Nu Horizons received the Celsius Shares as part of a[n] arms' length exchange[] for value that included $3,150,000 as well as Nu Horizons' valuable efforts to promote the Celsius products." (Pet. ¶ 66.) Petitioner has thus alleged that Leissner's wire payment was made on behalf of Nu Horizons,[9] and that Nu Horizons provided value for the Celsius Shares.

Petitioner has also adequately pleaded that Nu Horizons was "without cause to believe that the property was subject to forfeiture." *Watts*, 786 F.3d at 169 (quoting 21 U.S.C. § 853(n)(6)(B)). The Petition alleges that "Nu Horizons never was informed of facts that would

---

[9] The Court notes that it is unclear whether the payment was made in Leissner's capacity as manager of Nu Horizons, as Nu Horizon's purchase of the Celsius Shares allegedly took place in April of 2015, but the Nu Horizons Operating Agreement naming Leissner and Petitioner as managers is dated January 1, 2016. (*See* Pet. ¶¶ 23, 34; Nu Horizons Operating Agmt. 2.) Accepting the allegations in the Petition as true, however, Petitioner has alleged that Leissner's payment was made on behalf of Nu Horizons. (Pet. ¶ 23.)

14

give it reason to know that the payments of $3,150,000 were proceeds of a conspiracy to violate the [FCPA]." (Pet. ¶ 73.) The Petition therefore alleges that Nu Horizons did not "ignore[] red flags" or otherwise act unreasonably in treating the $3 million as a capital contribution and completing its purchase of the Celsius Shares. *See Swartz*, 67 F.4th at 518 (noting that an LLC owned in part by a friend of the defendant, even if it was a victim of fraud, may "reasonably have cause to believe that the purchased property was subject to forfeiture — because, say, the petitioner ignored red flags or otherwise acted unreasonably in completing the deal").[10]

### III. Conclusion

For the reasons stated above, the Court grants the government's motion to dismiss as to Petitioner's direct claim, and denies it as to Petitioner's derivative claim on behalf of Nu Horizons. The parties shall notify the Court within thirty days of the entry of this order whether they seek to proceed with discovery or to schedule a hearing to address Petitioner's derivative claim.

Dated: December 26, 2023
       Brooklyn, New York

                                SO ORDERED:

                                _____s/ MKB_____
                                MARGO K. BRODIE
                                United States District Judge

---

[10] Because the Court concludes that Petitioner has alleged a derivative claim under a bona fide purchaser theory sufficient to survive the government's motion to dismiss, the Court declines to consider whether Petitioner also alleges a derivative claim under Section 853(n)(6)(A).