1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    -----------------------------x

3    IN RE FORFEITURE ORDER OF          23-MC-1505(MKB)
     TIM LEISSNER
4                                       United States Courthouse
               against                  Brooklyn, New York
5
     UNITED STATES OF AMERICA,          March 15, 2024
6                                       11:00 a.m.
               Defendant.
7    -----------------------------x

8          TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
            (IN OPEN COURT; ALL PRESENT VIA TELECONFERENCE.)
9             BEFORE THE HONORABLE MARGO K. BRODIE
              UNITED STATES CHIEF DISTRICT JUDGE

10

11   APPEARANCES

12   For the Movant:         KING & SPALDING LLP
     Kimora Lee              1185 Avenue of the Americas
13                           New York, New York 10036-4003
                             BY:  MICHAEL ROTH, ESQ.
14

15   For the Movant:         BRAFMAN & ASSOCIATES, P.C.
     Roger Ng                256 Fifth Avenue - Suite 2nd Floor
16                           New York, New York 10001
                             BY:  MARC AGNIFILIO, ESQ.
17                                TENY ROSE GERAGOS, ESQ.

18

19   For the Movant:         PRYOR CASHMAN SHERMAN & FLYNN, LLP
     Russell Simmons         7 Times Square
20                           New York, New York 10036
                             BY:  JEFFREY EHRLICH ALBERTS, ESQ.
21                                RACHEL KAPLOWITZ, ESQ.

22   For the Movant:         MAYER BROWN LLP
     Ken Siazon              1221 Avenue of the Americas
23                           New York, New York 10020-1001
                             BY:  GINA MARIE PARLOVECCHIO, ESQ.
24

25

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

2

1    APPEARANCES (CONTINUED)

2

3    For the Government:        UNITED STATES ATTORNEY'S OFFICE
                               Eastern District of New York
                               271 Cadman Plaza East
4                              Brooklyn, New York 11201
                               BY:  TANISHA R. PAYNE, ESQ.
5                              Assistant United States Attorney

6

7    Court Reporter:           LINDA D. DANELCZYK, RPR, CSR, CCR
                               Phone:  718-613-2330
8                              Fax:    718-804-2712
                               Email:  LindaDan226@gmail.com

9

10   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS                                3

1            (In open court; all present via teleconference.)

2            THE COURTROOM DEPUTY:  Judge, we're ready.

3            THE COURT:  Winnie, would you please call the case.

4            THE COURTROOM DEPUTY:  Yes, Judge.

5            Civil cause for a telephone conference.  This is

6    Docket Number 23-MC-1505, In Re Forfeiture Order of Tim

7    Leissner, et al. versus United States of America.

8            Persons granted remote access to proceedings are

9    reminded of the general prohibition against photographing,

10   recording, and rebroadcasting of court proceedings.  Violation

11   of these prohibitions may result in sanctions, including

12   removal of court issued media credentials, restricted entry to

13   future hearings, denial of entry to future hearings, or any

14   other sanctions deemed necessary by the Court.

15           Counsel, starting with the government, please state

16   your name for the record.

17           MS. PAYNE:  AUSA Tanisha Payne for the government.

18   Good morning, Your Honor.

19           THE COURT:  Good morning, Ms. Payne.

20           MR. ALBERTS:  Jeffrey Alberts from Pryor Cashman for

21   petitioner Russell Simmons.  And I'm accompanied by Rachel

22   Kaplowitz, who is also on the call and is an associate at our

23   firm.  Good morning, Your Honor.

24           THE COURT:  Good morning to you.

25           And Ms. Kaplowitz is that her last name?

PROCEEDINGS                      4

1          MR. ALBERTS:  That's right, Your Honor.

2          THE COURT:  Okay.  Thank you.

3          I'm sorry, who else is on the line?

4          MS. PARLOVECCHIO:  Good morning, Your Honor.  Gina

5    Parlovecchio of Mayer Brown on behalf of Ken Siazon.

6          THE COURT:  Good morning, Ms. Parlovecchio.

7          MR. ROTH:  Good morning, Your Honor.  This is

8    Michael Roth of King & Spalding on behalf of Kimora Lee

9    Simmons-Leissner.

10          THE COURT:  Good morning to you.

11          Mr. Roth, do have someone else with you?

12          MR. ROTH:  It's just me today.  Thank you.

13          MR. AGNIFILO:  And finally, Judge, I think you have

14    Mark Agnifilo and Teny Geragos for Roger Ng.  Good morning,

15    Your Honor.

16          THE COURT:  Good morning to both of you.

17          Okay.  So it appears that some of the parties are

18    still negotiating, or we have proposed a schedule while

19    petitioner Russell Simmons is opposing any adjournment in this

20    case.

21          So I'm going to start with you, Mr. Alberts.  I'm

22    not sure what exactly you're asking me to do here.  I've

23    ordered the parties to engage in limited discovery for the

24    purposes of determining whether your client, at the time he

25    filed the petition, had an ownership interest in Nu Horizons

1   so that he proceed with the derivative action.

2          And it appears that -- I'm not sure what happened in

3   the last 30 days, but the parties need more time to do so.

4   Are you suggesting that I -- you appear to be suggesting,

5   rather, from your submission to the Court, that I need to

6   rescind my prior order and instead allow full discovery in

7   this case.

8          So I'll hear from you, Mr. Alberts.

9          MR. ALBERTS:  Your Honor, Petitioner Simmons'

10  position is that it makes sense to open up discovery.  It's

11  incredibly inefficient to have discovery so late on the issue

12  of standing.  It's incredibly unusual.  It is the case in

13  every single civil dispute that standing is a threshold issue.

14  It's also the case here.  But it is a threshold issue with

15  respect to pleading.  And Mr. Simmons has pled his standing

16  incredibly well, and the Court already ruled on that.  It's

17  well pled.

18          The next issue is whether it's a dispositive issue.

19  It is a potentially dispositive issue, but there are many

20  dispositive issues in any civil dispute.  And there's a reason

21  why courts do not, as a standard practice, have seriatim

22  discovery on individual dispositive issues, where you have

23  extended discovery on one dispositive issue, then motion

24  practice on that dispositive issue, then move on to the next

25  dispositive issue.

PROCEEDINGS                                    6

1          THE COURT:  I'm going to interrupt you for one

2    second there.

3          I get that.  But this is a standing issue, and

4    there's no question that I don't have jurisdiction to

5    entertain your client's claim if he doesn't have standing.  So

6    it is a threshold issue that has to be resolved.

7          MR. ALBERTS:  And we do not have any opposition to

8    resolving that issue, and we think it should be resolved the

9    way it is in nearly every single civil action before any

10   federal court, which is that it is one of the issues on which

11   there is discovery, and then there can be dispositive motion

12   practice on that issue.

13         And that's particularly the case here because of how

14   intertwined the issue of standing is with other issues.

15         This isn't a case -- the government has cited to a

16   couple of other forfeiture actions that are utterly dissimilar

17   from this one where you basically --

18         (Court reporter interrupts for clarification.)

19         MR. ALBERTS:  So I was saying that this is an

20   utterly dissimilar case from the type of cases that were

21   pointed to by the government.

22         So I've handled -- I used to be in a forfeiture unit

23   and I've handled a lot of forfeiture cases, but you frequently

24   have these situations where, you know, there's, for example,

25   another member of a gang who's claiming to have some ownership

PROCEEDINGS                      7

1   interest, they don't articulate how that is or why.  Or you

2   have the wife of somebody that is a white collar criminal and

3   they say, well, I -- you know, I have - I contributed half the

4   value to this property, but they're unemployed.

5           And some extreme situation where it looks like, oh,

6   there could be very discrete efficient discovery on that one

7   issue because it doesn't make any sense what their allegation

8   is, and when you look at their pleading, they really didn't

9   explain how they had an ownership interest.

10          In stark contrast to those situations, this is a

11  case in which Mr. Simmons pled in incredible detail what his

12  interest was, including attaching the certificate of formation

13  of Nu Horizons that he signed, including attaching the stock

14  purchase agreement, the percent which Nu Horizons bought the

15  stock, including attaching SEC filings that identified Russell

16  Simmons and Nu Horizons as the owners of the stock.  So it

17  could not be more clear that there's a well-pled basis for

18  standing.

19          But the question becomes is there a reason to adopt

20  the unusual approach of having discovery just on this issue --

21  dispositive issue of standing, as opposed to many other

22  issues.  There are many dispositive issues in a case.  You can

23  win on jurisdiction.  You can win on a number of dispositive

24  issues, but it only makes sense to have this seriatim

25  discovery followed by motion practice, followed by discovery,

PROCEEDINGS                                        8

1    followed by motion practice, if the discovery is highly

2    discrete, and here it is not.

3             The government's theory here is that Russell Simmons

4    sold Nu Horizons to Kimora Simmons' entity Kewway Pride, so a

5    stock transfer agreement, and Russell Simmons has several

6    arguments against this, which tie into a number of other

7    aspects of the case.

8             And so one of those arguments is that Kimora Lee

9    Simmons had already sold, secretly, Kewway Pride, before the

10   stock transfer agreement was even signed.  And so the stock

11   transfer agreement was never effective, and that's laid out in

12   the petition.

13            In addition, Russell Simmons has the argument that

14   the stock transfer agreement was unenforceable.  Now for two

15   different reasons.  One is that it was because of a fraud on

16   Russell Simmons; and the second because it was part of a

17   criminal money laundering conspiracy that was committed with

18   Tim Leissner.

19            And although the government in their letter suggests

20   that this is some new theory of petitioner, first of all,

21   petitioner is obliged to pled responses to the government's

22   standing argument in his petition; second of all, he did.

23            If you go to the petition, you will see that Russell

24   Simmons articulated with specificity trips that Kimora Simmons

25   took with Tim Leissner as part of this asset protection scheme

PROCEEDINGS                                9

1    to Liechtenstein in Switzerland, and they were articulating,

2    you know, what they were doing, that it was part of this

3    criminal money laundering scheme.

4            The fourth argument that Russell Simmons has, which

5    also is in the petition, is that the stock transfer agreement

6    was void *ab initio* because of an agreement that was entered

7    into later that year, which is called the MITA or the M-I-T-A.

8            And those issues tie in with the knowledge of those

9    issues, whether or not it was part of a fraud; whether or not

10   the stock transfer agreement was legitimate; whether Kimora

11   Lee Simmons had already sold Kewway Pride before she signed

12   the stock transfer agreement on behalf of Kewway Pride.

13           Those are tied into a number of other issues in the

14   case factually, and also tied into them on an evidentiary

15   basis.  Like the evidence of those facts include things like

16   the knowledge of Kimora Lee Simmons; the knowledge of

17   Defendant Leissner; the communications that they had on a

18   contemporaneous basis by email; statements that were

19   subsequently made to the government, both by Kimora and by Tim

20   Leissner when, for example, they used the stock as part of a

21   bond -- bond application.

22           So presumably they made representations about

23   whether they owned it.  That's incredibly relevant to the

24   issue of ownership.

25           And so because you have this long period of time

1    where there are going to be relevant statements and documents,

2    and because we have the factual allegations that are at issue

3    that relate to standing are so intertwined with other aspects

4    of the case, it's incredibly inefficient to have discovery on

5    the issues that relate to standing and then restart discovery

6    later on.

7            Finally, it's prejudicial, but for the reason that I

8    articulated in my letter, the government now appears to be

9    saying that there's going to be multiple phases of discovery,

10   and it gets to take the deposition of Russell Simmons in every

11   one of those phases before there's a hearing where there will

12   then be testimony.

13           And as Your Honor is well aware, ancillary

14   proceedings are supposed to be moved very quickly.  The

15   default is that it occurs 30 days after the original

16   preliminary order of forfeiture is filed.  And in this case,

17   it's very understandable, but we're not trying to stick to

18   that 30-day period, but it seems to run counter to that

19   approach of moving things quickly to adopt the government's

20   proposal of this drawn out, seriatim stages of discovery that

21   delay the point in time at which the government's going to

22   finally have to show its cards.

23           We're now over five years after the point in time

24   when the government took custody of the property of

25   Nu Horizons and Mr. Simmons' assets, and the government has

PROCEEDINGS                                    11

1   repeatedly suggested that there's no prejudice there.

2          But that suggests that the government has never had

3   some government agents seize most of their property, pursuant

4   to a secret affidavit that has not been made public or

5   disclosed and held it for years, while they're unable to spend

6   it or use their own assets.

7          This is now a dispute over property.  The government

8   has not ever had to reveal how it seized the property.  The

9   one thing that the government has to do in this case, which is

10  to show that these assets were forfeitable, because they were

11  traceable to the crime, the government just chose not to do.

12  It didn't even try.  It never made any showing that it was

13  subject to a preliminary order of forfeiture, just a change of

14  a preliminary order of forfeiture.

15         Now, finally, after dispositive motion practice and

16  the time has come for the government to start to show its

17  cards, it still is refusing to do that, and it's trying to

18  engage in one-sided discovery just on an issue that it thinks

19  it can win on without having to produce any documents or any

20  information about the strength of its case.  And we're now,

21  you know, at the end of this accelerated special discovery

22  period that the government requested, and the government still

23  hasn't produced a page of documents or any information

24  whatsoever.

25         It's only fair at this point to allow discovery to

PROCEEDINGS                              12

1   go forward, the way discussed in most civil actions, and the

2   way that it would most efficient in this action, and allow all

3   the parties to take discovery.

4           And those inefficiencies are only going to compound

5   as we move forward with this proceeding because, for example,

6   Russell Simmons has already received a discovery request from

7   another petitioner, from Ken Siazon.  So you're going to have

8   different petitioners engaging in discovery in different

9   phases depending on whether the government feels like having

10  an accelerated discovery period on the issues that it thinks

11  it has the strongest case on with respect to all of these

12  different petitioners.

13          But the only efficient way to move forward, in light

14  of all of the overlap between the facts, the issues, the

15  claims of different parties, is to proceed as you would in

16  almost any civil case, which is to have open discovery

17  followed by briefing on all issues, including the dispositive

18  issue of standing, which we are not trying to avoid and are

19  happy to address, along with all of the dispositive issues in

20  this case.

21          THE COURT:  Thank you, counsel, for your extensive

22  argument basically for this Court to reconsider its prior

23  ruling and to rule otherwise.

24          I'll hear from the government on this.

25          MS. PAYNE:  Yes, Your Honor, thank you.  You know,

PROCEEDINGS                                          13

1    contrary to counsel's claim, the government has, in fact,

2    diligently pursued discovery authorized by the Court, used a

3    lot of time not only to determine the scope of our records to

4    be searched and to respond to discovery requests, but also to

5    inform the government as to what requests the government will

6    and actually did serve.

7            From the outset, when we requested that the Court

8    permit discovery, we requested 90 days, and we took into

9    consideration all that would need to be done, including

10   searching through our voluminous case records, preparing

11   discovery requests, responding to discovery requests,

12   evaluating responses to those requests, identifying third

13   parties that may have relevant records, to indexing

14   depositions, et cetera, and also the fact that the other

15   claimants would be subject to discovery requests as well.

16           So counsel's opposition to a reasonable modification

17   of a discovery schedule is merely an attempt to mitigate the

18   Court's February 9th decision and to avoid being held

19   (indiscernible) to establish standing in this ancillary

20   proceeding.

21           Also contrary to counsel's argument, holding limited

22   discovery on the limited standing issue is not unusual. And

23   the government has cited Second Circuit, as well as other case

24   law, holding that -- holding and committing discovery on the

25   threshold issue.

PROCEEDINGS                          14

1          And those cases are not distinguishable from this

2     case, including the case that the Court cited, the *Citigroup*

3     *Smith Barney* account case, where the threshold question of a

4     claim in standing was called into question because the court

5     did not have enough information.  And in that case the court

6     allowed interrogatories as well as depositions of the

7     claimant, because as the law is clear, the claimant has the

8     burden to establish standing.

9          The government also disagrees with counsel's

10    assertion that the standing issue is intertwined with other

11    issues.  This is a straightforward, discrete issue, and it's

12    whether Russell Simmons held, at the time of the filing of his

13    third-party petition, a membership interest in Nu Horizons.

14         Now, counsel mentioned certain of the agreements,

15    and I don't want to get too bogged down into the details of

16    those, but a basic tenant of contract law is that when you

17    sign, it transfers all property at issue to the assignee.  If

18    there's a breach of that contract, there's a remedy

19    (indiscernible) to the terms of the contract.

20         In order for an assignor, who was transferred this

21    property to then regain his property, there would need to be

22    another assignment of the property back to the original

23    assignor.  A breach of contract does not allow the parties to

24    revert back to the original status prior to the assignment.

25         And another hurdle specific to this case is that in

PROCEEDINGS                              15

1    Nu Horizons own operating agreement, their position set forth

2    requirements of reinstating a member, which may not have been

3    followed in this case.

4           So for those reasons, the government submits that a

5    reasonable extension of the discovery deadline is warranted

6    for 60 days with consent of the other parties.  As I noted in

7    the government's letter, both counsel for plaintiff Kimora Lee

8    Simmons and counsel for Ken Saizon gave consent to the

9    modification.  Those plaintiffs were also served with

10   discovery sets and may or may not be serving discovery sets of

11   their own.

12          And with respect to Claimant Ng, I'm advised that

13   counsel can offer more, but that they would get back to us and

14   the Court as to their position as to a continuance.

15          THE COURT:  Thank you, Ms. Payne.

16          Mr. Agnifilo?

17          MS. PAYNE:  Excuse me, I'm sorry.  Your Honor, I

18   just wanted to confirm that the Court received the

19   government's two letters filed on March 14th, 2024.

20          THE COURT:  I did.

21          MS. PAYNE:  Okay, thank you.

22          THE COURT:  Mr. Agnifilio?

23          MR. AGNIFILO:  Yes, Your Honor.  Since the time that

24   AUSA Payne submitted her letter, Ms. Geragos and I were able

25   to speak with our client, who as the Court knows is in

PROCEEDINGS                                16

1    Malaysia, but we did speak with him, and I can tell Your Honor

2    we are speaking with the government and we would agree to the

3    proposed continuance.

4                THE COURT:  Thank you.

5                Ms. Parlovecchio?

6                MS. PARLOVECCHIO:  Yes, Your Honor.  We also agree

7    to the 60-day continuance.

8                And just briefly, Your Honor, you know, I noted --

9    you noted that the parties have requested a briefing schedule,

10   and we just wanted to note that, you know, we -- the reason we

11   requested the period of 60 days to May 13th for the filing of

12   the government's anticipated motion, is because the parties

13   are continuing to engage in settlement discussions.

14               I don't believe that was noted in the status letter.

15   But due to the pace of settlement discussions to date, which

16   have been ongoing for months without significant progress,

17   from the government the hope is here that having a date on the

18   calendar will keep the parties on track in moving toward a

19   resolution.

20               And certainly, Your Honor, if the parties are

21   successful in making more significant progress in the next 60

22   days, we'll update Your Honor about whether there is any

23   further briefing schedule involved, and we'll keep Your Honor

24   updated.  Thank you.

25               THE COURT:  Thank you.

PROCEEDINGS                          17

1          Mr. Alberts, do you want to be heard further?

2          Or, Mr. Roth, do you want to be heard before I hear

3   back from Mr. Alberts?

4          MR. ROTH:  Sorry, Your Honor, this is Mitchell Roth.

5   I would like to be heard for just a moment.

6          We don't oppose the schedule.  However, there are

7   three parts on the limited discovery order that we would like

8   some verification on.

9          Initially we understood that the limited discovery

10  regarding Mr. Simmons' derivative standing would be limited to

11  the discovery between the government and Mr. Simmons on a very

12  narrow issue about whether Mr. Simmons held an interest in

13  Nu Horizons at the relevant time.

14         So first, if that discovery order allows for

15  discovery from other claimants, we would like that clarified,

16  and also clarified that the scope is limited to the direct

17  issue of the standing and not all of these side issues of

18  fraud and conspiracy that Mr. Alberts just raised.

19         And finally, if the discovery is going to include

20  other claimants, it should be -- one, it should be reciprocal,

21  so that the claimants can take discovery, and also plaintiff

22  should be served with all of this discovery and the responses.

23         This is the first time on this call that I'm hearing

24  that there's been quite a bit of discovery that wasn't

25  directed just to my client.  The discovery directed to my

PROCEEDINGS                18

1    client didn't have a proof of service.  Apparently it wasn't

2    served on anyone else.  And if we going to be treated as a

3    party to this discovery and subject to the civil procedure

4    rules for party discovery, we need to be served and

5    participate in each aspect of that process.

6              THE COURT:  Thank you.

7              MS. PARLOVECCHIO:  Your Honor, I'm sorry.  Your

8    Honor, counsel on behalf of Mr. Siazon joins in that request

9    as well.

10             THE COURT:  Mr. Alberts?

11             MR. ALBERTS:  Yes, Your Honor, I just have a few

12   points to make quickly.

13             First, I guess concerning the contract law argument

14   that AUSA Payne advanced about the reason why the transfer

15   can't be voided.  There's several responses, and they tie back

16   to what I articulated earlier.

17             Now the first is the MITA, the M-I-T-A that was

18   signed at the end of 2018, and it's attached to Mr. Simmons'

19   petition, voids that transfer *ab initio*.  It voids it at the

20   time that it took place.

21             The second, and this is in our argument that it's

22   even more straightforward and easy to understand, is that

23   Kimora, it appears from the SEC filing, and we're seeking

24   discovery with respect to this issue, it appears that Kimora

25   Lee Simmons had already sold Kewway Pride at the time that she

1   signed the document on behalf of Kewway Pride.  She was thus a

2   stranger to Kewway Pride.

3            And you can't -- it would be like me trying to sell

4   the Brooklyn Bridge or the Empire State Building.  If you

5   don't own something and you sign a document saying that you

6   own it and you sign on behalf of an entity that you don't have

7   any interest in, it is obvious that that transfer is not

8   valid.

9            I'm sure AUSA Payne would not suggest that if I sign

10   a document transferring to her the Empire State Building, then

11   that assignment is valid and the only way to challenge it is

12   to bring a breach of contract claim for damages.  That's

13   clearly not the case, and they've never cited any law

14   suggesting that is the case.

15           Now, with respect to the argument advanced by

16   Mr. Roth concerning the limitation on the discovery, if Your

17   Honor were to prevent Russell Simmons from taking discovery

18   from the other petitioners, that would be a clear violation of

19   due process here.

20           The basis of the government's theory is that it

21   wins, it wins hundreds of millions of dollars that would

22   otherwise -- worth of an asset that would otherwise go to

23   Mr. Simmons because of a transfer that took place between

24   Russell Simmons and an entity that potentially was --

25   allegedly was controlled by Kimora Lee Simmons.

PROCEEDINGS                           20

1              To then deny Russell Simmons the ability to take

2     discovery on that issue from Kimora Simmons would be a

3     complete violation of due process.  Nothing could be more

4     relevant than the knowledge of Kimora Simmons, who is the

5     person who signed the documents on which the government

6     relies, and the validity of which is hotly contested here.

7              So were the government or were the Court to consider

8     the possibility of opposing that limitation, that would just

9     be another reason not to have this special accelerated

10    discovery period and just have normal open discovery like

11    would take place in any civil action.

12             THE COURT:  Thank you all for your arguments today.

13             I'm sorry, did you have an additional point you

14    wanted to make, counsel?

15             MR. ALBERTS:  Yes, I just wanted to say, and this

16    may be something that the Court will be addressing later, as I

17    think it may end up being a discovery dispute between the

18    parties, but the requests that are being made for documents

19    that stands for discovery generally but relates to fraud, it's

20    plainly relevant here, it's one of the primary bases that

21    Petitioner Simmons has advanced for why the stock transfer

22    agreement is invalid and unenforceable and, therefore, did not

23    effectuate a transfer of his interest in Nu Horizons.  And so,

24    of course, Petitioner Simmons should be allowed to have

25    discovery on that issue.

PROCEEDINGS                                  21

1          THE COURT:  Thank you, counsel.

2          So I believe my order was very clear in terms of

3   what we're ordering.

4          In my reconsideration decision that is dated

5   February 9th, 2024, I made clear that because the status of

6   petitioner's membership interest in Nu Horizons, as of the

7   date of the filing of the petition, could impact his ability

8   to bring derivative claim on behalf of Nu Horizons, the

9   parties were directed to engage in expedited discovery over a

10  period of 30 days to address this question.

11         There's no further limitation on the order, other

12  than I expect the parties to engage in discovery to figure

13  this issue out.

14         Now, Mr. Alberts, I appreciate your arguments as to

15  why you believe the Court should not allow discovery on this

16  issue that you believe the government has cherrypicked.  But

17  as you see from my order, I do believe that if Mr. Simmons

18  does not have standing to bring his derivative claim, then his

19  petition get dismissed, because as I've already found, he does

20  not have standing to bring it on his own behalf.

21         So this is an issue that the Court has ordered must

22  be resolved, and I expect the parties to engage in discovery

23  so that it can be resolved as an initial matter.

24         Now, I'm not going to sit here and micromanage what

25  the parties are doing.  You are all experienced counsel, and I

PROCEEDINGS                          22

1   expect you to act as such and to figure out how to proceed

2   with the discovery that is necessary so that we can resolve

3   this.

4            I am going to extend the deadline by 60 days, and

5   I'm going to appoint a magistrate judge to work with the

6   parties on this, because it appears that you may need more

7   hand-holding than the Court is capable of engaging in right

8   now.

9            But the parties do need to sit down and confer,

10  figure out a schedule, and engage in whatever discovery is

11  necessary to resolve this issue.  If you believe there are

12  legal issues that I need to decide, because you're fighting

13  over whether or not one party can obtain certain documents or

14  not, then you can bring that to my attention by way of a

15  letter motion, but I expect the parties to do this.

16           I'm going to put it on for a status conference.

17           Winnie, can you give me a conference date after the

18  60-month period, please?

19           THE COURTROOM DEPUTY:  Yes, Judge.

20           Judge, May 8th at 11:30.

21           MS. PAYNE:  I'm sorry, Your Honor, if I heard

22  correctly, May 8th.  I believe 60 days -- I believe that that

23  wouldn't be beyond 60 days, if I'm not mistaken.  It is our

24  request for the 60-day extension extend to May 17th.

25           THE COURTROOM DEPUTY:  Judge, you're on trial that

PROCEEDINGS                              23

1  week.  May 23rd at 11:00.

2           MS. PAYNE:  I apologize, again, Your Honor.  May we

3  have -- sorry, the next week I will be out, and just in case I

4  need to cover the matter, I appreciate it.

5           THE COURTROOM DEPUTY:  Judge, May 29th at 11:30.

6           THE COURT:  Are the parties available on May 29th at

7  11:30?

8           MR. AGNIFILO:  This a Mark Agnifilo, Judge.  I have

9  something at 11.  I can do it right before or right after,

10 either one.

11          THE COURT:  Winnie, is 10:00 available?

12          THE COURTROOM DEPUTY:  Yes, Judge, it is.

13          THE COURT:  Does that work, Mr. Agnifilio?

14          MR. AGNIFILO:  Yes, Judge.  Thank you very much.

15          THE COURT:  Is there anyone who cannot make that

16 date and time?

17          I'm adjourning this matter to May 29th at 10 a.m.

18          I expect the parties to work together to engage in

19 the necessary discovery so that this threshold issue can be

20 decided by the Court.

21          I will have the clerk of the court randomly assign a

22 magistrate judge to work with the parties on this matter.

23          Is there anything else we need to discuss today?

24          MS. PAYNE:  Nothing from the government.  Thank you,

25 Your Honor.

PROCEEDINGS                                      24

1          MS. PARLOVECCHIO:  Nothing from Mr. Siazon.  Thank

2     you, Your Honor.

3          MR. ALBERTS:  Your Honor, on behalf of

4     Petitioner Simmons, I just want to clarify to whom the parties

5     should go with regard to discovery?  Because you said if

6     there's a dispute we could bring the issue to the Court.  You

7     mentioned there's also a magistrate judge.

8          THE COURT:  I'm sorry, go ahead, Mr. Alberts.

9          MR. ALBERTS:  I was just going to say, there's one

10    issue that was already raised by the government in their

11    letter, and so maybe using that as an example it would be

12    helpful.

13         So the government has requested that it not be

14    required to produce statements that were made to it by

15    interviewed witnesses.  So, for example, if Kimora Lee Simmons

16    was interviewed, or Tim Leissner was interviewed, and they

17    said, yes, we didn't even own Kewway Pride at the time that we

18    signed that, that was -- you know, we were just pretending we

19    owned it as an attempt to defraud Russell Simmons, that would

20    be really helpful for us to have.

21         The government, I believe, is saying they're

22    refusing to produce it.  That probably is going to end up

23    being a dispute that will need to be briefed if the government

24    thinks there's a legal basis to not turn over any statements

25    that were made to it that are written down.

PROCEEDINGS                                    25

1          Should we go to you for that or should we go to the

2   magistrate judge?

3          THE COURT:  We will appoint a magistrate judge, you

4   will go to the magistrate judge on all discovery issues.

5          MR. ALBERTS:  Understood, Your Honor.  Thank you.

6          Nothing further from Petitioner Simmons.

7          THE COURT:  Thank you, Mr. Alberts.

8          We are adjourned.  Have a good day everybody.

9          (CHORUS:  Thank you, Your Honor.)

10

11          (Whereupon, the matter was concluded.)

12

13                    *     *     *     *     *

14

15

16  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
17

18  s/ Linda D. Danelczyk                  March 19, 2024

19   LINDA D. DANELCZYK                     DATE

20

21

22

23

24

25

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*