KING & SPALDING

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, California 90071

Tel: +1 213 443 4355
Fax: +1 213 443 4310
www.kslaw.com

David K. Willingham
Partner
Direct Dial: +1 213 218 4005
dwillingham@kslaw.com

May 17, 2024

The Honorable James R. Cho
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  Joint Letter Regarding Scope of Discovery,
> *United States v. Tim Leissner*, 23-MC-1505 (MKB)

Dear Judge Cho:

Kimora Lee Simmons-Leissner ("Ms. Lee") hereby responds to petitioner Russell Simmons's renewed request for an order compelling the government and Ms. Lee to produce documents responsive to his seventeen requests for production of documents. As the Court previously recognized, Mr. Simmons is not entitled to the broad categories of documents he seeks, as they largely have no bearing on whether he has standing to bring a derivative claim on behalf of Nu Horizons Investment Group LLC ("Nu Horizons").  Indeed, Mr. Simmons's primary argument is that the documents that Ms. Lee and the government have produced so far do not support his theories of fraud. (Dkt. 49 at 3.)  However, Mr. Simmons's unhappiness with the responsive documents produced to date has no bearing on the adequacy of the scope of discovery.

Accordingly, Ms. Lee respectfully requests that this Court deny Mr. Simmons's renewed request without a hearing for the same reasons the Court previously explained (*see* April 30, 2024 Minute Entry).

## I.      The Court Correctly Limited the Scope of Discovery

The scope of the expedited discovery ordered by the Court was expressly limited to the "status of [Mr. Simmons's] membership interest in" Nu Horizons "as of the date of the filing of

[Mr. Simmons's] Petition." (Dkt. 32 at 10.) The limited scope of discovery was intended to address Mr. Simmons's standing "to bring a derivative claim on behalf of Nu Horizons." (*Id.*).

As the Court is aware, the Parties filed an extensive joint submission regarding the proper scope of discovery at this stage of the case, and addressed which of Mr. Simmons's expansive discovery requests fell outside the parameters of the limited discovery ordered. (*See* Dkt. 42.) On April 30, after hearing oral argument, the Court correctly adopted the position of the government and Ms. Lee regarding the scope of discovery, as detailed in the Parties' joint letter. (*See* April 30, 2024 Minute Entry.)

Subsequently, Ms. Lee amended her discovery responses in accordance with the Court's order and agreed to produce:

- Documents concerning (a) control of Keyway Pride Limited LLC ("Keyway Pride"), (b) at the time of the May 25, 2018 Stock Transfer Agreement (RFP 4);

- All documents concerning the Letter of Intent dated April 26, 2018 (RFP 7);

- All documents concerning the Stock Transfer Agreement executed on or about May 25, 2018, including the assignment attached thereto as Exhibit A, including (a) the negotiation of that agreement (RFP 8(a));

- All documents concerning the Membership Interest Transfer Agreement entered into in or about December 2018, including, but not limited to, documents concerning the negotiation of that agreement (RFP 10); and

- Documents sufficient to show direct ownership of Nu Horizons between 2018 and the present (RFP 11).

(*See* Ex. A (Kimora Lee Simmons-Leissner's Amended Objections and Responses to Petitioner Russell Simmons's First Set of Requests for the Production of Documents).)

Ms. Lee's counsel then undertook to search and review a database containing in excess of 171,000 documents, and began a rolling production of documents. To-date, Ms. Lee has reviewed approximately two-thirds of the searched documents and produced more than 750 pages. Counsel, however, paused the production (including 1,288 pages that were about to be served) after third-party law firm Cooley LLP asserted the attorney-client privilege over documents containing communications with a dissolved company, All Def Digital ("ADD"). Ms. Lee contends that the privilege did not survive ADD's dissolution, and is attempting to navigate those issues without court intervention. *See, e.g.*, *SEC v. Carrillo Huettel LLP*, No. 13 Civ. 1735 (GBD) (JCF), 2015 WL 1610282, *2 (S.D.N.Y. April 8, 2015) ("The weight of authority, however, holds that a dissolved or defunct corporation holds no privilege.")

That the documents produced to date do not support Mr. Simmons's fanciful theories of standing does not warrant expanding the scope of discovery.

May 17, 2024
Page 3

## II. The Contours of Derivative Standing Are Defined By Delaware Law

There is no dispute that Nu Horizons is a Delaware limited liability company. Under Delaware law, the right to bring a derivative claim on behalf of an entity is a "statutory right," the contours of which are defined by the Delaware Limited Liability Company Act. *CML V, LLC v. Bax*, 6 A.3d 238, 241 (Del. Ch. 2010), aff'd, 28 A.3d 1037 (Del. 2011), as corrected (Sept. 6, 2011). Under the Act, derivative standing to bring a claim on behalf of an LLC is expressly limited to "members" and "assignees." 6 Del. C. § 18-1002. Moreover, "to have standing a derivative plaintiff must satisfy two tests: (1) the ***contemporaneous ownership test***, which requires stockholders to have owned stock at the time of the wrong complained of, and (2) the ***continuous ownership rule*** requiring stockholders to maintain their shareholder status throughout the litigation." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 954 A.2d 911, 935 (Del. Ch. 2008) (footnote omitted) (emphases added).

"The plain language of 6 Del. C. § 18–1002 is unambiguous and limits derivative standing in LLCs exclusively to 'member[s]' or 'assignee[s].'" *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011), as corrected (Sept. 6, 2011) ("Section 18–1002 [is] an exclusive provision that limits derivative standing to LLC members and assignees.").

Conspicuously absent from Mr. Simmons's renewed request for expansive discovery is *any discussion whatsoever* of Delaware law, which governs the substantive requirements to bring a derivative claim here.[1] *See RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1326 (2d Cir. 1991); *Locs. 302 & 612 of Int'l Union of Operating Engineers - Emps. Const. Indus. Ret. Tr. v. Blanchard*, No. 04 CIV. 5954 (LAP), 2005 WL 2063852, at *4 (S.D.N.Y. Aug. 25, 2005) ("New York Courts must look to the law of the state of incorporation for all principles that will govern the action."). Instead, Mr. Simmons would have the Court accept that the scope of discovery should be controlled by his own (incorrect) theories of standing, rather than what is allowed by the Delaware Limited Liability Company Act. Indeed, the crux of Mr. Simmons's latest attempt to expand the scope of discovery is that if his lawyers say the discovery they seek is relevant to standing, then it must be so. But this ipse dixit is patently incorrect.

*First*, incorrect theories of derivative standing are *not relevant* and by definition are *not proportional* to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *see also Navel Orange Admin. Comm. v. Exeter Orange Co., Inc*., 722 F.2d 449, 454 (9th Cir. 1983) ("[I]f the affirmative defenses are not cognizable in an enforcement proceeding, discovery relating to those defenses is irrelevant and immaterial."). Indeed, Mr. Simmons primarily seems to argue that he should be able to pursue fanciful theories of fraud—but, as previously explained (Dkt. 42), and as set forth below, those

---

[1] At oral argument, Mr. Simmons argued that because the Stock Transfer Agreement is governed by California law, Delaware law is irrelevant. (April 30, 2024 Tr. 61:14-61:25.) However, this is a misapplication of the how choice of law rules work. Nu Horizons is a Delaware limited liability company and the ability to assert a derivative claim on behalf of it is governed by Delaware law. *See, e.g.*, 6 Del. C. § 18–1002. The Stock Transfer Agreement's validity may be based on California law, but that is only relevant, if its invalidity can confer standing. And it cannot. *See Ark. Teacher Ret. Sys. V. Countrywide Fin. Corp.*, 75 A.3d 888, 894 (Del. Sup. Ct. 2013).

theories cannot confer derivative standing and to order the review and production from a database of more than 171,000 documents in pursuit of *inapplicable* legal theories is obviously not proportional to the limited discovery ordered.  See *Solarex Corp. v. Arco Solar, Inc*., 121 F.R.D. 163, 179 (E.D.N.Y. 1988) ("[i]t is, of course, within the court's discretion to deny discovery related to a patently insubstantial claim") (quotations and citations omitted).

*Second*, as set forth in the Parties' prior joint letter (Dkt. 42 at 35), Delaware law recognizes only a very narrow fraud exception to the statutory requirements for derivative standing.  That exception originated in the context of mergers that defeated the *continuous ownership* requirement for derivative standing, and is limited to circumstances where "the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of their standing to bring or maintain a derivative action." *Ark. Teacher Ret. Sys. v. Countrywide Fin. Corp*., 75 A.3d 888, 894 (Del. Sup. Ct. 2013).

At oral argument, Mr. Simmons's counsel argued that the fraud exception to Delaware's requirements for derivative standing applies only when a "stockholder states [he] was defrauded through a merger transaction," and counsel conceded they were not arguing the exception applies. (*See, e.g.*, April 30, 2024 Tr. 8:14-21; *id.* at 61-62:4).  But there is no such limit on the fraud exception.  Rather, although "the fraud exception has been discussed in the context of mergers . . . ***the broader principle is not limited to that species of transaction***." See *Bamford v. Penfold, L.P.*, No. CV 2019-0005-JTL, 2020 WL 967942, at *29 (Del. Ch. Feb. 28, 2020).  Indeed, Delaware courts have cautioned that the fraud exception to derivative standing "is a narrow exception that should be cautiously applied even when the affected plaintiffs act with diligence." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 954 A.2d 911, 936 (Del. Ch. 2008).  And, as Ms. Lee previously set out (Dkt. 42), a trial court in Connecticut recently rejected that the fraud exception applies in a similar, non-merger context. See *Zhao v. Dean*, No. FST-X08-CV-19-6042813-S, 2024 WL 686901 (Conn. Super. Ct. Feb. 16, 2024).

In any event, Mr. Simmons's prior concession that he does not contend the fraud exception to derivative standing applies is reason *to deny* his attempts to pursue discovery based on his various (incorrect) fraud theories.  The fraud theories he has advanced, and the corresponding discovery he seeks, are not relevant to derivative standing and are not proportional to the needs of the case.[2]

---

[2] Mr. Simmons's disappointment with the documents produced underscores that his fraud theories are untethered to reality: he seeks documents that do not exist. See *Doe v. Wesleyan Univ*., No. 3:19-CV-01519 (JBA), 2021 WL 4704852, at *6 (D. Conn. Oct. 8, 2021) (denying a motion to compel where "the plaintiff has come forward with no factual basis for supposing that the production is incomplete"). "When parties assert that they have produced all responsive documents [and] the adversary believes the production is incomplete, ***the remedy is not to pound the table and ask the Court to order additional productio***n. A court cannot order a party to produce that which does not exist." *Sidman v. Concord Arena Parking, LLC*, No. 15-CV-7426-CBA-SJB, 2021 WL 1940255, at *3 (E.D.N.Y. May 11, 2021) (emphasis added). The fact that Ms. Lee and the government "have not produced certain documents does not mean that they possess them but are

There is no dispute that Mr. Simmons sold his entire interest to Ms. Lee's investment vehicle, Keyway Pride on May 25, 2018 by the Stock Transfer Agreement. (Dkt. 5-1, Simmons Petition ¶ 51.) As part of that transaction, Mr. Simmons executed an Assignment Separate from Certificate were he "hereby sells, assigns and transfers . . . his entire Ownership Percentage [ ] of Nu Horizons and does hereby irrevocably constitute and appoint the Secretary of Nu Horizons to transfer said equity interests on the books of the Company with full power of substitution in the premises." (Dkt. 5-20 at 11.)

The transfer documented by the STA and Assignment defeats any claim that Mr. Simmons can make to *contemporaneous* and *continuous* ownership of an interest in Nu Horizons. Ms. Lee thus agreed to produce (among other things) documents regarding that transaction, and the subsequent transaction—the December 2018 Membership Interest Transfer Agreement ("MITA")—that Mr. Simmons incorrectly claims unwound the STA. That agreement regarding the scope of discovery, which is reflected in the Court's prior order, correctly defined the scope of discovery relevant to Mr. Simmons's derivative standing and there is no reason to revisit the Court's prior ruling.

### III.    Conclusion

Whether Mr. Simmons has standing to bring a derivative claim on behalf of Nu Horizons is a straightforward—and threshold—issue that is properly limited to whether he was a "member" or "assignee" of a membership interest Nu Horizons. That determination will ultimately hinge on whether the Membership Interest Transfer Agreement undid the transfer of Mr. Simmons's ownership interest in Nu Horizons to Keyway Pride (which it did not do). That Mr. Simmons is merely unhappy with the responsive documents produced to date does not warrant a change in the scope of discovery. Thus, the Court should deny Mr. Simmons's renewed requests without a hearing.

We appreciate the Court's attention to this matter.

---

refusing to produce them," rendering Mr. Simmons's "proposed remedy of ordered production anew inapposite." *Id*. Furthermore, in the Second Circuit, "it is established that, at least with respect to allegations of fraud or inequitable conduct, it is improper to use discovery in search of a factual predicate required to be pleaded in the first instance." *Solarex Corp.*, 121 F.R.D. at 179. Mr. Simmons has no factual basis for his fraud allegations, and he is precluded from subjecting Ms. Lee to "protracted discovery proceedings on mere supposition." *Id.* (cleaned up). Ms. Lee and the government are continuing to produce, on a rolling basis, documents responsive to whether Mr. Simmons has derivative standing, and they intend to complete production well-before the July 16, 2024 deadline (*see* May 10, 2024 Order.) Any discovery beyond that which is relevant to Mr. Simmons's ownership interest in Nu Horizons improperly veers into Mr. Simmons's civil allegations in California state court and should not be allowed. (*See* April 30, 2024 Tr. 28: 7-10) (The Court noted that "if there's discovery to be had on that issue, likely it would happen in the California proceeding as well.")

May 17, 2024
Page 6

                                        Very truly yours,

                                        */s/ David K. Willingham*

                                        David K. Willingham