**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

In Re Forfeiture Order of Tim Leissner

23-MC-01505 (MKB)(JRC)

**PETITIONER SIMMONS'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION**
**TO DISMISS THE PETITION OF KIMORA LEE SIMMONS-LEISSNER**

PRYOR CASHMAN LLP
7 Times Square, Suite Level 40
New York, NY 10036
Tel: (212) 421-4100

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

   I.    Background ................................................................................................................. 3

       A.  *Procedural background* .................................................................................... 3

           1.   Leissner criminal proceedings ................................................................. 3

           2.   Criminal forfeiture action ........................................................................ 5

       B.  *Factual background* ........................................................................................ 6

   II.   Legal Standards ........................................................................................................ 8

       A.  *Elements of a criminal forfeiture* ................................................................. 8

       B.  *Motion to dismiss standard* .......................................................................... 9

  III.   Argument ................................................................................................................ 10

       A.  *The Court already ruled that only Nu Horizons has a cognizable legal interest in the Celsius Shares, while members of Nu Horizons do not.* ................... 11

       B.  *The shares of Celsius stock in which Ms. Lee asserts an interest as a payor are not the Celsius Shares that the government seeks to forfeit.* ................... 12

       C.  *Even if the Celsius Shares had included the 300,000 shares of Celsius stock that Nu Horizons allegedly purchased with Ms. Lee's $1 million, Ms. Lee would lack standing to assert a claim even as to these shares.* ................ 14

       D.  *Ms. Lee is not a bona fide purchaser for value of any Celsius shares.* ................... 15

CONCLUSION ................................................................................................................ 17

i

## **<u>TABLE OF AUTHORITIES</u>**

**<u>CASES</u>**                                                                                                          **<u>PAGE(s)</u>**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................9

*Pacheco v. Serendensky*,
   393 F.3d 348 (2d Cir. 2004).....................................................................................10

*Peacock v. Suffolk Bus Corp.*,
   100 F. Supp. 3d 225 (E.D.N.Y. 2015) .....................................................................12

*United States v. Ackerman*,
   2023 WL 3568654 (S.D.N.Y. May 18, 2023) ..........................................................16

*United States v. Amiel*,
   995 F.2d 367 (2d Cir. 1993).....................................................................................10

*United States v. Daugerdas*,
   892 F.3d 545 (2d Cir. 2018)....................................................................................8, 9

*United States v. Egan*,
   811 F. Supp. 2d 829 (S.D.N.Y. 2011).......................................................................8

*United States v. Hiller*,
   2023 WL 7924180 (E.D.N.Y. Nov. 16, 2023)..........................................................10

*United States v. Lester*,
   85 F.3d 1409 (9th Cir. 1996) ....................................................................................8

*United States v. Ribadeneira*,
   105 F.3d 833 (2d Cir. 1997).....................................................................................9

*United States v. Soreide*,
   461 F.3d 1351 (11th Cir. 2006) ...............................................................................10

*United States v. Stern*,
   2021 WL 3474040 (S.D.N.Y. Aug. 5, 2021)........................................................9, 10

*United States v. White*,
   779 F. Supp. 2d 984 (D. Minn. 2011), *aff'd,* 675 F.3d 1073 (8th Cir. 2012) ..........16


**<u>STATUTES AND RULES</u>**

18 U.S.C. § 371...............................................................................................................4

18 U.S.C. § 1956(h) ............................................................................................................4

21 U.S.C. § 853(n) .............................................................................................................8

21 U.S.C. § 853(n)(2) ......................................................................................................8, 9

21 U.S.C. § 853(n)(6) ........................................................................................................9

21 U.S.C. § 853(n)(6)(A) ...................................................................................................9

21 U.S.C. § 853(n)(6)(B) ........................................................................................9, 16, 17

28 U.S.C. § 2461(c) ...........................................................................................................9

Fed. R. Civ. P. 12(b)(6) .....................................................................................................9

Fed. R. Crim. P. 32.2(c) .....................................................................................................9

Fed. R. Crim. P. 32.2(c)(1)(A) ..........................................................................................9

## PRELIMINARY STATEMENT

Petitioner Kimora Lee Simmons-Leissner is attempting to claim property that is not hers, and the Court should not countenance that attempt.  Even accepting all the allegations in her petition as true, implausible though they may be, Ms. Lee fails to plead facts supporting an inference that she has standing to assert an interest in the shares of Celsius Holdings, Inc. ("Celsius") stock that the government is seeking to forfeit and fails to plead a facially plausible claim on the merits.  To survive a motion to dismiss, Ms. Lee must plausibly allege that she directly owns these shares of stock by virtue of making a bona fide purchase for value of these shares at a time that she was without reason to believe that the shares were subject to forfeiture.  Ms. Lee's petition fails to meet this requirement for at least three reasons, each of which is fatal to her petition, and the Court should swiftly dismiss it with prejudice.

*First*, in light of the Court's ruling that only Nu Horizons Investment Group, LLC ("Nu Horizons") has standing to assert a claim for shares that Nu Horizons purchased directly from Celsius, Ms. Lee's petition must be dismissed wholesale.  The shares of Celsius stock that the government seeks to forfeit were purchased by Nu Horizons from Celsius under an agreement listing Nu Horizons, not Ms. Lee, as the purchaser.  The Court has already ruled that in light of the language in this agreement, only Nu Horizons may assert a claim to the shares as the direct owner. Ms. Lee's petition therefore fails to plead a direct ownership interest in these shares.  As she has not brought a derivative claim on behalf of Nu Horizons, the Court should dismiss her petition in its entirety.

*Second*, the shares in which Ms. Lee attempts to assert an interest are not even the shares of Celsius stock at issue in this proceeding.  The shares of Celsius stock that the government seeks to forfeit were purchased by Nu Horizons from Celsius in 2015.  Ms. Lee alleges that in 2017 she funded a different purchase of shares of Celsius stock by Nu Horizons directly from Celsius.  This

1

second purchase was made two years *after* Nu Horizons' purchase of the shares of Celsius stock at issue in this ancillary proceeding.  Thus, even if funding the 2017 purchase made Ms. Lee the owner of the purchased shares, which it cannot under the Court's prior ruling, it still would not support an inference that Ms. Lee is an owner of the shares purchased in 2015, which are the only ones at issue in this ancillary proceeding.

*Third*, even if the shares allegedly purchased with Ms. Lee's money in 2017 were a portion of the shares purchased in 2015 that the government seeks to forfeit, which is logically impossible, she still would be unable to allege standing because, as she herself pleads, Nu Horizons purchased those shares, just as it purchased the shares in 2015.  The Court should disregard Ms. Lee's recent attempt to rewrite her petition to avoid this fatal defect, and it should certainly disregard her belated and procedurally void allegation that she purchased those shares from Nu Horizons in July 2018 in the midst of her husband's bond proceedings.

*Finally*, in addition to the reasons Ms. Lee's petition flatly fails to allege facts supporting an inference that she has standing, her attempt to assert an interest in the shares actually at issue in this case—the shares Nu Horizons purchased two years before her own alleged investment—also fails on the merits.  She argues that she is a bona fide purchaser for value of some of the shares Nu Horizons had purchased in 2015 because in 2017 her husband, Defendant Tim Leissner, agreed to give her some of those shares.  This contention falls woefully short of a plausible allegation that she was a bona fide purchaser for value of those shares.  Ms. Lee offers no allegations that she gave any value whatsoever for that purchase, and it was furthermore the product of a secret deal between a husband and wife that fails as a matter of law to constitute an arm's-length transaction.

In sum, Ms. Lee's petition suffers from multiple, independently sufficient failures to plausibly allege standing or a successful claim on the merits, and the Court should dismiss it with prejudice.

## I.    Background

### A.    Procedural background

#### 1.    Leissner criminal proceedings

On June 7, 2018, an arrest warrant was issued for Defendant Tim Leissner and a criminal complaint was filed against him.  (*See United States v. Leissner*, 18-cr-439 (MKB) ("Criminal Case"), ECF Nos. 1, 2.)  He was released on a $20 million bond on June 14, 2018.  (Criminal Case ECF Nos. 5, 7; *see also* ECF No. 3-1 ("Lee Pet.") ¶ 16.)  That bond was secured by shares of Celsius stock that had previously been purchased by Nu Horizons, an investment entity in which Defendant Leissner at one time held a majority interest.  (Lee Pet. ¶ 16; Ex. 7.)  On July 11, 2018, all of Nu Horizons' 3,972,659 shares of Celsius stock "were transferred to Ms. Lee's J.P. Morgan Chase Bank brokerage account"; Ms. Lee's petition is vague about "whether the shares were distributed to [Ms.] Lee or lent to her by Nu Horizons."  (Lee Pet. ¶¶ 17, 28.)  The next day, the Honorable Steven L. Tiscione ordered 3,325,942 of those shares of Celsius stock restrained. (*Id.* ¶ 18.)  At some point thereafter, most or all of the balance of the unrestrained shares of Celsius stock were withdrawn from Ms. Lee's account, which Ms. Lee alleges was done (presumably by the accountholder, Ms. Lee) for the benefit of her husband, Defendant Leissner.  (*Id.* ¶ 18 n.1.)  Defendant Leissner pled guilty in the Criminal Case on August 28, 2018, and on November 1, 2018, the Court entered a preliminary order of forfeiture for a money judgment in the amount of $43,700,000 against Defendant Leissner.  (Criminal Case docket entry dated August 28, 2018; Criminal Case ECF No. 21; Lee Pet. ¶ 20.)  On March 5, 2021, all of the shares of Celsius stock in Ms. Lee's brokerage account were ordered seized pursuant to a seizure warrant entered by the

Honorable Peggy Kuo.  (Lee Pet. ¶ 19.)  This seizure did not include the 646,717 shares that the government chose not to seize, most or all of which Ms. Lee and/or her husband, Defendant Leissner, had transferred out of the brokerage account.

On August 17, 2022, the government filed a letter moving the Court to amend the preliminary order of forfeiture to include the 3,325,942 seized shares of Celsius stock ("Celsius Shares"), simply noting that the proposed amendment reflected "the terms . . . the defendant, Tim Leissner, ha[d] agreed to in connection with his guilty plea."  (Criminal Case ECF Nos. 64 and 64-1.)  On March 3, 2023, the Court entered the amended preliminary order of forfeiture, noting that Defendant Leissner "ha[d] consented to the forfeiture of all right, title, and interest in 3,325,942.00 shares of stock in Celsius Holdings, Inc. held in J.P. Morgan Chase Bank brokerage account number ending in '7002' in the name of Kimora Lee Simmons . . .  as: (a) property, real or personal, involved in the violation of 18 U.S.C. § 1956(h), or property traceable to such property; and (b) property, real or personal, constituting or derived from proceeds traceable to a violation of 18 U.S.C. § 371."  (Criminal Case ECF No. 68 ("Amended Preliminary Order of Forfeiture").)

The Court ordered that Defendant Leissner "shall forfeit to the United States all right, title, and interest in the Celsius Shares.  Upon final forfeiture of the Celsius Shares to the United States, the net value thereof at the time the shares are liquidated by the government shall be credited towards the Forfeiture Money Judgment [of $43.7 million].  The value of any Celsius Shares remaining after the Forfeiture Money Judgment is satisfied shall be forfeited to the United States." (*Id.*)  Other than accepting Defendant Leissner's self-interested "consent" to the characterization of the 3,325,942 seized shares of Celsius stock as proceeds of his crime, the Court made no finding as to "whether the government has established the requisite nexus between the [forfeited Celsius

4

Shares] and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). Neither would it have been possible for the Court to make this finding given that the government failed to submit any evidence that could serve as the basis for such a finding.

### 2. Criminal forfeiture action

This ancillary proceeding commenced May 1, 2023. (*See* ECF No. 1.) Mr. Simmons, Ms. Lee and two other individuals filed petitions asserting an interest in the Celsius Shares subject to the Amended Preliminary Order of Forfeiture. (*See* ECF No. 5-1 ("Simmons Pet."); Lee Pet.; ECF No. 4-1 (petition of Roger Ng); ECF No. 8-1 (petition of Ken Siazon).) Mr. Simmons brought a claim in his individual capacity as well as derivatively on behalf of Nu Horizons, while all other petitioners brought their claims individually.

The government moved to dismiss the Simmons Petition, and the Court granted in part and denied in part that motion. (*See* ECF No. 24 ("MTD Decision").) The Court dismissed Mr. Simmons's direct claim because the relevant "Stock Purchase Agreement identifies Nu Horizons as the purchaser of the Celsius Shares [and] Petitioner [Simmons], as a manager of the LLC, therefore has no legal interest in the Celsius Shares, as they are assets of the LLC." (*Id*. at 7.) But the Court held that Mr. Simmons "does, however, have standing to assert a derivative claim on behalf of Nu Horizons." (*Id*. at 8.) The Court held that "the relevant question is whether Petitioner had an interest in the LLC at the time the Celsius Shares were purchased, and the parties do not dispute that he did." (*Id*. at 9, n. 7.) Additionally, the Court held that Mr. Simmons had standing even though it was Defendant Leissner who arranged for the wire payment on behalf of Nu Horizons for the Celsius Shares. (*Id*. at 14.)

The government sought reconsideration of the MTD Decision on January 12, 2024, arguing that the Court erred in holding that Mr. Simmons had derivative standing at the time he filed his petition. (ECF No. 25.) Following additional briefing (ECF Nos. 26, 31), the Court denied the

5

motion on February 9, 2024, rejecting the government's contention that the Court had overlooked controlling authority regarding derivative standing, but "direct[ing] the parties to engage in limited discovery regarding whether Petitioner [Simmons] had an interest in Nu Horizons at the time the Petition was filed." (ECF No. 32.) That discovery is ongoing and set to conclude by July 16, 2024 under the supervision of Magistrate Judge Cho.[1] (ECF Order of May 10, 2024.)

On May 17, 2024, Mr. Simmons filed a letter requesting a pre-motion conference in anticipation of this motion to dismiss. (ECF No. 55.) Ms. Lee filed an opposition letter on May 28, 2024. (ECF No. 58 ("Opp. Letter").) The Court denied the request for a pre-motion conference, and adopted the parties' proposed briefing schedule for this motion to dismiss. (ECF Orders of June 7, 2024 and June 12, 2024.)

B.      *Factual background*

Nu Horizons is a Delaware limited liability company in which Mr. Simmons is a minority member. (Simmons Pet. ¶¶ 35-36; *see also* Lee Pet. ¶ 5.) On or about April 20, 2015, Nu Horizons purchased 3,539,326 shares of Celsius stock by means of two transactions: a purchase of 3,370,787 shares ($3 million at a purchase price of $.89 per share) and a purchase of 168,539 shares ($150,000 at $.89 per share). (Simmons Pet. ¶¶ 22-24; *see also* Lee Pet. ¶ 12 (describing "Nu Horizons' previously acquired shares of Celsius (purchased at a lower price)"); *id*. ¶ 14 (listing in a table the sum of these two prior purchases).)

At issue in this ancillary proceeding are the "3,325,942.00 shares of stock in Celsius Holdings, Inc. held in J.P. Morgan Chase Bank brokerage account number ending in '7002' in the name of Kimora Lee Simmons." (Amended Preliminary Order of Forfeiture at 2.) As basis for this forfeiture, the government has asserted that "a wire transfer on or about April 21, 2015 in the

---

[1]      On July 8, 2024, the government filed a motion for extension of time to complete discovery, which is pending before Magistrate Judge Cho.

amount of approximately $3,000,000 from 'Asian Sports Ventures HK' to Celsius Holdings, Inc.

. . . was used as payment for 3,370,787 shares of Celsius stock, which were issued to Nu Horizons."

(ECF No. 21 ("Gov. MTD") at 5; *see also* MTD Decision at 2.)  The government has asserted that

this $3 million, and in turn the Celsius Shares purchased with it, constitutes "proceeds from the

1MDB bond scheme," and specifically the aspect of that criminal scheme to which Defendant

Leissner pled guilty.  (Gov. MTD at 5.)  Ms. Lee did not allege that she contributed any money

toward Nu Horizons' purchase of these shares, which are the Celsius Shares at issue in this

ancillary proceeding, or that she had any ownership interest in Nu Horizons when Nu Horizons

purchased the Celsius Shares.

Two years later, on or about January 3, 2017, Nu Horizons purchased an additional 433,333

shares of Celsius stock pursuant to a subscription agreement between Celsius Holdings Inc. and

Nu Horizons for $1.3 million ($3 per share).  (Lee Pet. Ex. 2 (ECF No. 3-3) ("2017 Subscription

Agreement") at 7.)  Ms. Lee was not a party to the 2017 Subscription Agreement.  (*Id.* at 7, 9.)

The government is not seeking to forfeit any of these 433,333 shares of Celsius stock in this

ancillary proceeding.  Ms. Lee alleges in the Lee Petition that "Nu Horizons executed [the]

subscription agreement to purchase $1,300,000 of shares of Celsius" and that, consequently, "those

shares were placed in Nu Horizons."  (Lee Pet. ¶¶ 10, 12, 14.)  She alleges that Nu Horizons

purchased 300,000 of these 433,333 shares of Celsius stock using $1 million that she provided to

Nu Horizons.  (*Id.* ¶¶ 12, 14.)  Despite alleging that the $1 million that she provided was used by

Nu Horizons to purchase exactly 300,000 shares of Celsius stock, she alleges an ownership interest

in 892,732.40 shares of Celsius stock.  (*E.g.*, *Id.* ¶ 1.)  As basis for this calculation, she describes

a promise allegedly made by her husband, Defendant Leissner, "that Lee would get the benefit of

Nu Horizons' previously acquired shares of Celsius (purchased at a lower price), which would be

blended with Lee's contribution [for a] blended average share price of US$1.12 per share." (*Id.* ¶ 12.) In other words, according to Ms. Lee's allegations, in addition to the 300,000 shares that Nu Horizons purchased with her $1 million, her husband promised her another 592,732.40 shares of Celsius previously purchased by Nu Horizons, and for which purchase Ms. Lee had contributed nothing. As a result, she alleges that she "acquired a total of 892,732.40 shares of Celsius stock with her $1,000,000 investment, applying a blended rate of $1.12 per share." (*Id.* ¶ 14.)

In her Opposition Letter, Ms. Lee asserted for the first time that Nu Horizons sold her all its shares of Celsius stock on July 5, 2018. (Opp. Letter Ex. L1, ECF No. 58-1 ("2018 SPA").) The Lee Petition did not include any allegations whatsoever concerning this purported sale, which Ms. Lee now suggests took place shortly after Defendant Leissner was released on a bond secured by those shares, and shortly before the government initially restrained the shares. (*See* Lee Pet. ¶¶ 16-18.)

## II.   Legal Standards

### A.    Elements of a criminal forfeiture

"Unlike civil forfeiture, which is an *in rem* action, 'criminal forfeiture is an *in personam* action in which only the defendant's interest in the property may be forfeited.'" *United States v. Daugerdas*, 892 F.3d 545, 548 (2d Cir. 2018) (quoting Fed. R. Crim. P. 32.2(b) advisory comm. notes (2000)); *see also United States v. Lester*, 85 F.3d 1409, 1413 (9th Cir. 1996) ("[A] criminal forfeiture is an *in personam* judgment against a person convicted of a crime."). In criminal forfeiture proceedings, "the Government 'stands in the defendant's shoes,' and a petitioner who establishes a legal interest in property superior to the defendant is entitled to recovery of its property." *United States v. Egan*, 811 F. Supp. 2d 829, 838 (S.D.N.Y. 2011) (quoting *United States v. Nektalov*, 440 F. Supp. 2d 287, 294-95 (S.D.N.Y. 2006)).

8

Title 21, United States Code, Section 853(n) governs third-party claims to property forfeited in a criminal case.  Pursuant to Section 853(n), "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited" may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property."  21 U.S.C. § 853(n)(2). Assertions by a third party to property included in an order of forfeiture are resolved in a post-trial ancillary proceeding.  *See* 28 U.S.C. § 2461(c); Fed. R. Crim. P. 32.2(c).

Third-party claimants to property that has been ordered forfeit must have a "legal interest" in that particular asset within the meaning of 21 U.S.C. § 853(n)(2) to have standing in the ancillary proceeding.  *United States v. Ribadeneira*, 105 F.3d 833, 834-35 (2d Cir. 1997).  In order to prevail on the merits, petitioners must have a claim to the asset under one of the two subsections of 21 U.S.C. § 853(n)(6).  To state a plausible claim under § 853(n)(6)(A), a third-party petitioner must allege that his or her legal interest in the property "was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property."  21 U.S.C. § 853(n)(6)(A). To state a plausible claim under § 853(n)(6)(B), a third-party petitioner must allege that he or she "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section."  21 U.S.C. § 853(n)(6)(B).

B.      *Motion to dismiss standard*

Rule 32.2(c) of the Federal Rules of Criminal Procedure provides that "in the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason."  Fed. R. Crim. P. 32.2(c)(1)(A).  Courts consider a motion to dismiss a forfeiture petition under the familiar standard of Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Daugerdas*, 892 F.3d at 552.  To survive a motion to dismiss, a petition "must

contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  In deciding a motion to dismiss a forfeiture petition, a court "will accept all factual allegations in the [third-party petition] as true and draw all reasonable inferences in [the third-party petitioner's] favor." *United States v. Stern*, 2021 WL 3474040, at *3 (S.D.N.Y. Aug. 5, 2021) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  "Only after some discovery has taken place may a party move for summary judgment; at that point the petitioner would be required to produce evidence supporting a prima facie case of entitlement, but not before." *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004).

All grounds for recovery must be set forth within the petition, and a claimant may not later amend the petition to assert additional grounds for relief.  *See, e.g.*, *United States v. Hiller*, 2023 WL 7924180, at *5 (E.D.N.Y. Nov. 16, 2023) (agreeing with government brief that "[a]ll grounds for recovery must be set forth within the petition and a claimant may not later amend the petition to assert additional grounds for relief") (emphasis omitted); *United States v. Soreide*, 461 F.3d 1351, 1355 (11th Cir. 2006) (holding that claims not asserted in petition were statutorily time-barred).

## III.  Argument

Ms. Lee's petition should be dismissed for three reasons, all of which are alone fatal to her petition.  *First*, any direct ownership claim she has to the Celsius Shares as an alleged member of Nu Horizons is indistinguishable in form from Mr. Simmons's now-dismissed ownership claim to the Celsius Shares based on his membership in Nu Horizons, and, unlike Mr. Simmons, she pleaded no derivative claim.[2]  *Second*, even if Ms. Lee did have a legal interest in shares of Celsius

---

[2]     Mr. Simmons respectfully disagrees with the Court's ruling on his direct claim, and does not waive or forfeit any arguments it has before this Court or on appeal concerning that ruling.

10

stock that Nu Horizons purchased directly from Celsius with her $1 million (which would mean Mr. Simmons's claim was wrongly dismissed), these are not the Celsius Shares that are subject to the Amended Preliminary Order of Forfeiture.  *Third*, even if the Celsius Shares at issue in this case included the shares Ms. Lee alleges were purchased with her $1 million, she would still lack standing because these shares also were purchased by Nu Horizons, not directly by Ms. Lee. *Finally*, in addition to the three failings that warrant dismissal of Ms. Lee's petition in its entirety, Ms. Lee's claim to the 592,732.40 shares that Nu Horizons purchased in 2015, before Ms. Lee had provided any funds to Nu Horizons, should be dismissed because she cannot be a bona fide purchaser for value of these shares.

A.     *The Court already ruled that only Nu Horizons has a cognizable legal interest in the Celsius Shares, while members of Nu Horizons do not.*

The Court previously dismissed Mr. Simmons's claim predicated on a direct legal interest in the Celsius Shares on the grounds that the relevant "Stock Purchase Agreement identifies Nu Horizons as the purchaser of the Celsius Shares [and] Petitioner [Simmons], as a manager of the LLC, therefore has no legal interest in the Celsius Shares, as they are assets of the LLC."  (MTD Decision at 7.)  The Court held that Mr. Simmons therefore only has "standing to assert a derivative claim on behalf of Nu Horizons."  (*Id*. at 8.)

Ms. Lee's direct claim to the Celsius Shares purchased in 2015 is structurally identical to Mr. Simmons's direct claim, and so it must likewise be dismissed.  Although Ms. Lee alleges that "as of January 1, 2017, [Defendant] Leissner's interest in Nu Horizons was transferred to Keyway Pride . . . of which [Ms.] Lee is the beneficial owner" (Lee Pet. ¶ 24), this would not make Keyway

---

But insofar as this Court has made its ruling, so too must it make that ruling with respect to structurally identical claims brought by other petitioners.

Pride, much less Ms. Lee, the owner of the Celsius Shares.[3]  As this Court already ruled, having a membership interest in Nu Horizons is insufficient to create a property interest in shares of Celsius stock owned by Nu Horizons.

Ms. Lee brazenly attempts revisionist history to avoid this problem with her new allegation that Nu Horizons sold all its shares of Celsius stock to her on July 5, 2018.  (Opp. Letter at 3 (citing 2018 SPA).)  One wonders at the strategic considerations that led her to omit this allegation from her petition, but it can only have been deliberate.  Indeed, not only was this allegation unpled, but it contradicts the petition's equivocation about "whether the shares were distributed to Lee or lent to her by Nu Horizons."  (Lee Pet. ¶ 28.)  Even if it solved her standing problems, "it is well-settled that a plaintiff cannot amend his complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss."  *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (cleaned up and internal quotations omitted), and the Court should ignore this unpled allegation.

Finally, unlike Mr. Simmons, Ms. Lee has not brought her claim derivatively.  To the contrary, she has expressly disclaimed that theory in this action.  (Lee Pet. ¶ 28 ("To the extent a dispute remains regarding the right to assert a claim on behalf of Nu Horizons to the Celsius shares, that dispute should continue to proceed in the LASC litigation.").)  Accordingly, the Court should dismiss Ms. Lee's entire petition on the same legal grounds under which the Court dismissed Mr. Simmons's direct claim—that she did not plead that she directly owns the Celsius Shares.

---

[3]  It also would not be a plausible allegation that Ms. Lee was a bona fide purchaser for value of this membership interest, as Ms. Lee did not plead that she provided *any* value in exchange for a membership interest in Nu Horizons.

B.    The shares of Celsius stock in which Ms. Lee asserts an interest as a payor are not
the Celsius Shares that the government seeks to forfeit.

Even if paying for shares purchased by Nu Horizons in 2017 could give Ms. Lee an interest

in that property, contrary to this Court's prior ruling, Ms. Lee's Petition would still fail to assert a

"legal interest" in the Celsius Shares that are at issue in this ancillary proceeding because the shares

purchased with the $1 million Ms. Lee allegedly provided to Nu Horizons "are not included in the

Celsius Shares that the government seeks to forfeit." (Simmons Pet. ¶ 40.)  As explained above,

the government has alleged that "a wire transfer on or about April 21, 2015 in the amount of

approximately $3,000,000 from 'Asian Sports Ventures HK' to Celsius Holdings, Inc.," funded

the purchase of 3,370,787 Celsius Shares, making them proceeds of Leissner's crime. (Gov. MTD

at 5.)  Even accepting Ms. Lee's allegations as true, her claim is predicated on Nu Horizons'

subsequent and entirely separate purchase of 433,333 shares of Celsius stock on January 3, 2017,

in part with money she allegedly provided to Nu Horizons.  (Lee Pet. ¶¶ 10-14.)   Her financial

contribution in 2017 could not possibly have financed the purchase of the Celsius Shares in 2015.

Ms. Lee attempts to rebut this with an argument that "Mr. Simmons has no basis to

apportion any particular number of shares to any particular purchase." (Opp. Letter at 3.)  This

argument is rather puzzling, given that she herself is attempting to do exactly that, and, in fact, did

so explicitly in her petition.  (Lee Pet. ¶ 12 (describing Nu Horizons' "previously acquired shares

of Celsius . . . at US$0.89 per share"); *id*. ¶ 14 (setting forth in a table Nu Horizons' 2015 purchase

of shares of Celsius stock).)  This apportionment argument also is audacious given that the

government released to Ms. Lee 646,717 shares of Celsius stock that were in her brokerage account

when it seized the 3,325,942 Celsius Shares from this same account.  (Lee Pet. ¶ 18 n.1.)  For Ms.

Lee to now assert that perhaps the shares purchased with her money should be apportioned to the

13

3,325,942 seized shares remaining in her account, rather than to the 646,717 shares released to her and then transferred out of her brokerage account, is obscene.

C.   *Even if the Celsius Shares had included the 300,000 shares of Celsius stock that Nu Horizons allegedly purchased with Ms. Lee's $1 million, Ms. Lee would lack standing to assert a claim even as to these shares.*

The 2017 Subscription Agreement under which Ms. Lee alleges that 300,000 shares of Celsius were purchased with her $1 million identifies Nu Horizons, not Ms. Lee, as the purchaser of the shares of Celsius stock.  Accordingly, Nu Horizons, not Ms. Lee, is the purchaser and owner of these shares of Celsius stock.  Moreover, Ms. Lee concedes this fact by expressly acknowledging that "Nu Horizons executed [the] subscription agreement to purchase $1,300,000 of shares of Celsius."  (Lee Pet. ¶ 10.)  Ms. Lee furthermore alleges that that Nu Horizons, not Ms. Lee, was at all relevant times titleholder to the Celsius Shares purchased in 2017 with the $1 million that she provided.  (Lee Pet. ¶ 12 ("the Celsius shares . . . were placed in Nu Horizons as an investment vehicle"); *id.* ¶ 12 ("[Lee] will wire the US$1 million directly to Celsius Holdings Inc, but on behalf of Nu Horizons, and Celsius will record it as such."; *id.* Ex. 4 ("The below explains my recent 1mm investment into new horizons [sic] for CELSIUS.").)  She also alleges Nu Horizons' ownership of the 300,000 shares by acknowledging that she could only have possession of the shares if they "were distributed to Lee or lent to her by Nu Horizons."  (Lee Pet. ¶ 28.)  Given the Court's MTD Decision, it is the law of the case that only Nu Horizons has standing, based on its ownership interest, to assert a claim for shares purchased pursuant to a subscription agreement that "identifies Nu Horizons as the purchaser of the Celsius [s]hares;" an indirect interest as a member of Nu Horizons or funder of the purchase is insufficient.  (MTD Decision at 7.)

Perhaps recognizing that the Court's MTD Decision is fatal for her own standing, Ms. Lee attempts in her Opposition Letter to rewrite her petition.  Now, she alleges, the 2017 purchase was

14

a "two-part transaction [that] involved (1) Ms. Lee purchasing the shares with her own money, and (2) putting the shares in Nu Horizons."  (Opp. Letter at 3.)  This is, of course, not at all what her petition alleged, or what the 2017 Subscription Agreement said.  Nu Horizons, not Ms. Lee, is identified as the purchasing party under the 2017 Subscription Agreement.  Ms. Lee already conceded that she "wire[d] the US$1 million directly to Celsius Holdings Inc, *but on behalf of Nu Horizons, and Celsius will record it as such*."  (Lee Pet. ¶ 12 (emphasis added).)  Ms. Lee now states that "Nu Horizons itself paid nothing for the shares and was not a purchaser at all."  (Opp. Letter at 3.)  This desperate attempt to refute her own petition and the unambiguous language of the 2017 Subscription Agreement should be dismissed out of hand.  Nu Horizons was the purchaser under the agreement that Ms. Lee attached to her petition and Ms. Lee alleged in her petition that she only funded that purchase.  Moreover, even if this new allegation were deemed to be a valid amendment of the Lee Petition, which would be improper, it would do nothing for her, as the Court has already ruled that as to the Celsius Shares, Nu Horizons is the entity with a direct ownership interest under the relevant purchase agreement, regardless of the fact that the payment was made directly from the account of a third party.  (MTD Decision at 14 & n.9.)  Ms. Lee cannot avoid the law of the case concerning the legal interest of Nu Horizons in assets it purchased by alleging that she directly funded Nu Horizons' purchase of shares of Celsius stock.

       D.     *Ms. Lee is not a bona fide purchaser for value of any of the Celsius Shares.*

In addition to her failure to plead standing in a manner that is not barred under the law of the case, Ms. Lee's petition also fails to state a claim for relief on the merits.  She argues in her petition that "she is a bona fide purchaser for value who, at the time of purchase, lacked reasonable cause to know that the Celsius shares were subject to forfeiture" because she "gave value in exchange for her interest in the Celsius shares by purchasing the Celsius shares with $1,000,000

of her separate funds from her personal, private account with Bank of America."  (Lee Pet. ¶¶ 25-26.)

As explained above, Ms. Lee did not *purchase* the 300,000 shares that Nu Horizons acquired from Celsius in January 2017, even if she provided $1 million that Nu Horizons used to purchase those 300,000 shares for value.  As to the additional 592,732.40 previously purchased shares to which Ms. Lee now asserts a claim, she also could not have been a bona fide purchaser for value because she provided no value.  These shares were purchased by Nu Horizons and were paid for before she provided Nu Horizons with $1 million.  She argues that she is nevertheless a "bona fide purchaser for value" of those shares because of Defendant "Leissner's promise of a blended purchase price."  (Lee Pet. ¶ 13.)  The transfer of the 592,732.40 shares cannot have been a bona fide purchase for value "for the simple reason that she has not alleged that she paid *anything* to purchase [these shares]," *U.S. v. Ackerman*, 2023 WL 3568654, at *4 (S.D.N.Y. May 18, 2023), and because this was a collusive transaction between a husband and wife not negotiated at arms' length, *see U.S. v. White*, 779 F. Supp. 2d 984, 991 (D. Minn. 2011), *aff'd,* 675 F.3d 1073 (8th Cir. 2012) (no bona fide purchaser where "Defendant supposedly made a 'promise' of a substantial payment, without the involvement of anyone else (such as counsel), to his (then-) new girlfriend").  As a result, she has failed to state a plausible claim under § 853(n)(6)(B) that she "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C. § 853(n)(6)(B).

Even accepting Ms. Lee's characterization of this deal as true, all it shows is that Defendant Leissner purportedly agreed to give his wife millions of dollars' worth of Nu Horizons' previously-purchased shares of Celsius stock for free.  That is, on its face, not a bona fide purchase for value

and, indeed, Ms. Lee offers no allegations—much less plausible allegations—how or whether such a sweetheart deal complied with, or was even permitted by, the Nu Horizons operating agreement. (*See, e.g.*, Lee Pet. Ex. 7 (ECF No. 3-8) ¶ 8.1(a) ("All acts, decisions and consents of the Managers shall require unanimous approval of the Managers."); ¶ 8.9 (requiring majority vote by investment board for "approving or disapproving all investments by the Company and its dispositions thereof").)

## <u>CONCLUSION</u>

For the reasons stated above, the Court should grant Mr. Simmons's motion to dismiss the Lee Petition with prejudice.

Dated:  July 8, 2024                        Respectfully submitted,

                                            PRYOR CASHMAN LLP


                                            By:      */s/ Jeffrey Alberts*

                                                    Jeffrey Alberts
                                                    7 Times Square, Suite Level 40
                                                    New York, NY 10036
                                                    Tel: 212-326-0800
                                                    Email: jalberts@pryorcashman.com

                                            *Counsel for Petitioner Russell Simmons*