# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In Re Forfeiture Order of Tim Leissner, et al. | ) ) ) ) ) ) ) ) ) ) | 1:23-MC-01505 (MKB) |

## MEMORANDUM OF LAW IN SUPPORT OF KIMORA LEE SIMMONS-LEISSNER'S OPPOSITION TO RUSSELL SIMMONS'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................... 3

    A.    The Criminal Case and Forfeiture Proceeding............................................. 3

    B.    Lee's Petition ................................................................................................ 4

    C.    Motion to Dismiss Simmons's Petition ....................................................... 5

III.    LEGAL STANDARD......................................................................................... 6

IV.    LEE HAS SATISFIED THE PLEADING REQUIREMENTS OF SECTION 853(n)........ 7

    A.    Lee Sufficiently Alleged Standing to Assert a Claim Under 21 U.S.C. § 853(n)(2).... 7

    B.    The Petition Alleges Lee Was a Bona Fide Purchaser for Value of the Celsius Shares ...................................................................................................... 11

        1.    Lee Is a Bona Fide Purchaser for Value of the Celsius Shares ........................ 11

        2.    Lee Had No Reason to Believe the Celsius Shares Were Subject to Forfeiture.................................................................................................. 13

V.    SIMMONS CANNOT SHOW THAT LEE'S PETITION SHOULD BE DISMISSED .... 14

    A.    Simmons Has Not Established His Own Standing to Bring This Motion ................. 14

    B.    None of Simmons's Arguments Regarding Lee's Standing Withstands Scrutiny ..... 14

        1.    The Court Did Not Rule That Only Nu Horizons Has a Legal Interest in the Celsius Shares........................................................................................... 15

        2.    Simmons's Attempt to Apportion the Shares Is Irrelevant to Lee's Standing . 17

        3.    Lee Has a Legal Interest in the Shares Purchased with Her $1 Million........... 19

    C.    Simmons Fails to Refute That Lee Has Alleged She Was a Bona Fide Purchaser .... 21

VI.    TO THE EXTENT FACTS WERE NOT SUFFICIENTLY ALLEGED, LEE SHOULD BE GIVEN LEAVE TO AMEND ................................................................................ 23

VII.    CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................13

*Bonnie & Co. Fashions, Inc., v. Bankers Trust Co.*,
    955 F. Supp. 203 (S.D.N.Y. 1997)........................................................................19

*DSI Assocs. LLC v. United States*,
    496 F.3d 175 (2d Cir. 2007)..................................................................................14

*In re Firestar Diamond, Inc.*,
    634 B.R. 265 (Bankr. S.D.N.Y. 2021)..................................................................18

*In re Firestar Diamond, Inc.*,
    654 B.R. 836 (Bankr. S.D.N.Y. 2023)..................................................................18

*Haber v. Fireman's Ins. Co.*,
    No. 98CIV.1740(LLS), 2000 WL 943562 (S.D.N.Y. July 10, 2000) ...................12

*Jaghory v. New York State Dep't of Educ.*,
    131 F.3d 326 (2d Cir. 1997)....................................................................................7

*Lexmark Int'l v. Static Control Components, Inc.*,
    572 U.S. 118 (2014).................................................................................................8

*Mercado v. U.S. Customs Serv.*,
    873 F.2d 641 (2d Cir. 1989)..................................................................................11

*New York City Dept. of Finance v. Twin Rivers, Inc.*,
    No. 95 CIV. 1389 HB HBP, 1997 WL 299423 (S.D.N.Y. June 5, 1997) ..............19

*Pacheco v. Serendensky*,
    393 F.3d 348 (2d Cir. 2004)....................................................................2, 7, 11, 23

*In re Peters*,
    642 F.3d 381 (2d Cir. 2011)..................................................................................19

*Quern v. Jordon*,
    440 U.S. 332 (1979)...............................................................................................19

*Russello v. United States*,
    464 U.S. 16 (1983)...................................................................................................8

*Samuels v. Air Trans. Local*,
   992 F.2d 12 (2d Cir. 1993) ................................................................................7

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) ..........................................................................................7

*Torres v. $36,256.80 U.S. Currency*,
   25 F.3d 1154 (2d Cir. 1994) ............................................................................10

*United States v. Ackerman*,
   No. 20-CR-93, 2023 WL 3568654 (S.D.N.Y. May 18, 2023) .................12, 22

*United States v. Alcaraz-Garcia*,
   79 F.3d 769 (9th Cir. 1996) ..............................................................................8

*United States v. BCCI Holdings (Luxembourg), S.A.*,
   980 F. Supp. 16 (D.D.C. 1997) .........................................................................7

*United States v. Cambio Eacto, S.A.*,
   166 F.3d 522 (2d Cir. 1999) ..............................................................................8

*United States v. Caruthers*,
   765 F.3d 843 (8th Cir. 2014) .......................................................................8, 11

*United States v. Cox*,
   575 F.3d, 356 (2009) ........................................................................................22

*United States v. Dreier*,
   952 F. Supp. 2d 582 (S.D.N.Y. 2013) .......................................................21, 23

*United States v. Furando*,
   40 F.4th 567 (7th Cir. 2022) ............................................................................24

*United States v. Harewood*,
   No. 01-CR-6025T, 2005 WL 2076543 (W.D.N.Y. Aug. 26, 2005) .................12

*United States v. Hiller*,
   07-CR-0568(JS), 2023 WL 7924180 (E.D.N.Y. Nov. 16, 2023) .....................24

*United States v. Jimenez*,
   No. 18-CR-879 (SHS), 2023 WL 6882408 (S.D.N.Y. Oct. 18, 2023) .............12

*United States v. Malinowski*,
   803 F. App'x 870 (6th Cir. 2020) ......................................................................8

*United States v. Mendez*,
   No. 07-CR-107, 2008 WL 3874318 (E.D.N.Y. Aug. 19, 2008) ......................11

*United States v. O'Dell*,
    247 F.3d 655 (6th Cir. 2001) ........................................................................15

*United States v. Portillo*,
    No. 09-CR-1142 (LAP), 2024 WL 3565784 (S.D.N.Y. July 29, 2024) ................................10

*United States v. Reckmeyer*,
    836 F.2d 200 (4th Cir. 1987) ........................................................................8

*United States v. Ribadeneira*,
    105 F.3d 833 (2d Cir. 1997) ...............................................................8, 10, 18

*United States v. Salkey*,
    No. 2:15-cr-146, 2016 WL 3766308 (E.D. Va. July 11, 2016) ...........................24

*United States v. Salti*,
    579 F.3d 656 (6th Cir. 2009) ........................................................................7

*United States v. Sanchez*,
    No. 22-11923, 2023 WL 5844958 (11th Cir. Sept. 11, 2023) ................................8

*United States v. Sigillito*,
    938 F. Supp. 2d 877 (E.D. Mo. 2013) ...........................................................24

*United States v. Soreide*,
    461 F.3d 1351 (11th Cir. 2006) ....................................................................25

*United States v. Swartz Family Trust*,
    67 F.4th 505 (2d Cir. 2023) ........................................................................24

*United States v. Tim Leissner*,
    18-CR-439 ...........................................................................................3

*United States v. Vazquez-Alvarez*,
    760 F.3d 193 (2d Cir. 2014) ........................................................................14

*United States v. Watts*,
    786 F.3d 152 (2d Cir. 2015) .........................................................6, 7, 13, 22

*United States v. White*,
    779 F. Supp. 2d 984 (D. Minn. 2011), *aff'd*, 675 F.3d 1073 (8th Cir. 2012) ...............23

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992) ........................................................................19

*Willis Mgmt. (Vt.), Ltd. v. United States*,
    652 F.3d 236 (2d Cir. 2011) ........................................................................7

**Statutes**

18 U.S.C. § 982(b)(1) ..............................................................................................6

21 U.S.C. § 853(n) ...........................................................................................*passim*

N.Y. U.C.C. § 1–204.........................................................................................2, 12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)......................................................................6

Federal Rule of Civil Procedure 32.2(c)(1)(A)......................................................6, 7

Federal Rule of Criminal Procedure 32.2(c)............................................................6

## I.    INTRODUCTION

Petitioner Kimora Lee Simmons-Leissner ("Lee") is a bona fide purchaser for value of the shares of Celsius Holdings, Inc. ("Celsius") stock at issue in this ancillary proceeding.  The facts set forth in her Verified Petition to Adjudicate Interest in Property Pursuant to 21 U.S.C. § 853(n), Dkt. No. 3-1 (the "Petition"), which *must* be taken as true, are more than sufficient to allege her interest as the *purchaser*, *owner*, and *possessor* of the stock:  *first*, Lee wired $1 million of her separate funds directly to Celsius *to purchase* 892,732.40 Celsius shares; *second*, Lee's investment company acquired all of the membership interests in Nu Horizons Investment Group, LLC ("Nu Horizons"), which then held the Celsius shares, and she became the *beneficial owner* of the shares; and *third*, Nu Horizons subsequently transferred to Lee all of its 3,972,659 Celsius shares.  At all times since, including through today, the Celsius stock at issue has been held in Lee's name, in her personal account at J.P. Morgan Chase Bank—she is *the owner in possession of all of the shares*.

The Amended Preliminary Order of Forfeiture (the "Preliminary Order") in this case was thus directed at 3,325,942 shares of Celsius stock "*held . . . in the name of Kimora Lee Simmons*" (the "Celsius shares").  (Dkt. No. 1 (emphasis added); Pet. ¶ 21, Dkt. No. 3-1.)  And, as set forth in her Petition, as an original purchaser and the current owner in possession of the Celsius shares, Lee has standing to assert an interest in the shares, and has a valid claim to those shares.  It should thus be no surprise that the government did *not* contest Lee's standing or file its own motion to dismiss.  Russell Simmons ("Simmons") similarly cannot show a legal or factual basis for dismissing Lee's Petition, and his motion to dismiss Lee's Petition should be denied.

*First*, Lee has standing to bring the Petition because she has a "legal interest" in the seized property.  21 U.S.C. § 853(n)(2).  A facially colorable claim to the property ordered forfeited is all that is needed to establish statutory standing at the pleading stage.  As the original purchaser, prior

beneficial owner, and current owner in possession of the Celsius shares, Lee certainly has standing to assert an interest in certain of the shares.  By arguing Lee cannot establish standing, Simmons confuses standing with the merits, engages in hyperbole, disregards the facts of Lee's Petition (urging the Court to instead accept as true the facts in *Simmons's petition*), and misinterprets the Court's prior ruling dismissing Simmons's direct claim.  None of these tactics withstands scrutiny, and Simmons's position that Lee lacks standing is utterly without merit.

*Second*, Lee also is a bona fide purchaser for value who, at the time of purchase, was reasonably without cause to believe that the property was subject to forfeiture.  21 U.S.C. § 853(n)(6)(B).  The Petition adequately alleges that Lee purchased 892,732.40 shares of Celsius stock by wiring $1 million of her separate funds directly to Celsius with the expectation of receiving value (*i.e.*, certain of the Celsius shares).  *See* N.Y. U.C.C. § 1–204(d) ("[A] person gives value for rights if the person acquires them . . . in return for any consideration sufficient to support a simple contract.").  Lee subsequently again purchased the shares and became (and remains) the title holder of the shares. While Simmons disputes whether Lee's $1 million is adequate consideration and analogizes to cases where a petitioner paid nothing (Mot. at 16), Lee unquestionably paid $1 million for her interest in the shares (and currently owns those shares), and it is axiomatic that the law will *not* question the adequacy of consideration.  As to the requirement that Lee establish she was reasonably without cause to believe the shares were subject to forfeiture, tellingly, Simmons does not dispute, nor could he, that this element is met.

Because dismissal is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," Simmons's motion must be denied. *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004) (cleaned up).

## II.      FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.      *The Criminal Case and Forfeiture Proceeding*

In June 2018, Defendant Tim Leissner ("Leissner") was arrested and arraigned in the case *United States v. Tim Leissner*, 18-CR-439.  On June 14, 2018, Leissner was released on a $20 million bond secured by shares of Celsius stock.  (Pet. ¶ 16, Dkt. No. 3-1; *see also* Dkt. No. 5, *United States v. Tim Leissner*, 18-CR-439.)  On July 11, 2018, 3,972,659 shares of Celsius stock were transferred to Lee's J.P. Morgan Chase Bank brokerage account.[2]  (Pet. ¶ 17.)  The next day, the Honorable Steven L. Tiscione, issued a restraining order, restraining 3,325,942 of the shares in Lee's account.  (*Id.* ¶ 18.)

Following Leissner's guilty plea, on November 1, 2018, the Court entered a preliminary order of forfeiture against him and directed entry of a forfeiture money judgment in the amount of $43,700,000.  (Pet. ¶ 20; *see also* Dkt. No. 21, *United States v. Tim Leissner*, 18-CR-439.)  On March 5, 2021, the Honorable Peggy Kuo issued a warrant authorizing the seizure of 3,370,787 shares of Celsius stock from Lee's J.P. Morgan Chase Bank brokerage account.  (Pet. ¶ 19.)

On March 3, 2023, the Court entered the Preliminary Order, which ordered Leissner to forfeit all right, title, and interest in 3,325,942 Celsius shares held in Lee's account, subject to the right of non-parties to assert an interest in those shares.  (Pet. ¶ 21.)  The government then took steps to commence this ancillary proceeding and, on May 5, 2023, Lee filed her Petition seeking to establish her superior interest in, and contest forfeiture of, 892,732.40 of the seized shares.  (Dkt.

---

[1] Simmons's motion to dismiss, including its Factual Background, improperly relies on Simmons's own petition and self-serving version of the facts, when, for purposes of this Motion,  it is the facts in Lee's Petition that *must* be taken as true and Simmons's own allegations *cannot be considered.*

[2] This was effected by the July 5, 2018 Stock Purchase Agreement, whereby Nu Horizons sold the 3,972,659 shares to Lee for consideration of 3,950,000 Class A Common Units of All Def Media, LLC, plus $100.  (*See* Lee's Opposition Letter at 3 & Ex. L1, Dkt. Nos. 58 & 58-1.)

No. 3.)  On the same date, Simmons filed a petition on behalf of himself and derivatively on behalf of Nu Horizons seeking to contest the forfeiture of all of the Celsius Shares.  (Dkt. No. 5.)

### B.      *Lee's Petition*

As set forth in her Petition, Lee is a successful entrepreneur, fashion designer, TV personality, author, philanthropist, and model.  (Pet. ¶ 4.)  Lee and Leissner married in 2014, and they are currently separated.  Lee was previously married to Simmons from 1998 to 2009.  (*Id.*)

In December 2009, Lee opened a personal Bank of America savings account, which is funded with her separate, personal savings.  (Pet. ¶¶ 6–9; Pet. Ex. 1, Dkt. No. 3-2.)  Specifically, Lee funds the account with her modeling earnings, W-2 income, and salary from her high-end apparel brand.  (*Id.* ¶ 8.) Leissner has never had access to, nor ever funded, that account.  (*Id.* ¶ 9.)

In 2011, Simmons formed Nu Horizons, becoming its sole member and manager.  (Pet. ¶ 5.)  On January 1, 2016, Simmons and Leissner executed Nu Horizons' Operating Agreement, whereby Leissner became a manager and Lee became a member of Nu Horizons' investment board.  (*Id.*)  On January 1, 2017, Leissner's indirect membership interest in Nu Horizons was transferred to Keyway Pride, an investment vehicle owned and controlled by Lee through another holding company.  (*Id.* ¶ 24.)

On January 26, 2017, Lee's accountants, at her instruction, wired $1 million of Lee's personal funds from her Bank of America account directly to Celsius to purchase shares of Celsius stock.  (Pet. ¶ 11; Pet. Ex. 3, Dkt. No. 3-4; *see also* Pet. ¶ 12 ("Lee purchased the Celsius shares with her separate funds.").)  The shares were then placed in Nu Horizons as an investment vehicle.  (*Id.* ¶ 12.)  The transaction was structured this way based on Leissner's (Nu Horizons' manager) promise that the shares Nu Horizons had previously acquired would be blended with the shares purchased with Lee's $1 million.  (*Id.*; Pet. Ex. 4, Dkt. 3-5.)  Lee relied upon Leissner's promise of a blended purchase price in purchasing the Celsius shares and having the shares held by Nu

Horizons. (*Id*. ¶¶ 12–13.) As a result, Lee acquired a total of 892,732.40 shares of Celsius stock with her $1 million investment, applying a blended rate of $1.12 per share:

| Price at Time of Investment | Money Invested | Shares Received |
|---|---|---|
| $0.89 | $3,150,000.00 | 3,539,325.84 |
| $3.00 | $1,300,000.00 (Lee's $1,000,000 investment, plus Nu Horizons' $300,000 investment) | 433,333.33 |
| $1.1201565 (blended) | $4,450,000.00 | 3,972,659.18 |

(Pet. ¶ 14.)

At the time she purchased the Celsius shares in January 2017 with her separate funds, Lee did not know—nor did she have reason to know—that they would later become subject to forfeiture. (*Id*. ¶ 15.) In fact, as noted herein, the shares were not restrained until July 2018 and were not identified as being subject to forfeiture until the Preliminary Order was entered on March 3, 2023, more than six years after Lee purchased her shares. (*Id*. ¶¶ 15, 29.)

On January 22, 2018, Simmons resigned as co-manager of Nu Horizons, and on May 25, 2018, he transferred all of his interest in Nu Horizons to Keyway Pride. (Pet. ¶ 23; Pet. Exs. 5, 6.) Accordingly, at that time, Keyway Pride became the 100% owner of Nu Horizons, which held 3,972,659 shares of Celsius stock. (Pet. ¶¶ 23–24, 28.) In July 2018, Nu Horizons sold for value its entire interest in the 3,972,659 shares to Lee (*see* footnote 2), and on July 11, 2018, the shares were transferred to Lee's J.P. Morgan Chase Bank account. (Pet. ¶ 17.) From that date to the present, all of the 3,325,942 shares of Celsius stock at issue in this ancillary proceeding have been held in that account in Lee's name. Indeed, in SEC filings, Celsius itself repeatedly recognized Lee as the owner of the Celsius shares. (*See* Request for Judicial Notice ("RJN"), Exs. 1-3.)

### C. Motion to Dismiss Simmons's Petition

On December 7, 2023, the government moved to dismiss Simmons's petition for lack of

standing.  (Dkt. No. 21.)  The Court granted the government's motion as to Simmons's direct

claim—which Simmons brought based on his allegations that he was a member and manager of

Nu Horizons (allegations that Lee disputes and which are contradicted in her Petition)—and denied

the government's motion to dismiss his derivative claim on behalf of Nu Horizons.  (Dkt. Nos. 24,

32.)  The government sought reconsideration of the latter ruling.  (Dkt. No. 25.)  The Court denied

the motion but "direct[ed] the parties to engage in limited discovery regarding whether [Simmons]

had an interest in Nu Horizons at the time [his] Petition was filed."  (Dkt. No. 32 at 9.)  The

deadline to complete discovery related to Simmons's derivative standing is September 17, 2024.

(*See* July 11, 2024 Text Order.)

## III.    LEGAL STANDARD

Under 18 U.S.C. § 982(b)(1), any property forfeited under Section 982 "shall be governed

by the provisions of" 21 U.S.C. § 853.  *See United States v. Watts*, 786 F.3d 152, 160 (2d Cir.

2015).  "[Section] 853 establishes the procedures by which a third party may claim an interest in

funds ordered forfeited to the United States."  *Id.*  Should a third party claim a legal interest in the

forfeited property, 21 U.S.C. § 853(n) "allows him to recover his interest through an ancillary

proceeding following the preliminary forfeiture order."  *Id.*

The procedures laid out in Section 853(n) are "further elaborated" in Federal Rule of

Criminal Procedure 32.2(c), which states that "the court may, on motion, dismiss the petition for

lack of standing, for failure to state a claim, or for any other lawful reason."  Fed. R. Civ. P.

32.2(c)(1)(A).  "A motion to dismiss a third-party petition 'should be treated like a motion to

dismiss a civil complaint under Federal Rule of Civil Procedure 12(b).'"  *Watts*, 786 F.3d at 161

(quoting *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 241 (2d Cir. 2011)).  "The Court

accepts well-pleaded facts as true and construes the complaint liberally, granting a petitioner the

benefit of any reasonable inferences that can be derived from the facts alleged." *United States v. BCCI Holdings (Luxembourg), S.A.*, 980 F. Supp. 16, 20 (D.D.C. 1997) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also* Fed. R. Crim. P. 32.2(c)(1)(A) ("For purposes of the motion [to dismiss], the facts set forth in the petition are assumed to be true.")).

With respect to a petition for an ancillary hearing in the criminal forfeiture context, a claimant at the pleading stage "need not prove the merits of his underlying claim, but he must claim a facially colorable interest in the seized property to satisfy the requirements of standing." *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009) (quotation omitted). "State law determines a petitioner's legal interest in the property at issue." *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011). At the motion to dismiss stage, the petitioner is not required to supply evidence supporting a prima facie case of entitlement to relief. *Pacheco*, 393 F.3d at 352. Instead, the Court may consider the facts alleged in the petition and the "documents attached as exhibits or incorporated by reference in the [petition] and matters of which judicial notice may be taken." *Samuels v. Air Trans. Local*, 992 F.2d 12, 15 (2d Cir. 1993).

Dismissal is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations[.]" *Pacheco*, 393 F.3d at 352; *see also Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997) ("The court may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." (internal citations and quotations omitted)).

## IV.    LEE HAS SATISFIED THE PLEADING REQUIREMENTS OF SECTION 853(n)

### A.    *Lee Sufficiently Alleged Standing to Assert a Claim Under 21 U.S.C. § 853(n)(2)*

Statutory standing under § 853(n)(2) requires the petitioner to show a "legal interest" in the seized property. *Watts*, 786 F.3d at 161. "The Supreme Court has held that the term 'interest'

'comprehends all forms of real and personal property.'" *United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987) (citing *Russello v. United States*, 464 U.S. 16, 21 (1983)).  "Thus the term 'legal interest' encompasses all legally protected rights, claims, titles, or shares in real or personal property." *Id.*  "[A]n interest 'in' property must be an interest in a particular, specific asset," *United States v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997), but alleging a simple claim of *ownership* in the forfeited property is sufficient at the pleading stage to establish standing to challenge forfeiture under § 853(n).  *See United States v. Alcaraz-Garcia*, 79 F.3d 769, 774 n.10 (9th Cir. 1996) (simple claim of ownership is sufficient to create standing to challenge forfeiture under section 853(n)); *United States v. Sanchez*, No. 22-11923, 2023 WL 5844958, at *4 (11th Cir. Sept. 11, 2023) ("Ms. Palacios has alleged a 'legal interest' in the $9,000 that's 'been ordered forfeited,' [citation] which is all that is needed to establish statutory standing at the pleading stage."); *United States v. Malinowski*, 803 F. App'x 870, 873 (6th Cir. 2020) (petitioner must demonstrate a "facially colorable interest" in the seized property to establish standing); *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014) (statutory standing at the motion to dismiss stage is established through allegations, not evidence).  Moreover, in addition to ownership, *possession* of the forfeited property is sufficient to show a "legal interest" if the petition explains the "nature and extent" or "circumstances" of such possession.  *See United States v. Caruthers*, 765 F.3d 843, 845 (8th Cir. 2014) (quoting 21 U.S.C. § 853(n)(3)).  That is because *ownership* and *possession* "are often reliable indicators of injury that occurs when property is seized." *United States v. Cambio Eacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999).

Lee unquestionably has sufficiently alleged a "legal interest" in the Celsius shares subject to forfeiture.  As explicitly set forth in the Petition, Lee pleads the existence of a legal interest as a *purchaser, owner, and possessor* of the Celsius shares based upon her wire of $1 million directly

to Celsius for the purchase of a portion of the Celsius shares, her beneficial ownership of Nu Horizons' assets, and her current *ownership and possessory* interest in the Celsius shares in her J.P. Morgan Chase Bank brokerage account.  The Petition, accompanying exhibits, and Request for Judicial Notice show:

- On January 25, 2017, Lee wired $1 million of her separate funds directly to Celsius to purchase shares of Celsius stock.  (Pet. ¶ 11 & Ex. 3, Dkt. Nos. 3-1 & 3-4; *see also id.* ¶ 12 ("Lee purchased the Celsius shares with her separate funds").)

- Based on Leissner's promise that Lee would get the benefit of Nu Horizons' previously acquired shares of Celsius, the shares purchased with Lee's $1 million "were placed in Nu Horizons as an investment vehicle."  (*Id.* ¶ 12; *see also id.* ¶ 13 ("Based on Leissner's promise . . . Lee purchased the Celsius shares.").)

- In other words, the 2017 transaction was effected in two steps: (1) Lee wired $1 million of her own money (*i.e.*, Nu Horizons itself paid nothing) to purchase the shares (*id.* ¶ 11), and (2) "those shares were placed in Nu Horizons" (*id.* ¶ 12).[3]

- Based on Leissner's promise of a "blended purchase price," "Lee acquired a total of 892,732.40 shares of Celsius stock with her $1,000,000 investment."  (*Id.* ¶¶ 12-14 & Ex. 4, Dkt. No. 3-5; *see also Id.* ¶ 1 ("Lee owns 892,732.40 shares.").)

- Later, in May 2018, Simmons sold his entire interest in Nu Horizons to Lee's investment vehicle, Keyway Pride (*id.* ¶ 23 & Exs. 5 & 6, Dkt. Nos. 3-6 & 3-7), making Keyway Pride the 100% owner of Nu Horizons and Lee the beneficial owner of its 3,972,659 shares of Celsius stock (*id.* ¶¶ 23-24.).

---

[3] The form of this transaction is necessarily also true for all of the shares at issue, including the shares attributable to Leissner, which is why those shares were subject to forfeiture in the first instance (*i.e.*, regardless of title, the government claimed Leissner was the purchaser).

- Ultimately, the Celsius shares were transferred to Lee personally: "[o]n July 11, 2018, 3,972,659 shares of Celsius stock were transferred to Lee's J.P. Morgan Chase Bank brokerage account." (*Id.* ¶ 17; *see* footnote 2, *supra.*)  Thus, from July 11, 2018 to present, all the forfeited Celsius shares have been held in that account in Lee's name (*i.e.*, Lee is the current owner in possession of the Celsius shares at issue).

- If there were any doubt, Celsius's own SEC filings repeatedly recognize Lee—not Simmons, Leissner, or Nu Horizons—as the owner of the 3,972,659 shares of Celsius stock.  (*See* RJN, Ex. 1 at 29, Ex. 2 at 30, Ex. 3 at 30.)

The allegations in the Petition, if proven, show that Lee has a legal interest in the Celsius shares as a purchaser, owner, and possessor of the shares.

*Purchaser*.  The allegations that Lee wired $1 million of her separate funds directly to Celsius to purchase shares—and documentation attached to the Petition evidencing that transaction—are, alone, more than sufficient to show a legal interest in the Celsius shares.  *See Ribadeneira*, 105 F.3d at 836 (explaining that an interest that attaches to the specific asset being forfeited is sufficient to confer standing).

*Beneficial Owner*.  Although the shares were held in Nu Horizons' name from January 2017 through July 2018, Lee has alleged Keyway Pride was the sole owner of Nu Horizons and that she was thus the beneficial owner of the shares.  *See Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1159 n.5 (2d Cir. 1994) (noting that, under New York law, ownership can be recognized in persons other than owners of record, and holding wife had standing to challenge forfeiture of husband's certificate of deposit where wife alleged she was the beneficial owner of a constructive trust over those funds); *United States v. Portillo*, No. 09-CR-1142 (LAP), 2024 WL 3565784, at *13 n.5 (S.D.N.Y. July 29, 2024) (granting third-party's petition and noting court's earlier decision

denying government's summary judgment motion, finding that petitioner had standing based on beneficial ownership of bank accounts).

*Owner in Possession*.  Finally, from July 2018 to present, all of the 3,325,942 shares of Celsius stock at issue in this ancillary proceeding have been held at J.P. Morgan Chase Bank in Lee's name.  *Cf. Caruthers*, 765 F.3d at 845–46 ("[A] naked claim of possession . . . is not enough. There must be some indication that the claimant is in fact a possessor . . . some indicia of reliability or substance to reduce the likelihood of a false or frivolous claim." (quoting *Mercado v. U.S. Customs Serv.*, 873 F.2d 641, 645 (2d Cir. 1989))).

These allegations show ownership *and* possessory interests which are independently sufficient to establish standing.  When combined with the facts that Celsius recognized Lee as the owner of the shares and the shares were ordered seized from Lee's account, the allegations in the Petition are easily more than sufficient to support standing at the motion to dismiss stage.

**B.      The Petition Alleges Lee Was a Bona Fide Purchaser for Value of the Celsius Shares**

In addition to the statutory standing requirement, in order to assert a valid claim to forfeited property under Section 853(n)(6)(B), a petitioner must (i) be a "bona fide purchaser for value" of the property who (ii) was "reasonably without cause to believe the property was subject to forfeiture" at the time of purchase.  *Pacheco*, 393 F.3d at 353 (quoting 21 U.S.C. § 853(n)(6)(B)).

*1.      Lee Is a Bona Fide Purchaser for Value of the Celsius Shares*

"The term 'bona fide purchaser' is not defined in 21 U.S.C. § 853."  *United States v. Mendez*, No. 07-CR-107, 2008 WL 3874318, at *3 (E.D.N.Y. Aug. 19, 2008).  "Rather, it is a 'legal term of art[.]'"  *Id.* (citation omitted).  The Second Circuit has held that the question of "whether a petitioner is a bona fide purchaser [under Section 853(n)(6)(B)] is a question appropriately determined by reference to state law," *Pacheco*, 393 F.3d at 353, and here, New

York law provides that "a person gives value for rights if the person acquires them . . . in return for any consideration sufficient to support a simple contract," N.Y. U.C.C. § 1–204. In other words, a bona fide purchaser is one who acquires an interest in property for consideration.

Lee has adequately pleaded that she gave value—$1 million of her separate funds—with the expectation of receiving value (*i.e.*, 892,732.40 Celsius shares): (i) Lee paid $1 million of her separate funds directly to Celsius (Pet. Ex. 3, Dkt. No. 3-4); and (ii) Lee did so in exchange for shares of Celsius stock, plus "the benefit of the previously acquired stake at US$0.89 per share" of the previously existing shares, based on Leissner's (Nu Horizons' manager) promise (Pet. Ex. 4, Dkt. No. 3-5). Thus, the Petition adequately alleges a legitimate, arm's length transaction whereby Lee gave $1 million "in return for any consideration sufficient to support a simple contract." N.Y. U.C.C. § 1–204.

The facts here stand in stark contrast to cases like those cited by Simmons, *e.g.*, *United States v. Ackerman*, No. 20-CR-93, 2023 WL 3568654, at *3-4 (S.D.N.Y. May 18, 2023), where the petitioner did not contribute anything to the purchase of the forfeited real property. *See id.* at *3 ("Ms. Douglas alleges that she and Mr. Ackerman purchased the home together . . . but does not allege that she contributed any funds toward the purchase of the home."); *see also United States v. Jimenez*, No. 18-CR-879 (SHS), 2023 WL 6882408, at *2 (S.D.N.Y. Oct. 18, 2023) (transfer of property for $0 "was devoid of valuable consideration" and insufficient to establish petitioner was a bona fide purchaser for value); *United States v. Harewood*, No. 01-CR-6025T, 2005 WL 2076543, at *2 (W.D.N.Y. Aug. 26, 2005) (defendant's sister, to whom he quitclaimed his real property for $0, was not a bona fide purchaser for value); *Haber v. Fireman's Ins. Co.*, No. 98CIV.1740(LLS), 2000 WL 943562, at *5 (S.D.N.Y. July 10, 2000) ("Because Haber did not pay value for the Certificates, he cannot be a bona fide holder in his own right.").

- 12 -

Moreover, Simmons' contention that for her $1 million, Lee neither purchased the Celsius shares *nor* acquired an interest in Nu Horizons is non-sensical and self-serving. (*See* Mot. at 16.) Lee did not just gratuitously wire Celsius $1 million. The allegations of her Petition must be taken as true, and those allegations assert a bona fide purchase by Lee, the holding of shares by Nu Horizons, and the subsequent transfer of the Celsius shares (for consideration)—*including all of the shares purchased with Lee's $1 million*—to Lee's J.P. Morgan Chase Bank account, where they currently reside in her name. At all times, Lee was (and understood she was) a bona fide purchaser of 892,732.40 shares of Celsius stock.

2.   *Lee Had No Reason to Believe the Celsius Shares Were Subject to Forfeiture*

A party who, like Lee, gave value for an interest must also demonstrate that she "was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C. § 853(n)(6)(B); *see also Watts*, 786 F.3d at 169. Notably, Simmons does *not* contest Lee has adequately pled this element. The Petition shows that, at the time of her purchase in January 2017, Lee lacked reasonable cause to know that the Celsius shares would be subject to forfeiture because the shares were not even restrained until July 2018 and were not identified as being subject to forfeiture until the filing of the Preliminary Order on March 3, 2023. (Pet. ¶ 29.) Because Lee gave $1 million with the expectation of receiving a portion of the Celsius shares and did not reasonably have cause to believe her interests were subject to forfeiture at the time of purchase, Lee is a bona fide purchase under Section 853(n)(6)(B).

These allegations in Lee's Petition establish "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**V.     SIMMONS CANNOT SHOW THAT LEE'S PETITION SHOULD BE DISMISSED**

  *A.     Simmons Has Not Established His Own Standing to Bring This Motion*

  As a threshold issue, Simmons's motion to dismiss is improper from the get-go.  "It is well established that third parties may not intervene during criminal forfeiture proceedings to assert their interests in the property being forfeited."  *DSI Assocs. LLC v. United States*, 496 F.3d 175, 183 (2d Cir. 2007) (third party's "attempt to participate in the forfeiture proceeding is thus foreclosed by its acknowledged inability to meet the requirements of section 853(n)").

  As the Court is well aware, Simmons has yet to establish his own standing under Section 853(n) in this ancillary proceeding.  Until he is adjudicated a proper petitioner, his standing is no greater than that of any other third-party who *cannot* assert an interest in the property or move to dismiss another petitioner's claim.  *Cf. United States v. Vazquez-Alvarez*, 760 F.3d 193, 198 (2d Cir. 2014) (claimant may not file any motion, regardless of basis, until he establishes standing because "[w]ithout standing, he is simply a stranger to the litigation").  Thus, Simmons should be prohibited from contesting Lee's claim unless and until his own standing is established.

  *B.     None of Simmons's Arguments Regarding Lee's Standing Withstands Scrutiny*

  Even if Simmons could establish his own standing to bring this Motion, his attempts to defeat Lee's standing all fail.  Simmons sets forth three arguments for why Lee's Petition does not adequately assert a legal interest in the Celsius shares sufficient to confer standing: (1) the Court already ruled that only Nu Horizons has an interest in the Celsius shares; (2) Lee asserts an interest in shares that are not the seized Celsius shares subject to the Preliminary Order; and (3) even if the seized Celsius shares include those to which Lee asserts an interest, only Nu Horizons has a legal interest in those shares.  But these arguments are based on a misunderstanding of the Court's prior ruling dismissing Simmons's direct claim, Lee's allegations, and the motion to dismiss standard.

- 14 -

1.      *The Court Did Not Rule That Only Nu Horizons Has a Legal Interest in the Celsius Shares*

The mistaken premise underlying Simmons's first argument challenging Lee's standing is that, in dismissing Simmons's direct claim, the Court ruled that only Nu Horizons has a legal interest in the Celsius shares.  *See* Order at 7-8, Dkt. No. 24.  According to Simmons, if only Nu Horizons has a legal interest, then Lee cannot have a legal interest, in the Celsius shares.[4]  But, of course, the Court made no such ruling and his arguments are contrary to the facts and logic.

Fundamentally, Simmons's theory misconstrues the Court's order granting the government's motion to dismiss Simmons's direct claim based on his lack of standing.  As the Court held, Simmons's claimed interest in the Celsius shares, solely on the basis of his allegation that he was a manager and member of Nu Horizons, was insufficient to establish Simmons's individual standing to assert a direct interest in the forfeited property.  *See* Order at 7-8, Dkt. No. 24.  The Court concluded, "Petitioner [Simmons], as a manager of the LLC, . . . has no legal interest in the Celsius Shares, as they are assets of the LLC."  *Id.* at 7.  In other words, as between Simmons—who made no purchase of the Celsius shares and never owned the shares—and Nu Horizons *only*, Nu Horizons (not Simmons) had standing.[5]

Simmons mistakenly argues that Lee's claim to the Celsius shares "is structurally identical" to Simmons's direct claim "and so it must likewise be dismissed."  (Mot. at 11.)  Accepting the Petition's allegations as true, unlike Simmons: (i) Lee paid $1 million of her own money and in

---

[4] Simmons repeats this theory in connection with his third argument contesting Lee's standing, but takes it further by asserting this is "the law of the case."  For the reasons discussed below, the *nonbinding* law of the case doctrine does not apply here and does not foreclose Lee's standing.

[5] If, as Simmons suggests, the Court had ruled that *only* Nu Horizons has a legal interest in the Celsius shares, then Leissner would have no interest in them and the shares would have been improperly forfeited.  *See United States v. O'Dell*, 247 F.3d 655, 680 (6th Cir. 2001) ("the government" is only entitled "to forfeiture of a convicted defendant's interests and nothing more").

- 15 -

exchange "acquired a total of 892,732.40 shares of Celsius stock (Pet. ¶¶ 11–14); (ii) Keyway Pride then became the 100% owner of Nu Horizons and Lee the beneficial owner of its 3,972,659 shares of Celsius stock (*id.* ¶ 24); and (iii) all of the shares of Celsius stock were then transferred into Lee's J.P. Morgan Chase Bank brokerage account (that transfer was acknowledged by Celsius) and Lee became the owner in possession of the shares (*id.* ¶¶ 17–19; RJN, Exs. 1-3).

It defies all logic to say that Lee, who paid $1 million to purchase shares directly from Celsius and currently is the owner in possession of all of the Celsius shares, is similarly situated to Simmons, who *paid nothing* for and *never owned* the shares.  (*See also* Pet. ¶ 23 ("[U]nlike Lee, Simmons did not invest his own funds to purchase shares of Celsius, and did not contribute any money in Nu Horizons for the purchase of Celsius shares."))

In fact, as the chart below demonstrates, Lee's interest in the Celsius shares is superior to the interests of Simmons, Leissner, and Nu Horizons:

| Defendant/ Petitioner | Money Invested in Celsius Shares | Current Ownership of Nu Horizons | Current Title to Celsius Shares |
|---|---|---|---|
| Petitioner Lee | Wired $1 million of her separate funds directly to Celsius to purchase shares | Is beneficial owner of 100% of Nu Horizons | Owner in possession of 3,325,942 Celsius shares held in Lee's name in her J.P. Morgan Chase Bank brokerage account |
| Defendant Leissner | Paid $3 million (of proceeds allegedly from the 1MDB bond scheme) directly to Celsius to purchase shares | 0% | None |
| Petitioner Simmons | None ($0) | 0% | None |
| Petitioner Nu Horizons (derivatively) | None (through members and third-parties only) | N/A | None |

Thus, if *anyone* has standing to claim an interest in the Celsius shares, it is Lee.

   2.  *Simmons's Attempt to Apportion the Shares Is Irrelevant to Lee's Standing*

   Simmons's next argument is based on an allegation from *his* petition:  That the shares Lee purchased with her $1 million "are not included in the Celsius Shares that the government seeks to forfeit."  (Mot. at 13, citing Simmons Pet. ¶ 40 ("On information and belief, the 433,333 shares of stock in Celsius Holdings, Inc. purchased in or about February 2017 are not included in the Celsius Shares that the government seeks to forfeit.").)  Simmons's refrain that the "3,325,942.00 shares of [Celsius] stock" in Lee's J.P. Morgan Chase Bank account (Dkt. No. 1) do not include the shares purchased by Lee for $1 million, and instead include only shares purchased with $3 million from a company called Asian Sports Ventures HK, has no basis in Lee's Petition.  (*See, e.g.*, Mot. at 6-7.)  To state the obvious, in ruling on whether Lee has sufficiently pleaded standing, the Court cannot accept as true self-serving facts that Simmons alleged (on information and belief) in his own petition or any theories the government set forth in its motion to dismiss Simmons's petition.  (Mot. at 13.)  In fact, Lee alleged exactly the opposite of Simmons and it is her allegations that *must* be taken as true:  "Lee owns 892,732.40 shares of stock of Celsius . . . which is a portion of the 3,325942.00 shares of Celsius stock described in the" Preliminary Order.  (Pet. ¶ 1.)

   At the motion to dismiss stage, there is simply no factual or legal basis to contest Lee's characterization of the shares and apportion any number of shares to purchases other than hers.  The 3,972,659 shares of Celsius stock were not segregated by purchaser (a) when held by Nu Horizons, (b) when transferred to Lee's J.P. Morgan Chase Bank brokerage account, from which the shares were restrained and seized, or (c) when reported by Celsius in its SEC filings.  (*See generally* Pet. ¶¶ 17-19; RJN, Exs. 1-3.)  Rather, from January 1, 2017 onward, the shares were

commingled and cannot be untangled based on the pleadings.[6]  As courts have recognized, further evidence and perhaps expert testimony would be required for precise tracing, which is not an issue to be resolved on a motion to dismiss.  *In re Firestar Diamond, Inc*., 654 B.R. 836, 891 (Bankr. S.D.N.Y. 2023) (citing *In re Firestar Diamond, Inc.*, 634 B.R. 265, 286 n.15 (Bankr. S.D.N.Y. 2021) ("To the extent that it is ever necessary to parse which commingled funds are proceeds of the Bank Fraud and which are the profits of the Debtors' legitimate business transactions, this would be a question for the fact finder at trial or at the summary judgment stage.")).

Indeed, Lee is only required to show at this time that she has a legal interest in the particular asset that has been forfeited.  *See Ribadeneira*, 105 F.3d at 836 (distinguishing between a general interest in the debtor's property, which is insufficient for standing, and an interest that attaches to the specific asset being forfeited, which is sufficient to confer standing).  Lee is able to link her interest to a specific asset (versus merely asserting an interest in Leissner's entire estate) because she can show that her $1 million was used to purchase specific shares that were then part of the 3,972,659 shares of Celsius stock that were transferred to Lee's J.P. Morgan Chase Bank brokerage account and later subject to the Preliminary Order.[7]  Lee has thus alleged that she possesses an interest in a specific asset sufficient to establish standing, and Simmons cannot use his self-serving version of the facts to defeat her claim by apportioning any particular number of shares to any other particular purchase.

---

[6] In fact, the 3,325,942 shares of Celsius stock described in the Preliminary Order do not even match up to the 3,370,787 shares of Celsius stock that Simmons claims are at issue, defeating any claim that tracing can be done based on the face of the documents.

[7] Simmons claims that "the government released to Ms. Lee 646,717 shares of Celsius stock" to suggest that those shares correspond, or can be traced, to Lee's $1 million purchase.  (Mot. at 13.) This fact is *contradicted* by the allegations in the Petition—which clearly alleges those shares were Leissner's, not Lee's (*see* Pet. ¶ 18 & n.1)—and again, it is improper at the motion to dismiss stage to try to parse the comingled stock in a manner contrary to Lee's allegations.

3.      *Lee Has a Legal Interest in the Shares Purchased with Her $1 Million*

Simmons's last argument contesting Lee's standing—that it is "the law of the case" that only Nu Horizons has a legal interest in the shares purchased in 2017 with Lee's $1 million—is premised on a mischaracterization of the law of the case doctrine and the Court's prior ruling.

 "The law of the case doctrine, although *not binding*, 'counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons[.]" *In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011) (emphasis added); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.").  The law of the case doctrine is limited, however, to issues actually determined. *Quern v. Jordon*, 440 U.S. 332, 347 n.18 (1979).  "[Q]uestions that have not been decided do not become the law of the case merely because they could have been decided."  *Bonnie & Co. Fashions, Inc., v. Bankers Trust Co.,* 955 F. Supp. 203, 209 (S.D.N.Y. 1997) (citation omitted). Thus, "[i]n order to determine the applicability of the law of the case doctrine, it is first necessary to determine the precise nature of the prior ruling in this matter."  *New York City Dept. of Finance v. Twin Rivers, Inc.*, No. 95 CIV. 1389 HB HBP, 1997 WL 299423, *2 (S.D.N.Y. June 5, 1997).

Here, the law of the case doctrine poses no obstacle to the Court's present consideration of whether Lee has standing, because that issue was not actually decided in ruling on Simmons's standing.  As explained herein, the Court previously held that Simmons's claimed interest in the Celsius shares was insufficient to establish Simmons's individual standing to assert a direct interest in the forfeited property.  *See* Order at 7-8, Dkt. 24.  But the Court's analysis regarding the sufficiency of Simmons's Petition to assert a legal interest in the shares purchased pursuant to the 2015 Subscription Agreement—based solely on his claim that he was a member or manager of Nu

- 19 -

Horizons—has no bearing on the sufficiency of Lee's Petition to assert a legal interest in the shares purchased with her separate $1 million in 2017 and now held in her brokerage account.

To be sure, the issues in Lee's Petition were not adjudicated *expressly* or *implicitly* by the Court's prior ruling: (1) Obviously, the Court's ruling did not mention the transaction involving Lee's wire of $1 million to Celsius, let alone discuss Lee's standing; (2) the Court also did not implicitly consider any petitioner's own purchase of the Celsius shares because Simmons did not use his money to purchase any shares; and (3) the Court also did not consider that Lee is currently the *owner in possession* of the Celsius shares, because that was also not at issue in the prior motion. Simmons's invocation of the law of the case doctrine is thus specious.  The Court did not rule—and it is not the "law of the case"—that only Nu Horizons has a legal interest in the shares purchased in 2017 with Lee's $1 million, which were later sold and transferred to Lee, and which are currently owned and held by Lee.

Simmons further incorrectly claims that Lee attempts to "rewrite her petition" in noting that Nu Horizons itself paid nothing in the transaction—*i.e.*, this was a two-part transaction that involved (1) Lee purchasing the shares with her own money, and (2) putting the shares in Nu Horizons.  (Mot. at 14-15, citing Opp. Letter at 3.)  On this Motion, all inferences must be drawn in Lee's favor and a two-part transaction is the only logical conclusion from her Petition:

- "[T]he purchase of the Celsius shares was with Lee's separate funds from her personal, private bank account[.]"  (Pet. ¶ 3.)

- "Lee wired $1,000,000 to Celsius from her Bank of America account."  (*Id.* ¶ 11 & Ex. 3, Dkt. No. 3-4 ("I am making a 1 mm investment into CELSIUS."))

- "Although Lee purchased the Celsius shares with her separate funds, those shares were placed in Nu Horizons as an investment vehicle . . . based on Leissner's promise that Lee

would get the benefit of Nu Horizons' previously acquired shares of Celsius (purchased at a lower price), which would be blended with Lee's contribution."  (Pet. ¶ 12.)

The Petition adequately alleges the two-part transaction, and there is nothing in the Petition that suggests Nu Horizons itself paid anything towards the $1 million purchase of shares.  The chart in paragraph 14 of Lee's Petition even segregates "Lee's $1,000,000 investment" from Nu Horizons' $300,000 investment.  (Pet. ¶ 14; *see also* Pet. Ex. 4, Dkt. No. 3-5 ("Nu Horizons is our investment vehicle which has invested to date US$3.15 million at US$0.89 per share and US$300k at US$3.00 per share."))  In short, there is no basis for Simmons's argument that only Nu Horizons has standing to assert a claim to the shares purchased with Lee's $1 million.

### C.   *Simmons Fails to Refute That Lee Has Alleged She Was a Bona Fide Purchaser*

Simmons's final argument is that Lee's Petition fails to state a claim because (1) Nu Horizons, not Lee, "purchased" the shares in the 2017 transaction, and (2) as to the previously purchased shares, Leissner only gave those to Lee "for free."  (Mot. at 16.)

As explained above, the $1 million for the 2017 transaction was wired directly from Lee to Celsius.  The separate funds used in the transaction never passed through Nu Horizons, and, as alleged in the Petition, Nu Horizons did not contribute any money towards the $1 million purchase.  It is form over substance to say that, because Nu Horizons was listed on paper as the "purchaser" in the transaction, Lee cannot state a claim.  Unlike a petitioner who obtained an interest in forfeited property by gift or inheritance, Lee actually paid $1 million from her separate funds to purchase the shares.  *See U.S. v. Dreier*, 952 F. Supp. 2d 582, 590–91 (S.D.N.Y. 2013) (to be a "purchaser" the claimant must give something of value; it need not be of proportional value, but must be sufficient to constitute consideration under contract law).  Indeed, applying the holdings of the cases Simmons cites in his motion to the facts here:  As between Lee who paid $1 million and Nu Horizons which paid nothing, Nu Horizons could *not* establish it was a bona fide purchaser

simply by virtue of the 2017 Purchase Agreement.  *See Ackerman*, 2023 WL 3568654, at *3-4 ("Ms. Douglas . . . does not allege that she contributed any funds toward the purchase of the home.").  In contrast, Lee easily meets the standard of a bona fide purchaser because she gave value ($1 million) with the expectation she would receive equivalent value in return (a portion of the Celsius shares).  *See United States v. Cox*, 575 F.3d 352, 356 (4th Cir. 2009).

In any event, after wiring the money from her personal account for the original purchase of the Celsius shares, and after Nu Horizons held the shares, for valuable consideration, Lee again purchased the shares from Nu Horizons.  (*See* footnote 2, *supra*.)  In other words, the fact that Nu Horizons held the shares from January 2017 through July 2018, does not defeat that Lee has owned and held the shares from July 2018 to the present.  At all times, Lee understood she had purchased and was the owner of the 892,732.40 Celsius shares at issue in her Petition.

As to *how many* shares Lee can prove she purchased, Simmons again attempts to improperly adjudicate the merits.  What matters at the motion to dismiss stage is that Lee's Petition sufficiently alleges she was a bona fide purchaser for value of at least *some* of the Celsius shares. *See Watts*, 786 F.3d at 155–56 (petitioner stated plausible claim to portion of forfeited property). Whether Lee can prove the validity of the blended-rate agreement with Leissner—whereby Lee claims she acquired additional shares—is irrelevant at the motion to dismiss stage.  Regardless, Simmons's argument boils down to him disputing whether Lee's $1 million purchase was adequate consideration to receive the value of the blended rate.  But "'[i]t is an elementary and oft quoted principle' of contract law that courts 'will not inquire into the adequacy of consideration as long

as the consideration is otherwise valid or sufficient to support a promise.'"[8] *Dreier*, 952 F. Supp. 2d at 590–91 (quoting 3 Williston on Contracts § 7:21 (4th ed.)).

The $1 million that Lee paid is indisputably "value" under New York law (or the law of any other state), given in exchange for a portion of the Celsius shares, and Simmons has failed to show "'that no relief could be granted under any set of facts that could be proved consistent with the allegations[.]" *Pacheco*, 393 F.3d at 352 (cleaned up).

## VI.   TO THE EXTENT FACTS WERE NOT SUFFICIENTLY ALLEGED, LEE SHOULD BE GIVEN LEAVE TO AMEND

As demonstrated herein, Lee's Petition alleges—and thus the government and third parties like Simmons are on notice of—Lee's claim to 892,732.40 of the forfeited Celsius shares based on her $1 million investment and current possession of the shares.  Regarding the latter point, Simmons claims that Lee is now "attempt[ing] to rewrite her petition" (Mot. at 2, 12) by noting that, pursuant to the July 5, 2018 Stock Purchase Agreement executed by Nu Horizons' manager (Leissner) and Lee, Nu Horizons transferred and sold 3,972,659 Celsius shares to Lee for consideration of 3,950,000 Class A Common Units of All Def Media, LLC, plus $100.  (*See* Lee's Opposition Letter at 3 & Ex. L1, Dkt. Nos. 58 & 58-1.)  However, the Petition already alleges that, in July 2018, "3,972,659 shares of Celsius stock were transferred to Lee's J.P. Morgan Chase Bank brokerage account," and the shares in Lee's possession were then restrained, seized, and ordered forfeited.  (Pet. ¶¶ 17-19.)  That the Stock Purchase Agreement proves the July 2018 transaction

---

[8] The Court should also reject Simmons's characterization of the transaction as "a secret deal" (Mot. at 2), as the agreement was confirmed in writing, the transaction effected through Lee's accountants, and there is nothing but Simmons's say-so that it was done in "secret."  *Cf.* Mot. at 16 (citing *U.S. v. White*, 779 F. Supp. 2d 984, 991 (D. Minn. 2011), *aff'd*, 675 F.3d 1073 (8th Cir. 2012) (no bona fide purchaser where "Defendant supposedly made a 'promise' of a substantial payment, without the involvement of anyone else (such as counsel), to his (then-) new girlfriend").)

by which Lee came to possess all of the shares (including the shares she originally purchased) is thus not a "rewriting" of Lee's Petition, it is *evidence* of the allegations in the Petition.

Assuming *arguendo* the Court finds Lee did not allege sufficient facts to show how she came to be the owner in possession of all of the Celsius shares, the result should be leave to amend—not dismissal.  Simmons is incorrect in asserting Lee cannot amend her Petition.  (Mot. at 10.)  The Second Circuit has held that, where a third party timely files a petition sufficient to give notice that she intends to pursue a claim to the forfeited property, amendment after the 30-day filing deadline is not categorically precluded.  *See United States v. Swartz Family Trust*, 67 F.4th 505, 519-20 (2d Cir. 2023).  In *Swartz*, the Second Circuit held that the district court had abused its discretion in refusing to permit amendment to the petition at issue because "the 30-day time period in which to file a third-party petition under § 853(n)(2) is ordinarily strictly construed." *Id.* at 519.  The Court explained that the "30-day deadline [is] intended to promote finality for the Government" because "if no third party files a petition within the prescribed time (or no Petitioner prevails), the Government emerges with clear title to the forfeited property."  *Id.*  (cleaned up).  Other courts, too, permit amendment to forfeiture petitions. *See, e.g.*, *United States v. Furando*, 40 F.4th 567 (7th Cir. 2022); *United States v. Salkey*, No. 2:15-cr-146, 2016 WL 3766308, at *1 (E.D. Va. July 11, 2016) (permitting petitioner "to amend his petition and correct the deficiencies noted in the Order"); *United States v. Sigillito*, 938 F. Supp. 2d 877, 883 (E.D. Mo. 2013).

The cases cited by Simmons are inapposite.  In *United States v. Hiller*, 07-CR-0568(JS), 2023 WL 7924180, (E.D.N.Y. Nov. 16, 2023), the petitioner asserted in "a conclusory sentence" in its opposition to the motion to dismiss that a constructive trust should be imposed over the subject assets.  *Id.* at *5.  Because the petition contained no allegation regarding a constructive trust, the Court held this was an impermissible attempt to set forth in the opposition a new basis to

defeat forfeiture.  Similarly, in *United States v. Soreide*, 461 F.3d 1351 (11th Cir. 2006), the petitioner based her claim solely on her alleged status as a bona fide purchaser.  *Id.* at 1355; *see also* 21 U.S.C. § 853(n)(6) (two grounds to contest forfeiture).  The court rejected the petitioner's attempt to assert for the first time in opposing summary judgment that her interests were separate and apart from, and thus superior to, her husband's interests in the forfeited properties.  *Id.* at 1355. Here, in contrast, Lee is not attempting to plead a new theory of recovery, as her Petition already alleges her possession of all of the shares based on the July 2018 transaction.  (Pet. ¶ 17.)

Should the Court find that Lee did not allege sufficient facts as to the details of the July 2018 transaction (which is already alleged in the Petition and is part of the record in this case), the Court should give her the opportunity to amend her Petition to provide information to satisfy Section 853(n)(3). To rule otherwise and dismiss her Petition would be manifestly unjust considering any purported pleading deficiency can easily be cured.

## VII.    CONCLUSION

For all the foregoing reasons, Simmons's Motion to Dismiss should be denied.

Dated: August 5, 2024                      /s/  *David K. Willingham*
                                           David K. Willingham
                                           King & Spalding LLP

                                           *Attorneys for Petitioner Kimora Lee Simmons-Leissner*

## PROOF OF SERVICE

***In Re Forfeiture Order of Tim Leissner et al. v. USA***
**Case No. 1:23-mc-01505-MKB**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 633 West Fifth Street, Suite 1600, Los Angeles, CA 90071.

On August 5, 2024, I served true copies of the following document(s) described as **KIMORA MEMORANDUM OF LAW IN SUPPORT OF KIMORA LEE SIMMONS-LEISSNER'S OPPOSITION TO RUSSELL SIMMONS'S MOTION TO DISMISS** on the interested parties in this action as follows:

| | |
|---|---|
| Jeffrey EhrlichAlberts<br>Rachel Kaplowitz<br>Helen Hunter<br>**PRYOR CASHMAN LLP**<br>7 Times Square<br>New York, NY 10036<br>Tel: (212) 798-6309<br>Email:  jalberts@pryorcashman.com<br>        rkaplowitz@pryorcashman.com<br>        hhunter@pryorcashman.com | *Attorneys for Movant Russell Simmons and*<br>*Movant Nu Horizons* |
| Drew Godfrey Rolle<br>Dylan Alexander Stern<br>Brian Morris<br>**UNITED STATES ATTORNEY'S OFFICE**<br>**EASTERN DISTRICT OF NEW YORK**<br>271 Cadman Plaza East<br>Brooklyn, NY 11201<br>Tel: (718) 254-6076<br>Email:  drew.rolle@usdoj.gov<br>        dylan.Stern@usdoj.gov<br>        brian.morris2@usdoj.gov | *Attorneys for Respondent USA* |
| Tanisha R. Payne<br>**DOJ-CRIMINAL**<br>1400 New York Ave NW<br>Room 7113<br>Washington, DC 20530<br>Tel: (202) 307-3066<br>Email:  tanisha.payne@usdoj.gov | *Attorneys for Respondent USA* |

Marc A. Agnifilo                                    *Attorneys for Movant Roger Ng*
Teny Rose Geragos
**AGNIFILO INTRATER LLP**
445 Park Avenue, Ste 7th floor
New York, NY 10022
Email: marc@agilawgroup.com
         teny@agilawgroup.com


Gina Marie Parlovecchio                             *Attorneys for Movant Ken Siazon*
Luc W.M. Mitchell
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, NY 10020
Email:  gparlovecchio@mayerbrown.com
         lmitchell@mayerbrown.com

      **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address sleon@kslaw.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


      Executed on August 5, 2024, at Los Angeles, California.


_____
Susie Leon