# SIMMONS EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re Forfeiture Order of Tim Leissner | 23-MC-01505 (MKB) |

PETITIONER RUSSELL SIMMONS'S FIRST SET OF REQUESTS
TO KIMORA LEE SIMMONS-LEISSNER
FOR THE PRODUCTION OF DOCUMENTS

PRYOR CASHMAN LLP
7 Times Square, Suite Level 40
New York, NY 10036
Tel: (212) 421-4100

Pursuant to the Court's Memorandum and Order, dated February 9, 2024, and Federal Rule of Civil Procedure 34, Petitioner Russell Simmons (the "Petitioner") hereby requests that Kimora Lee Simmons-Leissner respond to the following Requests for Production of Documents not later than March 10, 2024, and produce the documents and things requested for examination, inspection and copying at the offices of Pryor Cashman, LLP, 7 Times Square, 40th Floor, New York, New York 10036.

## **INSTRUCTIONS**

1. For the purpose of these document requests, production of a copy, rather than the original, of a document is acceptable provided that the copy is a complete, accurate, legible and unaltered reproduction of the original and that the original is made available for inspection and photocopying at a time and place mutually agreed upon by the attorneys for the parties, if requested.

2. All documents as defined herein or other things responsive to these Requests are to be produced in either (a) native format, or (b) TIFF image format according to the following specifications:

    a. Single-page TIFF images rendered at 300x300 dpi resolution;

    b. Each TIFF image file named for the Bates production number reflected on the face of the image;

    c. Image Load File containing document unitization information provided in Concordance Opticon format (*.opt);

    d. Data Load File containing document and family group unitization and reference data, select metadata provided with standard Concordance data delimiters and UTF-8 encoding in Concordance format (*.dat).  OCR and extracted text (UTF-8 encoded) shall be delivered in separate text files;

 i. Document unitization and reference data provided in the Data Load File: BEGBATES, ENDBATES, PGCOUNT, CUSTODIAN, NATIVELINK, DOCTYPE;

 ii. Family group unitization data provided in the Data Load File: BEGATTACH and ENDATTACH, or FAMILYID, and ATTACHCOUNT;

 iii. Selected Email metadata provided in the Data Load File: DATESENT, TIMESENT, DATERCVD, TIMERCVD, TO, FROM, CC, BCC, SUBJECT, SOURCE/PSTNAME, FOLDERNAME, MSGID, ENTRYID, MD5HASH, ROLE ("Email");

 iv. Selected Attachment metadata provided in the Data Load File: DATESENT (or parent email), TIMESENT (of parent email), DATERCVD (of parent email), TIMERCVD (of parent email), DATECREATED, LASTDATEMOD, TITLE, APPLICATION, FILENAME, FILEEXT, NATIVEPATH, ROLE ("Attachment"), MD5HASH;

 v. Selected Loose eDoc metadata provided in the Data Load File: same as for Attachment Instruction, except no parent email sent/received data.

e. Extracted Text in document-level TXT files named for each document's Beginning Bates Number.

f. OCR text should be provided in document-level TXT files named for each document's Beginning Bates Number.

g. When a party is unable to produce metadata for a particular field, the party shall provide an explanation for that inability with its document production.

      h. If an electronic document needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. However, to the extent that the text is searchable in the native format, the producing party will still provide searchable text for those portions of the document that have not been redacted.

      i. Documents that are not practical to convert to TIFF (e.g., spreadsheets) may be produced in an electronic format suitable for loading to a litigation support database with links to the native files.

      j. For any encrypted or password-protected documents, the producing party will provide the propounding party a means to gain access to those native files (e.g., by supplying passwords).

      k. Any photographic images created and/or maintained in electronic format will be produced in that format.

3. Where a claim of privilege is asserted in objecting to any request herein, and an answer is not provided on the basis of such assertion,

      a. Identify the nature of the privilege (including work product) that is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

      b. Provide the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author,

addressees, and recipients to each other.

4. If no documents or things exist responding to a request, you shall so state in writing, which writing must be delivered to Petitioner's attorneys no later than the date specified above for production and inspection.

5. This request for documents requires you to produce any and all requested documents which are in your possession, custody or control, or which are in the possession, custody or control of your attorneys, agents, employees, representatives, investigators, or any other person acting on your behalf or any other person over whom you exercise control with respect to documents in that person's possession or custody or control, regardless of where the documents may be located.

6. The document demands set forth below are to be regarded as continuing, and you are instructed to provide, by way of supplementary answers thereto, such additional information and/or documents as you, or any other person on your behalf, may hereafter obtain which will augment or otherwise modify your answers now given to the requests below. Such supplementary answers are to be filed and served upon the attorneys for Plaintiff promptly after receipt of such information.

7. Unless otherwise specified, the time period encompassed by this request for documents shall be from January 1, 2012 through the present.

## DEFINITIONS

1. "$3 Million Wire Payment" means the wire transfer on or about April 21, 2015 in the amount of approximately $3,000,000 from "Asian Sports Ventures HK" to Celsius Holdings, Inc. referenced in the Government's Memorandum of Law in Support of Motion to Dismiss Petition for Hearing to Adjudicate Third Party Claim of Russell Simmons on Behalf of Himself and Derivatively on Behalf of Nu Horizons Investment Group ("Govt MTD").

2. "1MDB" means 1Malasyia Development Berhad.

3. "1MDB Bond Transactions" refers to the three bond transactions

4

known as Project Magnolia, Project Maximus and Project Catalyze, which collectively raised more than $6 billion for 1MDB.

4. "AL-KUWARI" means Ghanim Saad M Al Saad AL-KUWARI, the person referenced in the Celsius Holdings, Inc. Schedule 13G executed on or about May 21, 2018, a copy of which was attached to the Petition as Exhibit 18.

5. "Blackstone Account" means the account held in the name of "Blackstone Asia Real Estate Partners" referenced in the Govt MTD.

6. "Brokerage Account" means the brokerage account with an account number ending in "7002" in which the Celsius Shares were seized.

7. "Capital Place Account" means the account held in the name of "Capital Place Holdings" referenced in the Govt MTD.

8. "Celsius Shares" means the 3,325,942 shares of stock in Celsius Holdings, Inc. held in a J.P. Morgan Chase Bank brokerage account with an account number ending in "7002" in the name of Kimora Lee Simmons that the Government seeks to forfeit.

9. "Crime" means Defendant's conspiracy to violate the Foreign Corrupt Practices Act to which he pled guilty on August 28, 2018.

10. "Defendant" or "Leissner" shall mean Tim Leissner.

11. "Kimora" or "You" shall mean Kimora Lee Simmons-Leissner.

12. "Keyway Pride" shall mean Keyway Pride Limited LLC.

13. "LOI" shall mean the letter of intent dated April 26, 2018, a copy of which was attached to the Petition as Exhibit 17.

14. "May 2018 SEC Schedule 13G" means the Celsius Holdings, Inc. Schedule 13G executed on or about May 21, 2018, a copy of which was attached to the Petition as Exhibit 18.

15. "Midas" means Midas Commodities Agents Delaware LLC, the entity referenced in the Celsius Holdings, Inc. Schedule 13G executed on or about May 21,

5

2018, a copy of which was attached to the Petition as Exhibit 18.

16. "MITA" shall mean the Member Interest Transfer Agreement entered into in or about December 2018, a copy of which was attached to the Petition as Exhibit 21.

17. "Newland" means Newland Inc. Limited, the entity referenced in the Celsius Holdings, Inc. Schedule 13G executed on or about May 21, 2018, a copy of which was attached to the Petition as Exhibit 18.

18. "Nu Horizons" shall mean Nu Horizons Investment Group LLC.

19. "Oryx" means Oryx Investment Limited, the entity referenced in the Celsius Holdings, Inc. Schedule 13G executed on or about May 21, 2018, a copy of which was attached to the Petition as Exhibit 18.

20. "Petition" shall mean the Petition filed May 5, 2023 by Russell Simmons in *United States America v. Tim Leissner*, 18-CR-439 (MKB) (EDNY).

21. "Stock Transfer Agreement" shall mean the agreement entered into by Russell Simmons, Keyway Pride, Rush Digital Media, LLC and Nu Horizons on or about May 25, 2018, a copy of which was attached to the Petition as Exhibit 19.

22. The term "identify" shall mean: (i) with reference to a person or persons, to state the name and the current or last known address, telephone number(s), and email address(es) of each such person; (ii) with reference to documents, to describe all writings in the possession of You or Your representatives, and each of them, including, if possible, the date, author, addressee, title, subject, type of document (i.e., contract, invoice, bill of lading, letter, or other identifying designation) and Bates-stamp number. As to each such document not in Your possession, the address of the present location of such document and the name and address of the present custodian thereof are also required; (iii) with reference to a business entity or anything other than a natural person, to state the name of the firm, partnership, corporation, association, or other entity and its current address(es) and

telephone numbers.

23. The terms "person" or "persons" means any natural person, firm, corporation, partnership, association, joint venture or any other form of business entity, as well as the agents, employees and representatives thereof.

24. The term "concerning" shall mean discussing, mentioning, regarding, relating to, evidencing, referring to, reflecting, discussing, showing, explaining, embodying, pertaining to or in any way logically or factually connected with the subject or thing.

25. The terms "communication" or "communications" mean all written or oral discussions, statements, conversations, memoranda, notations, letters, telegrams, handwritten notes, reports, e-mail, documents, text messages, direct messages, or any other correspondence or transmittal of ideas, in any form.

26. The terms "document" or "documents" means information in all forms in which it is stored and communicated, including any and all material that is subject to production under the Federal Rules of Civil Procedure. The term includes, but is not limited to, papers, books, records, images, tangible things, electronic and analog recordings, correspondence, memoranda, notes, workpapers, transcripts, reports, analyses, contracts, drafts, charts, manuals, statistical records, e-mail, database content, electronic files, software, storage media, data, metadata, texts, and social media communications or postings. It also includes non-identical copies of documents (*i.e.*, those bearing notations or marks not found on the original document) and electronic files may have been deleted but are still recoverable, in part or in whole.

27. The term "including" shall be construed to mean "including but not limited to."

28. Referenced hereinafter, "all," "any," and "each" shall each be construed as encompassing any and all.

29. Referenced hereinafter, "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

30. Hereinafter, the use of the singular form of any word includes the plural and vice versa.

31. The use of present tense includes past tense, and vice versa.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All documents concerning the May 2018 SEC Schedule 13G, which listed Keyway Pride as the 100% owner of Nu Horizons, or concerning the transactions referenced in that filing.

**REQUEST NO. 2:**

All documents concerning the interest of Midas in Keyway Pride, as referenced in the May 2018 SEC Schedule 13G, including, but not limited to, the acquisition of that interest and any subsequent transfer of, or change in, that interest.

**REQUEST NO. 3:**

All documents concerning the ownership or control of Midas, including, but not limited to, documents concerning a transaction in or about May 2018 in which 100% of the membership interest in Midas was acquired by Newland, as described in the May 2018 SEC Schedule 13G.

**REQUEST NO. 4:**

All documents concerning the direct or indirect ownership or control of Keyway Pride between January 1, 2018 and the present, including, but not limited to, operating agreements, tax filings, agreements entered into by Keyway Pride, SEC filings, and credit or loan applications referencing any interest in Keyway Pride as an asset or liability.

**REQUEST NO. 5:**

All documents concerning an actual or potential acquisition in 2018 of a direct or indirect interest in Nu Horizons or the Celsius Shares by AL-KUWARI, Oryx, Newland, Midas, Keyway Pride, or any other person.

**REQUEST NO. 6:**

All documents concerning Kimora's knowledge before Leissner's arrest in or about June 2018 of (a) the 2018 Department of Justice investigation of Leissner's conduct or (b) Leissner's participation in the Crime or in other wrongdoing involving 1MDB, 1MDB Bond Transactions, Ng Chong Hwa, Low Take Jho, including, but not limited to, money laundering or concealing the source of proceeds used to make bribe and kickback payments.

**REQUEST NO. 7:**

All documents concerning the LOI dated April 26, 2018.

**REQUEST NO. 8:**

All documents concerning the Stock Transfer Agreement executed on or about May 25, 2018, including the assignment attached thereto as Exhibit A, including

(a) the negotiation of that agreement;
(b) whether Keyway Pride or Kimora intended to pay or had the ability to pay Russell Simmons the full purchase price of $14,250,000 referenced in that agreement; and
(c) all documents concerning whether any assets held by Kimora or Keyway Pride in May 2018 were proceeds of a crime.

**REQUEST NO. 9:**

All documents concerning advice sought or obtained by Kimora and/or Leissner in 2018 concerning asset protection, including, but not limited to,

9

(a) All documents concerning trips by Kimora or Leissner to Liechtenstein or Switzerland in 2018;

(b) All documents concerning advice sought or obtained about the creation of trusts or other entities outside the United States, the purpose and effect of transferring assets into these entities; and

(c) All documents concerning the actual or possible transfer of assets, including, but not limited to, the Celsius Shares, by Kimora, Leissner, Keyway Pride, or Nu Horizons into trusts, other legal entities or new accounts located outside the United States.

**REQUEST NO. 10:**

All documents concerning the MITA entered into in or about December 2018, including, but not limited to, documents concerning the negotiation of that agreement.

**REQUEST NO. 11:**

All documents concerning the direct or indirect ownership or control of Nu Horizons or the Celsius Shares between 2018 and the present, including, but not limited to,

(a) tax filings by Nu Horizons;

(b) tax filings by any purported owner of Nu Horizons, including Tim Leissner, Kimora and Keyway Pride;

(c) financial records, including, but not limited to, account statements, books of account, and ledgers reflecting the assets of any purported owner of Nu Horizons, including Tim Leissner, Kimora and Keyway Pride;

(d) agreements negotiated or entered into by Nu Horizons or by any other person referencing Nu Horizons;

(e) SEC filings referencing Nu Horizons; and

(f) credit or loan applications by any person referencing any interest in Nu Horizons as an asset or liability.

**REQUEST NO. 12:**

All documents submitted to the Government by Leissner, Kimora or any other party in support of an appearance bond for Tim Leissner that concern the Celsius Shares, Nu Horizons, or Keyway Pride.

**REQUEST NO. 13:**

All documents concerning the appearance bond for Leissner, including, but not limited to, the unredacted transcript of Defendant's bond hearing on or about June 26, 2018, all documents provided to the Court in connection with that bond hearing and any modification of the bond after June 26, 2018 involving shares of stock of Celsius Inc.

**REQUEST NO. 14:**

All documents concerning a loan or transfer of the Celsius Shares from Nu Horizons to Kimora or Keyway Pride, including, but not limited to, all documents concerning the document bearing the date June 26, 2018 that is attached to the Petition as Exhibit 20.

**REQUEST NO. 15:**

All documents concerning ownership and control of the Brokerage Account and transfers of shares of stock of Celsius Holdings, Inc. in or out of the Brokerage Account.

**REQUEST NO. 16:**

All documents concerning the document dated February 5, 2020, attached to the Petition as Exhibit 22, in which Leissner confirms "that Russell Simmons is the beneficial owner of 49% of the 3.9 million shares that Nu Horizons acquired in 2015….," including any document concerning Kimora's awareness about this

11

document, Kimora's knowledge concerning the facts asserted in this document, or Kimora's belief in the truth of this statement.

**REQUEST NO. 17:**

The affidavit submitted in support of the search warrant authorizing the seizure of the Celsius Shares in March 2021 and all documents attached to the affidavit or referenced in the affidavit.

Dated:  February 16, 2024                Sincerely,

                                                                  PRYOR CASHMAN LLP

                                                By:     /s/ *Jeffrey Alberts*
                                                                  Jeffrey Alberts
                                                                  7 Times Square, Suite Level 40
                                                                  New York, NY 10036
                                                                  Tel: 212-326-0800
                                                                  Email: jalberts@pryorcashman.com
                                                                  *Attorneys for Petitioner Russell Simmons*