UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

In Re Forfeiture Order of Tim Leissner

**MEMORANDUM & ORDER**
23-MC-1505 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Tim Leissner pleaded guilty in 2018 to one count of conspiracy to violate the Foreign Corrupt Practices Act ("FCPA") in violation of 18 U.S.C. § 371 and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). (Am. Prelim. Order of Forfeiture ("Am. Forfeiture Order") 1, Docket Entry No. 1.) Leissner consented to the entry of a $43.7 million money judgment against him, and the government seeks forfeiture of shares of stock in Celsius Holdings, Inc. ("Celsius"). (*Id.* at 1–2.) Petitioner Kimora Lee Simmons-Leissner ("Lee") filed a petition pursuant to 21 U.S.C. § 853(n) asserting a claim to the forfeited shares (the "Lee Petition"). (Verified Pet. of Kimora Lee Simmons-Leissner ("Lee Pet."), Docket Entry No. 3-1.)

On August 19, 2024, another Petitioner, Russell Simmons,[1] moved to dismiss Lee's Petition pursuant to Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure.[2] For the reasons discussed below, the Court grants Simmons' motion to dismiss Lee's claim.

---

[1] Simmons' petition asserted both a direct and a derivative claim to the forfeited shares. (Verified Pet. of Russell Simmons ("Simmons Pet."), Docket Entry No. 5-1.) On December 26, 2023, the Court dismissed Simmons' direct claim for lack of standing, but determined that he had standing to pursue a derivative claim on behalf of Nu Horizons Investment Group, LLC ("Nu Horizons"), the original purchaser of the Celsius Shares at issue. (Mem. & Order dated Dec. 26, 2023 ("Dec. 2023 Decision"), Docket Entry No. 24.) As a result, the Court understands Simmons to be moving derivatively on behalf of Nu Horizons rather than in his individual capacity.

[2] (Russell Simmons' Mot. to Dismiss Lee Pet. ("Simmons' Mot."), Docket Entry No. 72; Mem. in Supp. of Simmons' Mot. ("Simmons' Mem."), Docket Entry No. 73; Kimora Lee

I. **Background**

    a. **Factual background**

On August 28, 2018, Leissner pleaded guilty to one count of conspiracy to violate the FCPA, in violation of 18 U.S.C. § 371, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), arising out of bond transactions that took place during 2012 and 2013.[3] (Information 7, *United States v. Leissner*, No. 18-CR-439, Docket Entry No. 16.)

Simmons formed Nu Horizons Investment Group, LLC ("Nu Horizons") in 2011 and became its sole member and manager. (Lee Petition ¶ 5.) On January 1, 2016, Simmons and Leissner executed the Nu Horizons Operating Agreement, which sets forth the ownership structure of the LLC, and states that Leissner and Simmons were managers of Nu Horizons and Lee was a member of Nu Horizons' investment board.[4] (*Id.*; *see also* Nu Horizons Operating Agmt. 7, 10, annexed to Lee Pet. as Ex. 7, Docket Entry No. 3-8.)[5]

On January 3, 2017, Nu Horizons purchased $1,300,000 worth of shares from Celsius, consisting of 433,333.33 shares at $3.00 per share. (Lee Pet. ¶ 10; Celsius Subscription Agmt., annexed to Lee Pet. as Ex. 2, Docket Entry No. 3-3.) In connection with this purchase, on January 26, 2017, Lee wired $1,000,000 of the total $1,300,000 to Celsius directly from a

---

Simmons-Leissners' Opp'n to Simmons' Mot. ("Lee's Opp'n"), Docket Entry No. 74; Reply in Supp. of Simmons' Mot. ("Simmons' Reply"), Docket Entry No. 76.)

    [3] The Court assumes the truth of the factual allegations in the Lee Petition for the purposes of this Memorandum and Order.

    [4] Lee married Leissner in 2014, but they are currently separated. (Lee Pet. ¶ 4.) Lee was previously married to Simmons from 1998 to 2009. (*Id.*)

    [5] Because the internal pagination of the Nu Horizons Operating Agreement differs depending on the referenced section, the Court refers to the page numbers assigned by the electronic case filing system.

personal bank account (the "BofA Account").  (Lee Pet. ¶ 11; Wire Instructions and Confirmation, annexed to Lee Pet. as Ex. 3, Docket Entry No. 3-4.)  Lee states that the BofA Account was opened solely in her name, no one else had access to or signing authority for the Account, and the Account was only ever funded with her own personal funds.  (Lee Pet. ¶¶ 6–9.)  Lee states that "[a]lthough [she] purchased the Celsius shares with her separate funds, those shares were placed in Nu Horizons as an investment vehicle. . . . [B]ased on Leissner's promise that Lee would get the benefit of Nu Horizons' previously acquired shares of Celsius . . . , which would be blended with Lee's contribution."  (*Id.* ¶ 12.)  Lee alleges that she engaged in this investment with the understanding that blending the contributions would give her the benefit of a "blended average share price" of $1.12 per share as opposed to the $3.00 per share for which she purchased the shares on January 26, 2017.  (*Id.* ¶¶ 12, 14.)

Lee asserts that on January 22, 2018, Simmons resigned as a manager of Nu Horizons and on May 25, 2018, pursuant to a stock transfer agreement (the "Stock Transfer Agreement"), he transferred all of his interest in Nu Horizons to Keyway Pride Limited, LLC ("Keyway Pride"), a company used for Lee's investments that is entirely owned and controlled by Lee through an additional holding company.  (*Id.* ¶ 23.)  Lee also asserts that on January 1, 2017, Leissner's interest in Nu Horizons was transferred to Keyway Pride, and that Keyway Pride therefore now owns all of the interests in Nu Horizons.  (*Id.* ¶ 24.)

On July 11, 2018, 3,972,659 shares of Celsius stock were transferred to Lee's personal brokerage account from Nu Horizons.  (Lee Pet. ¶¶ 17, 28.)

      b.   **Procedural background**

On November 1, 2018, the Court entered a Preliminary Order of Forfeiture against Leissner that provided for a forfeiture money judgment in the amount of $43.7 million, pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b)(1).  (*See Leissner*, No. 18-CR-439, Docket Entry

3

No. 21; Simmons Pet. ¶ 7.) On March 5, 2021, all of the shares in Lee's personal brokerage account were seized. (Lee Pet. ¶ 19.) On March 3, 2023, the Court entered an Amended Preliminary Order of Forfeiture against Leissner, directing the forfeiture of all right, title and interest in the Celsius Shares as: (a) property, real or personal, involved in the violation of 18 U.S.C. § 1956(h), or property traceable to such property; and (b) property, real or personal, constituting or derived from proceeds traceable to a violation of 18 U.S.C. § 371, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 982(b)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).[6] (*See* Am. Forfeiture Order; Lee Pet. ¶ 21.)

On May 5, 2023, Lee filed a petition seeking to contest the forfeiture of the Celsius Shares, (Lee Pet.), and Simmons filed a petition on behalf of himself and derivatively on behalf of Nu Horizons seeking to do the same, (Simmons Pet.). On December 7, 2023, the government moved to dismiss Simmons' petition pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A). (Gov't Mot. to Dismiss, Docket Entry No. 21.) On December 26, 2023, the Court granted the government's motion in part and denied it in part, dismissing Simmons' direct claim, and allowing Simmons' derivative claim to proceed (the "December 2023 Decision"). (Dec. 2023 Decision.) The government moved for reconsideration, (*see* Gov't Mot. for Reconsideration, Docket Entry No. 25), and the Court denied the government's motion but directed the parties to engage in expedited discovery limited to the question of the status of Simmons' membership interest in Nu Horizons as of the date of the filing of his petition (the

---

[6] 18 U.S.C. § 981(a)(1)(C) provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" an enumerated violation, or conspiracy to commit such offense. 18 U.S.C. § 982(a)(1) provides for the forfeiture of "any property, real or personal, involved in" an offense in violation of 18 U.S.C. § 1956, "or any property traceable to such property." 18 U.S.C. § 982(b)(1) states that any property forfeited under Section 982 "shall be governed by the provisions of" 21 U.S.C. § 853.

"February 2024 Decision"), (Mem. & Order dated Feb. 9, 2024 ("Feb. 2024 Decision"), Docket Entry No. 32).[7]

On August 19, 2024, Simmons filed a motion to dismiss Lee's petition, and Lee opposed the motion. (Simmons' Mot.; Lee's Opp'n.)

## II. Discussion

### a. Standard of review

Under 18 U.S.C. § 982(b)(1), any property forfeited under Section 982 shall be "governed by the provisions of" 21 U.S.C. § 853. *See United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015). "Among other things, [Section] 853 establishes the procedures by which a third party may claim an interest in funds ordered forfeited to the United States." *Id*. Should a third party claim a legal interest in the forfeited property, 21 U.S.C. § 853(n) "allows him to recover his interest through an ancillary proceeding following the preliminary forfeiture order." *Id*.; *see also United States v. Rodriguez-Perez*, No. 10-CR-905, 2019 WL 188400, at *3 (S.D.N.Y. Jan. 11, 2019) ("An ancillary proceeding provides a procedural mechanism for a third party to assert, through the filing of a petition, its interest in the property of a criminal defendant that is subject to a preliminary order of forfeiture."). The procedures laid out in Section 853(n) are "further elaborated" in Federal Rule of Criminal Procedure 32.2(c), which states that the "court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." *Watts*, 786 F.3d at 161 (quoting Fed. R. Crim. P. 32.2(c)(1)(A)); *see also United States v. Sharma*, No. 18-CR-340, 2023 WL 1365138, at *2 (S.D.N.Y. Jan. 31, 2023) ("A motion to dismiss a [Section 853(n)] petition may be granted 'for lack of standing, for failure to state a claim, or for any other lawful reason.'" (quoting Fed. R. Crim. P. 32.2(c)(1)(A))).

---

[7] The parties are engaged in ongoing discovery on this issue. (*See* Min. Entry dated Oct. 2, 2024.)

5

"A motion to dismiss a third-party petition 'should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b).'" *Watts*, 786 F.3d at 161 (quoting *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 241 (2d Cir. 2011)). Therefore, "[t]o survive a motion to dismiss, the petition need only 'state [] enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Willis*, 652 F.3d at 241–42) (second alteration in the original); *see also United States v. Hiller*, No. 07-CR-568, 2023 WL 7924180, at *2 (E.D.N.Y. Nov. 16, 2023) ("To survive a dismissal motion, the petitioner need only state enough facts to state a claim to relief that is plausible on its face." (alterations and internal quotation marks omitted)). The court "must assume all facts alleged in the petition to be true." *Watts*, 786 F.3d at 161; *see also* Fed. R. Crim. P. 32.2(c)(1)(A) ("For purposes of the motion [to dismiss], the facts set forth in the petition are assumed to be true."); *Hiller*, 2023 WL 7924180, at *2 (same). However, the court is "not required to accept any legal conclusions included in the petition." *Willis*, 652 F.3d at 242.

      **b.    Lee does not have standing to assert a direct claim under 21 U.S.C. § 853(n)**

Simmons argues that Lee's petition should be dismissed for lack of standing because (1) any direct ownership claim she may have to the Celsius Shares based on her membership in Nu Horizons is "indistinguishable in form from" Simmons' own direct ownership claim, which was dismissed in the December 2023 Decision, and (2) Lee pleaded no derivative claim. (Simmons' Mem. 10–12.) Simmons also argues that there is no allegation in Lee's petition that Nu Horizons sold the Celsius Shares to her on July 5, 2018. (*Id.* at 12.) Simmons contends that the Celsius Shares in which Lee asserts an interest as a payor are not the Celsius Shares that the government seeks to forfeit, because the government released to Lee 646,717 Celsius Shares that were in her brokerage account, which is more than the 433,333 Celsius Shares she alleges to have initially purchased with her $1 million purchase. (*Id.* at 13–14.)

6

Lee argues that her petition should not be dismissed because she has standing where she is (1) the purchaser of the Celsius Shares based on the use of $1 million of her separate funds to purchase the shares from Celsius, (2) the beneficial owner of the Celsius Shares because Keyway Pride is the sole owner of Nu Horizons, and Keyway Pride is owned by another holding company of which Lee is the owner, and (3) the owner in possession of the Celsius Shares at issue because since July of 2018, all of the Celsius Shares at issue have been held in a brokerage account in Lee's name. (Lee's Opp'n 10–11.) Lee also argues that the Court did not rule in its December 2023 Decision that only Nu Horizons has a legal interest in the Celsius Shares, and that Lee's payment of $1 million for the Celsius Shares makes her circumstances distinct from those of Simmons, who paid nothing for and never owned the shares. (*Id.* at 15–18.) Lee contends that Simmons' attempt to apportion the Celsius Shares is irrelevant to Lee's standing, because the full amount of Celsius Shares were not segregated by purchaser when Nu Horizons held them, when they were transferred to Lee's brokerage account, or when reported by Celsius in its SEC filings, but rather were comingled from January of 2017 onward. (*Id.* at 17–18.) Lee argues that even if the Court concluded that she was not a purchaser in 2017, she purchased the Celsius Shares a second time from Nu Horizons in July of 2018. (*Id.* at 3 n.2, 22.)[8]

---

[8] Lee also argues that Simmons cannot bring a motion to dismiss her petition because "Simmons has yet to establish his own standing under Section 853(n) in this ancillary proceeding." (Lee Opp'n 14.) The Court determined in the December 2023 Decision, however, that Simmons had derivative standing to pursue his claim based on the allegations in his petition. (Dec. 2023 Decision 8–12.) The Court later, upon the government's motion for reconsideration, approved limited discovery regarding Simmons' interest in Nu Horizons at the time his petition was filed, but affirmed that the December 2023 Decision still stood. (Feb. 2024 Decision.) At this stage, Simmons therefore has standing to proceed with his derivative claim on behalf of Nu Horizons, and may move to dismiss Lee's petition. *See, e.g.*, *United States v. Dupree*, 919 F. Supp. 2d 254, 276–82 (E.D.N.Y. Jan. 28, 2013) (adjudicating a petitioner's motion to dismiss a fellow petitioner's petition), *aff'd in part, vacated in part on other grounds sub nom. United States v. Watts*, 786 F.3d 152 (2d Cir. 2015).

7

"To establish standing to challenge an order of forfeiture under [Section] 853(n), a petitioner must demonstrate that he has a 'legal interest in [the forfeited] property.'" *Watts*, 786 F.3d at 161 (quoting *United States v. Ribadeneira*, 105 F.3d 833, 835 (2d Cir. 1997)) (second alteration in the original); *see also United States v. Swartz Fam. Tr.*, 67 F.4th 505, 516 (2d Cir. 2023) ("In order to have standing to bring a claim under Section 853(n)(2), a petitioner must demonstrate a 'legal interest' in the property at issue." (quoting *Watts*, 786 F.3d at 160-61)). Whether a petitioner has an interest in the forfeited property "is determined in accordance with state law," and "[w]here the petitioner has no valid interest in the property under state law, 'the inquiry ends, and the claim fails for lack of standing.'" *Watts*, 786 F.3d at 161 (quoting *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007)); *Swartz*, 67 F.4th at 516 ("Where the petitioner has no valid interest in the property under state law, the inquiry ends, and the claim fails for lack of standing." (quoting *Watts*, 786 F.3d at 161)).

None of Lee's theories of direct ownership establish standing sufficient for her to assert a direct claim to the Celsius Shares under Section 853(n). First, under Delaware law,[9] an LLC is "a separate legal entity." 6 Del. Code § 18-201(b); *see also Powerhouse Beverage Co. v. Nahoum*, No. 22-CV-5559, 2024 WL 1765589, at *2–3 (S.D.N.Y. Apr. 24, 2024) (same). Lee's petition alleges that the Celsius Shares purchased with her $1 million wire transfer in January of 2017 were "placed in Nu Horizons as an investment vehicle," and the email laying out the terms of her agreement stated that she would "wire the [$1] million directly to Celsius Holdings Inc[.], but on behalf of Nu Horizons, and Celsius [would] record it as such." (Lee Pet. ¶ 12.) The email further states that the share acquisition was occurring "through Nu Horizons" and notes that once the newly acquired Celsius Shares were blended with the Celsius Shares already owned by Nu

---

[9] The Nu Horizons Operating Agreement states that it "shall be governed by and construed under the laws of the State of Delaware." (Nu Horizons Operating Agmt. 19.)

8

Horizons, Lee would see "a gain of 3.25[] [times] the money invested." (*Id.*) This indicates that Lee was not a direct purchaser of the Celsius Shares, but rather was an investor in Nu Horizons, and that her investment was used to purchase Celsius Shares "on behalf of" the LLC. (*Id.*) The terms of her investment agreement with Nu Horizons seemingly indicated that, should those Celsius Shares be sold or distributed, her return on investment from Nu Horizons would be apportioned to provide her with more shares than she initially purchased on behalf of Nu Horizons, (*id.* ¶¶ 12–14), but it does not indicate that she was a direct purchaser of Celsius Shares, either from Celsius or Nu Horizons, in January of 2017. Lee was therefore, at most, an investor in, or creditor to, Nu Horizons, which was the ultimate owner of the Celsius Shares.[10] (*See* Celsius Subscription Agmt. 7 (listing the "purchaser name" as "Nu Horizons Investment Group, L.L.C.")); *Salamone v. Gorman*, 106 A.3d 354, 367–68 (Del. 2014) ("Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party. When interpreting a contract, this Court will give priority to the parties' intentions as reflected in the four corners of the agreement[.]" (internal quotation marks omitted)). This is insufficient to establish that Lee held a legal interest in the Celsius Shares. *DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (concluding that a third party that purchased shares that it later turned over to an LLC was "simply a general creditor" of the LLC because it had "failed to retain a security interest in the shares" that were eventually transferred to the LLC, and therefore "d[id] not possess a 'legal right, title, or interest in the property' that was forfeited as required for standing under [S]ection

---

[10] Nu Horizon's Operating Agreement provides for the possibility of Managers offering "the right to participate in investment opportunities of the Company . . . to other private investors." (Nu Horizons Operating Agmt. 9.) It does not, however, appear to specify any other rights investors may have in assets held by the LLC. As for creditors, the Operating Agreement states only that the assets of the LLC "shall be distributed in liquidation of the" LLC to non-Member creditors, then Members in repayment of loans or other debts, followed by any remaining balance. (*Id.* at 14.)

853(n)(6)(A)[.]"); *cf. United States v. Vilar*, No. 05-CR-621, 2024 WL 4182598, at *6 (S.D.N.Y. Sept. 12, 2024) (concluding that, because petitioners, who were investors with funds in brokerage accounts held by the defendants and an LLC, did not show that there was a constructive trust over certain assets, "the [investors] may have [had] outstanding legal claims against [the defendants]," but "that le[ft] them as merely 'general creditors' who, by definition, cannot prevail in a criminal forfeiture proceeding" (citing *Ribadeneira*, 105 F.3d at 837)).

Second, Lee's alleged beneficial interest in Nu Horizons similarly does not establish her direct legal interest in the LLC's assets. An ultimate beneficial interest in a corporate entity does not establish a legal interest in the assets of that entity. *See United States v. Rahmankulov*, No. 20-CR-653, 2024 WL 68419, at *3 (S.D.N.Y. Jan. 5, 2024) ("Despite their beneficial interest in corporate assets, shareholders have no legal interest in a corporation's assets."); *Poore v. Fox Hollow Enterps.*, No. 93A-09-005, 1994 WL 150872, at *2 (Del. Super. Ct. Mar. 29, 1994) ("[T]he interest of a member in the LLC is analogous to shareholders of a corporation."). In addition, as discussed in the December 2023 Decision, "a member of an LLC has no legal interest in the assets that belong to the LLC." *Swartz Fam. Tr.*, 67 F.4th at 516; *see also* 6 Del. Code § 18-701 ("A member has no interest in specific limited liability company property."); *Powerhouse*, 2024 WL 1765589, at *2–3 ("Under Delaware law, an LLC is 'a separate legal entity.' . . . That means . . . '[a] member has no interest in specific limited liability company property.'" (quoting 6 Del. Code §§ 18-201(b), 701)); *In re Reifler*, No. 22-CV-10201, 2023 WL 5510233, at *6 (S.D.N.Y. Aug. 25, 2023) ("[T]he members of a Delaware LLC do not possess any legal interest in the assets of the LLC."); *Poore*, 1994 WL 150872, at *2 ("A member [of an LLC] usually contributes personal property and has no interest in specific assets owned by the LLC."). Lee therefore does not have standing to assert a direct ownership in the Celsius Shares

10

based on her indirect ownership of Keyway Pride, which she alleges holds all of the Nu Horizons membership interests.[11]

Finally, Lee has not alleged sufficient facts in her petition to support the theory alleged in her Opposition brief that legal ownership of the Celsius Shares was transferred to her in July of 2018. Lee's petition alleges only that "[o]n July 11, 2018, 3,972,659 shares of Celsius stock were transferred to Lee's J.P. Morgan Chase Bank brokerage account." (Lee Pet. ¶ 17.) Lee's petition also implies that there is still ambiguity as to whether "the shares were distributed to Lee or lent to her by Nu Horizons (in which case Lee would need to return them to Nu Horizons)." (*Id.* ¶ 28.) As a result, despite the fact that the Celsius Shares are being held in Lee's brokerage account, the petition does not allege that Nu Horizons distributed them to her or sold them to her, and "a naked claim of possession . . . is not enough," but rather "[t]here must be some indication that the claimant is in fact a possessor, not a simple . . . custodian." *Mercado v. U.S. Customs Serv.*, 873 F.2d 641, 645 (2d Cir. 1989); *see also United States v. 208 Burberry Handbags*, No. 12-CV-6015, 2012 WL 5398676, at *4 (W.D.N.Y. Nov. 2, 2012) ("Generally, a claim of ownership with supporting evidence is enough to establish standing."); *Acheampong v. United States*, No. 99-CV-2169, 2000 WL 1262908, at *4 (S.D.N.Y. Sept. 5, 2000) (concluding the petitioner had not shown that he had an ownership interest in forfeited funds because he had "provided no indication, apart from a bare claim of possession, that he owned this amount of money"). Although Lee's Opposition states that Nu Horizons sold the Celsius Shares to Lee in 2018 in exchange for shares in a separate LLC, as well as $100, (Lee's Opp'n 3 n.2), "a plaintiff 'cannot amend [her] complaint by asserting new facts . . . for the first time in opposition to [a]

---

[11] The Court notes that Lee does not even allege a direct ownership of the Nu Horizons membership interests — rather, she alleges that she is owner of a holding company that in turn owns Keyway Pride, a corporate entity, which Lee alleges now holds all of the membership interests in Nu Horizons. (Lee Pet. ¶ 23.)

11

motion to dismiss,'" *Hiller*, 2023 WL 7924180, at *5 (quoting *Peacock v. Suffolk Bus. Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015)), and Lee therefore has not sufficiently alleged that she currently has legal ownership of the Celsius Shares sufficient to assert a direct claim.

The Court therefore finds that Lee has not alleged that she has standing to assert a direct claim to the Celsius Shares pursuant to Section 853(n), and grants Simmons' motion to dismiss Lee's petition.[12]

### c. The Court grants Lee leave to amend her petition

Lee argues that in the event the Court dismisses her petition, she should be granted leave to amend it. (Lee's Opp'n 23–25.) She argues that "where a third party timely files a petition sufficient to give notice that she intends to pursue a claim to the forfeited property, amendment after the 30-day filing deadline is not categorically precluded." (*Id.* at 24.) Lee contends that she is not seeking to plead a new theory of recovery, as her petition already states that the Celsius Shares were transferred to her brokerage account in July of 2018, but rather seeks to add additional facts sufficient to satisfy Section 853(n)(3), namely facts related to what she asserts was her purchase of the Celsius Shares in July of 2018. (*Id.* at 22–23, 25.)

Simmons argues that the Court should deny Lee leave to amend her petition because her motion for leave to amend was made after an inordinate delay, without satisfactory explanation for the delay, and the amendment would prejudice Simmons. (Simmons' Reply 10.) Simmons contends that Lee made a strategic choice to file her petition without relying on the 2018 stock purchase agreement, and that he would suffer substantial prejudice if Lee was granted leave to amend, because his litigation strategy has been predicated on the legal theories as alleged in Lee's initial petition filed in May of 2023. (*Id.* at 10–11.)

---

[12] Because the Court finds that Lee does not have standing to pursue a direct claim, it declines to address Simmons' argument that Lee cannot show she is a bona fide purchaser of the Celsius Shares.

12

"Where . . . a third party files its petition before the deadline and moves promptly to amend it, rejecting leave to amend does not always further that purpose. Rather, in limited circumstances, it may be appropriate to permit the petitioner to amend its petition outside the [thirty]-day window." *Swartz*, 67 F.4th at 519–20; *see also United States v. Daugerdas*, 892 F.3d 545, 553 (2d Cir. 2018) (permitting the petitioner to amend her petition to plead additional facts because, "if such facts exist[ed], . . . re-pleading would not be futile" and therefore "denying [the petitioner] the opportunity to present a viable petition would raise significant due process concerns"). "A motion to dismiss a third-party petition 'should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b),'" *Watts*, 786 F.3d at 161 (quoting *Willis Mgmt.*, 652 F.3d at 241), and therefore courts have applied Rule 15 of the Federal Rules of Civil Procedure when determining whether an amendment is warranted, *see, e.g.*, *United States v. Sharma*, No. 18-CR-340, 2022 WL 1910026, at *3 (S.D.N.Y. June 3, 2022) (applying Rule 15(a)(2) to petitioner's request for leave to amend).

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) ("A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (internal quotation marks omitted)).

13

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Jang v. Trs. of St. Johnsbury Acad.*, 771 F. App'x 86, 88 (2d Cir. 2019) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also Bus. Casual Holdings LLC v. YouTube, LLC*, No. 22-CV-3007, 2023 WL 6842449, at *1 (2d Cir. Oct. 17, 2023) ("Proposed amendments are futile if they would fail to cure prior deficiencies or state a claim." (quoting *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015))); *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("Amendment is futile if it fails 'to cure prior deficiencies.'" (quoting *Panther Partners Inc.*, 681 F.3d at 119)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW*, 783 F.3d at 389. "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)).

The Court grants Lee leave to amend her petition. Lee has stated facts in her Opposition brief that, "if such facts exist," could properly plead a current possessory interest in the Celsius Shares, and amendment of the petition would therefore not be futile. *Daugerdas*, 892 F.3d at 553. In particular, Lee indicates that there may be facts to support an allegation that she purchased the Celsius Shares from Nu Horizons in July of 2018, and is now the owner of the Celsius Shares. (*See* Lee Opp'n 3 n.2 (stating that in the July 5, 2018 stock purchase agreement,

14

"Nu Horizons sold the 3,972,659 shares to Lee for consideration of 3,950,000 Class A Common Units of All Def Media, LLC, plus $100").)

In addition, granting Lee leave to amend would not result in undue prejudice to Simmons. Although Lee's petition was filed in May of 2023, only limited discovery aimed at one issue — the owner of Simmons' initial membership interest in Nu Horizons at the time of the filing of his petition — has taken place thus far, and Lee moved for leave to amend in response to Simmons' motion to dismiss. In addition, although Lee did not plead sufficient facts to establish her current ownership of the Celsius Shares, she did raise in her petition that she is currently in possession of the Celsius Shares, and that "whether the shares were distributed to Lee or lent to her by Nu Horizons" was in dispute and being litigated in the Los Angeles Superior Court. (Lee Pet. ¶¶ 22, 28.) Simmons and the other petitioners were therefore sufficiently on notice that Lee was asserting a theory of her current ownership and possession of the Celsius Shares such that it does not substantially change "what the petitioners in this action actually alleged when they filed their petitions almost a year and a half ago." (Simmons' Reply ¶ 11); *see Daugerdas*, 892 F.3d at 553 (concluding that if facts exist that would result in the petitioner's claim not being barred for lack of standing "even if it were adequately pleaded, . . . denying [the petitioner] the opportunity to present a viable petition would raise significant due process concerns").

The Court therefore grants Lee leave to amend her petition.

### III. Conclusion

For the reasons stated above, the Court grants Simmons' motion to dismiss Lee's petition, and grants Lee leave to amend her petition.

Dated: October 6, 2024
      Brooklyn, New York

                                      SO ORDERED:

                                      _____s/ MKB_____
                                      MARGO K. BRODIE
                                      United States District Judge