UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In Re Forfeiture Order of Tim Leissner

23-MC-01505 (MKB)(JRC)

**PETITIONER SIMMONS'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR EXPEDITED DISCOVERY**

PRYOR CASHMAN LLP
7 Times Square, Suite Level 40
New York, NY 10036
Tel: (212) 421-4100

## I. Reconsideration is Proper.

Ms. Lee spills much ink about the standard for reconsideration, but she fails to grapple with the fact that a "district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982). "A litigant's use of fraud or misrepresentations to the court and other parties is a powerful equitable basis to reconsider or vacate an order procured through such deception." *Stern v. Highland Lake Homeowners*, 2021 WL 1164718, at *5 (S.D.N.Y. Mar. 26, 2021) (granting reconsideration). Where, as here, a party "has made misrepresentations to the Court" in order to obtain an interlocutory order and "has failed to counter" evidence of those misrepresentations "despite the opportunity to do so[,] reconsideration . . . is appropriate under the Court's inherent power." *Bridgeforth v. Mckeon*, 2012 WL 3962378, at *2 (W.D.N.Y. Sept. 10, 2012) (granting reconsideration and dismissing case).

## II. Ms. Lee Continues to Conceal From This Court Facts the Court Would Need to Know to Conclude That Granting Ms. Lee Leave to Amend Was Not Futile.

Granting Ms. Lee leave to amend her petition to allege a payment of value for the Celsius shares under the July 2018 SPA is futile if Ms. Lee cannot allege that she actually gave real shares in a real company's stock in exchange for the Celsius shares. Buying an asset with fake shares is not a bona fide purchase for value. The July 2018 SPA, on which Ms. Lee relies, refers to consideration of "3,950,000 Class A Common Units of All Def Media, LLC" for the Celsius Shares. (ECF No. 58-1, ¶ 1.) Mr. Simmons pointed out that All Def Media, LLC ("ADM") does not appear to be a real entity. (Mot. at 4, n.3.) In response, Ms. Lee does not tell this Court that ADM was a real entity, or that the consideration for the July 2018 SPA instead consisted of shares of All Def Digital Inc. ("ADD"), which was a real company. Instead, she offers it weasel words: the existence of ADD "indicates" that the July 2018 SPA referenced a slightly incorrect version

1

name of "a" real entity's name, and that what is "at most" a scrivener's error "would not" render the consideration insufficient. (Opp. at 8.) *Did* the July 2018 SPA intend to refer to shares of ADD? *Was* it a scrivener's error? She does not actually tell this Court. Rather, she doubles down on the same strategy she adopted in her motion for leave to amend: hiding the truth from this Court and hoping that the Court does not call her on it.

Next, Mr. Simmons pointed out that it does not appear Ms. Lee in fact transferred either shares of stock or $100 to Nu Horizons as consideration for the Celsius shares. (Mot. at 4, n. 3, 4.) In response, Ms. Lee does not tell this Court that she actually did transfer any real shares of stock or $100. Instead, more weasel words: Ms. Lee simply notes that she attached to her amended petition "a copy of a receipt of consideration"—which receipt she fails to mention also contains what she implies, but does not assert, is a "scrivener's error." (Opp. at 7.) *Did* she transfer 3.95 million shares of ADM (or ADD) to Nu Horizons? *Did* she transfer $100 to Nu Horizons? She artfully avoids coming clean to the Court.

Finally, Mr. Simmons pointed out that Keyway Pride has alleged that the version of its operating agreement that Ms. Lee relied on to support her argument that she had managerial authority to sign the critical Stock Transfer Agreement actually is a forgery and the genuine one does not grant her that authority. (Mot. at 5-6.) In response, Ms. Lee does not tell this Court that the version of the Keyway Pride operating agreement that she has twice represented to Judge Cho granted her authority to act on behalf Keyway Pride is the genuine operating agreement. In fact, Ms. Lee essentially admitted to Judge Cho earlier today that the version of the Keyway Pride operating agreement purporting to grant Ms. Lee managerial authority is a fake by withdrawing her prior representations to him to that it gave her that authority. (ECF No. 95.) Therefore, not even weasel words this time, and instead a deflection in the form of an entirely new argument that

2

even if the Keyway Pride operating agreement did not grant her managerial authority, Keyway Pride can retroactively affirm her authority as its agent, even though she did not have it at the time. And, actually, here are the weasel words: Keyway Pride's "manager could have nonetheless given her managerial or signatory authority" and "Keyway was (and is still) able to retroactively ratify her actions." (Opp. at 10.) *Did* Keyway Pride's manager (which she does not even identify) make Ms. Lee its agent? *Did* it retroactively ratify her actions? Ms. Lee does not actually tell the Court.

Who knows whether any of these things are true, or simply *could* be true? Well, Ms. Lee does. But she does not want to reveal the truth to this Court. Instead of telling this Court whether the representations she previously made to this Court in order to obtain leave to amend are true, she is playing semantic games with the Court, and the Court should not countenance it.

**III.     Granting Ms. Lee Leave to Amend Was Futile Because Ms. Lee Cannot Plead Facts Demonstrating That She Was a Bona Fide Purchaser.**

Even if the reference in the July 2018 SPA to ADM shares was a typo that should have referred to ADD shares, and even if Ms. Lee did transfer ADD shares and $100 to Nu Horizons, neither of which Ms. Lee stated, much less pled in a verified petition, Ms. Lee's amendment was still futile because that would not make the July 2018 SPA a bona fide purchase for value. (*See* Mot. at 4-5.) Ms. Lee's attempts to distinguish *United States v. White*, 779 F. Supp. 2d 984 (D. Minn. 2011), *aff'd*, 675 F.3d 1073 (8th Cir. 2012), which makes clear the futility of her amendment, fall flat. While the *White* court did note that the contract at issue there was made orally, for purposes of dismissing the petition, the court "accept[ed] as true White's assertion that Defendant made such a promise to her," although it did "note[] that this promise was nowhere mentioned in White's initial Petition" and that courts "typically look askance at belated attempts to add new or additional grounds for relief to third-party petitions." *White*, 779 F. Supp. 2d at 991 n.2. Rather, the court's primary reasons for rejecting the girlfriend's petition were that "courts

3

have routinely questioned whether transactions between romantic partners or spouses are properly characterized as arms-length," and that no third parties, such as counsel, were involved in the making or memorialization of the promise. *White*, 779 F. Supp. 2d at 991.

Ms. Lee's circumstances are not distinguishable from those of Ms. White. Ms. Lee does not dispute, of course, that she and Defendant Leissner "were married." (Opp. at 5.) Her argument that the July 2018 SPA "involved third parties" (*id*. at 7) mischaracterizes the allegations in her amended petition (which she had not made to this Court when she sought leave to amend). She does not actually allege that "Rich Slomovitz, an outside law firm representing Celsius, and a stock transfer agency" even *saw* the July 2018 SPA, much less that they were "involved" in it. (*Compare* Opp. at 7 *with* AP ¶ 19.) Ms. Lee finally attempts to distinguish *White* on the grounds that "there is no dispute that the Celsius shares were actually transferred to Lee pursuant to the SPA," as though that matters. (Opp. at 7.) Criminals often succeed in actually transferring assets to their wives or girlfriends after they are charged. They are actually trying to avoid having them forfeited. The Court dismissed Ms. Lee's original petition not because it failed to allege that Ms. Lee actually obtained the Celsius shares, but because it failed to plausibly allege that she obtained "*legal ownership* of the Celsius Shares [when they were] transferred to her in July of 2018." (ECF No. 87 at 11 (emphasis added).) The allegations she offered "to support the theory alleged in her Opposition brief" (*id*.) that she had a legal interest in the shares once she obtained possession of them do not plausibly support legal ownership, which is why her amendment is futile.

## IV.  In the Alternative, Expedited Discovery is Warranted.

If the Court does not grant Mr. Simmons's motion for reconsideration, then it should grant his alternative motion for expedited discovery into the July 2018 SPA and the Keyway Pride operating agreement. Ms. Lee primarily objects to Mr. Simmons's motion for reconsideration on the theory that it "far exceeds the scope of the proper inquiry at the pleading stage because it asks

4

this Court to decide the merits of Lee's claim based on extraneous materials." (Opp. at 5.) Mr. Simmons disputes that a Court cannot require a petitioner to reveal whether she actually paid anything for assets she claims to have purchased at arm's length from her husband or whether she is basing her claim on documents she knows to be fraudulent. However, even if the Court agrees with Ms. Lee, her objection to Mr. Simmons's alternative motion for expedited discovery on these topics is nonsense, because when Ms. Lee says Mr. Simmons's arguments cannot be adjudicated without "extraneous materials," the word she is looking for is, of course, "discovery."[1] She does not get to have it both ways—Mr. Simmons's motion is not "akin to a mini-summary judgment" (*id*. at 2), but if it were, he would get the discovery to permit him to seek that summary judgment. Her argument that "there is no proper basis to conduct expedited discovery" because her "Amended Petition sufficiently states a claim" (*id*. at 10) forgets that discovery is precisely what follows a sufficiently stated claim.

Ms. Lee also notes that "limited discovery has been allowed as to Simmons's standing to bring a derivative claim." (*Id*.) This is true but it is also irrelevant, as discovery need not take place seriatim and rarely does. And her final objection that Mr. Simmons's proposal "goes to the merits of Lee's claims, not her standing" (*id*.) is even more nonsensical. Federal Rule of Criminal Procedure 32.2(c)(1)(B) does not even contemplate bifurcating "standing discovery" and "merits discovery," much less *require* it, as she appears to suggest.

For the reasons set forth above and in Mr. Simmons's opening memorandum, the Court should grant Mr. Simmons's motion for reconsideration and rule that dismissal of Ms. Lee's petition was with prejudice or, in the alternative, order expedited discovery.

---

[1] Mr. Simmons notes that the Alberts Declaration was filed specifically in connection with Mr. Simmons's alternative motion for discovery, and was not cited in his motion for reconsideration.

5

Dated: November 12, 2024          Respectfully submitted,

                                             PRYOR CASHMAN LLP

                                             By:     */s/ Jeffrey Alberts*

                                                        Jeffrey Alberts
                                                        7 Times Square, Suite Level 40
                                                        New York, NY 10036
                                                        Tel: 212-326-0800
                                                        Email: jalberts@pryorcashman.com

                                             *Counsel for Petitioner Russell Simmons*