UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

In Re Forfeiture Order of Tim Leissner

**MEMORANDUM & ORDER**
23-MC-1505 (MKB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Tim Leissner pleaded guilty in 2018 to one count of conspiracy to violate the Foreign Corrupt Practices Act ("FCPA") in violation of 18 U.S.C. § 371 and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). (Am. Prelim. Order of Forfeiture ("Am. Forfeiture Order") 1, Docket Entry No. 1; Information ¶¶ 46–48, *United States v. Leissner*, No. 18-CR-439, Docket Entry No. 16.) Leissner consented to the entry of a $43.7 million money judgment against him, and the government seeks forfeiture of shares of stock in Celsius Holdings, Inc. ("Celsius"). (*Id.* at 1–2.) Petitioner Kimora Lee Simmons-Leissner ("Lee") filed a petition pursuant to 21 U.S.C. § 853(n) asserting a claim to the forfeited shares (the "Lee Petition").[1] (Verified Pet. of Kimora Lee Simmons-Leissner ("Lee's Pet."), Docket Entry No. 3-1.)

On August 19, 2024, another Petitioner, Russell Simmons ("Simmons"),[2] moved to dismiss the Lee Petition under Federal Rule of Criminal Procedure 32.2(c)(1)(A). (Simmons'

---

[1] Petitioner Ng Chong Hwa ("Roger Ng") and Ken Siazon have also filed petitions pursuant to 21 U.S.C. § 853(n) asserting a claim to the forfeited shares. (Verified Pet. of Roger Ng, Docket Entry No. 4-1; Verified Pet. of Ken Siazon, Docket Entry No. 8-1.)

[2] Simmons' petition asserted both a direct and a derivative claim to the forfeited shares. (Verified Pet. of Russell Simmons ("Simmons' Pet."), Docket Entry No. 5-1.) On December 26, 2023, the Court dismissed Simmons' direct claim for lack of standing, but determined that he had standing to pursue a derivative claim on behalf of Nu Horizons Investment Group, LLC

Mot. to Dismiss Lee's Pet., Docket Entry No. 72.) On October 5, 2024, the Court granted Simmons' motion to dismiss Lee's claim and granted Lee leave to amend her petition (the "October 2024 Decision"). (Oct. 2024 Decision, Docket Entry No. 87); *In re Forfeiture Order of Tim Leissner*, No. 23-MC-1505, 2024 WL 4424201 (E.D.N.Y. Oct. 5, 2024). Lee filed an amended petition on October 15, 2024 (the "Lee Amended Petition"). (Verified Am. Pet. of Kimora Lee Simmons-Leissner ("Lee's Am. Pet."), Docket Entry No. 89-1.) On October 21, 2024, Simmons moved for reconsideration of the October 2024 Decision, or, in the alternative, for expedited discovery, and Lee opposes the motion.[3] For the reasons discussed below, the Court denies Simmons' motion.

## I. Background

### a. Factual background

On August 28, 2018, Leissner pleaded guilty to one count of conspiracy to violate the FCPA, in violation of 18 U.S.C. § 371, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), arising out of bond transactions that took place during 2012 and 2013. (Information ¶¶ 46–50, *Leissner*, No. 18-CR-439, Docket Entry No. 16.)

Simmons formed Nu Horizons in 2011 and became its sole member and manager. (Lee's Pet. ¶ 5.) On January 1, 2016, Simmons and Leissner executed the Nu Horizons Operating Agreement, which sets forth the ownership structure of the LLC, and states that Leissner and

---

("Nu Horizons"), the original purchaser of the Celsius Shares at issue (the "December 2023 Decision"). (Dec. 2023 Decision, Docket Entry No. 24.) Discovery into Simmons' standing to pursue a derivative claim on behalf of Nu Horizons is ongoing.

[3] (Simmons' Mot. for Reconsideration ("Simmons' Mot."), Docket Entry No. 90; Simmons' Mem. in Supp. in of Simmons' Mot. ("Simmons' Mem."), Docket Entry No. 91; Lee's Opp'n to Simmons' Mot. ("Lee's Opp'n"), Docket Entry No. 94; Simmons' Reply Mem. in Supp. of Simmons' Mot. ("Simmons' Reply"), Docket Entry No. 96.)

2

Simmons were managers of Nu Horizons and Lee was a member of Nu Horizons' investment board.[4] (*Id.*; *see also* Nu Horizons Operating Agmt. 7, 10, annexed to Lee's Pet. as Ex. 7, Docket Entry No. 3-8.)[5]

On January 3, 2017, Nu Horizons purchased $1,300,000 worth of shares from Celsius, consisting of 433,333.33 shares at $3.00 per share. (Lee's Pet. ¶ 10; Celsius Subscription Agmt., annexed to Lee's Pet. as Ex. 2, Docket Entry No. 3-3.) In connection with this purchase, on January 26, 2017, Lee wired $1,000,000 of the total $1,300,000 to Celsius directly from a personal bank account (the "BofA Account"). (Lee's Pet. ¶¶ 10–11; Wire Instructions and Confirmation, annexed to Lee's Pet. as Ex. 3, Docket Entry No. 3-4.) Lee states that the BofA Account was opened solely in her name, no one else had access to or signing authority for the Account, and the Account was only ever funded with her own personal funds. (Lee's Pet. ¶¶ 6–9.) Lee states that "[a]lthough [she] purchased the Celsius [S]hares with her separate funds, those shares were placed in Nu Horizons as an investment vehicle. . . . [B]ased on Leissner's promise that Lee would get the benefit of Nu Horizons' previously acquired shares of Celsius . . . , which would be blended with Lee's contribution." (*Id.* ¶ 12.) Lee alleges that she engaged in this investment with the understanding that blending the contributions would give her the benefit of a "blended average share price" of $1.12 per share as opposed to the $3.00 per share for which she purchased the shares on January 26, 2017. (*Id.* ¶¶ 12, 14.)

---

[4] Lee married Leissner in 2014, but they are currently separated. (Lee's Pet. ¶ 4.) Lee was previously married to Simmons from 1998 to 2009. (*Id.*)

[5] Because the internal pagination of the Nu Horizons Operating Agreement differs depending on the referenced section, the Court refers to the page numbers assigned by the electronic case filing system.

Lee asserts that on January 22, 2018, Simmons resigned as a manager of Nu Horizons and on May 25, 2018, pursuant to a stock transfer agreement (the "May 2018 STA"), he transferred his entire interest in Nu Horizons to Keyway Pride Limited, LLC ("Keyway Pride"), a company used for Lee's investments that is entirely owned and controlled by Lee through an additional holding company. (*Id.* ¶ 23; *see also* May 2018 STA, annexed to Lee's Pet. as Ex. 6, Docket Entry No. 3-7.) Lee also asserts that on January 1, 2017, Leissner's interest in Nu Horizons was transferred to Keyway Pride, and that Keyway Pride therefore now owns all of the interests in Nu Horizons. (*Id.* ¶ 24.)

On July 11, 2018, 3,972,659 shares of Celsius stock were transferred to Lee's personal brokerage account from Nu Horizons. (Lee's Pet. ¶¶ 17, 28.)

    b. **Procedural background**

On November 1, 2018, the Court entered a Preliminary Order of Forfeiture against Leissner that provided for a forfeiture money judgment in the amount of $43.7 million, pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b)(1). (*See* Prelim. Order of Forfeiture, *Leissner*, No. 18-CR-439, Docket Entry No. 21; Simmons' Pet. ¶ 7.) On March 5, 2021, all of the shares in Lee's personal brokerage account were seized. (Lee's Pet. ¶ 19.) On March 3, 2023, the Court entered an Amended Preliminary Order of Forfeiture against Leissner, directing the forfeiture of all right, title and interest in the Celsius Shares as: (a) property, real or personal, involved in the violation of 18 U.S.C. § 1956(h), or property traceable to such property; and (b) property, real or personal, constituting or derived from proceeds traceable to a violation of 18 U.S.C. § 371, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 982(b)(1), 21 U.S.C. § 853(p), and 28

4

U.S.C. § 2461(c).[6]  (*See* Am. Forfeiture Order; Lee's Pet. ¶ 21.)

On May 5, 2023, Lee filed a petition seeking to contest the forfeiture of the Celsius Shares.  (Lee's Pet.)  On August 19, 2024, Simmons moved to dismiss the Lee Petition pursuant Federal Rule of Criminal Procedure 32.2(c)(1)(A).  (Simmons' Mot. to Dismiss Lee's Pet.)

In the October 2024 Decision, the Court granted Simmons' motion to dismiss Lee's claim.  (Oct. 2024 Decision); *Leissner*, 2024 WL 4424201 at *7.  In granting the motion, the Court held that Lee did not have standing to assert a direct claim because (1) her petition indicated that she was an investor in, or creditor to, Nu Horizons rather than a direct purchaser of the Celsius Shares, (2) her alleged beneficial interest in Nu Horizons did not establish a legal interest in Nu Horizons' assets, and (3) she did not allege sufficient facts that legal ownership of the Celsius Shares was transferred to her in July of 2018.  (Oct. 2024 Decision 9–11); *Leissner*, 2024 WL 4424201, at *3–6.  The Court granted Lee leave to amend her petition.  (Oct. 2024 Decision 12–15); *Leissner*, 2024 WL 4424201, at *6–7.

On October 15, 2024, Lee filed her amended petition.[7]  (Lee's Am. Pet.)  On October 21, 2024, Simmons moved for reconsideration of the October 2024 Decision, and, in the alternative,

---

[6] 18 U.S.C. § 981(a)(1)(C) provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" an enumerated violation, or conspiracy to commit such offense.  18 U.S.C. § 982(a)(1) provides for the forfeiture of "any property, real or personal, involved in" an offense in violation of 18 U.S.C. § 1956, "or any property traceable to such property."  18 U.S.C. § 982(b)(1) states that any property forfeited under section 982 "shall be governed by the provisions of" 21 U.S.C. § 853.

[7] In her amended petition, Lee alleged new facts in support of her claim that Nu Horizons sold its entire interest in the 3,972,659 shares of Celsius stock to her for consideration after entering into a Stock Purchase Agreement on July 5, 2018 (the "July 2018 SPA").  (Lee's Am. Pet. ¶¶ 17–23.)  Lee also included allegations from her first petition regarding the May 2017 STA and how Simmons transferred his interest in Nu Horizons to Keyway.  (*See, e.g.*, Lee's Pet. ¶ 23; Lee's Am Pet. ¶ 29.)

5

for expedited discovery into the July 2018 SPA and the Keyway Pride Operating Agreement. (Simmons' Mot.) Lee opposes the motion. (Lee's Opp'n.)

## II. Discussion

### a. Standard of review

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (same); *In re Richardson Foods, Inc.*, --- B.R. ---, ---, 2025 WL 409914, at *7 (Bankr. S.D.N.Y. Feb. 6, 2025) (same); *see also* S.D.N.Y. & E.D.N.Y. Local Civ. R. 6.3 (providing that the moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the [c]ourt has overlooked"). "Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts . . . ." *Pentacon BV v. Vanderhaegen*, No. 23-CV-2172, 2024 WL 3835334, at *12 (S.D.N.Y. Aug. 15, 2024) (quoting *Cobalt Multifamily Invs. I, LLC v. Shapiro*, No. 06-CV-6468, 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009)); *see also Tenemille v. Town of Ramapo*, No. 18-CV-724, 2022 WL 2047819, at *5 (S.D.N.Y. June 7, 2022) (quoting same). In addition to considering any evidence or controlling cases the court overlooked, the court should also consider whether there has been "an intervening change of controlling law." *Commerzbank AG*, 100 F.4th at 377 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022) (quoting *Kolel Beth Yechiel Mechil of*

*Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *In re Kaspar*, --- B.R. ---, ---, 2025 WL 816661, at *16 (Bankr. S.D.N.Y. Feb. 18, 2025) (quoting *In re Hellas Telecomms. (Luxembourg) II SCA*, 555 B.R. 323, 343 (Bankr. S.D.N.Y. 2016)); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936, 2023 WL 3159233, at *1 (E.D.N.Y. Apr. 28, 2023) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

It is thus well-settled that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking [another] bite at the apple." *U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, 758 F. App'x 97, 101 (2d Cir. 2018) (alteration in original) (quoting *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended*, (July 13, 2012)). "A motion for reconsideration is not an opportunity for a [party] to 'relitigate an issue already decided' or present arguments that could have been made before the judgment was entered." *Ethridge*, 49 F.4th at 688 (quoting *Shrader*, 70 F.3d at 257); *see also Doe v. Martucci*, No. 20-CV-2331, 2024 WL 5118505, at *2 (S.D.N.Y. Dec. 16, 2024) ("[A] motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." (quoting *Assoc. Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005))); *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) ("A motion for reconsideration is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'" (quoting *Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014))), *aff'd*, 663 F. App'x 71 (2d Cir. 2016).

7

> **b. The Court denies Simmons' motion for reconsideration because (1) his motion is moot and (2) he has not identified any controlling precedent or evidence overlooked by the Court**
>
> > **i. Simmons' motion for reconsideration is moot**

Lee argues that the Court should deny Simmons' motion for reconsideration because the filing of her amended petition "renders moot the decision permitting it," and that Simmons' "motion attempts to litigate the *merits* of [the] Lee[] Amended Petition," rather than "argue the Court was wrong in the first instance." (Lee's Opp'n 3–4.)

Simmons argues that his reconsideration motion is proper because "a district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment," and because reconsideration is appropriate where the party "'has made misrepresentations to the Court' in order to obtain an interlocutory order." (Simmons' Reply 1 (first quoting *United States v. LoRusso*, 695 F.2d 45, 33 (2d Cir. 1982); then quoting *Bridgeforth v. Mckeon*, No. 09-CV-6162, 2012 WL 3962378, at *2 (W.D.N.Y. Sept 10, 2012)).)

"It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) (collecting cases); *Meserole v. Sony Corp. of Am.*, No. 08-CV-8987, 2009 WL 2001451, at *1 (S.D.N.Y. July 9, 2009) (denying plaintiffs' motion for reconsideration where the court gave plaintiffs leave to replead their claims and plaintiffs filed a timely second amended complaint); *see also Mintz v. Baron*, No. 05-CV-4904, 2009 WL 735140, at *1 (S.D.N.Y. Mar. 20, 2009) (granting a request to consolidate a motion for reconsideration and motion to dismiss "[b]ecause the subsequently filed [a]mended [c]omplaint moots reconsideration of the first motion to dismiss" and raises arguments "similar to those in the motion to dismiss").

The Court granted Lee leave to amend her petition, (Oct. 2024 Decision 16); *Leissner*, 2024 WL 4424201, at *7, and Lee filed a timely amended petition. (*See generally* Lee's Am. Pet.) As a result, because the Lee Amended Petition is the operative Petition, the amended petition "supersedes the original, and renders" the original petition "of no legal effect." *Shields*, 25 F.3d at 1128. Accordingly, the Court denies Simmons' motion for reconsideration as moot.

> **ii. Simmons has not identified any controlling precedent or evidence overlooked by the Court**

Simmons argues that the Court's futility determination did not consider the fact that the July 2018 SPA is "insufficient on its face to establish Ms. Lee's purported purchase of the [Celsius] [S]hares from Nu Horizons constituted a bona fide purchase for value." (Simmons' Mem. 3–4.) First, Simmons argues that an amendment of Lee's Petition is futile because the July 2018 SPA was "not an arm's-length transaction." (*Id.* at 4.) Second, Simmons argues that an amendment is futile because he can find "no evidence that All Def Media, LLC . . . is an entity organized under the laws of any jurisdiction" and therefore the consideration for the July 2018 SPA was insufficient to constitute a bona fide purchase for value. (*Id.* at 4–5.) Simmons also argues that Lee's allegation that she purchased all of Nu Horizons through Keyway Pride is futile because the document on which Lee bases her authority for the purchase — the Keyway Pride Operating Agreement — is a forgery. (*Id.* at 5.) In support, Simmons argues that Keyway Pride has alleged the operating agreement is a forgery in ongoing litigation in California state court. (*Id.* at 6.) Simmons also argues that, even if the agreement is not a forgery, the document does not authorize either Leissner or Lee to act on Keyway Pride's behalf. (*Id.* at 6–7.)

Lee argues that the Court should deny Simmons' motion for reconsideration. (Lee's Opp'n 3.) First, Lee argues that Simmons' motion improperly raises two new arguments (1) that the consideration for the July 2018 SPA was insufficient, and (2) that the May 2018 STA was

9

invalid because Lee lacked authority to enter into the agreement on behalf of Keyway Pride. (*Id.* at 4.) In support, Lee argues that none of the facts supporting Simmons' motion for reconsideration are new because the nature of Lee's relationship with Leissner and the correct name of All Def Media, LLC — All Def Digital — "are facts that have existed since July 2018, were known to Simmons, and could have been raised by him in his motion to dismiss." (*Id.* at 5.) Lee argues that there are no new allegations regarding the May 2018 STA in the Lee Amended Petition and thus Simmons' arguments as to her authority under the Keyway Pride Operating Agreement are an "improper attempt to take another 'bite at the apple.'" (*Id.* (quoting *Five Star*, 758 F. App'x 101).) Second, Lee argues that the motion is procedurally improper because it asks the Court to decide the merits of her claim based on extraneous materials. (*Id.* at 5–6.) Third, Lee argues that the amendment is not futile because she has sufficiently alleged that the July 2018 SPA was a bona fide purchase in the Lee Amended Petition. (*Id.* at 6–8.) In support, Lee argues that Simmons cites no authority indicating that her allegations regarding the July 2018 SPA fail to state a plausible claim and his arguments "ask[] this Court to go beyond the sufficiency of [her] allegations." (*Id.* at 7.) Fourth, Lee argues that Simmons' arguments as to the May 2018 STA are irrelevant because (1) only Keyway Pride has the ability to challenge her authority to act on its behalf, (2) Lee's purchase of the Celsius Shares in her personal capacity through the July 2018 SPA have no bearing on her authority to execute the May 2018 STA, (3) Simmons improperly attacks statements Lee has made in other pleadings in an attempt to seek discovery into Keyway Pride's ownership history, and (4) he ignores controlling California law regarding how Keyway Pride is able to retroactively ratify her actions. (*Id.* at 8–9.)

10

Even assuming Simmons' motion for reconsideration was not rendered moot by the filing of the Lee Amended Petition, Simmons has not identified any controlling precedent or evidence that the Court overlooked, any intervening change in controlling law, or any error by the Court. Simmons points primarily to decisions from courts in other districts and one decision from a court within this district to argue that the July 2018 SPA was not an arm's length transaction constituting a bona fide purchase for value, that Lee's amendments are futile in view of the absence of evidence that All Def Media, LLC exists, and that the Keyway Pride Operating Agreement is a forgery which cannot support her claim that Keyway Pride purchased Simmons' interest in Nu Horizons, none of which are controlling.[8] (*See, e.g.*, Simmons' Mem. 4–7 (citing, *inter alia*, *United States v. White*, 779 F. Supp. 2d 984, 991 (D. Minn. 2011), *aff'd*, 675 F.3d 1073 (8th Cir. 2012); *ExxonMobil Oil Corp. v. PBF Holding Co. LLC*, No. 21-CV-4183, 2023 WL 6214241, at *2 (E.D.N.Y. Sept. 25, 2023), *reconsideration denied*, 2024 WL 694080 (E.D.N.Y. Feb. 20, 2024)).)  In addition, Simmons' motion for reconsideration seeks to relitigate the merits of Lee's claim based on evidence available to him at the time of his motion to dismiss briefing — namely, the nature of Lee's relationship with Leissner, the correct name of the entity whose shares Lee claims provided consideration for the July 2018 SPA, (Lee's Opp'n to Simmons' Mot. to Dismiss 3 n.2, Docket Entry No. 74), and allegations that the Keyway Pride Operating Agreement is a forgery.  (*See* Simmons' Pet. ¶ 6 (noting that Lee is Leissner's wife); *id.* ¶ 67 (explaining Simmons' contribution of value to Nu Horizons including "its investment in All Def Digital, which Mr. Simmons founded in 2013"); Simmons' Mem. 4 n.3 (noting "[t]here

---

[8] In his reply, Simmons cites to *United States v. LoRusso*, 695 F.2d 45 (2d Cir. 1982), to support his argument that this Court has the "inherent power to reconsider" the October 2024 Order despite the filing of the Lee Amended Petition, but otherwise cites to no controlling law to support the merits of his reconsideration motion.  (Simmons' Reply 1 (citing *LoRusso*, 695 F.2d at 53); *see generally* Simmons' Mem. 3–7.)

11

is some reason to think that All Def Digital, Inc. did sometimes do business as All Def Media"); *id.* at 6 (describing the California state court amended complaint filed on November 17, 2023 — nearly eleven months before Simmons filed his motion for reconsideration — in which Keyway Pride alleges that the operating agreement that the state court defendant relied on was a forgery)); *see also Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."); *Abraham v. Leigh*, No. 17-CV-5429, 2020 WL 5836511, at *2 (S.D.N.Y. Oct. 1, 2020) (finding that the plaintiff's motion for reconsideration "lack[ed] merit" where the plaintiff "offer[ed] no new evidence and point[ed] to no change in controlling law that would justify reconsideration"). Accordingly, even assuming Simmons' motion for reconsideration was not mooted by the Lee Amended Petition, the Court finds no basis to grant his motion.

  **c. The Court finds no good cause to order discovery into the July 2018 SPA or the Keyway Pride Operating Agreement**

  Simmons requests that in the event the Court denies his motion for reconsideration, the Court direct the parties to engage in discovery regarding the July 2018 SPA and Keyway Pride Operating Agreement. (Simmons' Mem. 8.) Simmons contends there is good cause for expedited discovery into the July 2018 SPA and Keyway Pride Operating Agreement because Lee can only state a claim that she made a bona fide purchase for value of the Celsius Shares through the July 2018 SPA and because Lee appears to rely on a non-existent company and forged operating agreement in the Lee Amended Petition. (*Id.* at 8.) In support of his request for expedited discovery, Simmons attached an affidavit from his attorney regarding a California state court lawsuit where Keyway Pride alleges that Leissner entered into an agreement without its authority to sell a Beverly Hills mansion. (Decl. of Jeffrey Alberts ("Alberts Decl.") ¶¶ 1–5, annexed to Simmons' Mem., Docket Entry No. 91-1.)

12

Lee argues that Simmons' request for expedited discovery should be denied because discovery into the July 2018 SPA or the Keyway Pride Operating Agreement "goes to the *merits* of [her] claims, not her standing."[9] (Lee's Opp'n 10.) Lee also argues that the Simmons' expedited discovery request is "an attempted end-run around Judge Cho's discovery orders." (*Id.*)

Because Simmons has neither cited controlling authority sufficient to meet the standard for reconsideration of the October 2024 Decision nor pointed to any evidence overlooked by the Court, the Court declines to order additional discovery at this time. The Court found that "[n]one of Lee's theories of direct ownership establish standing sufficient for her to assert a direct claim to the Celsius Shares." (Oct. 2024 Decision 8); *Leissner*, 2024 WL 4424201, at *4. However, based on Lee's claim that Nu Horizons sold the Celsius Shares to her in exchange for shares in of All Def Media, LLC, as well as $100, (Lee's Opp'n to Simmons' Mot. to Dismiss 3 n.2, Docket Entry No. 74; Lee's Am. Pet. ¶¶ 17–23), the Court did not err in allowing Lee to amend her petition to include this fact and other details supporting her theory that the July 2018 SPA gave her legal ownership of the Celsius Shares. *See United States v. Daugerdas*, 892 F.3d 545, 553 (2d Cir. 2018) (permitting the petitioner to amend her petition to plead additional facts because,

---

[9] Lee argues that Simmons violated Local Rule 6.3's prohibition on relying on an affidavit in his motion for reconsideration. (Lee's Opp'n 1, 3, 4); *see* S.D.N.Y. & E.D.N.Y. Local Civ. R. 6.3 ("No party is to file an affidavit unless directed by the court"). Because Simmons relies on the declaration to support his alternative request for discovery, (Simmons Reply 5 n.1), the Court considers the declaration for that limited purpose. *See Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991) ("[A] district court has the inherent power to decide when a departure from its Local Rules should be excused or overlooked." (citations omitted)), *superseded by rule on other grounds as recognized by Contino v. United States*, 535 F.3d 124, 126–27 (2d Cir. 2008); *see also In re Vivenzio*, No. 22-944, 2023 WL 2147600, at *2 (2d Cir. Feb. 22, 2023) (finding that "the bankruptcy court 'may modify or suspend the requirements' set forth in the local rules" (first quoting E.D.N.Y. Local Bankr. R. 1001-1(d); and then citing *Somlyo*, 932 F.2d at 1048)).

13

"if such facts exist[ed], . . . re-pleading would not be futile" and therefore "denying [the petitioner] the opportunity to present a viable petition would raise significant due process concerns"); *United States v. Mann*, 729 F. Supp. 3d 257, 272 (N.D.N.Y. 2024) ("Section 853(n) provides that a third-party claimant shall have a superior claim to the Government if . . . the claimant . . . 'is a bona fide purchaser for value of the right, title, or interest in the property.'" (quoting 21 U.S.C. § 853(n))); *see also United States v. Swartz Fam. Tr.*, 67 F.4th 505, 518 (2d Cir. 2023) (finding that a petitioner failed to state a claim it had a legal interest in an asset a bona fide purchaser for value where the company failed to "describe its claim as such and, to make matters worse, neglected to cite Section 853(n)(6)(B), which authorizes such a claim"); *United States v. Ackerman*, No. 20-CR-93, 2023 WL 3568654, at *4 (S.D.N.Y. May 18, 2023) (concluding that the petitioner was not a bona fide purchaser for value where "she ha[d] not alleged that she paid anything to purchase the [p]roperty" (emphasis and citations omitted)). In addition, as discussed in the October 2024 Decision, Lee has no standing to assert direct claim in the Celsius Shares based on her indirect ownership of Keyway Pride, and thus the Keyway Pride Operating Agreement is irrelevant to the question of Lee's standing. (Oct. 2024 Decision 8–11); *Leissner*, 2024 WL 4424201, at *4–6; *see DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (concluding that a third party that purchased shares that it later turned over to an LLC was "simply a general creditor" of the LLC because it had "failed to retain a security interest in the shares" that were eventually transferred to the LLC, and therefore "d[id] not possess a 'legal right, title, or interest in the property' that was forfeited as required for standing under [S]ection 853(n)(6)(A)[.]"); *see also Swartz Fam. Tr.*, 67 F.4th at 516 ("[A] member of an LLC has no legal interest in the assets that belong to the LLC."); *United States v. Rahmankulov*, No. 20-CR-653, 2024 WL 68419, at *3 (S.D.N.Y. Jan. 5, 2024) ("Despite their beneficial

interest in corporate assets, shareholders have no legal interest in a corporation's assets."); *Poore v. Fox Hollow Enterps.*, No. 93A-09-005, 1994 WL 150872, at *2 (Del. Super. Ct. Mar. 29, 1994) ("[T]he interest of a member in the LLC is analogous to shareholders of a corporation."). Accordingly, the Court declines to order expedited discovery into the July 2018 SPA or the Keyway Pride Operating Agreement.

### III. Conclusion

For the reasons discussed above, the Court denies Simmons' motion for reconsideration and his request for additional expedited discovery.

Dated: March 19, 2025
       Brooklyn, New York

                                    SO ORDERED:

                                    _____s/ MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge