UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

In Re Forfeiture Order of Tim Leissner

**MEMORANDUM & ORDER**
23-MC-1505 (MKB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Tim Leissner pleaded guilty in 2018 to one count of conspiracy to violate the Foreign

Corrupt Practices Act ("FCPA") in violation of 18 U.S.C. § 371 and one count of conspiracy to

commit money laundering in violation of 18 U.S.C. § 1956(h).  (Am. Prelim. Order of Forfeiture

("Am. Forfeiture Order") 1, Docket Entry No. 1; Information ¶¶ 46–48, *United States v.

Leissner*, No. 18-CR-439, Docket Entry No. 16.)  Leissner consented to the entry of a $43.7

million money judgment against him, and the Government seeks forfeiture of 3,325,942 shares

of stock in Celsius Holdings, Inc. ("Celsius") held in a J.P. Morgan Chase Bank brokerage

account in the name of Kimora Lee Simmons (the "Celsius Shares").  (Am. Forfeiture Order 1–

2.)  Petitioner Ng Chong Hwa, also known as Roger Ng, ("Ng") filed a petition pursuant to 21

U.S.C. § 853(n) asserting a claim to the forfeited shares (the "Ng Petition").[1]  (Verified Pet. of

Roger Ng ("Ng's Pet."), Docket Entry No. 4-1.)

---

[1]  Petitioner Russell Simmons ("Simmons"), Kimora Lee Simmons-Leissner ("Lee"),
Ken Siazon ("Siazon") have also filed petitions pursuant to 21 U.S.C. § 853(n) asserting a claim
to the forfeited shares.  (Verified Pet. of Russell Simmons ("Simmons' Pet."), Docket Entry No.
5-1; Verified Pet. of Kimora Lee Simmons-Leissner ("Lee's Pet."), Docket Entry No. 3-1;
Verified Pet. of Ken Siazon, Docket Entry No. 8-1.)  Simmons' petition asserted both a direct
and a derivative claim to the forfeited shares.  (Simmons' Pet.)  On December 26, 2023, the
Court dismissed Simmons' direct claim for lack of standing, but determined that he had standing
to pursue a derivative claim on behalf of Nu Horizons Investment Group, LLC ("Nu Horizons"),
the original purchaser of the Celsius Shares (the "December 2023 Decision").  (Dec. 2023
Decision, Docket Entry No. 24.)  Discovery into Simmons' standing to pursue a derivative claim
on behalf of Nu Horizons is ongoing.  Lee's petition and Siazon's petition asserted direct claims
to the forfeited shares.  (Lee's Pet.; Siazon's Pet.)  On October 5, 2024, the Court dismissed
Lee's direct claim for lack of standing and granted her leave to amend her petition (the "October

On March 19, 2025, Petitioner Russell Simmons moved to dismiss the Ng Petition pursuant to Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure.[2]  On February 3, 2025, the Government filed a response in support of Simmons' motion to dismiss.  (Gov't Mem.) For the reasons discussed below, the Court grants Simmons' motion to dismiss Ng's claim.

## I.  Background

The Court assumes familiarity with the extensive factual and procedural background of the case as detailed in the Court's prior decisions, and provides below a summary of the relevant history pertinent to Simmons' motion to dismiss the Ng Petition.[3]  (*See* Dec. 2023 Decision; Feb. 2024 Decision, Docket Entry No. 32; Oct. 2024 Decision; Feb. 2025 Decision, Docket Entry No. 127; Mar. 2025 Decision, Docket Entry No. 131; July 2025 Decision.)

### a.  Factual background

On August 28, 2018, Leissner pleaded guilty to one count of conspiracy to violate the FCPA, in violation of 18 U.S.C. § 371, and one count of conspiracy to commit money

---

2024 Decision"), and Lee filed an amended petition on October 15, 2024.  (Oct. 2024 Decision, Docket Entry No. 87; Verified Am. Pet. of Kimora Lee Simmons-Leissner, Docket Entry No. 89-1.)  On July 15, 2025, the Court dismissed Siazon's direct claim for lack of standing (the "July 2025 Decision").  (July 2025 Decision, Docket Entry No. 148.)

[2]  (Russell Simmons' Mot. to Dismiss Ng's Pet. ("Simmons' Mot."), Docket Entry No. 129; Russell Simmons' Mem. in Supp. of Simmons' Mot. ("Simmons' Mem."), Docket Entry No. 130; Gov't Mem. In Supp of Simmons' Mot. ("Gov't Mem."), Docket Entry No. 120; Roger Ng's Opp'n to Simmons' Mot. ("Ng's Opp'n"), Docket Entry No. 133; Roger Ng's Reply in Opp'n to Gov't Mem. ("Ng's Resp."), Docket Entry No. 134; Russell Simmons' Reply in Supp. of Simmons' Mot. ("Simmons' Reply"), Docket Entry No. 135; Gov't Reply in Supp. of Simmons' Mot. ("Gov't Reply"), Docket Entry No. 132.)

[3]  The Court assumes the truth of the factual allegations in the Ng Petition for the purposes of this Memorandum and Order.  *See United States v. Swartz Fam. Tr.*, 67 F.4th 505, 514 (2d Cir. 2023) ("We assume that all facts alleged in the petition are true and will affirm a dismissal 'only where the plaintiff fails to plead any factual content that allows the court to draw the reasonable inference that he is entitled to relief.'" (citation omitted)); *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015) (explaining that the court "must assume all facts alleged in the petition to be true" in deciding a motion to dismiss a petition brought under Section 853(n)).

laundering, in violation of 18 U.S.C. § 1956(h), arising out of bond transactions that took place during 2012 and 2013.  (Information ¶¶ 46–50.)  Ng is a Malaysian national who "was charged as part of the same criminal case as his former boss, . . . Leissner."[4]  (Compl. ¶ 5.)  On April 8, 2022, Ng was convicted of two counts of conspiracy to violate the FCPA in violation of 18 U.S.C. § 371, and one count of conspiracy to commit laundering, in violation of 18 U.S.C. § 1956(h).  (Min. Entry dated Apr. 8, 2022, *United States v. Ng*, No. 18-CR-538; J., *United States v. Ng*, No. 18-CR-538, Docket Entry No. 249.)  Ng asserts that Leissner "used the very shares he stole from . . . Ng to secure his own bail and satisfy his criminal forfeiture," (Compl. ¶ 3), and that Leissner "stole money from [him]" and others by claiming "that he was buying

---

[4]  On November 11, 2022, Ng filed a complaint in the Supreme Court of New York, New York County ("State Court Complaint"), alleging claims of fraud, fraudulent concealment, and unjust enrichment against Leissner based on his efforts to "steal and keep . . . Ng's property," including "cash and shares in" Celsius.  (Compl. ¶ 2, annexed to Ng's Pet., Docket Entry No 4-2.)  Ng attached a copy of the State Court Complaint to his petition.  (*See generally id.*)  On a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint" but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024) ("A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (citation omitted)); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (first quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015) ("A motion to dismiss a third-party petition 'should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b).'" (quoting *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 241 (2d Cir. 2011))); *see also, e.g.*, *Glob. Network Commc'ns., Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (finding reversible error where the district court considered defendant's submission of a trial transcript in an unrelated proceeding and relied on it to "make a finding of fact that *controverted* the plaintiff's own factual assertions set out in its complaint").  Ng references the State Court Complaint in the Ng Petition, (*see, e.g.*, Ng's Pet. ¶ 2), and the parties cite to it in their briefing papers, (*see, e.g.*, Gov't Mem. 4; Simmons' Mem. 3, 5–6, 9–11; Ng's Opp'n 3–5).  The Court therefore considers the State Court Complaint as integral to the Ng Petition.

Celsius shares on their behalf, when in fact, he diverted the monies for his personal use," (*id.* ¶ 32).

In or around early 2015, Leissner asked Ng "to be a co-investor along with [him] in Celsius, . . . in which Leissner was investing through [Nu Horizons]." (*Id.* ¶ 34.) On or about February 26, 2015, Leissner "first brought up the idea of . . . Ng investing into Celsius through [Nu Horizons]" during a meeting with Ng in Singapore. (*Id.* ¶ 37.) During the meeting, Leissner explained that he "would be leading a consortium of investors into Celsius," "touted the merits of Celsius," and assured Ng "that any investment in Celsius would be highly profitable." (*Id.* ¶ 38.) On or about March 11, 2015, Leissner emailed Ng bank information for Nu Horizons "for purposes of the investment into Celsius," and promised to "personally guarantee[] Ng's principal." (*Id.* ¶¶ 43, 49.)

From on or about March of 2015 to May of 2015, Ng transferred a total of $1,250,000 to Nu Horizons' bank account for the purpose of Nu Horizons' investment into Celsius, consisting of 1,453,488 shares at a price of $0.86 per share. (*Id.* ¶¶ 51–52, 62–63; Ng's Pet. ¶¶ 1–2.) Specifically, on March 17, 2015, Ng wired $500,000 to Nu Horizons' bank account according to the instructions he obtained from Leissner. (Compl. ¶¶ 51–52.) Approximately one week later, Leissner told Ng he should invest an additional $500,000 in Celsius and "reiterated his prior factual assurance that he would personally guarantee Ng's principal." (*Id.* ¶ 52.) On March 24, 2015, Ng wired an additional $500,000 to Nu Horizons' bank account. (*Id.* ¶ 54.) Ng "believed that both $500,000 payments were for [Nu Horizons'] investment into Celsius." (*Id.*) "On or about April 15, 2016, the investor group consisting of [Leissner, Lee, Ng,] and others closed the investment in Celsius." (*Id.* ¶ 60.) On or about May of 2015, Leissner proposed "sell[ing] [Ng] an additional $500,000 in Celsius" through Nu Horizons, and "Ng agreed to invest $250,000 more." (*Id.* ¶¶ 61–62.) Ng transferred $250,000 to Nu Horizons' bank account on or about May

4

29, 2015.  (*Id.* ¶ 62.)  Ng became a consultant to Celsius and "knew that [Nu Horizons] was part of Celsius' capitalization table" from his role as a consultant to Celsius.  (*Id.* ¶ 65.)  Ng "[a]ccordingly . . . believed and understood that the $1,250,000 that he transferred to [Nu Horizons' bank account] was for the purchase of Celsius shares."  (*Id.*)  On or about May 9, 2015, Leissner informed Ng's wife that he would provide "Ng and his wife a total of 1,400,000 shares of Celsius by no later than October of 2018."  (*Id.* ¶ 76.)  That same day, a schedule 13G was filed with the Securities and Exchange Commission for Celsius, which reported that Leissner, Simmons, and other companies "obtained full dominion, custody and control over [Nu Horizons] and its interest in Celsius."  (*Id.* ¶ 79.)

### b.    Procedural background

On November 1, 2018, the Court entered a Preliminary Order of Forfeiture against Leissner that provided for a forfeiture money judgment in the amount of $43.7 million, pursuant to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b)(1).  (*See* Prelim. Order of Forfeiture, *United States v. Leissner*, No. 18-CR-439, Docket Entry No. 21; Simmons' Pet. ¶ 7.)  On March 3, 2023, the Court entered an Amended Preliminary Order of Forfeiture against Leissner, directing the forfeiture of all right, title and interest in the Celsius Shares as: (a) property, real or personal, involved in the violation of 18 U.S.C. § 1956(h), or property traceable to such property; and (b) property, real or personal, constituting or derived from proceeds traceable to a violation of 18 U.S.C. § 371, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 982(b)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).[5]  (*See* Am. Forfeiture Order.)  On April 6, 2025, Ng received

---

[5]  18 U.S.C. § 981(a)(1)(C) provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" an enumerated violation, or conspiracy to commit such offense.  18 U.S.C. § 982(a)(1) provides for the forfeiture of "any property, real or personal, involved in" an offense in violation of 18 U.S.C. § 1956, "or any property traceable to such property."  18 U.S.C. § 982(b)(1) states that any property forfeited under Section 982 "shall be governed by the provisions of" 21 U.S.C. § 853.

direct notice of the Amended Preliminary Order of Forfeiture.  (Ng's Pet. ¶ 3.)

On May 5, 2023, Ng filed a petition seeking to contest the forfeiture of the Celsius Shares.  (*Id.*)  That same day, Lee filed a petition, (Lee's Pet.), and Simmons filed a petition on behalf of himself and derivatively on behalf of Nu Horizons seeking to do the same, (Simmons' Pet.).  On December 7, 2023, the Government moved to dismiss Simmons' petition pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A).  (Gov't Mot. to Dismiss, Docket Entry No. 21.)  In the December 2023 Decision, the Court granted the Government's motion in part and denied it in part, dismissing Simmons' direct claim, and allowing Simmons' derivative claim to proceed.  (Dec. 2023 Decision.)  The Government moved for reconsideration, (*see* Gov't Mot. for Reconsideration, Docket Entry No. 25), and the Court denied the Government's motion but directed the parties to engage in expedited discovery limited to the question of the status of Simmons' membership interest in Nu Horizons as of the date of the filing of his petition (the "February 2024 Decision"), (Feb. 2024 Decision).  Discovery into Simmons' standing to assert a derivative claim on behalf of Nu Horizons is ongoing.

On August 19, 2024, Simmons filed a motion to dismiss Lee's petition.  (Simmons' Mot. to Dismiss Lee's Pet., Docket Entry No. 72.)  On October 5, 2024, the Court granted Simmons' motion to dismiss and granted Lee leave to amend her petition to allege additional facts that would support a current possessory interest in the Celsius Shares.  (Oct. 2024 Decision.)  Simmons moved for reconsideration, (Simmons' Mot. for Reconsideration, Docket Entry No. 90), and the Court denied Simmons' motion, (Mar. 2025 Decision).

On January 3, 2025, Simmons served his motion to dismiss the Ng Petition.  (Letter dated Jan. 3, 2025, Docket Entry No. 111.)  On February 3, 2025, the Government filed its

memorandum in support of Simmons' motion to dismiss.[6]  (Gov't Mem.)  On March 19, 2025,

Simmons filed his motion to dismiss the Ng Petition.  (Simmons' Mot.; Gov't Reply.)  Ng

opposes Simmons' motion and the Government's response.  (Ng's Opp'n; Ng's Reply.)

## II.  Discussion

### a.  Standard of review

Under 18 U.S.C. § 982(b)(1), any property forfeited under Section 982 shall be

"governed by the provisions of" 21 U.S.C. § 853.  *See United States v. Watts*, 786 F.3d 152, 160

(2d Cir. 2015); *United States v. Kurland*, 771 F. Supp. 3d 142, 149 (E.D.N.Y. 2025) ("The

forfeiture of property under Section 982, including 'any related judicial or administrative

proceeding,' is governed principally by 21 U.S.C. § 853." (quoting 21 U.S.C. § 982(b)(1))).

"Among other things, [Section] 853 establishes the procedures by which a third party may claim

an interest in funds ordered forfeited to the United States."  *Watts*, 786 F.3d at 160.  Should a

third party claim a legal interest in the forfeited property, Section 853(n) "allows him to recover

his interest through an ancillary proceeding following the preliminary forfeiture order."  *Id.*; *see*

*also Bongiorno v. United States*, No. 22-2900, 2023 WL 7648621, at *1 (2d Cir. Nov. 15, 2023)

("[T]he law is clear that the only way a third party may challenge a post-indictment forfeiture

order is through an ancillary proceeding under [S]ection 853(n) . . . ." (emphasis omitted) (citing

---

[6] Ng argues that the Government's memorandum is "essentially a motion to dismiss Ng's claim filed out of time and without regard to the Court's pre-motion rules."  (Ng's Resp.. 1.)  On February 4, 2025, the Court granted a modified briefing schedule to permit Ng additional time to serve his response to the Government's letter and for the Government, Simmons, and Lee to file their replies, if any.  (Order dated Feb. 4, 2025.)  Accordingly, the Court considers the Government's memorandum in support of Simmons' motion to dismiss.  *See Negron v. Suffolk Cnty. Police Dep't*, No. 18-CV-5426, 2020 WL 3506061, at *1 (E.D.N.Y. June 29, 2020) (noting the district court's "'broad discretion to determine whether to overlook a party's failure to comply with' its individual rules" (quoting *CIT Bank, N.A. v. Donnatin*, No. 17-CV-2167, 2020 WL 248996, at *2 (E.D.N.Y. Jan. 16, 2020))); *see also Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (noting the district court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules" (citation omitted)), *cert. denied*, 145 S. Ct. 279 (2024).

*United States v. Daugerdas*, 892 F.3d 545, 553 (2d Cir. 2018))); *United States v. Rodriguez-Perez*, No. 10-CR-905, 2019 WL 188400, at *3 (S.D.N.Y. Jan. 11, 2019) ("An ancillary proceeding provides a procedural mechanism for a third party to assert, through the filing of a petition, its interest in the property of a criminal defendant that is subject to a preliminary order of forfeiture."). The procedures laid out in Section 853(n) are "further elaborated" in Federal Rule of Criminal Procedure 32.2(c), which states that the "court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." *Watts*, 786 F.3d at 161 (quoting Fed. R. Crim. P. 32.2(c)(1)(A)); *see also Kurland*, 771 F. Supp. 3d at 149 ("Federal Rule of Criminal Procedure 32.2 sets forth additional procedural rules applicable to forfeiture proceedings."); *United States v. Sharma*, No. 18-CR-340, 2023 WL 1365138, at *2 (S.D.N.Y. Jan. 31, 2023) ("A motion to dismiss a [Section 853(n)] petition may be granted 'for lack of standing, for failure to state a claim, or for any other lawful reason.'" (quoting Fed. R. Crim. P. 32.2(c)(1)(A))).

"A motion to dismiss a third-party petition 'should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b).'" *Watts*, 786 F.3d at 161 (quoting *Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 241 (2d Cir. 2011)); *Kurland*, 771 F. Supp. 3d at 150 ("A motion to dismiss a third-party petition 'is evaluated on the same standard as a civil complaint on a motion under Rule 12(b)(6).'" (quoting *Daugerdas*, 892 F.3d at 552)). Therefore, "[t]o survive a motion to dismiss, the petition need only 'state [] enough facts to state a claim to relief that is plausible on its face.'" *Watts*, 786 F.3d at 161 (quoting *Willis*, 652 F.3d at 241–42) (second alteration in the original); *see also United States v. Hiller*, No. 07-CR-568, 2023 WL 7924180, at *2 (E.D.N.Y. Nov. 16, 2023) ("To survive a dismissal motion, the petitioner need only state enough facts to state a claim to relief that is plausible on its face." (alterations and internal quotation marks omitted)). The court "must assume all facts alleged in

the petition to be true." *Watts*, 786 F.3d at 161; *see also* Fed. R. Crim. P. 32.2(c)(1)(A) ("For purposes of the motion [to dismiss], the facts set forth in the petition are assumed to be true."); *Hiller*, 2023 WL 7924180, at *2 (same).  However, the court is "not required to accept any legal conclusions included in the petition."  *Willis*, 652 F.3d at 242; *Kurland*, 771 F. Supp. 3d at 150 ("While the court accepts as true all factual allegations in the petition, '[it] need not do the same for legal conclusions.'" (citations omitted)).

### b.    The Government is not judicially estopped from challenging Ng's claim to the Celsius Shares

Ng argues that "the [G]overnment's opportunistic approach to the Celsius [S]hares both reflects the validity of Ng's claim and judicially estops the [G]overnment from adopting a new and convenient approach to the same shares."  (Ng's Opp'n 10.)  First, Ng argues that "the [G]overnment has long adopted the position that the Celsius [S]hares belonged to Leissner, and that he could unilaterally deploy them for his personal benefit."  (*Id.*)  Ng contends "the [G]overnment also released funds to [Lee] from the same account holding the tranche of seized shares," which would be "an inexplicable contradiction of any current position that only [Nu Horizons] shareholders can now lay claim to the shares derivatively on behalf of [Nu Horizons]." (*Id.*)  Ng argues that "the [G]overnment, moreover, sought forfeiture of the Celsius [S]hares in a criminal case *against* Leissner," which supports that the Government has taken the position that "Leissner, not [Nu Horizons], has a personal interest in the Celsius Shares."[7]  (*Id.*)

---

[7]  Ng also argues that Simmons, acting as Nu Horizons, is equitably estopped from asserting that the funds Ng sent to Nu Horizons were an investment in or loan to Nu Horizons, "[a]ssuming Leissner acted on behalf of [Nu Horizons] when he promised Celsius shares to Ng[.]"  (Ng Opp'n 11.)  On July 15, 2025, the Court found that Leissner lacked the authority to act on Nu Horizons behalf and therefore Nu Horizons was not equitably estopped from making representations contrary to Leissner's.  (July 2025 Decision 8–15, Docket Entry No. 148.)  The Court therefore finds that Simmons, moving derivatively on behalf of Nu Horizons, is not estopped from arguing that Ng does not have a valid claim to a portion of the Celsius Shares.

The Government does not expressly address Ng's estoppel argument, but argues that it "has never wavered in its description of the Celsius Shares as having been purchased with Leissner's criminal proceeds . . ., not Ng's." (Gov't Reply 2 n.2.)

Judicial estoppel is a doctrine that may be invoked at a court's discretion. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (noting that judicial estoppel is an equitable doctrine invoked in the court's discretion); *Quinn v. City of New York*, No. 22-709, 2023 WL 3909798, at *2 (2d Cir. June 9, 2023) ("Judicial estoppel is an equitable doctrine that courts may invoke at their discretion . . . ."). The doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by that party in a prior legal proceeding." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 255 (2d Cir. 2020); *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 271–72 (2d Cir. 2019) ("The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." (quoting *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 225 (2d Cir. 2013))); *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) ("Judicial estoppel 'prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding.'" (alteration in original) (quoting *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993))). "Judicial estoppel is properly invoked where[] (1) a party's later position is clearly inconsistent with its earlier position," "(2) the party's former position has been adopted in some way by the court in an earlier proceeding," *Ashmore*, 923 F.3d at 272 (quoting *New Hampshire*, 532 U.S. at 750–51), and (3) "the particular factual circumstances of a case 'tip the balance of equities in favor' of" judicially estopping a litigant, *Clark v. All Acquisition, LLC*, 886 F.3d 261, 266–67 (2d Cir. 2018) (quoting *New Hampshire*, 532 U.S. at 751). The balance of equities may tip in favor of estoppel if the "prior inconsistent

10

position" would "g[ive] the party to be estopped an 'unfair advantage' over the party seeking estoppel." *Id.* (quoting *BPP Ill., LLC v. Royal Bank of Scot. Grp. PLC*, 859 F.3d 188, 192 (2d Cir. 2017)); *see also Grajeda v. Vail Resorts Inc.*, No. 24-1592, 2025 WL 1539713, at *1 (2d Cir. May 30, 2025) (explaining that courts consider "whether the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped" (citation omitted)). Thus, there is a "general requirement that a party seeking estoppel have suffered prejudice." *Clark*, 886 F.3d at 267; *see also Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) ("[I]n evaluating whether to apply the doctrine of judicial estoppel, courts generally look for the existence of three factors: (1) that a party's new position is 'clearly inconsistent' with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party 'would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" (quoting *New Hampshire*, 532 U.S. at 750–51)). Judicial estoppel typically only applies to inconsistent factual positions, not to issues of law. *See Ashmore*, 923 F.3d at 271–72 ("The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004))); *see also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07 (1999) (noting that the majority of cases applying judicial estoppel involved purely factual contradictions); *cf. In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587, 599–600 (Bankr. S.D.N.Y. 2017) ("Judicial estoppel applies to inconsistent factual positions, not alternative legal theories of the case.").

The Court declines to exercise its discretion to estop the Government from challenging Ng's claim to the Celsius Shares because the Government's arguments are not "clearly

inconsistent."[8]  The Government is not now arguing that only Nu Horizons shareholders can assert a derivative claim.  Rather, the Government has consistently stated that the Celsius Shares were purchased with Leissner's criminal proceeds, (Gov't Mot. to Dismiss Simmons' Pet. 4, Docket Entry No. 21; Gov't Mem. 2), and argues that Ng lacks standing based on a theory the Court has previously rejected — "an alleged indirect investment in Celsius through Nu Horizons," (Gov't Mem. 6.)  In addition, the Government "does not concede" that Simmons has standing to assert a direct or derivative claim on behalf of Nu Horizons.  (*Id.* at 1 n.1.)  The Government's position that Leissner purchased the Celsius Shares is not inconsistent with its position that Ng did not.  *See United States v. Helm*, 58 F.4th 75, 87 (2d Cir. 2023) ("[T]here must be a true inconsistency between the statements in the two proceedings.  If the statements

---

[8]  Ng also argues that Nu Horizons lacks standing to contest the forfeiture of the Celsius Shares because Nu Horizons "existed not as a legitimate corporation, but as a straw man for collecting funds that Leisner would raise, comingle, and deploy for his personal use."  (Ng's Opp'n 7.)  Simmons contends that Ng's argument that Nu Horizons lacks standing is "foreclosed by this Court's prior rulings" and "substantively fails" because Simmons' active membership in Nu Horizons and his capital contributions prior and subsequent to Leissner acquiring an interest in Nu Horizons through Cuscaden Capital Limited "defeat any inference that Leissner used Nu Horizon as his 'straw' nominee to put the Celsius Shares outside the reach of a criminal forfeiture."  (Simmons' Reply 6–8.)  The Court determined in the December 2023 Decision that Simmons had derivative standing to pursue his claim on behalf of Nu Horizons.  (Dec. 2023 Decision 8–12.)  The Court also determined that Nu Horizons was a bona fide purchaser of the Celsius Shares.  (*Id.* at 12–15.)  The Court later, upon the Government's motion for reconsideration, approved limited discovery regarding Simmons' interest in Nu Horizons at the time his petition was filed, but affirmed that the December 2023 Decision is still valid.  (Feb. 2024 Decision.)  At this stage, Simmons therefore has standing to proceed with his derivative claim on behalf of Nu Horizons, and may move to dismiss the Ng Petition.  *See, e.g.*, *United States v. Dupree*, 919 F. Supp. 2d 254, 276–82 (E.D.N.Y. Jan. 28, 2013) (adjudicating a petitioner's motion to dismiss a fellow petitioner's petition), *aff'd in part, vacated in part on other grounds sub nom. Watts*, 786 F.3d 152; *United States v. Ida*, 14 F. Supp. 2d 454, 460 (S.D.N.Y. 1998) (finding that petitioner was not a nominee where the petitioner did not engage in "clear-cut attempts at circumvention," such as taking "a gratuitous transfer of the subject property from the criminal defendant"); *cf. Stonewell Corp. v. Conestoga Title Ins. Co.*, No. 04-CV-9867, 2009 WL 10695617, at *3 (S.D.N.Y. Sept. 29, 2009) (explaining that the district court "concluded that [the corporation] was acting as a nominee for [defendant]" when the corporation "allowed its name to be used on the title even though it had no claim to the property").  The Court therefore declines to further address Simmons' or Nu Horizons' standing.

can be reconciled there is no occasion to apply an estoppel." (quoting *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72–73 (2d Cir. 1997))). Because the Government is not "asserting a factual position in a legal proceeding that is contrary to [its] position" that Leissner used profits from his criminal scheme to purchase the Celsius Shares, the Court declines to exercise its discretion to estop the Government from challenging Ng's claim to the Celsius Shares. *See Frost*, 980 F.3d at 255; *Ashmore*, 923 F.3d at 272 (explaining that judicial estoppel may be invoked where "a party's later position is clearly inconsistent with its earlier position"); *see also Helm*, 58 F.4th at 87 (finding that there was no inconsistency between the government's arguments where the government "temporarily accepted [the defendant's] admission to support the factual basis for [his] guilty plea" but "expressly reserved the right" to raise additional relevant conduct at sentencing).

### c. The Ng Petition fails to assert a claim in the Celsius Shares

Simmons and the Government argue that Ng has failed to assert a claim under Section 853(n) because (1) Ng fails to identify under which subsection he is seeking relief, and (2) Ng has no legal interest in the Celsius Shares. (Simmons' Mem. 9; Gov't Mem. 5–6.) The Court addresses each argument below.

### i. Ng fails to meet the pleading requirements to assert a claim under 21 U.S.C. § 853(n)

Simmons argues that Ng's failure to allege which subsection of Section 853(n)(6) is grounds for dismissal. (Simmons' Mem. 11 (citing *United States v. Bank*, No. 17-CR-126, 2022 WL 17477064, at *2 (E.D. Va. Dec. 6, 2022)).) Simmons contends that Ng's failure to allege a subsection "is more than a procedural foot-fault, because his petition does not actually provide a basis for this Court (or his fellow petitioners) to understand his legal theory," and that the complaint Ng attaches in support of his petition "avoids actually setting forth the nature of . . . Ng's agreement with . . . Leissner." (*Id.*)

The Government "agrees" with Simmons' argument that Ng's failure to specify whether "[he] is asserting a pre-existing interest claim to a portion of the Celsius Shares under [Section] 853(n)(6)(A) or a bona fide purchaser claim under [Section] 853(n)(6)(B)" is fatal to his petition. (Gov't Mem. 6.)

Ng argues that his petition satisfies the pleading standards of Section 853(n)(3). (Ng's Opp'n 11–13.) In support, Ng argues that Section 853(n)(3) does not provide for "formalistic requirement" for a petition to include specific reference to the subsections of Section 853(n)(6) that allow for the Court to set aside a preliminary order of forfeiture. (*Id.* at 11.)

Section 853(n) requires a petition to "be signed by the petitioner under penalty of perjury" and to "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. §853(n)(3). At least one court in the Second Circuit has explained that Section 853(n) requires petitioners to state whether they are claiming an interest in property pursuant to Section 853(n)(6)(A) or 853(n)(6)(B).[9] *See, e.g.*, *United States v. Swartz*, No. 16-CR-264, 2021 WL 11085873, at *11 (N.D.N.Y. Jan. 7, 2021) ("[C]ourts have dismissed a claimant's petition for failure to specify whether the claim was grounded in the 'superior interest' prong of [Section] 853(n)(6)(A) or the 'bona fide purchaser' prong of [Section] 853(n)(6)(B)" (citation omitted)), *aff'd in part, vacated in part, remanded sub nom. United States v. Swartz Fam. Tr.*, 67 F.4th 505;

---

[9] 21 U.S.C. § 853(n)(6) allows the court to amend an order of forfeiture following a hearing when (a) "the petitioner has a legal right, title, or interest in the property" that "renders the order of forfeiture invalid . . . because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise" to the property's forfeiture, *id.* § 853(n)(6)(A), or when (b) "the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture," *id.* § 853(n)(6)(B).

14

*see also Bank*, 2022 WL 17477064, at *2 ("21 U.S.C. § 853(n)(6) requires a third-party who asserts an interest in forfeited property to state whether (A) the third party's interest in the forfeited property was superior to the defendant's interest at the time the defendant committed the acts that gave rise to the criminal forfeiture or (B) the third party was a bona fide purchaser of the forfeited property for value."); *United States v. Espada*, 128 F. Supp. 3d 555, 561 n.4, 561–62 (E.D.N.Y. 2015) (declining to address the government's arguments regarding whether petitioner had stated a "bona fide purchaser for value" claim where petition alleged only a "vested interest" claim); *United States v. Ceballos-Lepe*, 977 F. Supp. 2d 1085, 1090 (D. Utah 2013) (dismissing the petitioner's claim because she failed to identify a legal interest in the particular property subject to forfeiture and did not "specif[y] in her petition whether her interest comes under [Section] 853(n)(6)(A) or (6)(B)"); *United States v. Hailey*, 924 F. Supp. 2d 648, 658 (D. Md. 2013) (explaining that Section 853(n) requires a petitioner to plead "one of the [Section] 853(n)(6) bases" and that "[c]onclusory allegations of ownership and purchase with funds . . . [are] insufficient under [Section] 853(n)(3)").

The Court finds that Ng has failed to meet the pleading requirements set forth under Section 853(n)(6). The Ng Petition states that "a hearing will establish by a preponderance of the evidence that Mr. Ng's claim satisfies the requirements of [Section] 853(n)(6)," (Ng.'s Pet. ¶ 4), but neither the Ng Petition nor its attachments identify the subsections under which Ng is seeking relief.[10] Because Ng has failed to identify the subsections under which he is seeking relief, the Court dismisses the Ng Petition for failure to meet the pleading requirements of Section 853(n)(6). *See Swartz Fam. Tr.*, 67 F.4th at 520 (noting that the district court dismissed the petitioner's bona fide purchaser claim in part based the petitioner's failure to cite to section

---

[10]  The Court notes that the Ng Petition is a 2-page document containing cursory statements and the State Court Complaint on which the Ng Petition relies alleges claims for fraud, fraudulent concealment, and unjust enrichment.  (*See generally* Ng's Pet.; Compl.)

853(n)(6)(B) and remanding the case to the district court to consider whether the petitioner should be granted leave to amend the claim); *Bank*, 2022 WL 17477064, at *2 (finding that the petition failed to comply with the pleading requirements outlined in Section 853(n) because it "d[id] not state whether [the petitioner] is claiming a superior interest pursuant to [Section] 853(n)(6)(A) or (B)); *Swartz*, 2021 WL 11085873, at *11 (explaining that the petitioner "d[id] not actually allege a distinct 'bona fide purchaser' claim" where the petitioner "repeatedly cite[d]" to Section 853(n)(6)(A) and did not include allegations that would support a claim under Section 853(n)(6)(B)).

### ii.  Ng does not have standing to assert a direct claim under 21 U.S.C. § 853(n)

Simmons argues that the Court's December 2023 Decision and October 2024 Decision "consequently dictate the outcome of this motion" because Ng "never himself owned any shares, and instead his 'Celsius investment [was] made through NHIG [Nu Horizons].'" (Simmons' Mem. 11 (citations omitted).)  Simmons also argues that "Ng's theory boils down to the allegation that he is a 'victim' of . . . Leissner's 'fraud'" but contends that any outstanding legal claims against Leissner only make Ng a general creditor who "cannot prevail in a criminal forfeiture proceeding."  (*Id.* at 10 (citations omitted).)

The Government argues that "while Ng's failure to specify whether his petition is based on a pre-existing interest or bona fide purchaser claim under [Section] 853(n)(6) is an omission that, by itself, is sufficient to justify dismissal," the Ng Petition has failed to assert an interest in the Celsius Shares under either prong.  (Gov't Mem. 5.)  First, the Government argues that "Ng's theory of ownership fails to establish standing because it is premised on an alleged indirect investment in Celsius through Nu Horizons."  (*Id.* at 6.)  Second, the Government argues that Ng's civil claims against Leissner do "not constitute an ownership interest in any of the Celsius Shares required to participate in this proceeding" and that "courts have found that victims

generally lack interest in specific forfeited property." (*Id.* at 6.) Third, the Government notes that Ng's allegations do not "give rise to a potential constructive trust theory" and that "a constructive trust should not be recognized where doing so would benefit a beneficiary of [Leissner's] crimes." (*Id.*) Fourth, the Government argues that Ng cannot establish a claim under either prong of Section 853(n) because (i) he cannot allege a pre-existing interest in shares purchased with criminal proceeds under Section 853(n)(6)(A) and (ii) Ng fails to allege any facts in his petition or response that would support a bona fide purchaser theory under Section 853(n)(6)(B). (*Id.* at 7; Gov't Reply 3–4.) In support, the Government argues that the Ng Petition "still fails to establish an ownership interest because he concedes none of his funds were in fact used to purchase the relevant shares."[11] (Gov't Reply 1–2 (citing Compl. ¶¶ 59, 64).)

Ng argues that he has stated a valid claim in the Celsius Shares because he holds a direct and present interest in the Celsius Shares. (Ng's Opp'n 5–7.) First, Ng argues that he "held a contract for the Celsius shares" that is "not defeated merely because Leissner inserted himself and [Nu Horizons] as intermediaries for the purpose of that purchase on Ng's behalf." (*Id.* at 7.) Ng also argues that he holds "a *present* interest in those shares, unlike Simmons," because Leissner "never conveyed any Celsius stock to Ng from the tranche that the [G]overnment eventually seized." (*Id.*) In support, Ng argues that he sent funds to Nu Horizons "as a means of purchasing the Celsius stock and *not* with the intention of purchasing an interest in [Nu Horizons]" and that he purchased the shares with untainted funds. (Ng's Resp. 1–2.) Ng

---

[11] In the State Court Complaint, Ng explains that Leissner used Ng's $1,000,000 for a down payment on a house on or about April 1, 2015, and that Leissner diverted $500,000 from Nu Horizons to All Def Digital, a hip hop platform founded by Simmons, without Ng's knowledge approximately five days later. (Compl. ¶¶ 12, 59.) In addition, Leissner made a series of payments from Nu Horizons' bank account after Ng's final transfer of $250,000. (*Id.* ¶¶ 62–64.) For example, on June 1, 2015, "Leissner caused $400,000 to be transferred from [Nu Horizons'] account at JP Morgan Chase to Nigel Burgess Ltd for payment of his yacht," and, on June 19, 2015, "caused $100,000 to be transferred" from Nu Horizons to KLS Holdings, Lee's holding company. (*Id.* ¶ 64.)

contends that his interest in shares is "direct and founded in basic principles of contract law and the provisions of applicable state securities laws." (*Id.* at 2.)

"To establish standing to challenge an order of forfeiture under [Section] 853(n), a petitioner must demonstrate that he has a 'legal interest in [the forfeited] property.'" *Watts*, 786 F.3d at 161(second alteration in the original) (quoting *United States v. Ribadeneira*, 105 F.3d 833, 835 (2d Cir. 1997)); *see also United States v. Swartz Fam. Tr.*, 67 F.4th 505, 516 (2d Cir. 2023) ("In order to have standing to bring a claim under Section 853(n)(2), a petitioner must demonstrate a 'legal interest' in the property at issue." (quoting *Watts*, 786 F.3d at 160–61)); *United States v. Rahmankulov*, No. 20-CR-653, 2024 WL 68419, at *3 (S.D.N.Y. Jan. 5, 2024) ("To establish [statutory] standing to challenge an order of forfeiture under [Section] 853(n), a petitioner must demonstrate that he has a 'legal interest in [the forfeited] property." (first and third alterations in original) (quoting *Watts*, 786 F.3d at 161)).  Whether a petitioner has an interest in the forfeited property "is determined in accordance with state law," and "[w]here the petitioner has no valid interest in the property under state law, 'the inquiry ends, and the claim fails for lack of standing.'" *Watts*, 786 F.3d at 161 (quoting *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007)); *Swartz Fam. Tr.*, 67 F.4th at 516 ("Where the petitioner has no valid interest in the property under state law, the inquiry ends, and the claim fails for lack of standing." (quoting *Watts*, 786 F.3d at 161)).

None of Ng's theories of direct ownership establish standing sufficient to assert a direct claim to the Celsius Shares under Section 853(n).  First, under all relevant law,[12] a corporation is

---

[12]  Ng argues that he has asserted a valid claim to the Celsius Shares "regardless of whether the law of New York (where the shares are held, the payment for the shares was sent, and the current forum), Nevada (the state in which Celsius is incorporated), or California (the state in which Leissner primarily induced Ng to purchase the shares) applies." (Ng's Opp'n 6–7 (citations and footnotes omitted).)  Neither Simmons nor the Government address which state's law the Court should apply to Ng's claim.  (*See generally* Simmons' Mem.; Simmons' Reply;

a separate legal entity.  *See Powerhouse Beverage Co. v. Nahoum*, No. 22-CV-5559, 2024 WL 1765589, at *3 (S.D.N.Y. Apr. 24, 2024) ("Under Delaware law, an LLC is 'a separate legal entity.'" (quoting Del. Code tit. 6, § 18-201(b))); *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 121 (S.D.N.Y. 2023) ("The rule in New York is that 'a corporation exists independently of its owners, as a separate legal entity . . . .'" (citation omitted)); *Cap. Advisors, LLC v. Cai*, 548 P.3d 1202, 1206 (Nev. 2024) ("It is well recognized that a corporation should be treated as a separate legal entity unless the corporate veil is pierced and the corporation is shown to be the alter ego of

---

Gov't Mem.; *see also* Gov't Reply 3 (noting that "Ng has not even alleged which state's law applies to his claim").)  Because the law is comparable in New York, Nevada, California, and Delaware, the Court need not address the choice of law question.  *See Swartz Fam. Tr.*, 67 F.4th at 516 ("Resolving the choice-of-law question relating to [the petitioner's] legal interest in the [a]sset is no easy task . . . but fortunately for us, it turns out that the answer to that question is the same under Delaware, New York, or Florida law, thus relieving us of the duty to choose the applicable law."); *Fed. Ins. Co. v. United States*, 882 F.3d 348, 370 (2d Cir. 2018) (explaining that "there is no need for [the court] to decide the choice of law question" despite the parties' dispute because "the equitable principles relevant to the outcome of th[e] appeal [we]re comparable under the laws of both states").  In addition, although Ng cites to portions of the Uniform Commercial Codes of New York, Nevada, and California that address uncertificated security interests as relevant law, (Ng's Opp'n n.6, n.7, n.8), Ng has not alleged facts sufficient to support their application.  The portions that Ng relies on provide that "[a] person acquires a security" if they are "a purchaser to whom a security is delivered," Nev. U.C.C. § 104.8104, and that "[d]elivery of an uncertificated security to a purchaser occurs when . . . [a]nother person, other than a securities intermediary, becomes the registered owner of the uncertificated security on behalf of the purchaser or having previously become the registered owner, acknowledges that it holds for the purchaser," Nev. U.C.C. § 104-8301.  *See also* N.Y. U.C.C. §§ 8-104(a), 8-301(b); Cal. U.C.C. §§ 8104(a), 8301(b).  Because Ng has not alleged that the Celsius Shares were uncertificated, (*see generally* Ng's Pet.), the portions of the codes that he relies on are not applicable, (*see* Simmons' Reply 5 n.3 (noting that "shares of Celsius stock are certificated").) *See, e.g.*, N.Y. U.C.C. § 8-301 cmts. 2–3 (explaining that "[s]ubsection (a) defines delivery with respect to certificated securities," whereas "[s]ubsection (b) defines delivery with respect to uncertificated securities"); *Wells v. Glob. Tech Indus.*, 658 F. Supp. 3d 912, 925 & n.9 (D. Nev. 2023) (relying on the provision of the Uniform Commercial Code, as adopted in Nevada, that addresses delivery of uncertificated shares after "having determined that [p]laintiff possesse[d] only uncertified shares"); *In re Nine W. LBO Sec. Litig.*, 482 F. Supp. 3d 187, 193 n.5 (S.D.N.Y. 2020) ("By contrast, certificate securities are investments whose ownership is recorded with a stock certificate."), *aff'd in part, vacated in part, remanded*, 87 F.4th 130 (2d Cir. 2023); *In re Jaghab*, 584 B.R. 472, 481 (Bankr. E.D.N.Y. 2018) ("NY U.C.C. § 8–102(4) defines a certificated security as 'a security that is represented by a certificate.'  NY U.C.C. § 8–102(18) defines an uncertificated security as 'a security that is not represented by a certificate.'").

a controlling individual."); *Innovatel Servs. Inc. v. First Bridge Merch. Sols., LLC*, No. 22-CV-7681, 2021 WL 3415218, at *3 (C.D. Cal. Mar. 19, 2021) ("Under California law, a limited liability company (LLC) is considered a separate legal entity, distinct from its members and managers." (citation omitted)); *see also Ene v. Graham*, 546 P.3d 1232, 1237 (Nev. 2024) (explaining that one of the considerations in determining whether a person acts as an alter ego of an LLC is whether "adherence to the notion of separate entities would sanction fraud or promote injustice"); *Bigfoot Media Props., LLC v. Cushman In T, LLC*, 128 N.Y.S.3d 36, 38 (App. Div. 2020) (explaining that a limited liability company "is a separate legal entity from its members"). Ng alleges that he wired a total sum of $1,250,000 to Nu Horizons' bank account "for the purposes of the investment into Celsius." (Compl. ¶¶ 43, 52, 54–55, 62–63, 65.) Ng alleges that Leissner proposed to sell him investments in Celsius, which were "made through [Nu Horizons]," and that he believed that his two initial "$500,000 payments were for [Nu Horizons'] investment into Celsius." (Compl. ¶¶ 37, 54 61; *see* Compl. 9 (describing how "Leissner [i]nduced . . . Ng's [i]nvestment [i]nto [Nu Horizons] for [i]nvestment into Celsius").) By his own admission, Ng was not a direct purchaser of Celsius shares, but rather an investor in Nu Horizons. (Compl. ¶ 29 ("Ng errantly believed that he owned shares in Celsius . . .").) *See United States v. Castle*, No. 18-CR-531, 2020 WL 4059808, at *3 (S.D.N.Y. July 20, 2020) ("[I]t is a well-established corporate principle that corporations are legally distinct entities from their shareholders, officers, or members. . . . Thus, courts in many jurisdictions . . . have explained that while members of limited liability companies or shareholders of a corporation possess an interest in the shares of their company, they do *not* possess any interest in the company's assets." (citations omitted).) Ng's status as an investor in Nu Horizons is insufficient to establish that Ng held a legal interest in any portion of the Celsius Shares. *See DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (concluding that a third party that purchased shares that it later

turned over to an LLC was "simply a general creditor" of the LLC because it had "failed to retain a security interest in the shares" that were eventually transferred to the LLC, and therefore "d[id] not possess a 'legal right, title, or interest in the property' that was forfeited as required for standing under [S]ection 853(n)(6)(A)").  Ng therefore does not have standing to assert an interest in the Celsius Shares based on his investment in Nu Horizons.

Second, Ng also fails to assert a claim to the Celsius Shares on the basis that he has an enforceable contract for the Celsius Shares.  Although Ng alleges that he entered into an agreement with Leissner for the Celsius Shares, which were held by Nu Horizons, (Compl. ¶¶ 63, 75 (noting that Leissner informed Ng that Nu Horizons "still held" Ng's shares")), Leissner only promised to "guarantee the principal" of his investment — not the shares in Celsius, (Compl. ¶¶ 2, 45, 49–52, 54–55, 70).  To the extent Ng has a claim premised on a breach of contract, (*see generally id.* ¶¶ 1, 84–93, (alleging claims for fraud, fraudulent concealment, and unjust enrichment)), such a claim renders him a general creditor without a legal interest in the Celsius Shares.  *See United States v. Vilar*, No. 5-CR-621, 2024 WL 4182598, at *6 (S.D.N.Y. Sept. 12, 2024) ("[W]hile the . . . [c]laimants may have outstanding legal claims against [d]efendants, that leaves them as merely 'general creditors' who, by definition, cannot prevail in a criminal forfeiture proceeding." (quoting *Ribadeneira*, 105 F.3d at 837)); *United States v. Mendez*, No. 07-CR-107, 2009 WL 1706354, at *5 (E.D.N.Y. June 17, 2009) ("To the extent that the petitioner has a claim for damages . . . the petitioner is a general creditor without recourse to challenge the forfeiture under [Section] 853(n)." (citations omitted)); *United States v. Agnello*, 344 F. Supp. 2d 360, 372 (E.D.N.Y. 2004) ("A claim of entitlement to payment is not the same as claiming an ownership interest in seized accounts." (citing *United States v. All Funds on Deposit on or Before Nov. 8, 1994 in Citibank Acct. No. 42773634 in the Name of Kahn,* 955 F. Supp. 23, 26 (E.D.N.Y. 1997), *aff'd*, 129 F.3d 114 (2d Cir. 1997))).

Accordingly, because Ng has not alleged that he has standing to assert a direct claim to the Celsius Shares pursuant to Section 853(n), the Court grants Simmons' motion to dismiss the Ng Petition.[13]

### d.  Leave to amend

Ng argues that any amendment to clarify his "purchase of Celsius shares as opposed to an interest in [Nu Horizons]" or "[his] alternative reliance on both prongs of [Section] 853(n) depending on *the [G]overnment's* ultimate position as to the basis for Leisner's forfeiture order" would be harmless and efficient.  (Ng's Opp'n 13.)  Ng argues that any deficiency of the Ng Petition "would be easily remediable by amendment of the petition without prejudice to any party in this case" because the parties "have been on notice of the nature and extent of Ng's interest throughout these proceedings."  (*Id.*; *see also* Ng's Resp. 3.)

Simmons requests that the Court dismiss the Ng Petition with prejudice.  (Simmons' Reply 11.)  In support, Simmons argues that amending the Ng Petition would be futile because he "has failed to assert any legal interest in the forfeited property" and "still does not plausibly allege that he purchased the disputed shares directly from Celsius or from Nu Horizons."  (*Id.*)

The Government argues that Ng does not indicate that leave to amend would be warranted because "unlike Lee, Ng does not assert that there may be other facts available to assert his third-party claim."  (Gov't Mem. 8; Gov't Reply 1.)  In support, the Government argues that Ng does not "attempt to support his claim that he is a 'bona fide purchaser' of the Celsius Shares," and that "confirms that the Ng Petition and annexed . . .[State Court] Complaint already provide 'great detail' as to his theory of ownership."  (Gov't Mem. 8.)  The Government

---

[13]  Because the Court finds that Ng has no standing to assert a legal interest in the Celsius Shares, it does not address the parties' arguments that Ng is not a bona fide purchaser, or the Government's arguments that Ng cannot assert a claim to the Celsius Shares based on a constructive trust theory.

notes that Ng had not sought leave to amend his petition "upon the filing of [Simmons']
[m]otion." (*Id.*)

"Where . . . a third party files its petition before the deadline and moves promptly to
amend it, rejecting leave to amend does not always further that purpose. Rather, in limited
circumstances, it may be appropriate to permit the petitioner to amend its petition outside the
[thirty]-day window." *Swartz Fam. Tr.*, 67 F.4th at 519–20; *see also United States v.
Daugerdas*, 892 F.3d 545, 553 (2d Cir. 2018) (permitting the petitioner to amend her petition to
plead additional facts because, "if such facts exist[ed], . . . re-pleading would not be futile" and
therefore "denying [the petitioner] the opportunity to present a viable petition would raise
significant due process concerns"). "A motion to dismiss a third-party petition 'should be treated
like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b),'" *Watts*,
786 F.3d at 161 (quoting *Willis Mgmt.*, 652 F.3d at 241), and therefore courts have applied Rule
15 of the Federal Rules of Civil Procedure when determining whether an amendment is
warranted, *see, e.g.*, *United States v. Sharma*, No. 18-CR-340, 2022 WL 1910026, at *3–5
(S.D.N.Y. June 3, 2022) (applying Rule 15(a)(2) to petitioner's request for leave to amend).

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should
be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of
futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by
amendments previously allowed, or undue prejudice to the non-moving party.'" *United States ex
rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original)
(first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*,
551 F.3d 122, 126 (2d Cir. 2008)); *see also MSP Recovery Claims, Series LLC v. Hereford Ins.
Co.*, 66 F.4th 77, 90 (2d Cir. 2023) ("A court should freely give leave when justice so requires,
but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith,

undue delay, or undue prejudice to the opposing party." (internal quotation marks omitted)); *see also Dalewitz v. Procter & Gamble Co.*, No. 22-CV-7323, 2025 WL 764023, at *2 (S.D.N.Y. Mar. 11, 2025) ("[A]bsent a showing of prejudice or bad faith, practice in this Circuit is to grant a motion to amend." (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993))).

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Jang v. Trs. of St. Johnsbury Acad.*, 771 F. App'x 86, 88 (2d Cir. 2019) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also Bus. Casual Holdings LLC v. YouTube, LLC*, No. 22-CV-3007, 2023 WL 6842449, at *1 (2d Cir. Oct. 17, 2023) ("Proposed amendments are futile if they would fail to cure prior deficiencies or state a claim." (quoting *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015))); *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("Amendment is futile if it fails 'to cure prior deficiencies.'" (quoting *Panther Partners Inc.*, 681 F.3d at 119)). "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW*, 783 F.3d at 389. "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). "[I]t is within the sound discretion of the district court to grant or deny leave to amend . . . ." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)).

The Court denies Ng leave to amend his petition. Ng has not stated facts in his opposition brief that, "if such facts exist," could properly plead an interest in the Celsius Shares, and therefore amendment of the petition would be futile. *Daugerdas*, 892 F.3d at 553. Although

24

Ng argues that he would be able to "clarify" that he invested in Celsius rather than Nu Horizons, Ng has not identified any facts that would support this theory of ownership in his opposition, and in his petition, he explicitly states otherwise.  (Compl. ¶ 29 ("Ng errantly believed that he owned shares in Celsius . . ."); *id.* at 9 (describing how "Leissner [i]nduced . . . Ng's [i]nvestment [i]nto [Nu Horizons] for [i]nvestment into Celsius"); *id.* ¶ 54 (stating that that "Ng believed that both $500,000 payments were for [Nu Horizons'] investment into Celsius"); *id.* ¶¶ 59, 64 (explaining how Leissner diverted his initial $500,000 payments to a trust account for a house down payment and how "Ng believed that his $250,000 payment on or about May 29, 2015, was for the purchase of shares in Celsius, not for the maintenance of . . . Leissner's yacht, and not for an infusion of cash into [Lee's] business").)  *See Lewis v. Slaiby*, No. 23-CV-231, 2024 WL 1241937, at *5 (D. Conn. Mar. 22, 2024) (explaining that when amendment is "unlikely to be productive" it may be denied as "futile" (quoting *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002))).  In addition, to the extent that Ng's interest in the Celsius Shares remain based on the allegations in the State Court Complaint that he is a victim of Leissner's fraud, Ng is unable to claim a legal interest in the Celsius Shares.  *See Agnello*, 344 F. Supp. 2d at 372 (explaining that "entitlement to payment is not the same as claiming an ownership interest in seized accounts" (citations omitted)); *see also Ham v. Lenovo (U.S.) Inc.*, No. 22-CV-5131, 2025 WL 965141, at *6 (S.D.N.Y. Mar. 31, 2025) (explaining that "further amendment to try to save [p]laintiff's now-dismissed claims would be futile because 'the problems with [p]laintiff's causes of action are substantive' and 'better pleading will not cure them'"  (alterations omitted) (quoting *Cuoco*, 222 F.3d at 112)); *Kim*, 884 F.3d at 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [plaintiff] leave to amend."  (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003))).

25

The Court therefore denies Ng leave to amend the Ng Petition.

**III.  Conclusion**

For the reasons stated above, the Court grants Simmons' motion to dismiss and dismisses

the Ng Petition.

Dated: July 20, 2025
       Brooklyn, New York

                              SO ORDERED:


                              _____
                                    s/ MKB
                              MARGO K. BRODIE
                              United States District Judge